**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SHAUN DONOVAN, in his official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>Defendants. | Case No. 1:13-cv-08564<br><br>Judge Amy J. St. Eve<br><br>Magistrate Judge Susan E. Cox |

**UNOPPOSED MOTION OF THE AMERICAN CIVIL LIBERTIES UNION, THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS, THE CHICAGO AREA FAIR HOUSING ALLIANCE, THE CHICAGO LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, THE LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC., THE NATIONAL COMMUNITY REINVESTMENT COALITION, THE NATIONAL CONSUMER LAW CENTER, AND THE NATIONAL FAIR HOUSING ALLIANCE FOR LEAVE TO FILE A BRIEF *AMICUS CURIAE***

The American Civil Liberties Union ("ACLU"), the American Civil Liberties Union of Illinois ("ACLU-IL"), the Chicago Area Fair Housing Alliance (CAFHA), the Chicago Lawyers' Committee for Civil Rights Under Law, Inc. ("CLCCRUL"), the Lawyers' Committee for Civil Rights Under Law ("LCCRUL"), NAACP Legal Defense & Educational Fund, Inc. ("LDF"), the National Community Reinvestment Coalition (NCRC), the National Consumer Law Center ("NCLC"), and the National Fair Housing Alliance ("NFHA"), through counsel, respectfully move this Court for leave to file a brief *amicus curiae* of 25 pages in length in support of Defendants' opposition to Plaintiff's motion for summary judgment and cross-dispositive motion

on April 18, 2014. In support of this Motion, ACLU, ACLU-IL, CAFHA, CLCCRUL, LCCRUL, LDF, NCRC, NCLC, and NFHA aver as follows:

1. The ACLU is a nationwide, nonpartisan organization with more than 500,000 members dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil rights laws. Since its founding in 1920, the ACLU has litigated numerous cases aimed at ending segregation and racial discrimination in all its forms, and it has appeared frequently as *amicus curiae* in cases implicating these issues. Of particular relevance to this case, the ACLU advocates for people who have historically been denied their civil rights to housing on the basis of race and membership in other protected classes. *See, e.g.*, *Park View Heights Corp. v. City of Black Jack*, 605 F.2d 1033, 1035 (8th Cir. 1979), *cert. denied*, 445 U.S. 905 (1980) (plaintiffs' counsel in Fair Housing Act challenge to zoning ordinance that blocked construction of integrated housing development); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) (plaintiffs' counsel in Fair Housing Act challenge to redlining in homeowner's insurance business); *Adkins v. Morgan Stanley*, No. 12-CV-7667 (S.D.N.Y. filed Oct. 15, 2012) (plaintiffs' counsel in Fair Housing Act challenge to discrimination in mortgage securitization). The ACLU-IL is the Illinois affiliate of the national ACLU, and it has long supported the racial justice and fair housing agenda of the national organization.

2. CLCCRUL is the public interest law consortium of Chicago's leading law firms. CLCCRUL provides free legal services to people with civil rights problems and nonprofit organizations that need help with transactional issues. Its mission is to protect and promote civil rights by bringing the strength and prestige of the private bar to bear on the problems of poverty and discrimination. The goal of CLCCRUL's Fair Housing Project is to eliminate housing discrimination based on race, national origin, familial status, physical and mental disability,

sexual orientation, source of income, religion, gender, and other bases, and to affirmatively further fair housing in the Chicago metropolitan area. The project carries out this mission through education, policy advocacy, investigations, and enforcement of the Fair Housing Act, 42 U.S.C. §§ 3601-3631, ("FHA"). CLCCRUL has litigated numerous discrimination cases under the FHA and other federal civil rights statutes, many of which have raised disparate impact claims.

3. CAFHA is a non-profit membership association of organizations, governmental bodies, and individuals concerned with combating housing discrimination and promoting integrated communities. Through research, education, and advocacy, CAFHA seeks to further fair housing rights and equal opportunity in housing; develop strategies to promote long-term diversity in neighborhoods and communities; and combat discrimination and harassment. Several CAFHA member organizations have litigated cases raising disparate impact claims.

4. LCCRUL is a nonpartisan, non-profit organization that was formed in 1963 at the request of President John F. Kennedy to involve the private bar in providing legal services to address racial discrimination. The principal mission of LCCRUL is to secure, through the rule of law, equal justice under law, including working with communities across the nation to combat and remediate discriminatory housing practices. LCCRUL's major objective is to use the skills and resources of the bar to obtain equal opportunity for minorities by addressing factors that contribute to racial justice and economic opportunity. Given our nation's history of racial discrimination, *de jure* segregation, and the *de facto* inequities that persist, LCCRUL's primary focus is to represent the interests of African Americans in particular, other racial and ethnic minorities, and other victims of discrimination, where doing so can help to secure justice for all

racial and ethnic minorities. LCCRUL and its affiliates have litigated numerous fair housing claims pursuant to the FHA, many of which have raised disparate impact claims.

