# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

—————————————————————
PROPERTY CASUALTY INSURERS
ASSOCIATION OF AMERICA,

                Plaintiff,

     v.

SHAUN DONOVAN, in his official capacity as
Secretary of Housing and Urban Development,
and the UNITED STATES DEPARTMENT OF
OF HOUSING AND URBAN DEVELOPMENT,

               Defendants.
—————————————————————

No. 1:13-cv-08564

Judge Amy J. St. Eve

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

STUART F. DELERY
Assistant Attorney General

JOCELYN SAMUELS
Acting Assistant Attorney General

ZACHARY T. FARDON
United States Attorney

DAMON Y. SMITH
Acting General Counsel
MICHELLE ARONOWITZ
Deputy General Counsel for
  Enforcement and Fair Housing
JEANINE M. WORDEN
Associate General Counsel
  for Fair Housing
KATHLEEN M. PENNINGTON
Assistant General Counsel
  for Fair Housing Enforcement
M. CASEY WEISSMAN-VERMEULEN
AYELET R. WEISS
Attorneys
*Of counsel*

RACHEL J. HINES
Assistant Branch Director
Federal Programs Branch

KYLE R. FREENY (Cal. Bar No. 247857)
DANIEL P. MOSTELLER (DC Bar No. 980802)
U.S. Department of Justice
20 Massachusetts Ave., N.W.
Washington, DC 20001
Tel: (202) 514-5108/Fax: (202) 616-8470
Email: Kyle.Freeny@usdoj.gov

*Counsel for Defendants*

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........................................................................................................1

STATUTORY AND REGULATORY BACKGROUND ...........................................3

I.     Interpretation of the Fair Housing Act Prior to the Rule .................................3

II.    The Discriminatory Effects Rule......................................................................8

ARGUMENT............................................................................................................11

I.     PLAINTIFF'S CLAIM SHOULD BE DISMISSED FOR LACK OF
       JURISDICTION................................................................................................11

       A.     Plaintiff Lacks Standing to Challenge the Rule..................................11

       B.     Plaintiff's McCarran-Ferguson Act Challenge Is Not Ripe ..............15

II.    THE RULE DOES NOT CONTRAVENE THE MCCARRAN-FERUGSON ACT.......19

       A.  Plaintiff's Claim Is Incompatible With the Framework for
           Analyzing McCarran-Ferguson Preemption Claims.............................20

       B.  Plaintiff's Claim Ignores Established Applications of Disparate
           Impact Liability to Insurance That Are in Harmony with State Law ..................23

       C.  Plaintiff's Impairment Analysis Is Flawed ............................................25

III.   HUD CONSIDERED, ADDRESSED, AND RATIONALLY REJECTED
       EACH OF THE OBJECTIONS TO THE RULE THAT FORM THE BASIS
       OF PLAINTIFF'S PROCEDURAL ATTACKS ............................................29

       A.  HUD Addressed Comments About the McCarran-Ferguson Act .............................31

       B.  HUD Considered the Industry's Concerns About the Effect of
           the Rule on Insurers ...............................................................................33

       C.  HUD Considered and Rejected the Proposal to Exempt, or Create
           Safe Harbors for, the Insurance Industry ............................................34

       D.  HUD Addressed Comments About the Filed Rate Doctrine ....................................36

i

IV.    HUD'S BURDEN-SHIFTING FRAMEWORK IS REASONABLE
       UNDER *CHEVRON'S* DEFERENTIAL STEP TWO ....................................................38

CONCLUSION..............................................................................................................47

# TABLE OF AUTHORITIES

**CASES**                                                                      **PAGE(S)**

*2922 Sherman Ave. Tenants' Ass'n v. Dist. of Columbia,*
    444 F.3d 673 (D.C. Cir. 2006) ......................................................................5

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) ......................................................................16

*Ali v. Mukasey,*
    521 F.3d 737 (7th Cir. 2008) ......................................................................44

*Am. Chemistry Council v. Dep't of Trans.,*
    468 F.3d 810 (D.C. Cir. 2006) ......................................................................13

*Arthur v. City of Toledo,*
    782 F.2d 565 (6th Cir. 1986) ......................................................................5

*Axiom Ins. Managers Agency, LLC v. Indem. Ins. Corp.,*
    No. 11-2051, 2011 WL 3876947 (N.D. Ill. Sept. 1, 2011) ............................................22

*Bd. of Trade v. CFTC,*
    66 F. Supp. 2d 891 (N.D. Ill. 1999) ......................................................30, 38

*Belenke v. SEC,*
    606 F.2d 193 (7th Cir. 1979) ......................................................................34

*Betsey v. Turtle Creek Assocs.,*
    736 F.2d 983 (4th Cir. 1984) ......................................................................7

*Castro v. Chi. Hous. Auth.,*
    360 F.3d 721 (7th Cir. 2004) ......................................................................39

*Charleston Hous. Auth. v. U.S. Dep't of Agric.,*
    419 F.3d 729 (8th Cir. 2005) ......................................................................7

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) ......................................................................passim

*Cipollone v. Liggett Group, Inc.,*
    505 U.S. 504 (1992) ......................................................................37

*Clean Air Implementation Project v. EPA,*
    150 F.3d 1200 (D.C. Cir. 1998) ......................................................................19

*Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.*,
    417 F.3d 898 (8th Cir. 2005)..........................................................7

*Dehoyos v. Allstate Corp.*,
    345 F.3d 290 (5th Cir. 2003)..................................................passim

*Dir. v. Greenwich Colliers*,
    512 U.S. 267 (1994) ....................................................................46

*Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*,
    522 F.3d 796 (7th Cir. 2008)........................................................12

*Doe v. Mut. of Omaha Ins. Co.*,
    179 F.3d 557 (7th Cir. 1999)................................................. 22, 23

*EEOC v. Benicorp Ins. Co.*,
    No. 00-014-MISC, 2000 WL 724004 (S.D. Ind. May 17, 2000)...................................23

*Fairfax Nursing Home, Inc. v. HHS*,
    300 F.3d 835 (7th Cir. 2002).........................................................4

*Falk v. Sec'y of Army*,
    870 F.2d 941 (2d Cir. 1989).........................................................31

*FCC v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009) ....................................................................30

*FTC v. Ticor Title Inc.*,
    504 U.S. 621 (1992) ....................................................................27

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ....................................................................30

*Global Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc.*,
    550 U.S. 45 (2007) ......................................................................32

*Graoch Assocs. #33, L.P. v. Lousiville/Jefferson Cnty. Metro Human
    Relations Comm'n*, 508 F.3d 366 (6th Cir. 2007) ........................... 7, 35, 42, 44

*Griggs v. Duke Power Co.*,
    401 U.S. 424 (1971) ......................................................................4

*Halet v. Wend Inv. Co.*,
    672 F.2d 1305 (9th Cir. 1982).........................................................5

*Hanson v. Veterans Admin.,*
    800 F.2d 1381 (5th Cir. 1986) ....................................................................5

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363 (1982) ....................................................................................3

*Hispanics United of DuPage Cnty. v. Vill. of Addison ,*
    988 F. Supp. 1130 (N.D. Ill. 1997) ...........................................................44

*Humana Inc. v. Forsyth,*
    525 U.S. 299 (1999) ...........................................................................passim

*Huntington Branch, NAACP v. Town of Huntington,*
    844 F.2d 926 (2d Cir.), *aff'd in part*, 488 U.S. 15 (1988) ............................5, 7

*Inclusive Cmtys. Project, Inc. v. Tex. Dep't Hous. & Cmty. Affairs,*
    __ F.3d __, 2014 WL 1257127 (5th Cir. Mar. 24, 2014) .........................passim

*Koretoff v. Vilsack,*
    707 F.3d 394 (D.C. Cir. 2013) .................................................................46

*Kyles v. J.K. Guardian Sec. Servs., Inc.,*
    222 F.3d 289 (7th Cir. 2000) ....................................................................42

*La. Envtl. Action Network v. Browner,*
    87 F.3d 1379 (D.C. Cir. 1996) .................................................................18

*Langlois v. Abington Hous. Auth.,*
    207 F.3d 43 (1st Cir. 2000) ........................................................................5, 7

*Long Island Care at Home, Ltd. v. Coke,*
    551 U.S. 158 (2007) ..................................................................................35

*Lozano v. Twentieth Century Fox Film Corp.,*
    702 F. Supp. 2d 999 (N.D. Ill. 2010) ........................................................40

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ............................................................... 11, 12, 13, 15

*Lumpkin v. Farmers Grp., Inc.,*
    No. 05-2868, 2007 WL 6996584 (W.D. Tenn. Apr. 26, 2007) ......................37

*Lumpkin v. Farmers Grp., Inc.,*
    No. 05-2868, 2007 WL 6996777 (W.D. Tenn. July 6, 2007) ...................21, 23

*McRaith v. Am. Re-Insurance Co.,*
    No. 09-4027, 2010 WL 624857 (N.D. Ill. Feb. 17, 2010) .............................................22

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights,*
    558 F.2d 1283 (7th Cir. 1977).................................................................................. 4, 5, 7

*Metro. Milwaukee Fair Hous. Council v. Labor & Indus. Review Comm'n,*
    496 N.W.2d 159 (Wis. Ct. App. 1992)......................................................................28

*Meyer v. Holley,*
    537 U.S. 280 (2003) ...................................................................................................39

*Moothart v. Bowen,*
    934 F.2d 114 (7th Cir. 1991).....................................................................................40

*Mountain Side Mobile Estates P'ship v. Sec'y,*
    56 F.3d 1243 (10th Cir. 1995)............................................................................ 5, 7, 44

*NAACP v. Am. Family Mut. Ins. Co.,*
    978 F.2d 287 (7th Cir. 1992), *cert. denied*, 508 U.S. 907 (1993)..................... 3, 4, 13, 24

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife,*
    551 U.S. 644 (2007) ...................................................................................................30

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,*
    663 F.3d 470 (D.C. Cir. 2011) .............................................................................. 14, 15

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.,*
    545 U.S. 967 (2005) ...................................................................................................44

*Nat'l Fair Hous. Alliance v. Prudential Ins. Co. of Am.,*
    208 F. Supp. 2d 46 (D.D.C. 2002) ..............................................................................6

*Nat'l Mining Ass'n v. MSHA,*
    116 F.3d 520 (D.C. Cir. 1997) ...................................................................................38

*Nat'l Multi Hous. Council v. Jackson,*
    539 F. Supp. 2d 425 (D.D.C. 2008).............................................................................14

*Nat'l Park Hospitality Ass'n v. Dep't of Interior,*
    538 U.S. 803 (2003) ...................................................................................................16

*Nat'l Wildlife Fed'n v. EPA,*
    286 F.3d 554 (D.C. Cir. 2002) .............................................................................. 45, 46

*Nationwide Mut. Ins. Co. v. Cisneros,*
52 F.3d 1351 (6th Cir. 1995), *cert. denied*, 516 U.S. 1140 (1996) .............................. 4, 18

*NRDC v. EPA,*
25 F.3d 1063 (D.C. Cir. 1994) ........................................................................................ 45

*Nevels v. W. World Ins. Co.,*
359 F. Supp. 2d 1110 (W.D. Wash. 2004) ....................................................................... 21

*Nuclear Energy Inst., Inc. v. EPA,*
373 F.3d 1251 (D.C. Cir. 2004) ....................................................................................... 45

*Ohio Forestry Ass'n v. Sierra Club,*
523 U.S. 726 (1998) ......................................................................................................... 19

*Ojo v. Farmers Grp. Inc.,*
356 S.W.3d 421 (Tex. 2011) ............................................................................................ 32

*Ojo v. Farmers Grp. Inc.,*
600 F.3d 1205 (9th Cir. 2010) (en banc) ........................................................... 4, 6, 31, 32

*Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.,*
494 F.3d 188 (D.C. Cir. 2007) ......................................................................................... 36

*Pozzie v. HUD,*
48 F.3d 1026 (7th Cir. 1995) ............................................................................................ 30

*Pub. Citizen Inc. v. FAA,*
988 F.2d 186 (D.C. Cir. 1993) ......................................................................................... 30

*Regions Hosp. v. Shalala,*
522 U.S. 448 (1998) ......................................................................................................... 39

*Reno v. Catholic Soc. Servs., Inc.,*
509 U.S. 43 (1993) ........................................................................................................... 16

*Resident Advisory Bd. v. Rizzo,*
564 F.2d 126 (3d Cir. 1977) ........................................................................................... 5, 7

*Rural Cellular Ass'n v. FCC,*
588 F.3d 1095 (D.C. Cir. 2009) ....................................................................................... 34

*Rust v. Sullivan,*
500 U.S. 173 (1991) ......................................................................................................... 29

*Saunders v. Farmers Ins. Exch.,*
    440 F.3d 940 (8th Cir. 2006)................................................................ 17, 21, 36, 37

*Saunders v. Farmers Ins. Exch.,*
    537 F.3d 961 (8th Cir. 2008)........................................................................ 17, 21, 29

*Schweiker v. Gray Panthers,*
    453 U.S. 34 (1981) .................................................................................................35

*Smith v. Town of Clarkton,*
    682 F.2d 1055 (4th Cir. 1982).................................................................................5

*SprintSpectrum L.P. v. City of Carmel,*
    361 F.3d 998 (7th Cir. 2004)..................................................................................16

*State Civil Rights Comm'n v. Cnty Line Park, Inc.,*
    738 N.E.2d 1044 (Ind. 2000) ...............................................................................28

*State Nat'l Bank of Big Spring v. Lew,*
    958 F. Supp. 2d 127 (D.D.C. 2013)................................................................ 12, 13

*Sugar Cane Growers Coop. of Fla. v. Veneman,*
    289 F.3d 89 (D.C. Cir. 2002) ................................................................................38

*Tex. Indep. Producers & Royalty Owners Ass'n v. EPA,*
    410 F.3d 964 (7th Cir. 2005)..................................................................................13

*Thompson v. Clark,*
    741 F.2d 401 (D.C. Cir. 1984) ..............................................................................35

*Toilet Goods Ass'n v. Gardner,*
    387 U.S. 158 (1967) ..............................................................................................17

*Toledo Fair Hous. Ctr. v. Nationwide Mut. Ins. Co.,*
    704 N.E.2d 667 (Ohio Ct. Com. Pl. 1997)...........................................................24

*Trafficante v. Metro. Life Ins. Co.,*
    409 U.S. 205 (1972) ................................................................................................3

*Turner v. Human Rights Comm'n,*
    532 N.E.2d 392 (Ill. App. Ct. 1988)......................................................................28

*USA Group Loan Servs. v. Riley,*
    82 F.3d 708 (7th Cir. 1996) ...................................................................................45

*U.S. Satellite Broad. Co. v. FCC,*
    740 F.2d 1177 (D.C. Cir. 1984) ......................................................................38

*United Farm Bureau Mut. Ins. Co. v. Metro. Human Relations Comm'n,*
    24 F.3d 1008 (7th Cir. 1994)...............................................................24, 28

*United States v. Boyle,*
    469 U.S. 241 (1985) .......................................................................................41

*United States v. City of Black Jack,*
    508 F.2d 1179 (8th Cir. 1974)...................................................................4, 5

