**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

_____
                                            )
PROPERTY CASUALTY INSURERS                  )
ASSOCIATION OF AMERICA,                     )
                                            )
                    Plaintiff,              )
                                            )        No. 1:13-cv-08564
           v.                               )
                                            )        Judge Amy J. St. Eve
SHAUN DONOVAN, in his official  capacity as )
Secretary of Housing and Urban Development, )
and the UNITED STATES DEPARTMENT OF         )
OF HOUSING AND URBAN DEVELOPMENT,           )
                                            )
                    Defendants.             )
_____ )

**DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS**

**INTRODUCTION**

Pursuant to Local Rule 56.1, Defendants hereby file this response to Plaintiff's

Statement of Undisputed Material Facts in connection with Defendants' Opposition to

Plaintiff's Motion for Summary Judgment.  At the outset, Defendants note that because

this action is brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C.

§ 551 *et seq.*, the scope of review is confined to the purely legal question of whether the

challenged Rule is "arbitrary [and] capricious" or "otherwise not in accordance with

law," 5 U.S.C. § 706(2).  *See Smith v. Office of Civilian Health & Med. Program of the*

*Uniformed Servs.*, 97 F.3d 950, 954-55 (7th Cir. 1996).  This review is based on the

record before the agency at the time of its decision.[1]  *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985).  A district court "may not undertake a *de novo* review of the agency's decision and its factual underpinnings."  *Stauber v. Shalala*, 895 F. Supp. 1178, 1189-90 (W.D. Wis. 1995).  Accordingly, resolution of Plaintiff's claims "does not require fact finding" by the Court.  *See Nw. Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994); *see also Fla. Power*, 470 U.S. at 744 (noting that the "factfinding capacity of the district court is . . . typically unnecessary to judicial review of agency decisionmaking").  Moreover, to the extent that Plaintiff's proposed "undisputed material facts" are characterizations of the content of the 2011 Proposed Rule or 2013 Final Rule, Defendants respectfully refer the Court to those documents for a full and accurate statement of their contents.

## INDIVIDUAL RESPONSES

Subject to the foregoing, Defendants respond to the individually numbered paragraphs in Plaintiff's Statement of Undisputed Material Facts as follows (retaining Plaintiff's headings).  To the extent that facts are undisputed, they are undisputed for purposes of the parties' summary judgment motions only.

**Plaintiff Property Casualty Insurers Association of America**

1.      Property Casualty Insurers Association of America ("PCI") is an Illinois-based trade association of property and casualty insurers representing more than 1,000 member companies. (*See* Declaration of Robert Gordon ¶ 2; A.R. 553)

---

[1] The Court may consider facts outside the record for the limited purpose of assessing whether Plaintiff has Article III standing in this case.  *See Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 971-72 (7th Cir. 2008).  For the reasons stated in the accompanying Memorandum, Defendants submit that the question of standing can be resolved solely as a matter of law.  Defs.' Mem., Pt. I.A.

**Response:** Undisputed.

2.     PCI's members provide homeowners, property, and hazard insurance

("homeowners insurance"), subject to state insurance regulations, in every state of the

United States.  (*See* Declaration of Robert Gordon ¶ 3)

     **Response:** Undisputed.

3.     PCI's mission is to promote and protect the viability of a competitive private

insurance market for the benefit of consumers and insurers. (See Declaration of Robert

Gordon ¶ 4)

     **Response:** Undisputed.

4.     PCI advocates on behalf of its members on policy issues at the state and federal

levels and provides its members with information relevant to legal and public policy

developments affecting the property and casualty insurance industry. (*See* Declaration of

Robert Gordon ¶ 4)

     **Response:** Undisputed.

**Defendants Department of Housing and Urban Development and Shaun Donovan**

5.     Defendant Department of Housing and Urban Development is an executive

agency of the United States Government, 5 U.S.C. §§ 101, 105, established by the

Department of Housing and Urban Development Act of 1965, 42 U.S.C. § 3531 *et seq.*,

Pub. L. No. 89−117, 79 Stat. 451. (*See* Complaint ¶ 13)

     **Response:** Undisputed.

6.     Defendant Shaun Donovan is the Secretary of the Department of Housing and

Urban Development and is responsible for the Department's promulgation of the

challenged regulations.  (*See* Complaint ¶ 14)

**Response:** Undisputed.

**Venue and Jurisdiction**

7.    Venue is proper in this district under 28 U.S.C. § 1391(e)(1)(C) because Plaintiff

PCI resides in this district and no real property is involved in this action. (*See* Declaration

of Robert Gordon ¶ 2)

> **Response:** Undisputed that Plaintiff PCI resides in this district and that there is
>
> no real property involved in this action. The remainder of this paragraph contains
>
> only legal conclusions rather than assertions of fact.

8.    This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 because PCI brings this action under the Administrative Procedure Act and the

McCarran-Ferguson Act. (*See* Complaint ¶ 15)

> **Response:** This paragraph contains only legal conclusions rather than assertions
>
> of fact.

**HUD's Proposed Rule**

9.    On November 16, 2011, HUD issued a proposed rule entitled "Implementation of

the Fair Housing Act's Discriminatory Effect's Standard." 76 Fed. Reg. 70921 (Nov. 16,

2011) (A.R. 1).

> **Response:** Undisputed.

10.   The proposed rule purported to "confirm" that the Fair Housing Act may be

violated by a housing practice that has a discriminatory effect, regardless of whether the

practice was adopted for a discriminatory purpose. 76 Fed. Reg. at 70924 (A.R. 4).

