UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, ) ) ) ) Plaintiff, ) ) No. 1:13-cv-08564 v. ) ) Judge Amy J. St. Eve SHAUN DONOVAN, in his official capacity as ) Secretary of Housing and Urban Development, ) and the UNITED STATES DEPARTMENT OF ) OF HOUSING AND URBAN DEVELOPMENT, ) ) Defendants. ) ) | |

### DEFENDANTS' 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 56.1, Defendants hereby submit this Statement of Undisputed Material Facts in connection with Defendants' Motion for Summary Judgment. At the outset, Defendants note that because this action is brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, the scope of review is confined to the purely legal question of whether the challenged Rule is "arbitrary [and] capricious" or "otherwise not in accordance with law," 5 U.S.C. § 706(2). *See Smith v. Office of Civilian Health & Med. Program of the Uniformed Servs.*, 97 F.3d 950, 954-55 (7th Cir. 1996). This review is based on the record before the agency at the time of its

decision.[1] *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). A district court "may not undertake a *de novo* review of the agency's decision and its factual underpinnings." *Stauber v. Shalala*, 895 F. Supp. 1178, 1189-90 (W.D. Wis. 1995). Accordingly, resolution of Plaintiff's claims "does not require fact finding" by the Court. *See Nw. Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994); *see also Fla. Power*, 470 U.S. at 744 (noting that the "factfinding capacity of the district court is . . . typically unnecessary to judicial review of agency decisionmaking").

Subject to the foregoing, Defendants submit the following undisputed material facts:

**Defendants**

1. Defendant Department of Housing and Urban Development ("HUD") is the federal executive agency responsible for administering and interpreting the Fair Housing Act, Pub. L. No. 90-284, 82 Stat. 81 (1968) (codified as amended at 42 U.S.C. §§ 3601-3619). *See* 42 U.S.C. § 3614a; *see also* 78 Fed. Reg. 11,460, 11,460 (Feb. 15, 2013).

2. Defendant Shaun Donovan is the Secretary of Housing and Urban Development and is sued in his official capacity. *See* Compl. ¶ 14.

**The Recognition of Disparate Impact Liability Prior to the Challenged Rule**[2]

---

[1] The Court may consider facts outside the record for the limited purpose of assessing whether Plaintiff has Article III standing in this case. *See Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 971-72 (7th Cir. 2008). For the reasons stated in the accompanying Memorandum, Defendants submit that the question of standing can be resolved solely as a matter of law. Defs.' Mem., Pt. I.A.

[2] Assertions in this section are relevant to the jurisdictional question of whether any harm Plaintiff's members allegedly suffer as a result of the availability of disparate impact liability under the FHA is traceable to the 2013 Rule.

3. In 1980, in a letter entered into the congressional record, the Secretary of HUD expressed HUD's view that disparate impact liability under the FHA is "imperative to the success of civil rights law enforcement." 126 Cong. Rec. 31,167 (1980) (A.R. 743).

4. HUD's formal adjudications as well as its published guidance, internal guidance, and litigating positions have repeatedly recognized the discriminatory effects theory of liability under the FHA. *See* 78 Fed. Reg. at 11,461-62 & nn.18-27 (cataloguing examples of HUD's longstanding interpretation); *see also* A.R. 1,007-13; 1,114-40; 1,141-70; 1,171-90; 1,191-249; 1,250-68; 1,269-77; 1,305-25; 1,406-52.

5. In 1994, HUD's Assistant Secretary for Fair Housing and Equal Opportunity, in testimony to Congress, expressed HUD's view about the applicability of disparate impact liability to insurance: "[insurance company] practices that are neutral on their face [and] have a disproportionate racial impact . . . may violate the [Act] where they cannot meet the established test of business necessity and the showing that there is no less discriminatory alternative." Homeowners Insurance Discrimination: Hearing Before the S. Comm. on Banking, Hous., and Urban Affairs, 103d Cong. 50 (1994) (stmt. of Roberta Achtenberg, Ass't Sec'y for Fair Hous. & Equal Opportunity).