5. LDF is a non-profit legal organization that, for more than seven decades, has helped African Americans secure their civil and constitutional rights. Throughout its history, LDF has challenged public and private policies and practices that deny African Americans housing opportunities and isolate African-American communities. *See, e.g.*, *McGhee v. Sipes*, 334 U.S. 1 (1948) (companion case to *Shelley v. Kraemer*, 334 U.S. 1 (1948)); *Cent. Ala. Fair Hous. Ctr. v. Lowder Realty Co.*, 236 F.3d 629 (11th Cir. 2000) (racial steering); *Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994) (racial discrimination in public housing and assistance programs); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) (redlining in homeowner's insurance business); *Kennedy Park Homes Ass'n v. City of Lackawanna*, 436 F.2d 108 (2d Cir. 1970) (exclusionary zoning); *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, No. 95-309, 2006 WL 581260 (D. Md. Jan. 10, 2006) (federal government's obligation to affirmatively further fair housing); Consent Decree, *Byrd v. First Real Estate Corp. of Ala.*, No. 95-CV-3087 (N.D. Ala. May 14, 1989) (racial steering); *Price v. Gadsen Corp.*, No. 93-CV-1784 (N.D. Ala. filed Aug. 30, 1993) (unfair lending practices); *Brown v. Artery Org., Inc.*, 654 F. Supp. 1106 (D.D.C. 1987) (redevelopment plans that unfairly eliminate affordable housing); *see also* LDF et al., *The Future of Fair Housing: Report on the National Commission of Fair Housing and Equal Opportunity* (Dec. 2008). LDF has also long played an instrumental role in advancing the doctrine of disparate impact discrimination. *See, e.g.*, *Lewis v. City of Chicago*, 560 U.S. 205 (2010); *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971).

6. The National Community Reinvestment Coalition (NCRC) is a nonprofit public interest organization founded in 1990. NCRC, both directly and through its network of six

hundred community-based member organizations, works to increase access to basic banking services, including credit and savings, and to create and sustain affordable housing, job development and vibrant communities for America's working families. NCRC, through its National Neighbors civil rights program, seeks to advance fair lending and open housing practices nationwide and actively assists in efforts to affirmatively further fair housing and eliminate discrimination that is detrimental to the economic growth of low to moderate income and traditionally underserved communities.

7. NCLC is a national research and advocacy organization focusing on justice in consumer financial transactions, especially for low income and elderly consumers. Since its founding as a nonprofit corporation in 1969, NCLC has been a resource center addressing numerous consumer finance issues affecting equal access to fair credit in the marketplace. NCLC publishes a 20-volume Consumer Credit and Sales Legal Practice Series, including Credit Discrimination, Sixth Ed., and has served on the Federal Reserve System Consumer-Industry Advisory Committee and committees of the National Conference of Commissioners on Uniform State Laws. NCLC has also acted as the Federal Trade Commission's designated consumer representative in promulgating important consumer protection regulations.

8. NFHA is a consortium of approximately 97 private, non-profit, fair housing organizations, state and local civil rights groups, and individuals. In conjunction with its members, NFHA strives to eliminate housing discrimination and ensure equal housing opportunities for all people through leadership, education and outreach, membership services, public policy initiatives, advocacy, and enforcement. As part of its enforcement activities, NFHA assists its members and participates in federal and state court litigation brought under the FHA and state and local fair housing laws. In addition to bringing its own claims, NFHA

monitors federal cases brought under the FHA and files amicus briefs in cases in which it has an interest.

9. Identifying and eliminating discrimination in the availability and marketing of homeowner's insurance has been one of NFHA's highest priorities for almost two decades. NFHA has dedicated significant resources to the study of the homeowner's insurance market, and has received grants and contracts with the U.S. Department of Housing and Urban Development ("HUD") to investigate homeowner's insurers. NFHA has also been a complainant or a plaintiff in many cases involving racial discrimination in the availability and marketing of homeowner's insurance. For example, NFHA was the plaintiff in *National Fair Housing Alliance et al. v. Prudential Insurance Company*, 208 F. Supp. 2d 46 (D.D.C. 2002), and in *National Fair Housing Alliance et al. v. Travelers Insurance Company*, Case No. 1:00-cv-1506 (D.D.C. filed June 26, 2000). NFHA was the lead complainant in *National Fair Housing Alliance v. State Farm Insurance Companies*, Case No. 05-94-1351-8 (HUD), and *National Fair Housing Alliance v. Allstate Insurance Company*, Case No. 03-94-0529-8 (HUD). NFHA has filed amicus briefs in several insurance discrimination cases, including *United Farm Bureau Mutual Insurance Company v. Metropolitan Human Relations Comm'n.*, 24 F.3d 1008 (7th Cir. 1994), and *Ojo v. Farmers Group, Inc.*, 600 F.3d 1205, 1208 (9th Cir. 2010).