*United States v. Henderson,*
    376 F.3d 730 (7th Cir. 2004).........................................................................40

*United States v. Marengo Cnty. Comm'n,*
    731 F.2d 1546 (11th Cir. 1984)......................................................................5

*United States v. Nationwide Mut. Ins. Co.,*
    No. 97-291 (S.D. Ohio Mar. 10, 1997)..........................................................6

*Vill. of Bellwood v. Dwivedi,*
    895 F.2d 1521 (7th Cir. 1990)........................................................................7

*Wabash Valley Power Ass'n v. Rural Electrification Admin.,*
    988 F.2d 1480 (7th Cir. 1993) ......................................................................32

*Wards Cove Packing Co. v. Atonio,*
    490 U.S. 642 (1989) ..............................................................................passim

*Warth v. Seldin,*
    422 U.S. 490 (1975) .......................................................................................12

*Wis. Cent., Ltd. v. Shannon,*
    539 F.3d 751 (7th Cir. 2008)............................................................16, 17, 18

## STATUTES

5 U.S.C. § 556.....................................................................................45, 46, 47

5 U.S.C. § 706 ..........................................................................................30, 38

15 U.S.C. § 1012.......................................................................................passim

42 U.S.C. § 3601.................................................................................................3

42 U.S.C. § 3604 ...................................................................................................passim

42 U.S.C. § 3605 ........................................................................................................35

42 U.S.C. § 3612 ..........................................................................................................3

42 U.S.C. § 3614a ............................................................................................... 3, 33, 39

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ..............................passim

Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071..................................40

## RULES AND REGULATIONS

24 C.F.R. § 100.500 .............................................................................................passim

24 C.F.R. § 100.70 .......................................................................................................3

54 Fed. Reg. 3232 (Jan. 23, 1989) ..............................................................................4

76 Fed. Reg. 70,921 (Nov. 16, 2011).....................................................................passim

78 Fed. Reg. 11,460 (Feb. 15, 2013).......................................................................passim

## ADMINISTRATIVE PROCEEDINGS

*HUD v. Mountain Side Mobile Estates P'ship,*
    Nos. 08-92-0010 and 08-92-0011, 1993 WL 307069 (HUD, Office of the Sec'y
    July 19, 1993), *aff'd in relevant part,* 56 F.3d 1243 (10th Cir. 1995)...............................7

*HUD v. Pfaff,*
    No. 10-93-0084-8, 1994 WL 592199 (HUD ALJ Oct. 27, 1994),
    *rev'd on other grounds,* 88 F.3d 739 (9th Cir. 1996) ......................................................7

*HUD v. Twinbrook Vill. Apartments,*
    Nos. 02-00-0256-8, 02-00-0257-8, and 02-00-0258-8,
    2001 WL 1632533 (HUD ALJ Nov. 9, 2001) ................................................................7

## LEGISLATIVE MATERIALS

126 Cong. Rec. 31,167 (1980)....................................................................................5

*Homeowners Insurance Discrimination: Hearing Before the S. Comm. on Banking, Hous.,*
    *and Urban Affairs,* 103d Cong. 50 (1994) ......................................................................6

x

## STATE CODES AND STATUTES

Ala. Admin. Code r. 482-1-127.06 ........................................................................ 26
Ala. Code § 27-55-3 ............................................................................................ 27
Alaska Stat. § 21.36.430 ...................................................................................... 26
Alaska Stat. § 21.36.460 ...................................................................................... 26
Ariz. Rev. Stat. Ann. § 20-2110(F) ...................................................................... 26
Ark. Code Ann. § 23-66-206(14) ......................................................................... 26
Ark. Code Ann. § 23-67-405 ............................................................................... 26
Cal. Ins. Code § 675 ............................................................................................ 26
Colo. Rev. Stat. § 10-3-1104(1) ..................................................................... 26, 27
Colo. Rev. Stat. § 10-3-1104.8 ............................................................................ 26
Colo. Rev. Stat. § 10-4-116 ................................................................................. 26
Conn. Gen. Stat. § 38a-686(b)(6)(C)(2) .............................................................. 26
Conn. Agencies Regs. § 38a-824-3(a)(1) ....................................................... 26, 27
Del. Code Ann. tit. 18, § 2304(25) ...................................................................... 27
Del. Code Ann. tit. 18, § 4124(3) ................................................................... 26, 27
Del. Code Ann. tit. 18, § 8303 ............................................................................. 26
Fla. Stat. § 626.9541(1) ....................................................................................... 26
Fla. Stat. § 626.9741 ........................................................................................... 26
Ga. Code Ann. § 33-6-4(b)(8)(A)(iii) ................................................................... 26
Ga. Code Ann. § 33-24-91 ................................................................................... 26
Ga. Code Ann. § 33-6-4(b)(8)(A)(iii) .............................................................. 26, 27
Haw. Rev. Stat. § 431:10-217.5 ........................................................................... 27
Haw. Rev. Stat. § 431:13-103(a)(7)(C) ........................................................... 26, 27
Idaho Code Ann. § 41-1843 ................................................................................. 26
Ind. Code § 22-9.5-1-1(3) .................................................................................... 28
Ind. Code § 27-2-17-5(b) ..................................................................................... 26
Ind. Code § 27-2-21-16 ....................................................................................... 26
50 Ill. Admin. Code § 754.30(c) .......................................................................... 27
215 Ill. Comp. Stat. 157 / 20 ............................................................................... 26
215 Ill. Comp. Stat. 5 / 143.21a(a) ................................................................. 26, 27
Iowa Code § 507B.4(g)(3) .................................................................................... 27
Iowa Code § 515.103 ........................................................................................... 26
Kan. Admin. Regs. § 40-3-40(a)(4) ...................................................................... 26
Kan. Stat. Ann. § 40-5104 ................................................................................... 26
Ky. Rev. Stat. Ann. § 304.20-042 ................................................................... 26, 27
Ky. Rev. Stat. Ann. § 304.20-340(3) ............................................................... 26, 27
La. Rev. Stat. Ann. § 22:1504 .............................................................................. 26
La. Rev. Stat. Ann. § 22:1964(7) ..................................................................... 26, 27
Mass. Gen. Laws ch. 175, § 95B ..................................................................... 26, 27
Md. Code Ann. Ins. § 27-501(e-2)(2) .............................................................. 26, 27
Me. Rev. Stat. tit. 24-A § 2169-B ........................................................................ 26
Mich. Comp. Laws § 500.2027(a) ........................................................................ 26
Minn. Stat. § 72A.20(36) ................................................................................. 26, 27
Mo. Rev. Stat. § 375.1312 ................................................................................... 27
Mo. Rev. Stat. § 375.936(11) .......................................................................... 26, 27

Mont. Code Ann. § 33-18-210(5) ...................................................................26
Mont. Code Ann. § 33-18-216 .......................................................................27
Mont. Code Ann. § 33-18-605 .......................................................................27
N.C. Gen. Stat. § 58-36-90 ...........................................................................26
N.C. Gen. Stat. § 58-63-15(7) ..................................................................26, 27
N.D. Cent. Code §§ 26.1-04-03(7) ...............................................................27
N.D. Cent. Code, § 26.1-25.1-03 ..................................................................26
N.D. Cent. Code § 26.1-39-17(3) ..................................................................27
N.H. Rev. Stat. Ann. § 417:4(VIII) ..........................................................26, 27
N.H. Rev. Stat. Ann. §§ 417-B:2-a ...............................................................26
N.J. Dep't Banking & Ins., Office of the Comm'r, Bull. No. 04-05 ...............26
N.J. Stat. Ann. § 17:29B-17 ..........................................................................27
N.M. Stat. Ann. § 59A-16B-4 .......................................................................27
N.M. Stat. Ann. § 59A-17A-4 .......................................................................26
N.Y. Ins. Law § 2612 ...................................................................................27
N.Y. Ins. Law § 2802 ...................................................................................26
N.Y. Ins. Law § 3429-a ................................................................................26
Neb. Rev. Stat. § 44-1525(7) ....................................................................26, 27
Neb. Rev. Stat. § 44-7705 .............................................................................26
Nev. Admin. Code § 686A.220 .....................................................................27
Nev. Rev. Stat. § 686A.680 ......................................................................26, 27
Ohio Admin. Code 3901-1-55 .......................................................................27
Ohio Rev. Code Ann. § 3901.21(Y) ..........................................................26, 27
Okla. Stat. tit. 36, § 619.1 .............................................................................27
Okla. Stat. tit. 36, § 953 ................................................................................26
Or. Rev. Stat. § 746.015(4) ...........................................................................27
Or. Rev. Stat. § 746.018(2) ...........................................................................27
Or. Rev. Stat. § 746.661 ...............................................................................26
40 Pa. Cons. Stat. § 1171.5(a)(7)(iii) ............................................................27
40 Pa. Stat. § 1171.5(a)(14); S.D. Codified Laws § 58-33-13.3 ....................27
R.I. Gen. Laws §§ 27-29-4(7) ........................................................................27
R.I. Gen. Laws § 27-6-53 ..............................................................................26
S.D. Codified Laws § 58-11-55 .....................................................................27
S.D. Div. of Ins., Bull. No. 2002-3 ...............................................................26
Tenn. Code Ann. § 56-5-402 .........................................................................26
Tenn. Code Ann. § 56-8-104(7) .....................................................................27
Tex. Ins. Code § 559.052 ..............................................................................26
28 Tex. Admin. Code § 21.1006(b) ...............................................................27
Va. Code Ann. § 38.2-2114(I)(11) .................................................................26
Va. Code Ann. § 38.2-508 .............................................................................27
W. Va. Code § 33-17A-6 ...........................................................................26, 27
Wash. Rev. Code § 48.18.550 .......................................................................27
Wis. Admin. Code Ins. § 6.68(3) ...................................................................27
Wis. Office of the Comm'r of Ins., Bull. No. 6-16-97 ...................................26
Wis. Stat. § 631.95 .......................................................................................22
44-33 Wyo. Code R. § 3(a) ...........................................................................27

## INTRODUCTION

In this action, Plaintiff seeks to specially exempt the insurance industry from a 2013 regulation ("Discriminatory Effects Rule" or "Rule") promulgated by the Department of Housing and Urban Development ("HUD"). The Rule confirmed HUD's longstanding interpretation of the Fair Housing Act ("FHA") – consistent with all eleven courts of appeals to have addressed the issue – to prohibit disparate impact discrimination, and it established a framework for proving such claims. At the time the Rule was issued, it was well-established that the FHA covers homeowner's insurance because the ability to secure such insurance is typically a condition of home ownership. HUD therefore recognized in its Rule that the disparate impact standard of liability would continue to apply to insurance. Plaintiff does not dispute that homeowner's insurance is covered by the FHA, nor does Plaintiff dispute that the FHA generally prohibits disparate impact discrimination in housing-related practices. Pl.'s Mem. at 1 & n.1. Instead, Plaintiff attacks the Rule on the basis of several collateral issues that provide no legal basis for the special carve-out Plaintiff seeks.

Plaintiff's principal claim is that exposing insurers to the possibility of disparate impact claims would impair state regulation of the insurance industry, in contravention of the McCarran-Ferguson Act ("McCarran-Ferguson"), 15 U.S.C. §§ 1011-1015. This claim is based on the misconception that McCarran-Ferguson reserves matters concerning insurance to the states exclusively, categorically exempting the insurance industry from federal laws. Instead, as the Supreme Court has made clear, McCarran-Ferguson precludes only specific applications of federal law that would demonstrably impair a particular state's regulation of insurance. The Rule did not purport to change that preemption standard, but correctly recognized that the issue of McCarran-Ferguson preemption was properly considered on a case-by-case basis. Plaintiff's

claim that the Rule is facially preempted by McCarran-Ferguson is incompatible with the settled as-applied framework for analyzing McCarran-Ferguson claims. Here, Plaintiff seeks to use McCarran-Ferguson not as a shield to prevent particular applications of the FHA that conflict with state law but as a sword to strike down the Rule in its entirety as it pertains to the insurance industry. McCarran-Ferguson neither requires nor permits such an outcome. Moreover, because Plaintiff's preemption claim is divorced from the requisite factual context, it is also unripe.

Plaintiff also alleges that HUD failed in its Rule to address four separate objections to disparate impact liability submitted by insurance groups during the rulemaking process. These procedural claims are without merit. HUD considered all four objections and explained its reasons for rejecting them in the preamble to the Rule, thereby satisfying its obligations under the Administrative Procedure Act ("APA"). That Plaintiff disagrees with the policy judgments behind HUD's responses to the industry's comments is not grounds for upending those judgments, which are entitled to deference.

Plaintiff's final challenge, namely, to the details of the burden-shifting standard adopted by HUD, also fails in the face of the significant deference owed to the rulemaking. The FHA is silent as to the issue of burdens, and the Rule reflects HUD's considered judgment about a fair allocation of the burdens between the parties. HUD reasonably adopted a three-part framework that closely follows the frameworks adopted by courts prior to the Rule's promulgation and is modeled after the one used under Title VII.

Accordingly, Plaintiff's claims fail as a matter of law. The Court need not reach these issues at all, however, because Plaintiff has failed to demonstrate the elements of Article III standing. Among other things, Plaintiff has failed to explain how its members have been injured by a regulation that confirmed the existing judicial and administrative interpretation of the FHA.

## STATUTORY AND REGULATORY BACKGROUND

### I.  Interpretation of the Fair Housing Act Prior to the Rule

The Fair Housing Act, Pub. L. No. 90-284, 82 Stat. 81 (1968) (codified as amended at 42 U.S.C. §§ 3601-3619), was enacted "to provide, within constitutional limitations, for fair housing throughout the United States."  42 U.S.C. § 3601; *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982) (recognizing Congress's "broad remedial intent" in passing the Act); *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972) (recognizing the "broad and inclusive" language of the Act).  To that end, the FHA makes it unlawful, among other things:

> [t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to
> negotiate for the sale or rental of, or otherwise make unavailable or deny, a
> dwelling to any person because of race, color, religion, sex, familial status, or
> national origin.

42 U.S.C. § 3604(a); *see also id.* § 3604(f)(1) (prohibiting actions that "otherwise make unavailable or deny[] a dwelling . . . because of a handicap").  The FHA also makes it unlawful, "because of" one of the seven prohibited bases, to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection" with such transactions.  *Id.* § 3604(b), (f)(2).  Congress expressly granted HUD the authority to engage in formal adjudications of housing discrimination claims and to issue regulations interpreting the FHA.  *Id.* §§ 3612, 3614a.