> **Response:** Undisputed that the Notice of Proposed Rulemaking indicated that the
>
> proposed rule would "confirm that the Fair Housing Act may be violated by a

housing practice that has a discriminatory effect . . . regardless of whether the

practice was adopted for a discriminatory purpose." 76 Fed. Reg. at 70,924.

11.    The proposed rule cited "the provision and pricing of homeowner's insurance" as

an "[e]xample[] of a housing policy or practice that may have a disparate impact on a

class of persons delineated by characteristics protected by the Act." 76 Fed. Reg. at

70924 (A.R. 4).

   **Response:**  Undisputed.

12.    The proposed rule did not discuss the McCarran-Ferguson Act. 76 Fed. Reg. at

70924 (A.R. 4).

   **Response:**  Undisputed, but immaterial.  Although the proposed rule did not

   mention the McCarran-Ferguson Act by name, the NPRM cited to the Ninth

   Circuit's en banc decision in *Ojo v. Farmers Group, Inc.*, 600 F.3d 1205 (9th Cir.

   2010), *see* 76 Fed. Reg. at 70,924, which construed the FHA to "prohibit[] . . .

   discrimination in both the denial and pricing of homeowner's insurance" under a

   disparate impact theory of liability, notwithstanding an insurer's invocation of the

   McCarran-Ferguson Act.  600 F.3d at 1208.

13.    The proposed rule noted that there had been "some variation in the application of

the discriminatory effects standard" among the courts and set forth a three-step burden-

shifting framework for determining whether a challenged practice violates the rule.  76

Fed. Reg. at 70921 (A.R. 1).

   **Response:**  Undisputed that the NPRM noted that there had been "some variation

   in the application of the discriminatory effects standard" among the courts and

that it set forth a *proposed* three-step burden-shifting framework for determining whether a challenged practice violates *the FHA*.  76 Fed. Reg. at 70,921.

**HUD's Final Rule**

14.     On February 15, 2013, HUD issued its final rule, entitled "Implementation of the Fair Housing Act's Discriminatory Effect's Standard" (the "Disparate Impact Rule" or the "Rule"). 78 Fed. Reg. 11,460 (Feb. 15, 2013) (A.R. 612).

**Response:**  Undisputed.

15.     The Rule purported to "formalize[]" HUD's view that the FHA's prohibition on discrimination may be violated by practices that have a discriminatory effect in the absence of a discriminatory intent.  78 Fed. Reg. at 11,460 (A.R. 612).

**Response:**  Undisputed that the preamble to the Rule stated that the Rule "formalized [HUD's] long-held recognition" that the FHA "prohibit[s] practices with an unjustified discriminatory effect, regardless of whether there was an intent to discriminate."  78 Fed. Reg. at 11,460.

16.     In adopting the Rule, HUD purported to apply its disparate impact standard to homeowners insurance.  78 Fed. Reg. at 11,474-11,475 (A.R. 626-627).

**Response:**  Undisputed that the preamble to the Rule stated that the disparate impact standard would continue to apply to insurers.  78 Fed. Reg. at 11,475 ("HUD has long interpreted the Fair Housing Act to prohibit discriminatory practices in connection with homeowner's insurance, and courts have agreed with HUD . . . .").

17.     In adopting the Rule, HUD rejected requests by the insurance industry for an exemption from the Rule or the creation of safe harbors for insurance. 78 Fed. Reg. at 11,474- 11,475 (A.R. 626-627).

    **Response:**  Undisputed.

18.     The Rule provides that "[a] practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap,  familial status, or national origin."  78 Fed. Reg. at 11,482 (A.R. 634) (adding 24 C.F.R. § 100.500(a)).

    **Response:**  Undisputed.

19.     The Rule provides that a challenged "practice [with a discriminatory effect] may still be lawful if supported by a legally sufficient justification." 78 Fed. Reg. at 11,482 (A.R. 634) (adding 24 C.F.R. § 100.500).

    **Response:**  Undisputed.

20.     The Rule sets forth a three-step burden-shifting framework for determining whether the Rule has been violated.  78 Fed. Reg. at 11,482 (A.R. 634) (adding 24 C.F.R. § 100.500(c)(1)-(3)).

    **Response:**  Undisputed that the preamble to the Rule states that the Rule "formally establishes [a] three-part burden-shifting test for determining when a practice with a discriminatory effect violates the Fair Housing Act."  78 Fed. Reg. at 11,460.

**Comments by The Insurance Industry on HUD's Proposed Rule and HUD's Responses**

**21.**     In response to HUD's proposed rule, insurance industry groups submitted detailed

comments to HUD, raising numerous objections. (*See* Comments of the Property

Casualty Insurers Association of America (Jan. 17, 2012) (A.R. 552-556); Comments of

the National Association of Mutual Insurance Companies (Jan. 17, 2012) (A.R. 371-383);

Comments of the American Insurance Association (Jan. 17, 2011) (A.R. 454-459))

>    **Response:**  Undisputed, except as to the characterization of the comments as
>
>    detailed.

**22.**     Comments from the insurance industry explained that the application of disparate

impact liability to homeowners insurance would violate the McCarran-Ferguson Act.

(*See* A.R. 554; A.R. 378-379)

>    **Response:**  Undisputed that insurance groups commented during the rulemaking
>
>    as stated in this paragraph.  The accuracy of these comments is solely a question
>
>    of law, not of fact, and Defendants dispute it.  *See* Defs.' Mem., Part II.