6. The United States has also pursued FHA disparate impact claims against the insurance industry in federal court. *See, e.g.*, Paragraph 12 of Complaint in United States v. Nationwide Mut. Ins. Co., No. 97-291 (S.D. Ohio Mar. 10, 1997) (available at http://www.justice.gov/crt/about/hce/documents/nationcomp.php).

7. In 1996, two insurance groups (that also submitted comments in the rulemaking at issue in this case) filed an amicus brief in the Supreme Court that acknowledged that insurers then faced the possibility of being held liable for disparate impact discrimination:

> [P]roperty insurers will be forced to fend off FHA disparate impact challenges to underwriting and rating standards and rules sanctioned by state insurance regulators. HUD has actively advocated a disparate impact standard for FHA claims generally, and has issued a regulation providing that the FHA applies to property insurance. . . . [T]he federal circuits . . . have held that, at least in some circumstances, a claim under the FHA can be established by proof of disparate impact alone. These facts have already precipitated and will inevitably continue to precipitate disparate impact challenges to property insurers' underwriting and rating standards. . . . HUD has received and is investigating complaints against [insurers] which include claims of disparate impact, and has given every indication of its intention to employ a disparate impact theory in enforcing the FHA against insurers.

Brief for Nat'l Ass'n of Mut. Ins. Cos. & Am. Ins. Ass'n as Amici Curiae in Support of the Petition, *Nationwide Mut. Ins. Co. v. Cisneros*, 516 U.S. 1140 (1996) (No. 95-714), 1996 WL 33467765, at *14-15 & n.11.

**The Rulemaking**

8. On November 16, 2011, HUD issued a Notice of Proposed Rulemaking ("NPRM"), in which HUD proposed to "add[] a new subpart . . . to its Fair Housing Act regulations . . . [to] confirm that the Fair Housing Act may be violated by a housing practice that has a discriminatory effect." 76 Fed. Reg. 70,921, 70,924 (Nov. 16, 2011).

9. In that same NPRM, HUD proposed "establish[ing] a uniform standard of liability for facially neutral housing practices that have a discriminatory effect" to resolve "minor variation in how HUD and the courts have applied th[e] theory." 76 Fed. Reg. at 70,923

10. HUD proposed adopting an approach whereby "liability is determined by a burden-shifting approach" modeled after the well-established frameworks applicable to disparate impact claims brought under other antidiscrimination laws such as Title VII. 76 Fed. Reg. at 70,923.

11.    HUD issued its Final Rule on February 15, 2013, which made several changes to the wording of its proposed rule in response to comments suggesting a need for greater clarity, but it retained the basic substance of the proposal. 78 Fed. Reg. 11,460.

12.    In the preamble to that Rule, HUD announced that it was "formaliz[ing] its longstanding view that discriminatory effects liability is available under the Act and establishes uniform standards for determining when a practice with a discriminatory effect violates the Fair Housing Act." 78 Fed. Reg. at 11,463.

13.    HUD noted that its construction of the FHA to encompass disparate impact was consistent with the interpretation adopted by eleven courts of appeals. 78 Fed. Reg. at 11,476.

14.    In the preamble to the Rule, HUD observed that "for the minority of entities that have, in the over 40 years of the Fair Housing Act's existence, failed to institutionalize methods to avoid engaging in illegal housing discrimination and plan to come into compliance as a result of this rulemaking, the costs [of the Rule] will simply be the costs of compliance with a preexisting statute, administrative practice and case law." 78 Fed. Reg. at 11,479.