10. All *amici* are committed to vigorous enforcement of the FHA and have actively used and/or supported disparate impact analysis in their efforts to ensure non-discrimination in all aspects of the housing market, including the provision of property insurance. In addition, all *amici* submitted comments in support of the HUD regulation at issue here.

11. In the 45 years since the FHA was passed, all eleven federal courts of appeals to have addressed the issue have held that disparate impact claims are authorized by the text,

structure, and history of the FHA. Those decisions are consistent with the long-standing interpretation of the U.S. Department of Housing and Urban Development (HUD). Long before HUD formally promulgated its Discriminatory Effects Rule in 2013 – the subject of this Administrative Procedure Act challenge – facially neutral housing practices, including those related to the pricing and underwriting of homeowner's insurance, have been struck down where they are based on no legitimate business justification, yet operate to deprive minorities, persons with disabilities, families with children, and others on the basis of protected characteristics from the full range of housing products and services available.

12. Equitable access to homeowner's insurance is an effective prerequisite to access to home mortgage credit and the realization of the dream of homeownership. Thus, disparate impact analysis has long provided an essential tool for identifying and ending patterns, practices, and polices that have a disproportionately negative impact on the ability of protected groups to participate in the market for owner-occupied homes. Without this important tool, it will be extremely difficult, if not impossible, to address pervasive and covert housing discrimination.

13. This Court has the discretion to permit the filing of an *amicus curiae* brief. *Chamberlain Grp., Inc. v. Interlogix, Inc.*, No. 01 CV 6157, 2004 WL 1197258, at *1 (N.D. Ill. May 28, 2004); *see, e.g.*, *Obrycka v. City of Chicago*, 913 F. Supp. 2d 598, 599 (N.D. Ill. 2012) (St. Eve, J.); *Chi. Lawyers' Cmte. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 461 F. Supp. 2d 681, 683 (N.D. Ill. 2006) (St. Eve, J.) (granting leave to NFHA and others to file an *amicus* brief). It is appropriate to allow *amicus* participation "in a case in which…the *amicus* has a unique perspective or specific information that can assist the court beyond what the parties can provide." *Chamberlain Grp.*, 2004 WL 1197257, at *1 (citing *Voices for Choices, et al. v. Ill. Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003); *Nat'l Org. for Women, Inc. v. Scheidler*, 223

F.3d 616, 616 (7th Cir. 2000 and *Ryan v. Commodity Futures Trading Comm'n.*, 125 F. 3d 1062, 1063 (7th Cir. 1997))).

14. *Amici*'s experience in FHA cases raising disparate impact claims, including claims of discrimination by providers of property insurance, and their consistent support of the HUD regulation provide the Court with a unique perspective on the issues in this case and will "assist the court beyond what the parties can provide." *See Chamberlin*, at *1.

15. Per the Court's March 19, 2014 Docket Entry, Defendants' responsive pleading is now due on April 4, 2014. Inasmuch as *Amici* will need to fully review this brief, they request leave to file its brief by April 18, 2014. In addition, *amici* seek leave to file a brief of no more than 25 pages, which is one-half the page limitation placed on Defendants' responsive pleading.

16. On March 20, 2014, Counsel for *amici* contacted counsel for Plaintiffs and was informed that Plaintiffs do not object to this motion. On March 18, 2014, Counsel for *amici* contacted counsel for HUD and was informed that HUD takes no position on this motion.

WHEREFORE, ACLU, ACLU-IL, CLCCRUL, CAFHA, LCCRUL, LDF, NCRC, NCLC, and NFHA respectfully request the Court to grant this Unopposed Motion for Leave to File a Brief *Amicus Curiae*.

Respectfully Submitted,

*/s/ Elizabeth Shuman-Moore*

Elizabeth Shuman-Moore (Atty. no. 6183639)
CHICAGO LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
100 North LaSalle Street, Suite 600
Chicago, IL 60602
Telephone: (312) 630-9744
Fax: (312) 630-1127

Dennis D. Parker
Laurence M. Schwartztol
Rachel E. Goodman
Peter W. Beauchamp
AMERCIAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500

Joseph D. Rich
Thomas Silverstein
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1401 New York Avenue, N.W., Suite 400
Washington, DC 20005
Telephone: (202) 662-8600
Fax: (202) 783-5113

Sherrilyn Ifill
Director-Counsel
Christina A. Swarns
ReNika C. Moore
Ria Tabacco Mar
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
Telephone: (212) 965-2200

Stuart Rossman
BBO #430640
David Seligman
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, MA 02110
Telephone: (617) 542-8010

Stephen M. Dane
Glenn Schlactus
RELMAN, DANE & COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Fax: (202) 728-0848

Attorneys for *Amici Curiae*

Dated: March 25, 2014