It is well-established that Section 3604 prohibits discrimination in the provision of homeowner's insurance (hereinafter, also referred to simply as "insurance").  *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 301 (7th Cir. 1992), *cert. denied*, 508 U.S. 907 (1993); *see* 24 C.F.R. § 100.70(d)(4).  In 1978, HUD's General Counsel explained that, because the inability to obtain homeowner's insurance would prevent an individual from qualifying for a mortgage, it thereby makes housing "unavailable" as that term is used in Section 3604.  As such, HUD

-3-

concluded that the FHA prohibited discrimination in the provision of insurance.  Mem. of Ruth T. Prokop, Gen. Counsel of HUD to Chester C. McGuire, Assistant Sec'y for Equal Opportunity (Aug. 25, 1978), *quoted in Am. Family*, 978 F.2d at 300; *accord Am. Family*, 978 F.2d at 297 ("No insurance, no loan; no loan, no house; lack of insurance thus makes housing unavailable."). In 1989, HUD issued a regulation formalizing its interpretation of the FHA to prohibit insurance discrimination.  *See* 54 Fed. Reg. 3232, 3285 (Jan. 23, 1989) (codified at 24 C.F.R. § 100.70(d)(4)).  In 1992, the Seventh Circuit upheld this regulation as a valid exercise of HUD's authority under the FHA.  *Am. Family*, 978 F.2d at 300-01; *see also Ojo v. Farmers Grp. Inc.*, 600 F.3d 1205, 1208 (9th Cir. 2010) (en banc) (holding that "HUD's construction of the FHA is reasonable" in "prohibit[ing] racial discrimination in both the denial and pricing of homeowner's insurance"); *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1354 (6th Cir. 1995), *cert. denied*, 516 U.S. 1140 (1996) (deferring to HUD's regulation in holding that "insurance underwriting practices are governed by the Fair Housing Act").

In addition to HUD's and the judiciary's long-standing application of the FHA to insurance, HUD and the judiciary have long interpreted the FHA to provide for disparate impact liability.  Shortly after a unanimous Supreme Court in *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), construed Title VII of the Civil Rights Act of 1964 ("Title VII") to prohibit facially neutral practices that are "discriminatory in operation," *id.* at 431, the federal courts of appeals began, one by one, to conclude that a disparate impact theory of liability also applied under the FHA.  The earliest of these decisions came from the Eighth Circuit in 1974, *see United States v. City of Black Jack*, 508 F.2d 1179, 1184-85 (8th Cir. 1974), and the Seventh Circuit held similarly in 1977, *see Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977).  Indeed, all eleven courts of appeals to have addressed the issue have found

disparate impact claims to be cognizable under the FHA.[1]  This uniform recognition of disparate

impact liability under the FHA has been regularly reaffirmed by the circuit courts, most recently

by the Fifth Circuit just last month.  *See Inclusive Cmtys. Project, Inc. v. Tex. Dep't Hous. &

Cmty. Affairs*, __ F.3d __, 2014 WL 1257127, at *4 & n.4 (5th Cir. Mar. 24, 2014).

HUD has also long been on record interpreting the FHA to provide for disparate impact

liability, including in an October 1980 letter entered into the Congressional Record, in which the

Secretary of HUD expressed HUD's view that disparate impact liability is "imperative to the

success of civil rights law enforcement."  126 Cong. Rec. 31,167 (1980) (A.R. 743).  HUD's

formal adjudications as well as its published guidance, internal guidance, and litigating positions

have repeatedly recognized the discriminatory effects theory of liability under the FHA.  *See* 78

Fed. Reg. 11,460, 11,461-62 & nn.12-27 (Feb. 15, 2013) (cataloguing examples); *see also* A.R.

1,007-13; 1,114-40; 1,141-70; 1,171-90; 1,191-249; 1,250-68; 1,269-77; 1,305-25; 1,406-52.

Because HUD has construed the FHA to prohibit discriminatory insurance practices and

to encompass a disparate impact theory of discrimination, HUD has also specifically recognized

that the FHA prohibits disparate impact discrimination in the provision of insurance.  In 1994,

HUD's Assistant Secretary for Fair Housing and Equal Opportunity, in testimony to Congress,

---

[1] *See Langlois v. Abington Hous. Auth.*, 207 F.3d 43, 49 (1st Cir. 2000); *Huntington Branch, NAACP v. Town of Huntington*, 844 F.2d 926, 935-36 (2d Cir.), *aff'd in part*, 488 U.S. 15 (1988); *Resident Advisory Bd. v. Rizzo*, 564 F.2d 126, 146 (3d Cir. 1977); *Smith v. Town of Clarkton*, 682 F.2d 1055, 1065 (4th Cir. 1982); *Hanson v. Veterans Admin.*, 800 F.2d 1381, 1386 (5th Cir. 1986); *Arthur v. City of Toledo*, 782 F.2d 565, 574-75 (6th Cir. 1986); *Metro. Hous. Dev. Corp.*, 558 F.2d at 1290; *Black Jack*, 508 F.2d at 1184-85; *Halet v. Wend Inv. Co.*, 672 F.2d 1305, 1311-12 (9th Cir. 1982); *Mountain Side Mobile Estates P'ship v. Sec'y*, 56 F.3d 1243, 1251 (10th Cir. 1995); *United States v. Marengo Cnty. Comm'n*, 731 F.2d 1546, 1559 n.20 (11th Cir. 1984); c*f. 2922 Sherman Ave. Tenants' Ass'n v. Dist. of Columbia*, 444 F.3d 673, 679 (D.C. Cir. 2006) (finding it "[s]ignificant[]" that "every one of the eleven circuits to have considered the issue has held that the FHA similarly prohibits not only intentional housing discrimination, but also housing actions having a disparate impact," but declining to reach the issue because only one side had briefed it).

confirmed the applicability of disparate impact liability to insurance: "[insurance company] practices that are neutral on their face [and] have a disproportionate racial impact . . . may violate the [Act] where they cannot meet the established test of business necessity and the showing that there is no less discriminatory alternative." *Homeowners Insurance Discrimination: Hearing Before the S. Comm. on Banking, Hous., and Urban Affairs*, 103d Cong. 50 (1994) (stmt. of Roberta Achtenberg, Ass't Sec'y for Fair Hous. & Equal Opportunity). HUD has expressed longstanding concern about practices such as refusing to offer policies in urban neighborhoods or imposing minimum value or age requirements for the property, which – even if based on "seemingly neutral policies" – impair equal access to housing and may violate the Act when not tied to the risk of loss. *See id.* at 49, 51.

The United States has also pursued FHA disparate impact claims against the insurance industry in federal court. *See, e.g.*, *United States v. Nationwide Mut. Ins. Co.*, No. 97-291 (S.D. Ohio Mar. 10, 1997) (alleging in paragraph 12 of the Complaint that an insurer's policies "are not necessitated by considerations of risk, profit, or any other legitimate race-neutral business consideration" and that "[a]lternative methods are available which would accomplish the business objectives forming the ostensible rationale for these practices without the substantial and disproportionate burden on residents of minority neighborhoods").[2] So, too, have private litigants. *See, e.g.*, *Ojo*, 600 F.3d at 1207; *Dehoyos v. Allstate Corp.*, 345 F.3d 290, 293 (5th Cir. 2003); *Nat'l Fair Hous. Alliance v. Prudential Ins. Co. of Am.*, 208 F. Supp. 2d 46, 50 (D.D.C. 2002).

Notwithstanding the consensus that disparate impact claims are generally cognizable under the FHA, there was minor variation in how courts evaluated the evidence to assess liability

---

[2] Available at http://www.justice.gov/crt/about/hce/documents/nationcomp.php

-6-

in a disparate impact case prior to the Rule's promulgation. By 2013, the majority of courts of appeals to have addressed the question, and all HUD administrative adjudications, had adopted a three-step burden-shifting approach.[3] But the Seventh Circuit applied a four-factor balancing test,[4] the Sixth and Tenth Circuits employed a hybrid form of the burden-shifting and balancing approaches,[5] and the Fourth Circuit applied burden-shifting for private defendants and balancing for public defendants.[6] Additionally, most circuits with a burden-shifting approach assigned the burden of proof at the final step to the party bringing the claim,[7] but the Second Circuit placed it on the defending party.[8] In adopting these various approaches toward proving an FHA disparate impact claim, courts have borrowed heavily from the proof standards used for Title VII disparate impact claims. *See, e.g., Graoch,* 508 F.3d at 371-74; *see also Vill. of Bellwood v. Dwivedi*, 895 F.2d 1521, 1533 (7th Cir. 1990) (labeling the Seventh Circuit's balancing approach as "in fact though not in words the 'disparate impact' analysis familiar from Title VII cases").

---

[3] *See Langlois*, 207 F.3d at 49-50; *Huntington Branch*, 844 F.2d at 939; *Rizzo*, 564 F.2d at 148-49; *Charleston Hous. Auth. v. U.S. Dep't of Agric.*, 419 F.3d 729, 740-42 (8th Cir. 2005); *HUD v. Twinbrook Vill. Apartments*, Nos. 02-00-0256-8, 02-00-0257-8, and 02-00-0258-8, 2001 WL 1632533, at *17 (HUD ALJ Nov. 9, 2001); *HUD v. Pfaff*, No. 10-93-0084-8, 1994 WL 592199, at *8 (HUD ALJ Oct. 27, 1994), *rev'd on other grounds*, 88 F.3d 739 (9th Cir. 1996); *HUD v. Mountain Side Mobile Estates P'ship*, Nos. 08-92-0010 and 08-92-0011, 1993 WL 307069, at *6 (HUD, Office of the Sec'y, July 19, 1993), *aff'd in relevant part*, 56 F.3d 1243.

[4] *See Metro. Hous. Dev. Corp.*, 558 F.2d at 1290.

[5] *See Graoch Assocs. #33, L.P. v. Lousiville/Jefferson Cnty. Metro Human Relations Comm'n*, 508 F.3d 366, 373 (6th Cir. 2007); *Mountain Side*, 56 F.3d at 1252, 1254.

[6] *See Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 989 n.5 (4th Cir. 1984).

[7] *See Rizzo*, 564 F.2d at 149 n.37; *Graoch*, 508 F.3d at 373-74; *Darst-Webbe Tenant Ass'n Bd. v. St. Louis Hous. Auth.*, 417 F.3d 898, 902-03 (8th Cir. 2005); *Mountain Side*, 56 F.3d at 1254.

[8] *See Huntington Branch*, 844 F.2d at 939.

**II.     The Discriminatory Effects Rule**

It is against this backdrop that HUD promulgated the regulation that Plaintiff challenges. In its Notice of Proposed Rulemaking, HUD proposed "adding a new subpart . . . to its Fair Housing Act regulations . . . [to] confirm that the Fair Housing Act may be violated by a housing practice that has a discriminatory effect."  76 Fed. Reg. 70,921, 70,924 (Nov. 16, 2011). Additionally, HUD proposed "establish[ing] a uniform standard of liability for facially neutral housing practices that have a discriminatory effect" whereby "liability is determined by a burden-shifting approach."  *Id*. at 70,923.  In formally establishing a burden-shifting framework through the exercise of its delegated rulemaking authority, HUD sought to resolve the "small degree of variation . . . in the methodology of proving a claim of discriminatory effect liability" that "threaten[ed] to create uncertainty as to how parties' conduct will be evaluated."  78 Fed. Reg. at 11,460.  HUD explained that its proposed burden-shifting framework was based on existing FHA case law and administrative practice and was modeled on the well-established framework applicable to disparate impact claims brought under other antidiscrimination laws such as Title VII.  *See* 76 Fed. Reg. at 70,924.

HUD received nearly 100 public comments in response to its proposal (many of which had multiple signatories) from entities representing a wide variety of interests, including individuals, fair housing and legal aid organizations, state and local fair housing agencies, state Attorneys General, state housing finance agencies, public housing agencies, mortgage lenders, credit unions, banks, real estate agents, and law firms.  A.R. 9-610.  Three trade associations representing the homeowner's insurance industry, including Plaintiff, also submitted comments. A.R. 372-83 (Cmt. of Nat'l Ass'n of Mut. Ins. Cos.); 455-59 (Cmt. of Am. Ins. Ass'n); 553-56 (Cmt. of Prop. Cas. Insurers Ass'n of Am.).  HUD grouped the comments into forty-two

different issues and responded to each issue. *See* 78 Fed. Reg. at 11,465-79. HUD made several changes to the wording of its proposed rule in response to comments suggesting a need for greater clarity, but HUD retained the basic substance of the proposal when it promulgated its Final Rule on February 15, 2013. *See id*. at 11,463-64.

The Rule amends Part 100 of Title 24 of the Code of Federal Regulations to provide: "Liability may be established under the Fair Housing Act based on a practice's discriminatory effect . . . even if the practice was not motivated by a discriminatory intent." *Id*. at 11,482; 24 C.F.R. § 100.500. More specifically, the Rule provides that:

> A practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin.

24 C.F.R. § 100.500(a). The regulation sets out a three-step burden-shifting framework to prove a claim of discrimination based on a practice's unlawful discriminatory effect. At the first step, the party bringing the claim bears the burden of proving the discriminatory effect of the challenged practice on a protected class. *Id*. § 100.500(c)(1). If this first step is proven, the Rule specifies that the practice may still be lawful if there is a "legally sufficient justification" for the challenged practice. *Id*. § 100.500. A legally sufficient justification can be established if, at step two, the defending party proves that the "challenged practice is necessary to achieve one or more [of its] substantial, legitimate, nondiscriminatory interests," *id*. § 100.500(c)(2), and the party bringing the claim of discrimination fails to prove, at step three, that the interest(s) "could be served by another practice that has a less discriminatory effect," *id*. § 100.500(c)(3). The legally sufficient justification "must be supported by evidence and may not be hypothetical or speculative." *Id*. § 100.500(b)(2). In adopting this three-part framework, which applies to both administrative and judicial proceedings under the FHA, HUD sought to ensure that "neither party

is saddled with having to prove a negative." 76 Fed. Reg. at 70,924 (quoting *Hispanics United of DuPage Cnty. v. Vill. of Addison*, 988 F. Supp. 1130, 1162 (N.D. Ill. 1997)) (internal quotation marks omitted). After considering proposed alternatives, HUD concluded that the Rule's framework was "the fairest and most reasonable approach to resolving" FHA disparate impact claims. 78 Fed. Reg. at 11,473-74.

Consistent with the FHA's applicability to the provision of homeowner's insurance, HUD specifically acknowledged when proposing the Rule that it also would cover insurance. 76 Fed. Reg. at 70,924 (listing "the provision and pricing of homeowner's insurance" as one of a number of "[e]xamples of a housing policy or practice that may have a disparate impact"). In reviewing the public comments submitted during the rulemaking, HUD identified several broad groups of objections raised by the insurance industry, including claims that: the availability of disparate impact claims against the insurance industry would interfere with state regulation of insurance, in violation of McCarran-Ferguson or the "filed rate" doctrine; that the Rule was incompatible with actuarially sound insurance principles; and that special exemptions or safe harbors should be created for insurance practices. *See* 78 Fed. Reg. at 11,474-75. HUD explained that these comments were misguided because an insurance practice with a discriminatory effect would not be *per se* illegal simply by virtue of its differential effect on a protected class. *See id.* at 11,475 (noting that a policy or practice with discriminatory effect "may still be legal if supported by a legally sufficient justification"). In this way, the Rule distinguishes between "unnecessary barriers proscribed by" the FHA and "valid policies and practices crafted to advance legitimate interests." *Id.* (internal quotation marks and citation omitted).