**23.**     In the final Rule, HUD responded by asserting that federal agencies need not

consider whether their regulations comply with the McCarran-Ferguson Act because that

Act is directed at courts, not agencies. 78 Fed. Reg. at 11,475 (A.R. 627).

>    **Response:**  Defendants dispute Plaintiff's characterization of HUD's response.
>
>    HUD explained in the preamble to its Final Rule that "McCarran-Ferguson does
>
>    not preclude HUD from issuing regulations that may apply to insurance policies.
>
>    Rather, McCarran-Ferguson instructs courts on how to construe federal statutes,
>
>    including the Act.  How the Act should be construed in light of McCarran-
>
>    Ferguson depends on the facts at issue and the language of the relevant State law
>
>    'relat[ing] to the business of insurance.'  Because this final rule does not alter the

instruction of McCarran-Ferguson or its application as described in *Ojo v. Farmers Group*, it will not interfere with any State regulation of the insurance industry." 78 Fed. Reg. at 11,475.

24.   Comments from the insurance industry explained that the imposition of disparate impact liability is fundamentally inconsistent with the business of insurance. (A.R. 554; A.R. 376)

   **Response:** Undisputed that insurance groups commented during the rulemaking as stated in this paragraph. The accuracy of any factual assertions in the cited comments is not an issue before the Court, for the reasons set forth in the Introduction. The accuracy of these comments also involves a question of law, not of fact, and Defendants dispute it. *See* Defs.' Mem., Pt. II.

25.   In the final Rule, HUD did not deny this assertion. 78 Fed. Reg. at 11,475 (A.R. 627).

   **Response:** Defendants dispute this characterization of the Rule. HUD rejected, as "misplaced," the assertion by insurance groups that imposition of disparate impact liability is fundamentally inconsistent with the business of insurance and explained its reasoning for doing so. 78 Fed. Reg. at 11,475; *see also* Defs.' Mem., Pt. III.B.

26.   HUD's only response was that under the Rule insurers have an opportunity to defend the business justifications for their policies in litigation or administrative proceedings. 78 Fed. Reg. at 11,475 (A.R. 627).

   **Response:** Defendants dispute Plaintiff's characterization of HUD's response as being so limited. *See, e.g.*, 78 Fed. Reg. at 11,475 ("[E]ven if a policy has a

discriminatory effect, *it may still be legal* if supported by a legally sufficient justification.") (emphasis added); *id.* ("[The Rule] will not interfere with any State regulation of the insurance industry."); *id.* ("HUD has long interpreted the Fair Housing Act to prohibit discriminatory practices in connection with homeowner's insurance, and courts have agreed with HUD."); *id.* (finding "misplaced" the argument by insurers that the Rule would require them to charge all individuals the same rate); *see also* Defs.' Mem., Pt. III.B.

27.     Comments from the insurance industry explained that the foundation of the business of insurance, and in particular underwriting and rate-making, is classifying insurance applicants and policyholders by risk.  (A.R. 376; A.R. 554)

    **Response:**  Undisputed that insurance groups commented during the rulemaking as stated in this paragraph.  The accuracy of any factual assertions in the cited comments is not an issue before the Court, for the reasons set forth in the Introduction.

28.     In the final Rule, HUD did not deny this assertion.  78 Fed. Reg. at 11,475 (A.R. 627).

    **Response:**   Undisputed, but immaterial.  *See* 78 Fed. Reg. at 11,475 (explaining why this assertion was not an appropriate basis for exempting insurers from coverage under the Rule); *see also* Defs.' Mem., Pt. III.B.

29.     HUD's only response was that under the Rule insurers have an opportunity to defend the business justifications for their policies in litigation or administrative proceedings.  78 Fed. Reg. at 11,475 (A.R. 627).

**Response:** Defendants dispute Plaintiff's characterization of HUD's response as being limited to its discussion of an insurer's opportunity to defend against liability in litigation or administrative proceedings. *See, e.g.*, 78 Fed. Reg. at 11,475 ("[E]ven if a policy has a discriminatory effect, *it may still be legal* if supported by a legally sufficient justification.") (emphasis added); *id.* ("[The Rule] will not interfere with any State regulation of the insurance industry."); *id.* ("HUD has long interpreted the Fair Housing Act to prohibit discriminatory practices in connection with homeowner's insurance, and courts have agreed with HUD."); *id.* (finding "misplaced" the argument by insurers that the Rule would require them to charge all individuals the same rate); *see also* Defs.' Mem., Pt. III.B.

30.     Comments from the insurance industry explained that insurers use actuarially justified risk factors to group policyholders for the purpose of treating those with similar risk profiles similarly.  (A.R. 376)

**Response:** Undisputed that an insurance group commented during the rulemaking as stated in this paragraph.  The accuracy of any factual assertions in the cited comment is not an issue before the Court, for the reasons set forth in the Introduction.

31.     In the final Rule, HUD did not deny this assertion.  78 Fed. Reg. at 11,475 (A.R. 627).

**Response:** Undisputed, but immaterial.  *See* 78 Fed. Reg. at 11,475 (explaining why this assertion was not an appropriate basis for exempting insurers from coverage under the Rule); *see also* Defs.' Mem., Pt. III.B.

**32.**   HUD's only response was that under the Rule insurers have an opportunity to defend the business justifications for their policies in litigation or administrative proceedings. 78 Fed. Reg. at 11,475 (A.R. 627).