15.    HUD adopted a three-part burden-shifting framework where: (1) the party bringing the claim of discrimination first bears the burden of proof to show that a practice actually or predictably results in a discriminatory effect; (2) if the first step is satisfied, the defendant or respondent has the burden of proving that the practice is "necessary to achieve one or more [of its] substantial, legitimate, nondiscriminatory interests"; and (3) if the second step is satisfied, the party bringing the claim may still prevail upon proving

that the asserted interest "could be served by another practice that has a less discriminatory effect." 78 Fed. Reg. at 11,482 (quoting 24 C.F.R. § 100.500(b)-(c)).

16. HUD noted that the Rule's framework was "not a significant departure from HUD's interpretation to date or that of the majority of federal courts." 78 Fed. Reg. at 11,480.

17. HUD concluded that the three-part burden shifting framework adopted in the Rule was "the fairest and most reasonable approach to resolving" discriminatory effects claims under the FHA. 78 Fed. Reg. at 11,473-74.

**Comments Submitted During the Rulemaking**

18. During the comment period, HUD received nearly 100 public comments in response to its proposed rule (many of which had multiple signatories) from entities representing a wide variety of interests, including individuals, fair housing and legal aid organizations, state and local fair housing agencies, state Attorneys General, state housing finance agencies, public housing agencies, mortgage lenders, credit unions, banks, real estate agents, and law firms. A.R. 9-610.

19. Three trade associations representing the homeowner's insurance industry, including Plaintiff, also submitted comments. A.R. 372-83 (Cmt. of Nat'l Ass'n of Mut. Ins. Cos.); 455-59 (Cmt. of Am. Ins. Ass'n); 553-56 (Cmt. of Prop. Cas. Insurers Ass'n of Am.).

20. Six state Attorneys General submitted a joint comment during the rulemaking that strongly "commend[ed]" the Rule at issue, calling the availability of disparate impact claims "squarely aligned with the interest of our states" and noting that the Rule would

complement the states' own "extensive efforts" to address the lingering "barriers to equal housing opportunities." A.R. at 560-61.

21. HUD received comments that contended that the proposed burden-shifting framework was too favorable to the party bringing the claim and other comments that contended that it was too favorable to the party subject to the claim. *Compare, e.g.*, A.R. at 381-83 (Cmt. of Nat'l Ass'n of Mut. Ins. Cos.) (arguing that framework places too heavy a burden on defendants), *with, e.g.*, A.R. 481-483 (Cmt. of Nat'l Fair Hous. Alliance, et al.) ("We respectfully suggest that the burden of proof should be assigned to the defendant or respondent to show that there is no less discriminatory alternative. . . . In litigation involving insurance or lending – where private companies scrupulously protect proprietary information such as credit scores, actuarial data and risk assessment – there is an even stronger rationale for imposing the burden on the defendant, whose knowledge will be vastly superior to that of a plaintiff and who will uniquely possess information with respect to less discriminatory alternatives." ).

**HUD's Responses to Comments**

22. HUD grouped the comments it received into 42 different issues and responded to each of those 42 issues in turn. See 78 Fed. Reg. at 11,465-79.

23. HUD acknowledged and rejected comments from insurance groups based on the McCarran-Ferguson Act and the "filed-rate" doctrine because, "[b]y formalizing the discriminatory effects standard, the rule will not, as one commenter suggested, undermine the states' regulation of insurance." 78 Fed. Reg. at 11,475 (internal quotation marks omitted).

24. HUD noted that "McCarran-Ferguson does not preclude HUD from issuing regulations that may apply to insurance policies," and that the Rule does "not alter the instruction of McCarran- Ferguson or its application," which "depends on the facts at issue and the language of the relevant State law relating to the business of insurance." 78 Fed. Reg. at 11,475 (internal quotation marks and brackets omitted).

25. HUD acknowledged and rejected comments from insurance groups about the purported effect the Rule would have on the insurance industry, indicating that it found the concerns raised by the insurance groups to be "misplaced." 78 Fed. Reg. at 11,475.