HUD also rejected the insurance industry's objection that application of the Rule to insurance would impair state insurance regulation in violation of McCarran-Ferguson or the

"filed rate" doctrine. 78 Fed. Reg. at 11,474. As HUD recognized, McCarran-Ferguson precludes application of a federal statute where such application would "invalidate, impair, or supersede" any state law "enacted . . . for the purpose of regulating the business of insurance," unless the federal measure itself "specifically relates to the business of insurance." *Id.* at 11,475 (quoting 15 U.S.C. § 1012(b)). HUD clarified in response to the comments that the "[R]ule does not alter the instruction of McCarran-Ferguson or its application as described in" case law, noting that the applicability of McCarran-Ferguson "depends on the facts at issue and the language of the relevant State law 'relat[ing] to the business of insurance.'" *Id.* Accordingly, HUD concluded that the Rule "will not interfere with any State regulation of the insurance industry." *Id.*

## ARGUMENT

## I. PLAINTIFF'S CLAIM SHOULD BE DISMISSED FOR LACK OF JURISDICTION

### A. Plaintiff Lacks Standing to Challenge the Rule

Plaintiff's challenge to the Rule is not properly before this Court because Plaintiff fails to satisfy the elements of Article III standing. To demonstrate standing under Article III, a plaintiff must show that: (1) it suffers a concrete and particularized injury-in-fact that is either actual or imminent, rather than conjectural or hypothetical; (2) there is a causal connection between the injury and defendants' challenged conduct; and (3) there is a likelihood that the injury suffered will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). At the summary judgment stage, a plaintiff cannot "rest on . . . 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,'" to show the requisite injury. *Id.* at 561. Because Plaintiff indicates in its opening brief that it seeks to proceed on behalf of its members under the doctrine of associational standing (rather than on its own behalf), *see* Pl.'s

Mem. at 16 n.7, at least one of Plaintiff's members must be able to satisfy these three elements, *see Warth v. Seldin*, 422 U.S. 490, 511 (1975); *see also Disability Rights Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008). Plaintiff falls short of satisfying the requirements for Article III standing.

In its motion for summary judgment, Plaintiff contends that it may be presumed to have standing because its members "are parties regulated under the Rule" and "are the objects of HUD's action." Pl.'s Mem. at 16 n.7 (internal quotation marks and alterations omitted). It is true that "there is *ordinarily* little question that the action or inaction has caused . . . injury" when "the plaintiff is himself an object of the action (or forgone action) at issue." *Lujan*, 504 U.S. at 561-62 (emphasis added). But, by its own terms, this general guideline contemplates that there may be circumstances where a plaintiff's standing is susceptible to question even when plaintiff is subject to an agency's regulation. *See also State Nat'l Bank of Big Spring v. Lew*, 958 F. Supp. 2d 127, 150 (D.D.C. 2013) (noting a plaintiff "errs to the extent that it suggests that it need only show that it is directly subject to the authority of the agency without meeting the basic standing requirements of injury-in-fact, causation, and redressability" (internal quotation marks omitted)). This is just such a case.

Plaintiff makes no showing that its members have had to modify their conduct to come into compliance with the Rule, which prohibits only those practices that *both* result in a discriminatory impact *and* are not supported by a legally sufficient justification. Instead, Plaintiff alleges, in conclusory fashion in a declaration submitted by one of its executives, that "PCI and its member companies have expended substantial resources analyzing the Rule and *potential* compliance with the Rule." Gordon Decl. ¶ 7 (emphases added). But costs a "party incurs to determine *whether* it needs to satisfy a legal mandate" do not constitute an injury that

-12-

gives rise to standing. *Big Spring*, 958 F. Supp. 2d at 150 (emphasis added). Plaintiff's

declaration fails to "set forth . . . specific facts" that would demonstrate that at least one of its

members has suffered some concrete injury. *See Lujan*, 504 U.S. at 561; s*ee also Tex. Indep.*

*Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 972-73 (7th Cir. 2005) (citing *Sierra*

*Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002)). Plaintiff's suggestion that the "administrative

record demonstrates the severity of the harm posed by the Rule," Pl.'s Mem. at 16 n.7, does not

overcome this deficiency. *See Am. Chemistry Council v. Dep't of Trans.*, 468 F.3d 810, 819-20

(D.C. Cir. 2006) (citing *Sierra Club*, 292 F.3d at 900-01) (rejecting an effort to show standing

based on comments submitted as part of the rulemaking process rather than by submitting

"affidavits from petitioners' members alleging actual or imminent injury or other evidence to

that effect").

      Plaintiff also separately fails to demonstrate that any injuries its members allegedly suffer

as the result of the availability of disparate impact liability are "fairly traceable" to the Rule. *See*

*Lujan*, 504 U.S. at 560 (ellipsis and brackets omitted). In the Complaint (which is not competent

evidence at this stage), Plaintiff alleges that its members suffer various harms by having to

collect demographic data and to "identify" and "disregard" pricing and underwriting factors that

could have a disparate impact. *See* Compl. ¶¶ 68-69. But such injuries, if they exist, are the

result of the longstanding administrative and judicial recognition of disparate impact liability

under the FHA and the coverage of insurers under the FHA. As described above, these are

longstanding legal realities that predate the Rule by many years.[9]

---

[9] Although the Seventh Circuit in 1992 declined to decide whether the FHA provided for disparate impact claims involving insurance, *see Am. Family*, 978 F.2d at 290, other courts have since recognized such claims. *See supra* at 6.

A plaintiff does not have standing to challenge a federal rule that confirms preexisting legal requirements, because any injury is "not fairly traceable" to the challenged action. *See Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 663 F.3d 470, 474 (D.C. Cir. 2011) (dismissing claim on standing grounds because the agency had adopted the disputed legal position in prior action); *Nat'l Multi Hous. Council v. Jackson*, 539 F. Supp. 2d 425, 431 (D.D.C. 2008) (concluding that alleged injury was not traceable to HUD guidance concerning disparate impact claims under Title VI when "HUD and Justice have adhered to a disparate impact theory of discrimination under Title VI and its implementing regulations for over 35 years"). Neither the Complaint nor the declaration provides any explanation for how any alleged harm is actually attributable to the Rule, given that Plaintiff's members have for decades been required to avoid practices that result in an unjustified disparate impact. *See* 78 Fed. Reg. at 11,479 ("[F]or the minority of entities that have, in the over 40 years of the Fair Housing Act's existence, failed to institutionalize methods to avoid engaging in illegal housing discrimination and plan to come into compliance as a result of this rulemaking, the costs will simply be the costs of compliance with a preexisting statute, administrative practice and case law.").

That any alleged injuries experienced by Plaintiff's members predate the challenged Rule is confirmed by the fact that the insurance industry went on the record, in 1996, alleging harm from the application of disparate impact liability to their industry:

> [P]roperty insurers will be forced to fend off FHA disparate impact challenges to underwriting and rating standards and rules sanctioned by state insurance regulators. HUD has actively advocated a disparate impact standard for FHA claims generally, and has issued a regulation providing that the FHA applies to property insurance. . . . [T]he federal circuits . . . have held that, at least in some circumstances, a claim under the FHA can be established by proof of disparate impact alone. These facts have already precipitated and will inevitably continue to precipitate disparate impact challenges to property insurers' underwriting and rating standards. . . . HUD has received and is investigating complaints against [insurers] which include claims of disparate impact, and has given every

-14-

indication of its intention to employ a disparate impact theory in enforcing the FHA against insurers.

Brief for Nat'l Ass'n of Mut. Ins. Cos. & Am. Ins. Ass'n as Amici Curiae in Support of the Petition, *Nationwide Mut. Ins. Co. v. Cisneros*, 516 U.S. 1140 (1996) (No. 95-714), 1996 WL 33467765, at *14-15 & n.11. Such injuries are identical to those Plaintiff's Complaint alleges its members face – a clear indication that they are not traceable to the Rule, promulgated almost two decades later.

That the insurance industry was subject to disparate impact liability under the FHA long before the promulgation of the Rule also means that the alleged injuries of Plaintiff's members would not "be redressed by a favorable decision." *See Lujan*, 504 U.S. at 561 (internal quotation marks omitted). Vacating the Rule would not remedy the alleged harm they face because they face disparate impact liability even if HUD must return to the status quo that existed before the Rule's promulgation. *See Nat'l Ass'n of Home Builders*, 663 F.3d at 475.

Because Plaintiff has failed to demonstrate that it meets the three elements of Article III standing, this Court lacks jurisdiction to entertain its claims.

### B.     Plaintiff's McCarran-Ferguson Act Challenge Is Not Ripe

Plaintiff's challenge to the Rule as preempted by McCarran-Ferguson is separately subject to dismissal as unripe because it would require the Court to opine on hypothetical future applications of the Rule before it is clear what those applications would be. Thus, it would inject the Court into an abstract dispute that may never need to be decided. The effect of McCarran-Ferguson must be considered on a case-by-case basis rather than in the abstract, pre-enforcement context of Plaintiff's present suit.

The doctrine of ripeness is "an important element of the 'case' or 'controversy' requirement" that is intended to "prevent courts, through avoidance of premature adjudication,

from entangling themselves in abstract disagreement over administrative policies, and also to

protect the agencies from judicial interference until an administrative decision has been

formalized and its effects felt in a concrete way by the challenging parties." *SprintSpectrum L.P.*

*v. City of Carmel*, 361 F.3d 998, 1002 (7th Cir. 2004) (quoting *Abbott Labs. v. Gardner*, 387

U.S. 136, 148-49 (1967)). In determining whether a claim is ripe, courts look to two factors: (1)

"the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding

court consideration." *Abbott Labs.,* 387 U.S. at 148-49. Here, both factors counsel strongly in

favor of withholding review of Plaintiff's McCarran-Ferguson claim unless and until it is

presented in the context of a specific application of the FHA.

Although a legal challenge to a final regulation is commonly ripe for judicial decision

even before the rule is enforced (assuming the requirements for standing have been met), *see id.*,

such a challenge is not ripe where, as here, "further factual development would significantly

advance [the court's] ability to deal with the legal issues presented." *Nat'l Park Hospitality*

*Ass'n v. Dep't of Interior*, 538 U.S. 803, 811-12 (2003) (citations and quotation marks omitted);

*see also Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57-58 (1993) (observing that

promulgation of a regulation does not necessarily make it ripe for challenge). Of particular

relevance here, where a party seeks a declaration that an agency action is subject to preemption,

the fitness of that issue for review typically turns on the *type* of preemption at stake. *See Wis.*

*Cent., Ltd. v. Shannon*, 539 F.3d 751, 759-60 (7th Cir. 2008). In *Wisconsin Central*, the Seventh

Circuit ordered dismissal, *sua sponte*, of a claim that a state agency action was preempted by the

Railway Labor Act (RLA). *Id.* at 760. In doing so, the Seventh Circuit distinguished between

claims of field preemption – an issue that is generally not context-dependent and thus can often

be resolved in a pre-enforcement context – and a claim of preemption under the RLA, which

-16-

requires a "case-by-case factual analysis." *Id.* This latter category of claims is not ripe for review in a pre-enforcement context. *Id.*; *cf. Humana Inc. v. Forsyth*, 525 U.S. 299, 309-10 (1999) (applying analogous principles of federal conflict preemption to decide McCarran-Ferguson preemption claim).

Like the preemption issue found to be premature in *Wisconsin Central*, the "reverse-preempt[ion]" that Plaintiff advances pursuant to McCarran-Ferguson, Pl.'s Mem. at 16, is a fundamentally "fact-specific issue." *See Saunders v. Farmers Ins. Exch. (Saunders I)*, 440 F.3d 940, 945 (8th Cir. 2006) (declining to address argument that McCarran-Ferguson preempted disparate impact challenge under FHA where record was insufficiently developed); *see also Humana*, 525 U.S. at 307-09 (holding that McCarran-Ferguson does not "preempt the field" of insurance). As discussed further in Part II, *infra*, whether McCarran-Ferguson preempts a cause of action under the FHA against one of Plaintiff's members for disparate impact discrimination would turn on "the facts of [the] case" in question, *Humana*, 525 U.S. at 311, because a statute "might 'impair' state insurance laws when applied in some ways, but not in others." *See Saunders v. Farmers Ins. Exch. (Saunders II)*, 537 F.3d 961, 967 (8th Cir. 2008) (noting that *Humana* requires a court to "focus . . . on the precise federal claims asserted" under the FHA). Courts must therefore analyze the insurance practice being challenged, the relief sought, and the state laws at issue. *See Saunders I*, 440 F.3d at 946. Because "judicial appraisal of these factors" would undoubtedly "stand on a much surer footing in the context of a specific application" of the Rule to a specific insurance practice in a particular state than it would "in the framework of the generalized challenge made here," Plaintiff's claim is unfit for review. *See Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967).

-17-

Importantly, the Rule does not purport to determine whether any particular housing practice in any particular situation would give rise to liability under the FHA.  Instead, it merely sets out a general framework for considering disparate impact claims.  And the Rule does not purport to alter the operation of McCarran-Ferguson.  *See* 78 Fed. Reg. at 11,475.  Thus, the Rule does not foreclose insurers from challenging, if warranted, concrete applications of the Rule as inconsistent with McCarran-Ferguson.  Plaintiff's preemption claim here would require the Court to hypothesize about the as-yet-unknown contours of any future actions brought to enforce the FHA pursuant to the Rule.  Because the Rule does not prohibit practices that are supported by a legally sufficient justification, 24 C.F.R. § 100.500(b), it is premature at this stage to presume that the Rule would be applied in a manner even arguably inconsistent with state law.

Withholding review until the issue crystallizes in the context of a specific application of the Rule would thus serve an important rationale underlying the ripeness doctrine, namely, that "courts should not render decisions absent genuine need to resolve a real dispute."  *Wis. Cent.*, 539 F.3d at 759 (quoting *Lehn v. Holmes*, 364 F.3d 862, 867 (7th Cir. 2004)); *see also La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1385 (D.C. Cir. 1996).  Indeed, Plaintiff's abstract claim that FHA disparate impact liability conflicts with state insurance regulation is precisely the speculative claim rejected as unripe by the Sixth Circuit in *Nationwide*.  *See* 52 F.3d at 1362-63; *see also Dehoyos*, 345 F.3d at 299 n.7 (declining to reach argument that "disparate impact claims are particularly likely to impair state law" on grounds that the alleged conflicts are "entirely conjectural").

Plaintiff has not pointed to any hardship to its members from deferring review until the question presented is fit for judicial review.  Although Plaintiff speculates that its members will be drawn into litigation about the use of state-mandated or -authorized pricing practices, *see* Pl.'s

Mem. at 22, 24, to the extent this happens, the insurer can raise McCarran-Ferguson as a defense to the action. Plaintiff offers no meaningful reason why adjudication of the preemption issue in that context would not suffice. The fact that Plaintiff would prefer to litigate the McCarran-Ferguson issue at a high level of generality, rather than on a case-by-case basis where the issue can be given the requisite factual attention, is insufficient to make this claim ripe. *See Clean Air Implementation Project v. EPA*, 150 F.3d 1200, 1205 (D.C. Cir. 1998) (finding no hardship in withholding review even though it would be "easier and cheaper to mount a single challenge now rather than defend a series of enforcement actions"). Nor is the alleged "expense" associated with "[r]equiring insurers to litigate this issue case-by-case," Pl.'s Mem. at 22, sufficient to overcome the strong grounds to withhold review. *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 735 (1998) (holding that "litigation cost-saving" does not "justify review in a case that would otherwise be unripe").