>   **Response:**   Defendants dispute Plaintiff's characterization that HUD's response was limited to discussing an insurer's opportunity to defend against liability in litigation or administrative proceedings.  *See, e.g.*, 78 Fed. Reg. at 11,475 ("[E]ven if a policy has a discriminatory effect, *it may still be legal* if supported by a legally sufficient justification.") (emphasis added); *id.* ("[The Rule] will not interfere with any State regulation of the insurance industry."); *id.* ("HUD has long interpreted the Fair Housing Act to prohibit discriminatory practices in connection with homeowner's insurance, and courts have agreed with HUD."); *id.* (finding "misplaced" the argument by insurers that the Rule would require them to charge all individuals the same rate); *id.* at 11,471 (explaining that the FHA "covers many different types of entities and practices" and therefore the Rule "does not provide examples of interests that would always qualify as substantial, legitimate, nondiscriminatory interests for every respondent or defendant in any context").  *See* Def's Mem., Part III.B.

**33.**   Comments from the insurance industry explained that race or other protected class characteristics are not part of the risk assessment process.  (A.R. 376)

>   **Response:**   Undisputed that an insurance group commented during the rulemaking as stated.  The accuracy of any factual assertions in the cited comment is not an issue before the Court, for the reasons stated in the Introduction.  In addition, whether consideration of race or other protected class characteristic must

be intentional to be "part of the . . . process" is solely a question of law, not of

fact, and Defendants dispute it.  *See* 78 Fed. Reg. at 11,482 (defining

discrimination to include a practice's unjustified discriminatory effect because of

race or other protected class characteristic).

34.    In the final Rule, HUD did not deny this assertion. 78 Fed. Reg. at 11,475 (A.R.

627).

**Response:**  Defendants dispute this characterization of HUD's response.  HUD

determined that discrimination was not limited to instances of intentional

consideration of protected characteristics but also included practices with an

unjustified discriminatory effect.  78 Fed. Reg. at 11,482.

35.    HUD's only response was that under the Rule insurers have an opportunity to

defend the business justifications for their policies in litigation or administrative

proceedings.  78 Fed. Reg. at 11,475 (A.R. 627).

**Response:**  Defendants dispute Plaintiff's characterization that HUD's response

was limited to discussing an insurer's opportunity to defend against liability in

litigation or administrative proceedings.  *See, e.g.*, 78 Fed. Reg. at 11,475

("[E]ven if a policy has a discriminatory effect, *it may still be legal* if supported

by a legally sufficient justification.") (emphasis added); *id.* ("[The Rule] will not

interfere with any State regulation of the insurance industry."); *id.* ("HUD has

long interpreted the Fair Housing Act to prohibit discriminatory practices in

connection with homeowner's insurance, and courts have agreed with HUD.") *id.*

(finding "misplaced" the argument by insurers that the Rule would require them

to charge all individuals the same rate); *see also* Defs.' Mem., Pt. III.B.

**36.** Comments from the insurance industry explained that, to eliminate statistical disparities among different demographic groups, many if not most risk-based variables would have to be eliminated from the underwriting process, and insurers would have to charge everyone the same rate regardless of risk. (A.R. 377)

> **Response:** Undisputed that an insurance group commented during the rulemaking as stated in this paragraph. The accuracy of any factual assertions in the cited comment is not an issue before the Court, for the reasons stated in the Introduction.

**37.** In the final Rule, HUD did not deny this assertion. 78 Fed. Reg. at 11,475 (A.R. 627).

> **Response:** Defendants dispute that HUD did not deny insurance groups' assertion that the Rule would require insurers to charge everyone the same rate regardless of risk. *See id.* (rejecting assertion as "misplaced"); *see id.* 11,475 (noting that the mere existence of statistical disparities does not demonstrate a *per se* violation of the FHA).

**38.** HUD's only response was that under the Rule insurers have an opportunity to defend the business justifications for their policies in litigation or administrative proceedings. 78 Fed. Reg. at 11,475 (A.R. 627).

> **Response:** Defendants dispute Plaintiff's characterization that HUD's response was limited to discussing an insurer's opportunity to defend against liability in litigation or administrative proceedings. *See, e.g.*, 78 Fed. Reg. at 11,475 ("[E]ven if a policy has a discriminatory effect, *it may still be legal* if supported by a legally sufficient justification.") (emphasis added); *id.* ("[The Rule] will not

-14-

interfere with any State regulation of the insurance industry."); *id.* ("HUD has long interpreted the Fair Housing Act to prohibit discriminatory practices in connection with homeowner's insurance, and courts have agreed with HUD."); *id.* (finding "misplaced" the argument by insurers that the Rule would require them to charge all individuals the same rate); s*ee also* Defs.' Mem., Pt. III.B.

**39.** Comments from the insurance industry explained that eliminating risk-based pricing would have significant negative consequences including "adverse selection." (A.R. 378)

> **Response:** Undisputed that an insurance group commented during the rulemaking as stated in this paragraph. The accuracy of any factual assertions in the cited comment is not an issue before the Court, for the reasons set forth in the Introduction.

**40.** In the final Rule, HUD did not deny this assertion. 78 Fed. Reg. at 11,475 (A.R. 627).

> **Response:** Defendants dispute this characterization of HUD's response. *See* 78 Fed. Reg. at 11,475 (rejecting assertion that the Rule would require insurers to eliminate risk-based pricing and finding concerns about the Rule's effect on insurers to be "misplaced").