26. HUD noted that comments from the insurance industry about the effect of the Rule were based on an "incorrect" assumption "that once a discriminatory effect is shown, the policy or practice at issue is *per se* illegal." 78 Fed. Reg. at 11,475. HUD explained that the Rule distinguishes "unnecessary barriers proscribed by the [Act] from valid policies and practices crafted to advance legitimate interests," such that "even if a policy has a discriminatory effect, it may still be legal if supported by a legally sufficient justification." *Id.*

27. HUD acknowledged and rejected comments from insurance groups that requested that the insurance industry be exempted from the Rule, or that safe harbors be created for certain insurance practices. 78 Fed. Reg. at 11,475.

28. HUD explained that it found the creation of special exemptions for the insurance industry to be "unnecessary" and that "creating exemptions beyond those found in the Act would run contrary to Congressional intent." 78 Fed. Reg. at 11,475.

29. In responding to comments that argued that the Rule would lead to increased litigation burdens for entities subject to the FHA, HUD explained that it "does not believe

that the rule will lead to frivolous investigations or create excessive litigation exposure for respondents or defendants." 78 Fed. Reg. at 11,472. HUD based this conclusion in part on "how the discriminatory effects framework has been applied to date by HUD and by the courts." *Id.*

30. HUD acknowledged and rejected comments that it should alter the burdens of proof in the proposed burden-shifting standard, concluding that its chosen framework "is the fairest and most reasonable approach . . . because it does not require either party to prove a negative . . . [and] will ensure consistency in applying the discriminatory effects standard while creating the least disruption because . . . ." 78 Fed. Reg. at 11,473-74.

31. HUD acknowledged and rejected comments that it should adopt a burden-shifting framework identical to the one set forth in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989). HUD explained that the burden-shifting standard in *Wards Cove*, which was adopted by the Supreme Court for use in Title VII claims but quickly abrogated by Congress, does not and should not govern FHA claims, "in light of the wider range and variety of practices covered by the Act that are not readily quantifiable." 78 Fed. Reg. at 11,472-73. HUD further explained that its choice "is consistent with … Congress's codification of the disparate impact standard in the employment context." Fed. Reg. at 11473.

32. HUD acknowledged and rejected comments that it should remove the word "necessary" from the definition of a "legally sufficient justification." HUD explained that it rejected this suggestion because "HUD's substantial experience in administering the Fair Housing Act confirms that requiring a challenged practice with a discriminatory effect to be necessary best effectuates the broad, remedial goal of the Act" and "is also

consistent with Congress's 1991 enactment of legislation codifying that, in the employment context, a practice that has a disparate impact must be consistent with 'business necessity' and must also be 'job related.'" 78 Fed. Reg. at 11,472 (citing 42 U.S.C. § 2000e-2(k)(1)(A).

Dated:  April 4, 2014                    Respectfully submitted,

                                         STUART F. DELERY
                                         Assistant Attorney General

                                         JOCELYN SAMUELS
                                         Acting Assistant Attorney General

                                         ZACHARY T. FARDON
                                         United States Attorney
DAMON Y. SMITH                           RACHEL J. HINES
Acting General Counsel                   Assistant Branch Director
MICHELLE ARONOWITZ                       Federal Programs Branch
Deputy General Counsel for
  Enforcement and Fair Housing            /s/ Kyle R. Freeny
JEANINE M. WORDEN                        KYLE R. FREENY (Cal. Bar No. 247857)
Associate General Counsel                DANIEL P. MOSTELLER (DC Bar No. 980802)
  for Fair Housing                       Attorneys
KATHLEEN M. PENNINGTON                   U.S. Department of Justice
Assistant General Counsel                20 Massachusetts Ave., N.W.
  for Fair Housing Enforcement           Washington, DC 20001
M. CASEY WEISSMAN-VERMEULEN              Tel: (202) 514-5108/Fax: (202) 616-8470
AYELET R. WEISS                          Email:  Kyle.Freeny@usdoj.gov
Attorneys
*Of counsel*                             *Counsel for Defendants*