## II. THE RULE DOES NOT CONTRAVENE THE MCCARRAN-FERUGSON ACT

Plaintiff's first and principal claim is that the Discriminatory Effects Rule, which confirmed HUD's longstanding interpretation of the FHA to encompass disparate impact liability, "violates the McCarran-Ferguson Act" simply by covering insurance practices. Compl. ¶ 78. The Rule does not "violate" McCarran-Ferguson, but rather accommodates it: the Rule does not purport to restrict the operation of McCarran-Ferguson, and it does not purport to decide whether McCarran-Ferguson would preempt any particular application of disparate impact liability. 78 Fed. Reg. at 11,475.

To the extent Plaintiff claims that McCarran-Ferguson preempts the Rule in all its possible applications – to all types of insurance practices in all fifty states – this claim, too, is fundamentally flawed. Plaintiff broadly contends that "[s]ubjecting the provision and pricing of

homeowners insurance to disparate impact liability would invalidate, impair, or supersede state laws, regulations, and policy determinations regulating the business of insurance and impose a barrier to the regulation of the business of insurance by the several States."  Compl. ¶ 76.  As explained above, this claim is not ripe for review in the context of a facial attack on the Rule, divorced from any specific application to a prohibited practice.  Plaintiff's claim also fails as a matter of law, because it misapprehends the nature of the preemption inquiry, ignores established applications of disparate impact liability that are in harmony with state insurance regulation, and rests on a flawed analysis of state law and the question of impairment.

A.    **Plaintiff's Claim Is Incompatible With the Framework for Analyzing McCarran-Ferguson Preemption Claims**

Plaintiff claims that McCarran-Ferguson categorically immunizes insurance practices from disparate impact liability under the FHA, without regard to the practice being challenged or the state in which the practice occurs.  This argument for wholesale, facial preemption of federal law is inconsistent with the as-applied framework for analyzing McCarran-Ferguson challenges, as articulated by the Supreme Court in *Humana*.

In *Humana*, an insurance company argued that McCarran-Ferguson barred a claim brought against it under the Racketeer Influenced and Corrupt Organizations Act ("RICO") for alleged fraudulent inflation of insurance deductibles.  *See* 525 U.S. at 303-04.  In the Court's view, the appropriate inquiry was not whether McCarran-Ferguson shielded the insurance industry from liability under RICO as a general matter, but whether "RICO's *application to the . . . claims at issue* would 'invalidate, impair, or supersede' Nevada's laws regulating insurance" – a question that turned on the "the facts of [the] case."  *Id.* at 307, 314 (quoting 15 U.S.C. § 1012(b)) (emphasis added).  In answering that question in the negative, the Court rejected the

argument that preemption could be triggered by the mere fact of contemporaneous state regulation or the existence of a comprehensive state regulatory scheme. *Id.* at 309-10.

Courts that have addressed the interplay between McCarran-Ferguson and the FHA have similarly noted that a "fact-intensive" inquiry is required in order "to decide the . . . impairment issue" – an inquiry that considers "the nature of" the FHA claim asserted, the "specific relief" being sought, and the specific state law purportedly implicated. *Saunders I*, 440 F.3d at 945-46; *see also Saunders II*, 537 F.3d at 967 ("[F]ederal civil rights statutes [like the FHA] are drafted broadly, so a statute might 'impair' state insurance laws when applied in some ways, but not in others"); *Lumpkin v. Farmers Grp., Inc.*, No. 05-2868, 2007 WL 6996777, at *4 (W.D. Tenn. July 6, 2007) (looking to the "factual allegations" of the discrimination complaint and the "state statutory scheme" at issue). The contours of this "fact-intensive" inquiry only become apparent in the context of a specific action to enforce the FHA – a reality that HUD recognized in its rulemaking. *See* 78 Fed. Reg. at 11,475.

Plaintiff's claim that the Rule is facially preempted as to the entire insurance industry, regardless of the nature of the disparate impact claim at issue or the relevant state law, is fundamentally at odds with this framework. The requirement to demonstrate "impairment" cannot be satisfied by generic claims about the nature of insurance regulations or summary predictions about "systematic . . . second-guessing of state-approved, actuarially-sound insurance practices." Pl.'s Mem. at 35. As the Fifth Circuit recognized in rejecting a similar challenge by an insurer subject to disparate impact liability under the FHA: "Allowing the states to exercise exclusive or autonomous discretion in insurance regulation is not a valid rationale for finding [McCarran-Ferguson] preemption." *Dehoyos*, 345 F.3d at 297 n.5; *see also Nevels v. W. World Ins. Co.*, 359 F. Supp. 2d 1110, 1123 (W.D. Wash. 2004). And although Plaintiff derides the

prospect of insurers having to defend their conduct in federal courts, *see* Pl.'s Mem. at 17-20, it is simply not the case that state courts have exclusive jurisdiction over all issues that may touch on insurance. *See McRaith v. Am. Re-Insurance Co.*, No. 09-4027, 2010 WL 624857, at *3 (N.D. Ill. Feb. 17, 2010). Nor is there any sense in which adjudication of federal court challenges to insurance practices would inevitably impair or interfere with state regulation of insurance. *See Axiom Ins. Managers Agency, LLC v. Indem. Ins. Corp.*, No. 11-2051, 2011 WL 3876947, at *9-11 (N.D. Ill. Sept. 1, 2011) (St. Eve., J.) (finding no reverse preemption of RICO challenge to an insurance practice even though Illinois law provided no right of action to challenge the practice).

Notwithstanding the Supreme Court precedent to the contrary, Plaintiff contends that *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999), supports the type of wholesale preemption it urges. Not so. In *Doe*, the court was called upon to decide whether a specific application of federal law to a specific insurance practice – namely a lawsuit under the Americans with Disabilities Act ("ADA") challenging an insurance company's cap on benefits for AIDS-related illnesses – impaired Illinois insurance law. Though the opinion discussed state regulation of insurance in broad terms, the court did not purport to adopt any sort of facial (or field) preemption principle. Rather, the court decided that the ADA did not prohibit the challenged insurance practice; in the alternative, it concluded that even if the ADA were read to prohibit the conduct, the plaintiff's "suit . . . [was also] barred by the McCarran-Ferguson Act." *Id.* at 563. Implicit in the Seventh Circuit's decision is a recognition that a challenge to insurance practices under the ADA in a different context would not raise the same preemption issue. *See id.* ("There is a difference between refusing to sell a health insurance policy at all to a person with AIDS, or charging him a higher price for such a policy, . . . and . . . offering

insurance policies that contain caps for various diseases some of which may contain disabilities.").  As then-District Judge Tinder has recognized, *Doe* does not support a finding of reverse-preemption "in the abstract."  *EEOC v. Benicorp Ins. Co.*, No. 00-014-MISC, 2000 WL 724004, at *4 (S.D. Ind. May 17, 2000) (refusing to quash a subpoena issued by the EEOC in connection with an investigation of whether insurer's policies violated ADA because "many scenarios can be envisioned in which the EEOC might pursue a viable claim against [the insurer] under the ADA which would not . . . be at odds with either *Doe* or the McCarran-Ferguson Act"); *see also Dehoyos*, 345 F.3d at 295 n.6 (rejecting a reading of *Doe* as supporting a "general impairment argument" because "[i]n *Doe*, there was an actual state insurance law which purportedly conflicted with the application of the ADA to the particular insurance question at issue").

## B.  Plaintiff's Claim Ignores Established Applications of Disparate Impact Liability to Insurance That Are in Harmony with State Law

The fact that there are established applications of disparate impact liability to the insurance industry that have *not* triggered reverse-preemption under McCarran-Ferguson further refutes Plaintiff's claim of entitlement to have the Rule invalidated as applied to all insurance practices nationwide.

Several courts have found that adjudication of disparate impact claims under the FHA complements, rather than impairs, particular states' regulation of insurance.  *See Dehoyos*, 345 F.3d at 298-99 (finding alignment between the FHA and then-applicable Florida and Texas law in limiting credit-scoring for homeowners insurance);[10] *Lumpkin*, 2007 WL 6996777, at *6-7

---

[10] *Dehoyos* acknowledged that the state laws at issue had been amended after the lawsuit's filing, and that it was not ruling on whether the amended laws reverse preempted the FHA claim.  *See* 345 F.3d at 297 n.5.

(observing that Tennessee's prohibition on "unfairly discriminatory" rates should not be read "to permit disparate impact as long as the rates are actuarially sound" and concluding that "Tennessee code does not permit credit scoring [for homeowners insurance] with disparate impact"); *cf. Toledo Fair Hous. Ctr. v. Nationwide Mut. Ins. Co.*, 704 N.E.2d 667, 670 (Ohio Ct. Com. Pl. 1997) (recognizing that "the disparate impact approach does not conflict with Ohio insurance law").

Of particular note, the Seventh Circuit in *American Family* rejected an insurer's argument that an FHA challenge to the practice of redlining would impair Wisconsin law, and thereby trigger McCarran-Ferguson, where there was no specific "law, regulation, or decision in Wisconsin requiring redlining, condoning that practice, committing to insurers all decisions about redlining, or holding that redlining with discriminatory intent *(or disparate impact)* does not violate state law." 978 F.2d at 297 (emphasis added); *see also United Farm Bureau Mut. Ins. Co. v. Metro. Human Relations Comm'n*, 24 F.3d 1008, 1013-14 (7th Cir. 1994) (applying the same reasoning to conclude that McCarran-Ferguson did not preclude redlining claim in Indiana). The court noted that "[i]f Wisconsin wants to authorize redlining" and thereby preclude challenges to such practices under FHA, "it need only say so." *Am. Family*, 978 F.2d at 297. Although the only claim before the Seventh Circuit was one for disparate treatment rather than disparate impact, *id.* at 290, the court's analysis of McCarran-Ferguson would apply equally to disparate impact claims.[11]

---

[11] The court in *American Family* declined to decide whether the FHA provided for disparate impact liability against insurers. 978 F.2d at 291. That fact does not diminish the relevance of *American Family*'s preemption analysis to Plaintiff's claim that the Rule "violates" McCarran-Ferguson. Because Plaintiff does not separately contest the statutory basis for applying disparate impact to its members, *see* Pl.'s Mem. at 1, the court's discussion, in dicta, of whether the FHA recognizes disparate impact liability against insurers is not relevant here. Moreover, judicial and

The existence of these identified areas of overlap between the disparate impact standard under the FHA and state law confirms what the governing precedent already demonstrates – that Plaintiff is not entitled to invalidation of the Rule as it pertains to all insurance practices nationwide. Granting Plaintiff the relief it seeks would preclude application of the Rule even in those instances where no conflict with state law exists, a result that McCarran-Ferguson cannot sustain.

### C.      Plaintiff's Impairment Analysis Is Flawed

Because the basic premise of Plaintiff's McCarran-Ferguson claim is unsustainable, the Court need not address Plaintiff's arguments about specific state laws alleged to be impaired by the Rule. *See* Pl.'s Mem. at 20-24 & Appx. A. In any event, Plaintiff's impairment analysis is fatally flawed. Although Plaintiff purports to identify provisions of state law that the Rule allegedly impairs, *see* Pl.'s Mem. at 20-24 & Appx. A, this effort still rests on an improper level of abstraction because it fails to account for the nature of the hypothetical disparate impact claim in question or the specific insurance practice at issue (both which could vary significantly). In addition, Plaintiff's narrow focus on insurance pricing ignores other areas of insurance practice, such as underwriting. And even if these defects were disregarded, Plaintiff has not shown that all fifty states authorize insurers to engage in practices that result in an unjustified disparate impact on members of each of the seven FHA protected classes.

In an apparent effort to avoid the need to delve carefully into the law of any particular state – an inquiry that is not suited to this facial challenge – Plaintiff summarily contends that regulation of insurance is "the same across the states." Pl.'s Mem. at 21. This is both simplistic and erroneous. Although various state laws may share certain general principles, they also differ

---

administrative developments since 1992 have resolved that the FHA recognizes such claims. *See supra* at 6.

in important ways entirely ignored by Plaintiff's cursory analysis. For example, forty-one states restrict, to varying degrees, insurance decisions based on credit history,[12] thirty-five states do so based on geographic location (*i.e.*, redlining),[13] thirty-one do so based on domestic violence victimization,[14] and twenty-two states do so based on the property's age.[15] State laws on the

---

[12] *See* Ala. Admin. Code r. 482-1-127.06; Alaska Stat. § 21.36.460; Ariz. Rev. Stat. Ann. § 20-2110(F); Ark. Code Ann. § 23-67-405; Colo. Rev. Stat. § 10-4-116; Conn. Gen. Stat. § 38a-686(b)(6)(C)(2); Del. Code Ann. tit. 18, § 8303; Fla. Stat. § 626.9741; Ga. Code Ann. § 33-24-91; Idaho Code Ann. § 41-1843; 215 Ill. Comp. Stat. 157 / 20; Ind. Code § 27-2-21-16; Iowa Code § 515.103; Kan. Stat. Ann. § 40-5104; Ky. Rev. Stat. Ann. § 304.20-042; La. Rev. Stat. Ann. § 22:1504; Me. Rev. Stat. tit. 24-A § 2169-B; Md. Code Ann. Ins. § 27-501(e-2)(2); Mich. Comp. Laws § 500.2153; Minn. Stat. § 72A.20(36); 19-031 Miss. Code R. § 06; Mont. Code Ann. § 33-18-605; Neb. Rev. Stat. § 44-7705; Nev. Rev. Stat. § 686A.680; N.H. Rev. Stat. Ann. §§ 417-B:2-a; 417:4(VIII)(g); N.J. Dep't Banking & Ins., Office of the Comm'r, Bull. No. 04-05, Insurance Scoring Information (2004); N.M. Stat. Ann. § 59A-17A-4; N.Y. Ins. Law § 2802; N.C. Gen. Stat. § 58-36-90; N.D. Cent. Code, § 26.1-25.1-03; Ohio Admin. Code 3901-1-55; Okla. Stat. tit. 36, § 953; Or. Rev. Stat. § 746.661; R.I. Gen. Laws § 27-6-53; S.D. Div. of Ins., Bull. No. 2002-3, Credit Scoring (2002); Tenn. Code Ann. § 56-5-402; Tex. Ins. Code § 559.052; Va. Code Ann. § 38.2-2114(I)(11); Wash. Rev. Code § 48.18.545; W. Va. Code § 33-17A-6(h); Wis. Office of the Comm'r of Ins., Bull. No. 6-16-97, The Use of Credit Reports in Underwriting Personal Auto and Homeowner's Policies (1997).