**41.** HUD's only response was that under the Rule insurers have an opportunity to defend the business justifications for their policies in litigation or administrative proceedings. 78 Fed. Reg. at 11,475 (A.R. 627).

> **Response:** Defendants dispute Plaintiff's characterization of HUD's response as being so limited. *See, e.g.*, 78 Fed. Reg. at 11,475 (A.R. 627) ("[E]ven if a policy

-15-

has a discriminatory effect, *it may still be legal* if supported by a legally sufficient justification.") (emphasis added); *id.* ("[The Rule] will not interfere with any State regulation of the insurance industry."); *id.* ("HUD has long interpreted the Fair Housing Act to prohibit discriminatory practices in connection with homeowner's insurance, and courts have agreed with HUD."); (finding "misplaced" the argument by insurers that the Rule would require them to charge all individuals the same rate); *see also* Defs.' Mem., Pt. III.B.

42. In the final Rule, HUD did not confirm that the legitimate use of actuarial risk factors is a legitimate business interest. 78 Fed. Reg. at 11,475 (A.R. 627).

> **Response:** Undisputed, but immaterial. The purpose of the rulemaking was not to decide whether any particular practice would be supported by a legitimate business justification, but to set up a legal framework for making that determination. *See* 78 Reg. Reg. at 11,471 ("[T]he Fair Housing Act covers many different types of entities and practices, and a determination of what qualifies as a substantial, legitimate, nondiscriminatory interest for a given entity is fact-specific and must be determined on a case-by-case basis. Accordingly, the Final Rule does not provide examples of interests that would always qualify as substantial, legitimate, nondiscriminatory interests for every respondent or defendant in any context.").

43. Comments from the insurance industry explained that application of the proposed rule to homeowners insurance would violate the "filed rate" doctrine. (A.R. 378)

> **Response:** Undisputed that an insurance group mentioned the "filed rate" doctrine as part of a larger assertion that the proposed rule would impair state

regulation of insurance. *See* A.R. 378. Defendants dispute Plaintiff's

characterization of the comment as arguing that the Rule would "violate" the filed

rate doctrine. *See id.* The accuracy of this comment is solely a question of law,

not of fact, and Defendants dispute it. *See* Defs.' Mem., Pt. III.D.

44. In the final Rule, HUD acknowledged this comment, but did not respond to it. 78

Fed. Reg. at 11,474 (A.R. 626).

> **Response:** Defendants dispute this characterization of HUD's response. *See* 78
>
> Fed. Reg. at 11,475 (discussing receipt of comment and rejecting it because the
>
> Rule "will not interfere with any State regulation of the insurance industry"); *see*
>
> also Defs.' Mem., Pt. III.D.

45. Comments from the insurance industry requested that, in light of the inherent

conflict between disparate impact liability and risk-based insurance practices, HUD

exempt insurance underwriting and pricing from the Disparate Impact Rule. (A.R. 555;

A.R. 380)

> **Response:** Undisputed that insurance groups commented during the rulemaking
>
> as stated in this paragraph. The accuracy of any factual assertions in the cited
>
> comments is not an issue before the Court, for the reasons set forth in the
>
> Introduction. The accuracy of these comments also involves a question of law,
>
> not of fact, and Defendants dispute it. *See* Defs.' Mem., Pt. II.

46. Comments from the insurance industry requested, in the alternative, that HUD

provide regulatory safe harbors for "long-recognized risk-related factors, such as use of

prior insurance claims, age and condition of property, and distance from fire station."

(A.R. 380)

**Response:** Undisputed that an insurance group commented as stated in this paragraph. The accuracy of any factual assertions in the cited comment is not an issue before the Court, for the reasons set forth in the Introduction.

47. In the final Rule, HUD refused to grant an exemption for homeowners insurance. 78 Fed. Reg. at 11,475 (A.R. 627).

**Response:** Undisputed.

48. In the final Rule, HUD refused to create a safe harbor for the use of any risk factors. 78 Fed. Reg. at 11,475 (A.R. 627).

**Response:** Undisputed.

49. In response to insurance associations' requests for an exemption for insurance or safe harbors for certain risk factors, HUD stated that "[c]reating exemptions or safe harbors related to insurance is unnecessary because, as discussed above, insurance practices with a legally sufficient justification will not violate the Act." 78 Fed. Reg. at 11,475 (A.R. 627).

**Response:** Undisputed.

50. HUD also asserted that "creating exemptions beyond those found in the Act would run contrary to Congressional intent." 78 Fed. Reg. at 11,475 (A.R. 627).

**Response:** Undisputed.

51. Comments from the insurance industry explained that the failure to provide safe harbor protection for the use of factors historically allowed by state insurance regulators would subject insurers to baseless litigation and threaten the sound actuarial standards underpinning the insurance market. (A.R. 380)

**Response:** Undisputed that an insurance group commented, in cursory fashion, as stated in this Paragraph. The accuracy of any factual assertions in the cited comment is not an issue before the Court, for the reasons set forth in the Introduction. The accuracy of this comment also involves a question of law, not of fact, and Defendants dispute it. *See* Defs.' Mem., Pt. II.

52. In the final Rule, HUD did not deny this assertion. 78 Fed. Reg. at 11,475 (A.R. 627).

**Response:** Defendants dispute this characterization of HUD's response. *See, e.g.,* 78 Fed. Reg. at 11,475 (rejecting assertion that the Rule would require insurers to eliminate risk-based pricing and finding concerns about the Rule's effect on insurers to be "misplaced"); *id.* at 11,472 (rejecting prediction that Rule would "subject the respondent or defendant to unnecessary and possibly frivolous investigations and litigation").