[13] *See* Ark. Code Ann. § 23-66-206(14)(C); Colo. Rev. Stat. § 10-3-1104(1)(f)(XIV); Conn. Agencies Regs. § 38a-824-3(a)(1); Del. Code Ann. tit. 18, § 4124(3); Fla. Stat. § 626.9541(1)(x)(2); Ga. Code Ann. § 33-6-4(b)(8)(A)(iii); Haw. Rev. Stat. § 431:13-103(a)(7)(C); 215 Ill. Comp. Stat. 5 / 143.21a(a), 155.22; Ind. Code § 27-2-17-5(b); Kan. Admin. Regs. § 40-3-40(a)(4); Ky. Rev. Stat. Ann. § 304.20-340(3); La. Rev. Stat. Ann. § 22:1964(7)(d); Me. Rev. Stat. tit. 24-A § 3051; Md. Code Ann. Ins. § 11-205(f)(4); 211 Mass. Code Regs. § 142.07; Mich. Comp. Laws § 500.2027(a)(iii), (c); Minn. Stat. § 72A.20(13)(a); Mo. Rev. Stat. § 375.936(11)(c); Mont. Code Ann. § 33-18-210(5); Neb. Rev. Stat. § 44-1525(7)(c); N.H. Rev. Stat. Ann. § 417:4(VIII)(e); N.Y. Ins. Law § 3429-a; N.C. Gen. Stat. § 58-63-15(7)(c); N.D. Cent. Code §§ 26.1-04-03(7)(d), 26.1-39-17(3); Okla. Stat. tit. 36, § 619.1; Or. Rev. Stat. § 746.018(2); 40 Pa. Cons. Stat. § 1171.5(a)(7)(iii); R.I. Gen. Laws §§ 27-29-4(7)(iii), 27-29-4.1; S.D. Codified Laws § 58-11-55; Tenn. Code Ann. § 56-8-104(7)(D); Tex. Ins. Code § 544.002(a)(2); Va. Code Ann. § 38.2-508(4); W. Va. Code § 33-17A-6(c); Wis. Admin. Code Ins. § 6.68(3)(a); 44-33 Wyo. Code R. § 3(a).

[14] *See* Ala. Code § 27-55-3; Alaska Stat. § 21.36.430; Ariz. Rev. Stat. Ann. § 20-448(G); Ark. Code Ann. § 23-66-206(14)(G); Cal. Ins. Code § 675; Colo. Rev. Stat. § 10-3-1104.8; Del. Code Ann. tit. 18, § 2304(25); Fla. Stat. § 626.9541(1)(g)(3); Ga. Code Ann. § 33-6-4; Haw. Rev. Stat. § 431:10-217.5; 215 Ill. Comp. Stat. 5/155.22a, .22b; Iowa Code § 507B.4(g)(3); Ky. Rev. Stat. Ann. § 304.12-211; Md. Code Ann. Ins. § 27-504; Mass. Gen. Laws ch. 175, § 95B; Mo. Rev.

-26-

filing and approval of insurance rates are also far more varied than Plaintiff's discussion (or attached chart) suggests, *see* Pl.'s Mem. at 24-26 & Appx. A, and the significance of the filing of rates varies from state to state. *Cf. FTC v. Ticor Title Inc.*, 504 U.S. 621, 638-40 (1992) (discussing different title insurance rate requirements). It is also not the case, as Plaintiff suggests, that the filing of a rate with a state agency necessarily signifies approval of every practice leading to the creation of the rate. *See id.* at 638 (rejecting notion that a state's "inaction [in response to a filed rate] signifies substantive approval"). Moreover, some states, including Illinois, either assume no role in approving or disapproving rates, or subject rates to review for approval or disapproval in only limited circumstances. *See, e.g.*, 50 Ill. Admin. Code § 754.30(c).

Plaintiff's cursory analysis of state insurance provisions also improperly assumes that these provisions can be read in complete isolation. But *Humana* makes clear that in determining whether federal claims would impair a state's regulation of insurance, courts must take into account the entire body of state law that applies to insurance practices, whether part of the insurance code or not. *See Humana*, 525 U.S. at 312-13 (noting that Nevada's Unfair Insurance

---

Stat. § 375.1312; Mont. Code Ann. § 33-18-216; Neb. Rev. Stat. § 44-7405; Nev. Admin. Code § 686A.220; N.H. Rev. Stat. Ann. § 417:4(VIII)(f); N.J. Stat. Ann. § 17:29B-17; N.M. Stat. Ann. § 59A-16B-4; N.Y. Ins. Law § 2612; N.D. Cent. Code § 26.1-04-03(7)(d); Ohio Rev. Code Ann. § 3901.21(Y); Or. Rev. Stat. § 746.015(4); 40 Pa. Stat. § 1171.5(a)(14); S.D. Codified Laws § 58-33-13.3; Va. Code Ann. § 38.2-508(7); Wash. Rev. Code § 48.18.550; Wis. Stat. § 631.95.

[15] *See* Ark. Code Ann. § 23-66-206(14)(D); Colo. Rev. Stat. § 10-3-1104(1)(f)(XV); Conn. Agencies Regs. § 38a-824-3(a)(5); Del. Code Ann. tit. 18, § 4124(3); Ga. Code Ann. § 33-6-4(b)(8)(A)(iii); Haw. Rev. Stat. § 431:13-103(a)(7)(D); 215 Ill. Comp. Stat. 5 / 143.21a(a); Ky. Rev. Stat. Ann. § 304.20-340(3); La. Rev. Stat. Ann. § 22:1964(7)(e); Minn. Stat. § 72A.20(13)(b); Mo. Rev. Stat. § 375.936(11)(d); Mont. Code Ann. § 33-18-210(6); Neb. Rev. Stat. § 44-1525(7)(d); N.C. Gen. Stat. § 58-63-15(7)(d); N.D. Cent. Code § 26.1-39-17(3); R.I. Gen. Laws § 27-29-4(7)(iv); Tenn. Code Ann. § 56-8-104(7)(E); 28 Tex. Admin. Code § 21.1006(b); Va. Code Ann. § 38.2-508(5); W. Va. Code § 33-17A-6(c); Wis. Admin. Code Ins. § 6.68(3)(b); 44-33 Wyo. Code R. § 3(b).

Practices Act is not "hermetically sealed" and does not "exclude application of other state laws, statutory or decisional"). Relevant here are states' own fair housing laws, which are commonly interpreted in conformity with the FHA. *See, e.g., State Civil Rights Comm'n v. Cnty Line Park, Inc.,* 738 N.E.2d 1044, 1048-49 (Ind. 2000) (interpreting Indiana's fair housing law based on the FHA); *Metro. Milwaukee Fair Hous. Council v. Labor & Indus. Review Comm'n*, 496 N.W.2d 159, 162 (Wis. Ct. App. 1992) (same for Wisconsin); *Turner v. Human Rights Comm'n*, 532 N.E.2d 392, 398 (Ill. App. Ct. 1988) (same for Illinois). This overlap commonly extends to the coverage of insurance, *see, e.g.*, *United Farm Bureau*, 24 F.3d at 1013-14, and the availability of disparate impact claims, *see, e.g.*, *Cnty. Line Park, Inc.*, 738 N.E. 2d at 1048-49 (looking to FHA for guidance in construing Indiana Fair Housing Act to prohibit disparate impact discrimination). Indeed, the text of many state fair housing statutes expressly declares that the statute is substantially equivalent to the FHA. *See, e.g.* Ind. Code § 22-9.5-1-1(3). Consistent with these state fair housing laws, six state Attorneys General – including Illinois' – submitted a joint comment during the rulemaking that strongly "commend[ed]" the Rule at issue here, calling the availability of disparate impact claims "squarely aligned with the interest of our states" and noting that the Rule would complement the states' own "extensive efforts" to address the lingering "barriers to equal housing opportunities." A.R. at 560-61. Plaintiff's selective and oversimplified analysis of state law – and its conclusory assertion that every state that authorizes or requires the use of actuarially sound risk factors intends, by doing so, to preclude the full operation of the FHA as applied to insurance – fails in light of the foregoing.

Given the variations in state law and myriad ways in which the Rule might conceivably be applied, Plaintiff's discussion of specific state laws, *see, e.g.*, Pl.'s Mem. at 21, is ultimately beside the point. Even if Plaintiff were able to identify some hypothetical application of the Rule

that would impair a particular state's regulation of insurance – a claim that would be manifestly

unripe at this stage, *see* Part I.B, *supra* – that would not affect the availability of disparate impact

liability under different circumstances within the same state or in other states, for the reasons

previously discussed. *See Saunders II*, 537 F.3d at 968 & n.7 (observing, after finding that a

particular claim under the FHA was barred by Missouri law, that the "McCarran-Ferguson Act's

application might well be different if other disparate impact claims were asserted" or if other

state laws were in play).[16] The possibility that HUD's regulation might be invalid or preempted

"under some conceivable set of circumstances" as applied to particular insurance practices in

particular states is "insufficient to render [it] wholly invalid" in all its applications to the

insurance industry. *See Rust v. Sullivan*, 500 U.S. 173, 183 (1991).

### III. HUD CONSIDERED, ADDRESSED, AND RATIONALLY REJECTED EACH OF THE OBJECTIONS TO THE RULE THAT FORM THE BASIS OF PLAINTIFF'S PROCEDURAL ATTACKS

Plaintiff's second through fifth causes of action are styled as purely procedural attacks on

the rulemaking process, focused on whether HUD responded to public comments, considered

relevant factors in its decisionmaking, and adequately explained the reasoning behind its

conclusions. In particular, Plaintiff claims that HUD's decision was "arbitrary and capricious"

because HUD failed to address and consider: (a) the effect of McCarran-Ferguson (Count II); (b)

the effect of the Rule on insurers (Count III); (c) a request by insurers to create an insurance-

specific exemption to liability (Count IV); and (d) the effect of the so-called "filed-rate" doctrine

(Count V).

---

[16] The United States filed an amicus brief in *Saunders II*, arguing that Missouri civil rights law permits private actions against insurers for rate discrimination notwithstanding the state insurance code provisions that defendants cited. *See id.* at 968-69. The Court of Appeals declined to reach the United States' argument because the plaintiff in that case had failed to preserve it. *Id.*

As Plaintiff recognizes, its procedural claims are governed by the "arbitrary and capricious" standard of review set forth in the APA.  5 U.S.C. § 706(2).  This standard of review "is a deferential one which presumes that agency actions are valid as long as the decision is supported by a 'rational basis.'"  *Pozzie v. HUD*, 48 F.3d 1026, 1029 (7th Cir. 1995).  A court must uphold an agency's decision "unless it has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007) (internal quotation omitted).[17]  The APA requires that an agency adequately explain its reasoning and respond to "relevant" and "significant" public comments; however, "neither requirement is particularly demanding."  *Pub. Citizen Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993); *see also Bd. of Trade v. CFTC*, 66 F. Supp. 2d 891, 898-99 (N.D. Ill. 1999) ("There is . . . no obligation under the [APA] for an agency to reference all of the issues raised in comments, even when it is adopting a rule.").  Under this narrow standard of review, a court may not "substitute its judgment for that of the agency" and it must uphold an agency's explanation for its decision so long as the agency's path "may reasonably be discerned."  *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (internal quotation marks omitted).

As discussed further below, all four of Plaintiff's procedural challenges to the Rule are without merit.  HUD considered, addressed, and rationally rejected each of the four objections to

---

[17] Plaintiff does not challenge the sufficiency of any factual conclusion in the Rule.  But even if it did, review would be confined to the record before the agency at the time of its decisionmaking and would require only a determination of whether that record, as a matter of law, supported the agency's conclusions.  *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (noting that the "factfinding capacity of the district court is . . .  typically unnecessary to judicial review of agency decisionmaking").

the Rule that Plaintiff claims HUD failed to address. That Plaintiff nevertheless presses these claims signals that the real animating force behind its attack is not the quality of HUD's decisionmaking process but Plaintiff's dislike of HUD's choices. This is not an appropriate basis for upending the Rule. *See Falk v. Sec'y of Army*, 870 F.2d 941, 944 (2d Cir. 1989) (under arbitrary and capricious review, a court "may not assess the wisdom of an agency's choice").

### A.     HUD Addressed Comments About the McCarran-Ferguson Act

In Count II of the Complaint, Plaintiff contends that HUD "failed to address th[e] issue" of "whether the Disparate Impact Rule violates the McCarran-Ferguson Act." Compl. ¶¶ 82-83. This claim is demonstrably false. HUD acknowledged receiving comments from the insurance industry "that application of the disparate impact standard would interfere with state regulation of insurance in violation of the McCarran-Ferguson Act," and it rejected these comments on the ground that the "final rule does not alter the instruction of McCarran-Ferguson or its application." 78 Fed. Reg. at 11,474-75. HUD reasonably and rationally declined to address any specific application of the Rule to a particular insurance practice, noting that the outcome of such an inquiry would "depend[] on the facts at issue and the language of the relevant State law 'relat[ing] to the business of insurance.'" *Id.* at 11,475 (quoting 15 U.S.C. § 1012(b)).

To the extent that there is any doubt about the meaning of HUD's explanation, or the reasonableness of its approach, that doubt is resolved by HUD's reference in its explanation to the Ninth's Circuit's en banc decision in *Ojo*. That decision construed the FHA to "prohibit[] . . . discrimination in both the denial and pricing of homeowner's insurance" under a disparate impact theory of liability. 600 F.3d at 1207. And only after doing so did the court consider "whether application of FHA to [the plaintiff's] case might invalidate, impair, or supersede Texas's law" – a question the court certified to the Texas Supreme Court rather than answering

itself.[18]  *Id.* at 1209-10.  *Ojo* therefore makes clear that the proper construction of the FHA (as applied to the insurance industry or otherwise) and the question of McCarran-Ferguson preemption of an *application* of the FHA are two distinct inquiries.  As HUD incorporated this reasoning into its Rule, HUD's explanation can hardly be deemed insufficient.  *See Global Crossing Telecomms., Inc. v. Metrophones Telecomms., Inc.*, 550 U.S. 45, 63-64 (2007) (noting that cross-references in an agency's explanation can make the agency's rationale obvious and legally sufficient).

In an effort to bolster its flawed attack, Plaintiff cites a line of cases requiring that an agency "identify 'a source of authority in either the express language or the purpose and operation of [a statute] to justify' its regulations."  Pl.'s Mem. at 27 (quoting *Wabash Valley Power Ass'n v. Rural Electrification Admin.*, 988 F.2d 1480, 1491 (7th Cir. 1993)).  This argument confuses the issue.  *Wabash* stands for the unremarkable proposition that where an agency issues rules to implement a statute, there must be some indication that Congress intended to delegate the agency authority to do so.  *See* 988 F.2d at 1491 (noting that the statute that an agency purported to interpret "is silent with respect to rulemaking" authority).  Here, there is no doubt that Congress empowered HUD to interpret and implement the FHA through rulemaking.  *See* 42 U.S.C. § 3614a ("The Secretary may make rules. . . to carry out this title.");  *see also* 78 Fed. Reg. at 11,460 (citing the sources of HUD's rulemaking authority).  HUD considered

---

[18] Although the Texas Supreme Court ultimately determined that a disparate impact challenge to the use of credit-scoring in insurance pricing was inconsistent with its insurance code, *see Ojo v. Farmers Grp. Inc.*, 356 S.W.3d 421, 425 (Tex. 2011), this outcome does not affect the availability of disparate impact claims in other factual settings, for the reasons discussed above. Moreover, the fact that the impairment issue was one of first impression for the Texas Supreme Court, *id.*, and required an extended analysis of the text and legislative history of the state insurance code and the state fair housing laws, *id.* at 424-34, belies Plaintiff's suggestion that such questions can readily be resolved by this Court by reference to a simplified chart of isolated state insurance provisions.

whether McCarran-Ferguson created a wholesale limitation on its authority in this instance and rationally and correctly concluded that it did not. The APA requires no more.