53. Comments from the insurance industry explained that HUD's proposed three-step burden-shifting approach for resolving disparate impact claims conflicted with the Supreme Court's decision in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989). (A.R. 381-382; A.R. 458)

**Response:** Undisputed that insurance groups commented as stated in this paragraph. The accuracy of these comments is solely a question of law, not of fact, and Defendants dispute it. *See* Defs.' Mem., Pt. IV.

54. In the final rule, HUD asserted that *Wards Cove* does not govern FHA claims. 78 Fed. Reg. at 11,473 (A.R. 625).

**Response:** Undisputed.

**55.**     Comments from the insurance industry explained that the framework improperly failed to require a plaintiff to challenge a "specific" practice and failed to require a plaintiff to show a "significant" disparate impact.  (A.R. 381-382)

> **Response:**  Undisputed that an insurance group commented as stated in this paragraph.  The accuracy of these comments is a question of law, not of fact, and Defendants dispute it.  *See* Pls.' Mem., Pt. IV.

**56.**     In the final rule, HUD rejected a requirement that a plaintiff challenge a "specific" practice and rejected a "significance requirement" for disparate impact liability.  78 Fed. Reg. at 11,468-11,469 (A.R. 620-621).

> **Response:**  Undisputed that HUD concluded that "the elements of a decision-making process may not be capable of separation for analysis, in which case it may be appropriate to challenge the decision-making process as a whole," as is "recognized in the employment context under Title VII."  78 Fed. Reg. at 11,467. Also undisputed that HUD decided "not to codify a significance requirement for pleading purposes," *i.e.*, explaining that, "[g]iven the numerous and varied practices and wide variety of private and governmental entities covered by the Act, it would be impossible to specify in the rule the showing that would be required to demonstrate a discriminatory effect in each of these contexts."  *Id.* at 11,468.

**57.**     Comments from the insurance industry explained that the framework improperly required the defendant to show that the challenged practice has "a necessary and manifest relationship" to one or more "legitimate, nondiscriminatory interest[s]," instead of adopting a "legitimate goal" standard. (A.R. 382)

**Response:** Undisputed that an insurance group commented as stated in this paragraph. The accuracy of the comment is a question of law, not of fact, and Defendants dispute it. *See* Defs.' Mem., Pt. IV.

58.    In the final rule, HUD rejected commenters' suggestions to remove the "necessary" requirement from the burden-shifting regime. 78 Fed. Reg. at 11,471 (A.R. 623).

**Response:** Undisputed.

59.    Comments from the insurance industry explained that the framework improperly shifted the burden of persuasion to the defendant. (A.R. 458; A.R. 382)

**Response:** Undisputed that insurance groups commented as stated in this paragraph. The accuracy of these comments is a question of law, not of fact, and Defendants dispute it. *See* Defs.' Mem., Pt. IV.

60.    In the final rule, HUD rejected suggestions that it keep the burden of proof on plaintiffs throughout the process of establishing a disparate impact claim. 78 Fed. Reg. at 11,473- 74 (A.R. 625-626).

**Response:** Undisputed that the party subject to the claim of discrimination bears the burden of proof at the second step of the Rule's burden-shifting framework. 24 C.F.R. § 100.500(c)(2).

61.    Comments from the insurance industry explained that the framework improperly failed to require the plaintiff to prove that a proposed alternative practice would be "equally as effective" as the challenged practice. (A.R. 381-82)

**Response:** Undisputed that an insurance group commented as stated in this paragraph. The accuracy of this comment is a question of law, not of fact, and Defendants dispute it. *See* Defs.' Mem., Pt. IV.

62. In the final rule, HUD rejected a requirement that an alternative "practice that has a less discriminatory effect" be "equally effective" at serving the defendant's substantial, legitimate, nondiscriminatory interest. 78 Fed. Reg. at 11,473 (A.R. 625).

**Response**: Undisputed that HUD rejected the "equally effective" language of *Wards Cove* and used language stating that the alternative practice must serve the same "substantial, legitimate, nondiscriminatory interests" proven at the second step of the Rule's burden-shifting framework.

63. HUD's only explanation was that housing practices covered by the Act are "not readily quantifiable." 78 Fed. Reg. at 11,473 (A.R. 625).

**Response:** Defendants dispute Plaintiff's characterization of HUD's response as being limited to the quoted explanation. *See, e.g.*, 78 Fed. Reg. at 11,473 (noting that the adopted "language already states that the less discriminatory alternative must serve the respondent's or defendant's interests, and the current language is consistent with the Joint Policy Statement, with Congress's codification of the disparate impact standard in the employment context, and with judicial interpretations of the Fair Housing Act").

64. Comments from the insurance industry explained that insurers do not collect data on race and ethnicity and, therefore, that insurers are unable to assess whether facially neutral risk-related underwriting and rating factors have a disparate impact on protected classes. (A.R. 383)

**Response:** Undisputed that an insurance group commented, as part of its

objection to HUD's proposed burden-shifting framework, that "insurers do not

collect data on race and ethnicity," and this would make "burden of proof

issues . . . particularly difficult for insurers." A.R. 383. The accuracy of any

factual assertions in the cited comment is not an issue before the Court, for the

reasons set forth in the Introduction.

**65.** In the final Rule, HUD did not deny this assertion. 78 Fed. Reg. at 11,475 (A.R.

627).