### B. HUD Considered the Industry's Concerns About the Effect of the Rule on Insurers

During the rulemaking, HUD also considered and rejected concerns raised by insurance groups about the effect the Rule might have on the insurance industry. 78 Fed. Reg. at 11,476. Plaintiff nevertheless claims that HUD failed to address the industry's comments, in particular its concern that the Rule would outlaw all "risk segmentation" and require insurers to charge "every customer. . . the same price." Pl.'s Mem. at 29. There can be no doubt that HUD addressed that concern and found it wanting. 78 Fed. Reg. at 11,475. As HUD noted in the Rule, this objection is based on the "incorrect" premise that "that once a discriminatory effect is shown, the policy at issue is *per se* illegal." *Id.* It ignores the fact that a practice is not prohibited, even where it results in a disparate impact, so long as it is supported by a "legally sufficient justification." *Id.* Plaintiff's doomsday prediction that the Rule might cause the insurance industry to "cease to function altogether," Pl.'s Mem. at 29, is infected by this same faulty premise. As HUD explained in the rulemaking, the Rule "distinguishes unnecessary barriers . . . from valid policies and practices crafted to advance legitimate interests." *See* 78 Fed. Reg. at 11,475.

Plaintiff also suggests that even if insurers are not subjected to liability under the Rule for practices based on valid risk-segmentation, they would face "potentially massive costs" defending challenges to those practices, and Plaintiff claims that HUD failed to address that concern in its decisionmaking. Pl.'s Mem. at 29. In fact, HUD considered comments about the potential litigation costs associated with the Rule and concluded: "Given how the discriminatory effects framework has been applied to date by HUD and by the courts, HUD does not believe that the rule will lead to frivolous investigations or create excessive litigation exposure for

respondents or defendants." 78 Fed. Reg. at 11,472; *see also id.* ("[T]he Federal Rules of Civil

Procedure provide various means to dispose of meritless claims, including Rule 11, 12, and

56."). To conclude otherwise would be to suppose that HUD and other parties would challenge

insurance practices solely on the basis of a statistical disparity, regardless of the business

justification for the practice or the ultimate likelihood of prevailing on a claim. Based on HUD's

decades of experience administering the Act, it found this outcome unlikely. *Id.* It is not for the

Court to second-guess that "predictive . . . determination[]." *See Belenke v. SEC*, 606 F.2d 193,

199 (7th Cir. 1979); *see also Rural Cellular Ass'n v. FCC*, 588 F.3d 1095, 1105 (D.C. Cir. 2009)

("The arbitrary and capricious standard is particularly deferential in matters implicating

predictive judgments. . . .").

### C. HUD Considered and Rejected the Proposal to Exempt, or Create Safe Harbors for, the Insurance Industry

HUD also received comments from insurance groups requesting that it exempt the

insurance industry from coverage under the Rule or "establish safe harbors for certain risk

related factors." 78 Fed. Reg. at 11,475. HUD rejected this proposal as "unnecessary," for much

the same reason that it rejected the insurance industry's doomsday predictions about the effect of

the Rule on risk-based underwriting. Because "insurance practices with a legally sufficient

justification will not violate the Act," HUD determined that no special carve-out was necessary

or appropriate. *Id.*; *see also id.* at 11,471 (explaining that the FHA "covers many different types

of entities and practices" and therefore the Rule "does not provide examples of interests that

would always qualify as substantial, legitimate, nondiscriminatory interests for every respondent

or defendant in any context").

HUD also explained that creation of categorial exemptions "beyond those found in the

Act would run contrary to Congressional intent." *Id.* This "reasonable, albeit brief" explanation

fully satisfies HUD's obligation under the APA to address the comments in question. *See Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 175 (2007). Any suggestion that HUD's response was deficient because it was not lengthier, *see* Pl.'s Mem. at 30 (deriding the response as a "cursory two-sentence paragraph"), is without merit. *See Long Island Care,* 551 U.S. at 175 (finding no fault in agency's conclusory explanation that its interpretation was "more consistent" with the statutory language). Notably, the comments from the insurance groups themselves contained only cursory reference to the issue of safe harbors, *see* A.R. 380, and they certainly did not "contain[] any meaningful analysis" that would call for a lengthy response by HUD. *See Thompson v. Clark*, 741 F.2d 401, 409 (D.C. Cir. 1984).

HUD's decision not to create a special exemption for insurance practices is not irrational and thus must be upheld. Congress demonstrated that it knows how to create an exemption to disparate impact liability when it wants to. For example, Congress expressly provided that appraisal decisions, though covered by the FHA, would not be subject to liability for "tak[ing] into consideration factors other than race, color, religion, national origin, sex, handicap, or familial status." 42 U.S.C. § 3605(c). In other words, Congress created an exemption to disparate impact liability for certain appraisal decisions but did not do so for any insurance practices. HUD's decision not to create exemptions "beyond those found in the Act," 78 Fed. Reg. at 11,475, can hardly be deemed irrational.[19] *See Schweiker v. Gray Panthers*, 453 U.S. 34,

_____

[19] Plaintiff notes that the Sixth Circuit in *Graoch* suggested, in dicta, that "categorical bars [to liability under FHA] are justified" in certain circumstances where a practice could not logically or conceivably give rise to disparate impact liability. Pl.'s Mem. at 30 (quoting 508 F.3d at 376); *see also* 508 F.3d at 376 (citing, as an example, "racial steering" because it "necessarily involves disparate treatment"). Of course, the *Graoch* court also noted that nothing in the text of the FHA indicates that Congress intended to permit practice-specific exemptions, and the court declined to create one for a housing provider's withdrawal from assisted housing programs because it was not "impossible" for such a claim to succeed. 508 F.3d at 376. Here, HUD rationally declined to create an exemption for the insurance industry where Congress had declined to create one itself,

50 n.22 (1981) ("Congress itself already had considered the 'relevant factors' . . . [T]he Secretary

need not do more"). Were this explanation not sufficient, HUD also determined, in its

discretion, that such exemption or safe harbors would be unnecessary, in light of the defenses to

liability available under the Rule, 78 Fed. Reg. at 11,475, and in light of its experience

implementing the Act, which demonstrated that a practice with a legally sufficient justification

was unlikely to be subject to litigation in the first place, *id.* at 11,472. Although Plaintiff "may

have preferred that [the agency] deal with the [issue] in a different manner," this disagreement is

not sufficient ground to attack the Rule. *Owner-Operator Indep. Drivers Ass'n v. Fed. Motor

Carrier Safety Admin.*, 494 F.3d 188, 208 (D.C. Cir. 2007).

### D.      HUD Addressed Comments About the Filed Rate Doctrine

Plaintiff's fourth and final procedural attack on the rulemaking is its claim that HUD

failed to address a comment by another insurance group that application of disparate impact

liability to insurance would violate the "filed-rate doctrine." Compl. ¶ 96. The filed-rate

doctrine is a judicially-crafted rule that generally precludes challenges to the reasonableness of

rates charged by public utilities and other regulated entities when those rates are required to be

filed with and approved by a governmental agency. *See Saunders I*, 440 F.3d at 944. The

insurance industry objected that disparate impact liability would "undermine [the] state-based

regulatory regime" associated with insurance rate filing, and noted that courts have addressed the

significance of filed rates "in the context of the McCarran-Ferguson Act." A.R. at 378 (Cmt. of

Nat'l Ass'n of Mut. Ins. Cos.).

HUD acknowledged receiving a comment about the filed rate doctrine, which it

reasonably grouped together with comments about McCarran-Ferguson and addressed as an

---

where no court has previously created such a bar, and where it is hardly "impossible" that an
insurance practice could have a discriminatory impact without any legally sufficient justification.

issue concerning the Rule's alleged interference with state regulation of insurance. *See* 78 Fed. Reg. at 11,474. Indeed, courts that have considered an insurer's defense to an FHA claim under the filed-rate doctrine have treated it as "ancillary to" the McCarran-Ferguson analysis. *Dehoyos*, 345 F.3d at 298 n.5; *see also Saunders I*, 440 F.3d at 944-46 (reversing the district court's determination that "a ruling that rates are unlawfully discriminatory under" the FHA was barred by the filed-rate doctrine and remanding for analysis under the McCarran-Ferguson Act because it "is a question for Congress, so the answer must be found in federal statutes") ; *Lumpkin v. Farmers Grp., Inc.*, No. 05-2868, 2007 WL 6996584, at *7-8 (W.D. Tenn. Apr. 26, 2007); *cf. Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517 (1992) (existence of preemption clause implies absence of additional grounds of preemption).

In rejecting the argument that the Rule would violate McCarran-Ferguson because it would purportedly undermine the state regulatory regime associated with insurance rate filing, HUD necessarily rejected the comment about the filed-rate doctrine, even if it did not separately refer to the doctrine by name in its explanation. HUD was under no obligation to expressly discuss the filed-rate doctrine, when it already rejected the broader and encompassing premise that application of the Rule could not be decided in the abstract, since the outcome would depend, among other things, on the "facts at issue and the language of the relevant State law relating to the business of insurance." 78 Fed. Reg. at 11,475 (internal brackets and quotation marks omitted). As discussed above, not all states even require the filing of homeowner's insurance rates. HUD also noted that because the Rule does not purport to alter the operation of McCarran-Ferguson, it necessarily follows that it "will not interfere with any State regulation of the insurance industry." *Id.* This "clear implicit rejection" of a single reference to the filed rate doctrine among the hundreds of pages of comments received during the rulemaking fully

satisfies HUD's obligations under the APA. *See U.S. Satellite Broad. Co. v. FCC*, 740 F.2d 1177, 1188 (D.C. Cir. 1984) (holding that an agency need not "explicitly discuss[] each and every contention made" on a subject); *see also Bd. of Trade*, 66 F. Supp. 2d at 898-99.

* * * * *

As demonstrated by the foregoing, HUD considered and rejected all four of the objections that Plaintiff contends it failed to address. This is fatal to Plaintiff's procedural attacks on the Rule. But even if there were some technical deficiency in HUD's response to the insurance industry's comments, Plaintiff cannot demonstrate that it was prejudiced by such error. *See* 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error"). The fact that Plaintiff has not claimed – and cannot claim – "ignorance of the actual reasons" for HUD's position, serves as independent reason why the Court should not invalidate the regulation on the ground of inadequate explanation.[20] *See Nat'l Mining Ass'n v. MSHA*, 116 F.3d 520, 534-35 (D.C. Cir. 1997).

## IV. HUD'S BURDEN-SHIFTING FRAMEWORK IS REASONABLE UNDER *CHEVRON*'S DEFERENTIAL STEP TWO

Plaintiff's final challenge, to the Rule's framework for proving a disparate impact claim (Count VI), also fails as a matter of law.[21] Congress has charged HUD with administering the FHA, and HUD has construed the Act to provide for disparate impact liability if proven through

---

[20] Moreover, even if a fuller explanation of HUD's reasoning was required, the appropriate remedy would be to remand the matter to the agency without vacating the Rule, given the necessarily minor nature of any deficiency. *See Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97-98 (D.C. Cir. 2002).

[21] Although Count VII in Plaintiff's Complaint alleges a violation of the APA in "HUD's failure to address whether and how the Disparate Impact Rule can be reconciled with Wards Cove and other law," Compl. ¶ 108, its Memorandum of Law in support of summary judgment never discusses that Count. *See* Pl.'s Mem. at *ii*. Therefore, it is conceded. Moreover, the text of the Rule's preamble, on its face, belies this claim.

a three-part burden-shifting framework. Because the FHA is silent on the proof framework, it was eminently reasonable for HUD to look to existing law under the FHA and Title VII in filling this gap, as the Fifth Circuit just recently concluded. *See Inclusive Cmtys.*, 2014 WL 1257127, at *5-6 (adopting the Rule's burden-shifting approach and observing "[t]hese standards are in accordance with disparate impact principles and precedent").

Although Plaintiff ignores the standard of review applicable to this claim, it is governed by the deferential two-step process established by *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). *See Meyer v. Holley*, 537 U.S. 280, 287-88 (2003) (applying *Chevron* to a HUD regulation interpreting the FHA); *see also* 42 U.S.C. § 3614a (authorizing HUD to issue authoritative interpretations of the FHA). Judicial review under *Chevron* begins with an inquiry into whether "the intent of Congress is clear" as to the "precise question at issue." 467 U.S. at 842. Unless the statutory text has a "clear" and "unambiguous[]" meaning that can be discerned through "employing traditional tools of statutory construction," it is presumed that Congress implicitly or explicitly "left a gap for the agency to fill." *Id.* at 842-43 & n.9. The FHA is unquestionably silent on how a discrimination claim is to be proved. Indeed, Plaintiff cites no statutory text to support its arguments against the Rule's burden-shifting standard. So this claim must be resolved at *Chevron*'s deferential second step. *See id.* at 843.

At this second step, "[i]f the agency's reading fills a gap . . . in a *reasonable way* in light of the Legislature's design, [a court] give[s] that reading controlling weight." *Regions Hosp. v. Shalala*, 522 U.S. 448, 457 (1998) (emphasis added). Indeed, "[i]f the statute is silent or ambiguous on the issue, [the court] will defer at step two to *any* reasonable agency interpretation." *Castro v. Chi. Hous. Auth.*, 360 F.3d 721, 727 (7th Cir. 2004) (emphasis added). This is true "even if [the interpretation] differs from the construction the Court would have given

the statute if the question initially had arisen in a judicial proceeding.'" *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1004 (N.D. Ill. 2010) (St. Eve, J.). Ultimately, "[i]f th[e] [regulation] is a reasonable accommodation of conflicting concerns, [a court] must defer to the agency's approach." *Moothart v. Bowen*, 934 F.2d 114, 117 (7th Cir. 1991) (citing *Chevron*, 467 U.S. at 842-45). Conversely, to prevail at this stage a plaintiff bears the difficult burden of demonstrating that the agency's "construction is 'manifestly contrary to the statute.'" *United States v. Henderson,* 376 F.3d 730, 734 (7th Cir. 2004) (quoting *Chevron*, 467 U.S. at 843-44). Plaintiff's argument – that the only possible burden-shifting framework that HUD could have adopted for FHA claims was that set forth for Title VII claims in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989), but then quickly abrogated by Congress[22] – falls far short of meeting this exacting standard.