**Response:** Defendants dispute this characterization of HUD's response. HUD

rejected the argument that the framework is more difficult for insurers, because

the "*charging party or plaintiff* must initially show the discriminatory effect of the

challenged practice using appropriate evidence that demonstrates the effect." 78

Fed. Reg. at 11,475 (emphasis added).

**Harm to PCI and Its Members[2]**

**66.** PCI and its insurer members are injured by the Disparate Impact Rule. (*See* A.R.

552-556; A.R. 371-383; A.R. 454-459; Declaration of Robert Gordon ¶¶ 6-7).

**Response:** Injury-in-fact and traceability – essential elements of Article III

standing – are conclusions of law rather than assertions of fact. Defendants

---

[2] Based on Plaintiff's organization of its Statement of Undisputed Fact, Defendants
assume that the paragraphs in this section are asserted solely in support of Plaintiff's
argument for standing based on the harm to its members from the Rule, and not as facts
in support of its legal position on the merits of its claims. As discussed in the
Introduction, any assertion of fact in support of Plaintiff's position on the merits would
be inappropriate, because the Court's task in resolving Plaintiff's APA claims is not to
determine the factual accuracy of any public comments submitted during the rulemaking,
but only to determine whether HUD addressed those comments in a reasoned way. *Bd. of
Trade v. CFTC*, 66 F. Supp. 2d 891, 896 (N.D. Ill. 1999). This is solely a legal issue. *Id.*

dispute that PCI and its members have demonstrated a legally-sufficient injury-in-fact traceable to the Rule. *See* Defs.' Mem., Pt. I.A.

**67.** The Rule directly regulates homeowner's insurers, including PCI's member companies. *See* 78 Fed. Reg. at 11,474-11,475 (A.R. 626-627); (A.R. 553 ("The issue the rule presents for insurers is whether non-racially motivated and sound actuarial underwriting principles recognized by state insurance regulators that permit accurate risk-based pricing for consumers can be prohibited by federal regulators who find them to have a 'disparate impact' and whether such HUD actions would violate a federal statute reserving the power to regulate insurance to the states.")); (A.R. 554 ("HUD's reference to insurance in the preamble of the proposed rule suggests that it may use its disparate impact rule to become a federal regulator of insurance underwriting practices despite McCarran-Ferguson's explicit reservation of insurance regulatory powers to the states.")); (A.R. 455 (The proposed rule "would seek to add regulation or enforcement at the federal level.")); (A.R. 373).

> **Response:** Undisputed that PCI's member companies are subject to the terms of the Rule, but assertions of harm made by insurers in comments submitted during the rulemaking are not evidence of injury at the summary judgment stage. *See Am. Chemistry Council v. Dep't of Trans.*, 468 F.3d 810, 819-20 (D.C. Cir. 2006). Moreover, Defendants dispute, as a matter of law, the assertion by insurers that the Rule created new liability to which they were not already subject. *See* 78 Fed. Reg. at 11,461 ("HUD has long interpreted the Fair Housing Act to prohibit discriminatory practices in connection with homeowner's insurance, and courts have agreed with HUD.").

**68.** The ability to consider actuarially justified risk factors is critical to the business of insurance. (*See* A.R. 554 (Insurers "need … to distinguish between different types and degrees of risk. Indeed, risk discrimination is the foundation of insurance underwriting …."); A.R. 376 ("The foundation of the business of insurance, and in particular underwriting and rate-making, is classifying insurance applicants and policyholders by risk. Insurers make decisions based on actuarial and business principles that group policyholders for the purposes of treating those with similar risk profiles similarly."); A.R. 376 ("To actuarially determine rates that most accurately measure loss potential, insurers identify relationships between factors and risk of loss and allocate costs accordingly. This practice is the very essence of risk-based pricing."))

> **Response:** Assertions of harm made by insurers in comments submitted during the rulemaking are not evidence of injury at the summary judgment stage. *See Am. Chemistry Council*, 468 F.3d at 819-20.

**69.** If the Rule remains in effect, insurers' ability to consider actuarially justified risk factors in underwriting and rating insurance will be impaired. (A.R. 377 ("To achieve a condition in which no statistical disparities exist in the average rate paid by different demographic groups, many if not most risk-based variables would have to be eliminated from the underwriting process. In other words, to avoid creating a disparate impact, an insurer would have to charge everyone the same rate, regardless of risk."))

> **Response:** Assertions of harm made by insurers in comments submitted during the rulemaking are not evidence of injury at the summary judgment stage. *See Am. Chemistry Council*, 468 F.3d at 819-20. Moreover, Defendants dispute that the Rule would interfere with insurers' ability to consider actuarially justified risk

factors.  *See, e.g.*, 78 Fed. Reg. at 11,475 (rejecting, as "misplaced," the assertion that the Rule would require insurers to eliminate risk-based pricing); *id.* ("[E]ven if a policy has a discriminatory effect, it may still be legal if supported by a legally sufficient justification."); *id.* ("HUD has long interpreted the Fair Housing Act to prohibit discriminatory practices in connection with homeowner's insurance, and courts have agreed with HUD.").

70.    The Rule would thus prevent accurate risk assessment, result in adverse selection, and reduce insurance coverage, all of which would injure homeowner's insurers.  (A.R. 378 ("If the standard of disparate impact prevails over the historical standard that mandates unfairly discriminatory rates, accurate risk assessment will be threatened, adverse selection will increase, and coverage availability will suffer."))