The framework adopted in the Rule was an eminently reasonable exercise of HUD's discretion for at least three reasons, all of which independently satisfy *Chevron* Step Two. First, by closely following the FHA burden-shifting frameworks adopted by courts in the years leading up to the Rule's promulgation and by resolving minor variations in those frameworks, HUD's approach "ensure[s] consistency in applying the discriminatory effects standard while creating the least disruption." 78 Fed. Reg. at 11,474. As noted previously, at the time HUD issued its Rule, there was some minor variation in the framework courts employed to adjudicate FHA disparate impact claims and in the assignment of burdens of proof. *See supra* at 7 & nn.2-7. HUD chose to formalize through regulation the majority approach on both the framework and the burden-of-proof issues, by providing for a three-step burden-shifting framework and placing the burden of proof at the third step on the party bringing the claim. *See* 78 Fed. Reg. at 11,480

---

[22] *See* Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071.

("HUD's approach is not a significant departure from HUD's interpretation to date or that of the majority of federal courts."); *see also Inclusive Cmtys.*, 2014 WL 1257127, at *6 (observing that "the most recent [circuit court] decisions have applied a similar three-step burden-shifting approach" to the one adopted by the Rule). Agency interpretations that borrow from prevailing judicial case law generally are reasonable under *Chevron*'s Step Two. *See United States v. Boyle*, 469 U.S. 241, 246 n.4 (1985) (holding that an agency "interpretation merits deference" pursuant to *Chevron* when it "is consistent with Congress' intent, and over 40 years of case law"). Indeed, the approach adopted in the Rule is far more reasonable than the approach that Plaintiff now demands: upending decades of FHA law by adopting features of *Wards Cove* that would have been untested in the housing context and wholly unfamiliar to entities subject to the FHA or benefitting from its protections.

Second, by borrowing from the burden-shifting framework applicable to Title VII disparate impact claims, the Rule accords with the longstanding principle that the FHA should be interpreted in a similar manner to Title VII.[23] The Rule borrowed heavily from the Title VII context in resolving the small inconsistencies and unresolved questions in then-existing case law. *See, e.g.*, 78 Fed. Reg. at 11,469 (declining to amend the Rule's first step because, "as recognized in the employment context under Title VII, the elements of a decision-making process may not be capable of separation for analysis, in which case it may be appropriate to challenge the decision-making process as a whole") (footnote omitted)); *id.* at 11,470-72 (explaining that the language of the Rule's second step "is analogous to the Title VII

---

[23] The Rule's use of Title VII's framework also is reasonable because some entities are simultaneously covered by the FHA and the Equal Credit Opportunity Act, and the legislative history and preexisting regulatory interpretations of that latter act incorporate the Title VII framework. *See* 78 Fed. Reg. at 11,474 (citing 12 C.F.R. § 1002.6(a)).

requirement that an employer's interest in an employment practice with a disparate impact be "job related");[24] *see also Inclusive Cmtys.*, 2014 WL 1257127, at *6 ("[T]he three-step burden-shifting test contained in the HUD regulations is similar to settled precedent concerning Title VII disparate impact claims in employment discrimination cases.").  HUD's use of Title VII's proof standards is consistent with the well-established practice of looking to Title VII in interpreting the FHA.  *See Kyles v. J.K. Guardian Sec. Servs., Inc.*, 222 F.3d 289, 295 (7th Cir. 2000) ("Courts have recognized that Title VIII is the functional equivalent of Title VII, and so the provisions of these two statutes are given like construction and application."  (citations omitted)).

Third, the Rule is a reasonable interpretation of the FHA because it seeks to fairly allocate the burdens of proof among the parties and the showing the parties must make at each stage.  *See* 78 Fed. Reg. at 11,472 (noting the definition of "legally sufficient justification" "fairly balances the interests of all parties"); *id.* at 11,473-74 ("HUD believes that the burden of proof allocation in § 100.500(c) is the fairest and most reasonable approach to resolving the claims. . . . [T]his framework makes the most sense because it does not require either party to prove a negative.").  Although Plaintiff faults HUD for putting too heavy a burden on those defending against disparate impact claims, *see* Pl.'s Mem. at 33-34, HUD received contrary comments that the proposed rule systematically tipped the scale against those *bringing* disparate impact claims.  Specifically, many commenters argued that those defending against FHA disparate impact claims – particularly insurers – should bear the burden of proof at the third

---

[24] Although Plaintiff claims that the Rule's second step is inconsistent with the framework adopted by the Sixth Circuit prior to promulgation of the Rule, *see* Pl.'s Mem. at 34 (citing *Graoch*, 508 F.3d at 374), *Graoch* actually explains that it is importing the second step of the Title VII framework into the FHA, *see* 508 F.3d at 374.

step.[25] And some commenters suggested that the Rule should heighten the standard on the proof necessary to satisfy a defending party's burden.[26] HUD's balancing of these concerns is just the type of agency "accommodation of manifestly competing interests" and "reconciling [of] conflicting policies" that must be afforded deference under *Chevron*. 467 U.S. at 865.

Plaintiff does not dispute that the Rule adopted the majority approach to burden-shifting under the FHA and reconciled then-existing variations on how to prove a disparate impact claim under the FHA. It also does not dispute that the law on the FHA commonly borrows from Title VII practice. Instead, Plaintiff catalogues differences between the Rule's framework and the now-abrogated framework for Title VII claims set forth by the Supreme Court in *Wards Cove*. Plaintiff claims that HUD's rejection of certain aspects of the *Wards Cove* framework was "improper" because the Supreme Court applied *Wards Cove* to a different civil rights law after Congress's rejection of it for Title VII. *See* Pl.'s Mem. at 32-33 (citing *Smith v. City of Jackson*, 544 U.S. 228 (2005)). But neither the Supreme Court nor any circuit court has applied the

---

[25] *See, e.g.*, A.R. 481-483 (Cmt. of Nat'l Fair Hous. Alliance, *et al.*) ("We respectfully suggest that the burden of proof should be assigned to the defendant or respondent to show that there is no less discriminatory alternative. . . . *In litigation involving insurance* or lending – where private companies scrupulously protect proprietary information such as credit scores, actuarial data and risk assessment – there is an even stronger rationale for imposing the burden on the defendant, whose knowledge will be vastly superior to that of a plaintiff and who will uniquely possess information with respect to less discriminatory alternatives." (emphasis added)); A.R. 505-507 (Cmt. of AARP) ("AARP urges HUD to recognize that the defendant in a Fair Housing Act discriminatory effects case appropriately bears the burden to show a less discriminatory alternative is not available. . . . [D]efendants are often in the best position to evaluate and chose [sic] between the alternatives to arrive at a less discriminatory outcome that also meets their competing goals.").

[26] *See, e.g.*, A.R. 410 (Cmt. of Mich. State Univ. Hous. Clinic) (suggesting a defendant should both have to have the burden of proof at the third step and "the burden should be higher than simply demonstrating that the legitimate nondiscriminatory interest supporting the challenged practice can be served by another practice that has a less discriminatory effect"); A.R. 463-464 (Cmt. of Anti-Discrimination Ctr.) (suggesting HUD require that a defending party prove its interest is "compelling").

*Wards Cove* burden-shifting framework to the FHA, even though several circuit courts had engaged in their own analysis of how to prove an FHA disparate impact claim since *Wards Cove* but prior to HUD's 2013 controlling interpretation. *See, e.g.*, *Graoch*, 508 F.3d at 371-74; *Mountain Side*, 56 F.3d at 1251-57; *see also Hispanics United*, 988 F. Supp. at 1156 (analyzing the FHA's requirements for proving a disparate impact claim and noting "*Wards Cove*'s precedential value has been considerably weakened by Congress' statutory overruling in the Civil Rights Act of 1991"). And the one circuit court to have analyzed how to prove an FHA disparate impact claim since the Rule's promulgation chose to "adopt the burden-shifting approach found in 24 C.F.R. § 100.500," recognizing the Rule as a valid exercise of HUD's authority. *Inclusive Cmtys.*, 2014 WL 1257127, at *5. Plaintiff cannot discharge its burden to show that HUD's interpretation of the FHA is unreasonable by pointing to its failure to adopt a legal standard that neither the courts nor HUD has applied to the FHA.[27] *Cf.* A.R. 381 (Cmt. of Nat'l Ass'n of Mut. Ins. Cos.) (criticizing the proposed burden-shifting framework for "replicat[ing] t[he] error" of prevailing case law).

Moreover, even if the *Wards Cove* framework were relevant, Plaintiff's catalogue of differences between it and the Rule's framework includes erroneous entries. Based on a truncated quotation, Plaintiff claims that the Rule provides for disparate impact liability based on insignificant disparities. *See* Pl.'s Mem. at 33. This is incorrect. The Rule explicitly stated that "HUD's decision not to codify a significance requirement for pleading purposes" simply meant it

---

[27] HUD's interpretation would warrant deference even if there had been prior case law applying the *Wards Cove*'s framework to FHA disparate impact claims. Agency interpretations receive deference notwithstanding contrary prior judicial interpretation so long as the statutory text is not unambiguous and the interpretation is reasonable. *See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-86 (2005); *see also Ali v. Mukasey*, 521 F.3d 737, 742-43 (7th Cir. 2008) (holding prior judicial precedents "require reexamination now that the [agency] has fully developed its own position, for administrative discretion belongs to the agency rather than to the court").

refrained from specifying "the showing that would be required to demonstrate a discriminatory effect in each of the[] contexts" the Rule covers, which include "numerous and varied practices and [a] wide variety of private and governmental entities." 78 Fed. Reg. at 11,468. Additionally, Plaintiff's claim that the party bringing a disparate impact claim "could prevail by *merely suggesting* some other less effective factor," Pl.'s Mem. at 35 (emphasis added), has no basis in the Rule, which clearly provides that the party bringing the disparate impact claim prevails at the third prong only "*upon proving* that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect," 24 C.F.R. § 100.500(c)(3) (emphasis added).

Plaintiff's separate argument that a provision of the APA, 5 U.S.C. § 556(d), compelled HUD to assign the burden of proof to the charging party at every step of the three-part framework, *see* Compl. ¶ 102, Pls.' Mem. at 34, fails for several reasons. First, Plaintiff did not raise this issue during the notice-and-comment period, *see* A.R. 553-556, and has therefore waived the opportunity to present it here. "It is well established that issues not raised in comments before the agency are waived." *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 562 (D.C. Cir. 2002); *see also USA Group Loan Servs. v. Riley*, 82 F.3d 708, 713-14 (7th Cir. 1996). This "hard and fast rule of administrative law, [which is] rooted in simple fairness" to the agency, applies equally to legal arguments about statutory interpretation as it does to factual issues. *See Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1298 (D.C. Cir. 2004); *see also NRDC v. EPA*, 25 F.3d 1063, 1074 (D.C. Cir. 1994) ("[R]espect for agencies' proper role in the *Chevron* framework requires that the court . . . ensure that challenges to an agency's interpretation of its governing statute are first raised in the administrative forum."). The fact that commenters raised *other* arguments about why the burden of proof should remain with the charging party at every

-45-

stage does not save Plaintiff's Section 556(d) argument from waiver. *See Koretoff v. Vilsack*, 707 F.3d 394, 398 (D.C. Cir. 2013) ("We require the argument petitioner advances here to be raised before the agency, not merely the same general legal issue." (internal quotation marks and brackets omitted)). Because none of the comments received by HUD – even those discussing the appropriate allocation of burdens – contained any argument about Section 556(d), the agency did not have "a fair opportunity to pass on" it. *See Nat'l Wildlife*, 286 F.3d at 562; *cf. Fairfax Nursing Home, Inc. v. HHS*, 300 F.3d 835, 840 n.4 (7th Cir. 2002) (observing that courts should address a Section 556(d) argument "with great prudence and caution," only "after [the relevant] administrative body has had the opportunity" to address the argument). Accordingly, it cannot be raised here as a basis for invalidating the Rule.

Plaintiff's Section 556(d) argument also fails on its merits. Section 556(d) stipulates that, "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof" in formal administrative adjudications. 5 U.S.C. § 556(d). The Rule is consistent with this standard, as it places both the first and last steps of the burden-shifting framework on the charging party in an administrative adjudication of an FHA disparate impact claim. 24 C.F.R. § 100.500(c)(1) & (3). That the respondent has the burden at the mid-step to prove that its challenged practice "[i]s necessary to achieve one or more substantial, legitimate, nondiscriminatory interests" does not negate the charging party's burden. *Cf. Dir. v. Greenwich Colliers*, 512 U.S. 267, 278 (1994) (noting a burden-shifting framework that "place[s] the burden of persuasion on the [respondent] as to its affirmative defense" complies with Section 556(d) because it "first require[s] the [charging party] to persuade" the administrative law judge that it met its burden). Moreover, Plaintiff cites no case in which a court has employed Section 556(d) – which applies only where not "otherwise provided by statute" – to strike down an agency

regulation that, as an exercise of an agency's delegated rulemaking authority, definitively construes a statute. And Plaintiff's effort to use Section 556(d), which deals only with formal administrative adjudications, to call into question a burden-shifting framework equally applicable to judicial proceedings is without basis.

Finally, there is no merit to Plaintiff's argument that the burden-shifting framework adopted by HUD is contrary to, or unreasonable in light of, McCarran-Ferguson when "applied to insurance." Pl.'s Mem. at 35. As explained in Part II, *supra*, it is simply wrong to suggest that the Rule conflicts with McCarran-Ferguson, when it does nothing to change the operation of that statute. To the extent there might be hypothetical instances in which application of the burden-shifting framework would impair a state's insurance regulations, the Rule does not foreclose recourse to McCarran-Ferguson in those concrete circumstances. *See* 78 Fed. Reg. at 11,475. Plaintiff's allegation that the Rule's framework imposes a special burden on the insurance industry – an allegation that is purely conjectural and inconsistent with the fact that insurers have faced disparate impact liability under a similar framework for years – is simply not a ground for finding McCarran-Ferguson preemption. In truth, Plaintiff's claim of incompatibility between the burden-shifting framework and the interests of the insurance industry amounts to a policy disagreement with HUD's resolution of conflicting interests. As such, it is not a basis for rejecting HUD's reasonable approach. *See Chevron*, 467 U.S. at 866 ("When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy . . . the challenge must fail.").

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment should be denied, and Defendants' Motion to Dismiss and/or for Summary Judgment should be granted.

Dated:  April 4, 2014

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

JOCELYN SAMUELS
Acting Assistant Attorney General

ZACHARY T. FARDON
United States Attorney

DAMON Y. SMITH
Acting General Counsel
MICHELLE ARONOWITZ
Deputy General Counsel for
   Enforcement and Fair Housing
JEANINE M. WORDEN
Associate General Counsel
   for Fair Housing
KATHLEEN M. PENNINGTON
Assistant General Counsel
   for Fair Housing Enforcement
M. CASEY WEISSMAN-VERMEULEN
AYELET R. WEISS
Attorneys
*Of counsel*

RACHEL J. HINES
Assistant Branch Director
Federal Programs Branch

 */s/ Kyle R. Freeny*
KYLE R. FREENY (Cal. Bar No. 247857)
DANIEL P. MOSTELLER (DC Bar No. 980802)
Attorneys
U.S. Department of Justice
20 Massachusetts Ave., N.W.
Washington, DC 20001
Tel: (202) 514-5108/Fax: (202) 616-8470
Email:  Kyle.Freeny@usdoj.gov

*Counsel for Defendants*