> **Response:**  Assertions of harm made by insurers in comments submitted during the rulemaking are not evidence of injury at the summary judgment stage.  *See Am. Chemistry Council*, 468 F.3d at 819-20.  Moreover, Defendants dispute, as a matter of law, that the Rule would interfere with insurers' ability to consider actuarially justified risk factors.  *See* 78 Fed. Reg. at 11,475 (rejecting, as "misplaced," the assertion that the Rule would require insurers to eliminate risk-based pricing); *id.* ("[E]ven if a policy has a discriminatory effect, it may still be legal if supported by a legally sufficient justification."); *id.* ("HUD has long interpreted the Fair Housing Act to prohibit discriminatory practices in connection with homeowner's insurance, and courts have agreed with HUD."); *see also* Defs.' Mem., Pt. II.

71.     To attempt to comply with the Rule, insurance companies would be required to incur expense collecting demographic data that they do not currently obtain from their customers and analyzing that data to determine whether their use of facially neutral underwriting and rating factors have a disparate impact.  (A.R. 383 ("Unlike banks, real estate settlement practices or rental real estate practices, insurers do not collect data on race and ethnicity. Without collecting such data indicative of protected class, insurers could not assess whether its facially neutral risk- related underwriting and rating factors have a disparate impact or discriminatory effect on protected classes."))

> **Response:**  Assertions of harm made by insurers in comments submitted during the rulemaking are not evidence of injury at the summary judgment stage.  *See Am. Chemistry Council*, 468 F.3d at 819-20.  Moreover, Defendants dispute, as a matter of law, that any injury Plaintiff's members may suffer is traceable to the Rule, which confirmed the existing judicial and administrative interpretation of the FHA.  *See* 78 Fed. Reg. at 11,474 ("HUD has long recognized, as have the courts, that the Act supports an effects theory of liability."); *id.* at 11,479 ("[F]or the minority of entities that have, in the over 40 years of the Fair Housing Act's existence, failed to institutionalize methods to avoid engaging in illegal housing discrimination and plan to come into compliance as a result of this rulemaking, the costs will simply be the costs of compliance with a preexisting statute, administrative practice, and case law.").

72.     The Rule would impose significant new burdens on insurers required to justify their practices in litigation under the burden-shifting framework adopted in the Rule. (*See* A.R. 382-383; A.R. 458)

> **Response:** Assertions of harm made by insurers in comments submitted during the rulemaking are not evidence of injury at the summary judgment stage. *See Am. Chemistry Council*, 468 F.3d at 819-20. Moreover, Defendants dispute, as a matter of law, that the Rule imposes new burdens on insurers. *See* 78 Fed. Reg. at 11,474 ("HUD has long recognized, as have the courts, that the Act supports an effects theory of liability."); *id.* at 11,479 ("[F]or the minority of entities that have, in the over 40 years of the Fair Housing Act's existence, failed to institutionalize methods to avoid engaging in illegal housing discrimination and plan to come into compliance as a result of this rulemaking, the costs will simply be the costs of compliance with a preexisting statute, administrative practice, and case law.").

**73.** PCI and its member companies have expended substantial resources analyzing the Rule and potential compliance with the Rule. If the Rule is not set aside, PCI and its member companies will continue to expend substantial resources analyzing these issues. (*See* Declaration of Robert Gordon ¶ 7)

> **Response:** Undisputed that PCI and its members may have expended substantial resources analyzing the Rule and potential compliance with the disparate impact liability standard embodied in the Rule. Defendants dispute that this conclusory assertion suffices, as a matter of law, to demonstrate Article III standing. Defs.' Mem., Pt. I. Defendants also dispute, as a matter of law, that this expense is attributable to the Rule, because it has "long been the position of HUD, confirmed by federal courts, that practices with discriminatory effects may violate the Fair Housing Act." 78 Fed. Reg. at 11,481; *see also id.* at 11,479 ("[F]or the minority

of entities that have, in the over 40 years of the Fair Housing Act's existence,

failed to institutionalize methods to avoid engaging in illegal housing

discrimination and plan to come into compliance as a result of this rulemaking,

the costs will simply be the costs of compliance with a preexisting statute,

administrative practice, and case law.").

Dated: April 4, 2014                                Respectfully submitted,

                                                    STUART F. DELERY
                                                    Assistant Attorney General

                                                    JOCELYN SAMUELS
                                                    Acting Assistant Attorney General

                                                    ZACHARY T. FARDON
                                                    United States Attorney
DAMON Y. SMITH                                       RACHEL J. HINES
Acting General Counsel                              Assistant Branch Director
MICHELLE ARONOWITZ                                  Federal Programs Branch
Deputy General Counsel for
   Enforcement and Fair Housing                       /s/ Kyle R. Freeny
JEANINE M. WORDEN                                   KYLE R. FREENY (Cal. Bar No. 247857)
Associate General Counsel                           DANIEL P. MOSTELLER (DC Bar No. 980802)
   for Fair Housing                                 Attorneys
KATHLEEN M. PENNINGTON                              U.S. Department of Justice
Assistant General Counsel                           20 Massachusetts Ave., N.W.
   for Fair Housing Enforcement                     Washington, DC 20001
M. CASEY WEISSMAN-VERMEULEN                          Tel: (202) 514-5108/Fax: (202) 616-8470
AYELET R. WEISS                                     Email:  Kyle.Freeny@usdoj.gov
Attorneys
*Of counsel*                                        *Counsel for Defendants*