**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, ) ) ) ) | |
| Plaintiff, ) | Case No. 1:13-cv-08564 |
| v. ) ) | Judge Amy J. St. Eve |
| SHAUN DONOVAN, in his official capacity as ) Secretary of Housing and Urban Development, ) and UNITED STATES DEPARTMENT OF ) HOUSING AND URBAN DEVELOPMENT, ) ) | Magistrate Judge Susan E. Cox |
| Defendants. ) ) | |

**APPENDIX: INTERESTS OF *AMICI***

The **American Civil Liberties Union ("ACLU")** is a nationwide, nonpartisan organization with more than 500,000 members dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil rights laws.  Since its founding in 1920, the ACLU has litigated numerous cases aimed at ending segregation and racial discrimination in all its forms, and it has appeared frequently as *amicus curiae* in cases implicating these issues.  Of particular relevance to this case, the ACLU advocates for people who have historically been denied their civil rights to housing on the basis of race and membership in other protected classes.  *See, e.g.*, *Park View Heights Corp. v. City of Black Jack*, 605 F.2d 1033, 1035 (8th Cir. 1979), *cert. denied*, 445 U.S. 905 (1980) (plaintiffs' counsel in Fair Housing Act challenge to zoning ordinance that blocked construction of integrated housing development); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) (plaintiffs' counsel in Fair Housing Act challenge to redlining in homeowner's insurance business); *Adkins v. Morgan Stanley*, No. 12-CV-7667 (S.D.N.Y. filed Oct. 15, 2012) (plaintiffs' counsel in Fair Housing Act challenge to discrimination in mortgage securitization).  The **American Civil Liberties Union of Illinois** is the Illinois affiliate of the national ACLU, and it has long supported the racial justice and fair housing agenda of the national organization.

The **Chicago Area Fair Housing Alliance ("CAFHA")** is a non-profit membership association of organizations, governmental bodies, and individuals concerned with combating housing discrimination and promoting integrated communities.  Through research, education, and advocacy, CAFHA seeks to further fair housing rights and equal opportunity in housing; develop strategies to promote long-term diversity in neighborhoods and communities; and combat discrimination and harassment. Several CAFHA member organizations have litigated cases raising disparate impact claims.

The **Chicago Lawyers' Committee for Civil Rights Under Law, Inc. ("CLCCRUL")** is the public interest law consortium of Chicago's leading law firms. CLCCRUL provides free legal services to people with civil rights problems and nonprofit organizations that need help with transactional issues. Its mission is to protect and promote civil rights by bringing the strength and prestige of the private bar to bear on the problems of poverty and discrimination. The goal of CLCCRUL's Fair Housing Project is to eliminate housing discrimination based on race, national origin, familial status, physical and mental disability, sexual orientation, source of income, religion, gender, and other bases, and to affirmatively further fair housing in the Chicago metropolitan area. The project carries out this mission through education, policy advocacy, investigations, and enforcement of the Fair Housing Act, 42 U.S.C. §§ 3601-3631, (FHA). CLCCRUL has litigated numerous discrimination cases under the FHA and other federal civil rights statutes, many of which have raised disparate impact claims.

**LatinoJustice PRLDEF**, which was founded in 1972 as the Puerto Rican Legal Defense and Education Fund, champions an equitable society. Using the power of the law together with advocacy and education, LatinoJustice seeks to protect opportunities for all Latinos to succeed in school and work, fulfill their dreams, and sustain their families and communities. For over 40 years, LatinoJustice has advocated for and defended the constitutional rights and the equal protection of all Latinos under the law, and has litigated numerous cases challenging multiple forms of discrimination including fair housing, employment, education, language rights, redistricting, and voting rights. LatinoJustice has successfully challenged discriminatory housing practices preserving the right of Latino immigrants to secure housing in their communities.

The **Lawyers' Committee for Civil Rights Under Law ("LCCRUL")** is a nonpartisan, non-profit organization that was formed in 1963 at the request of President John F. Kennedy to involve the private bar in providing legal services to address racial discrimination. The principal mission of LCCRUL is to secure, through the rule of law, equal justice under law, including working

with communities across the nation to combat and remediate discriminatory housing practices. LCCRUL's major objective is to use the skills and resources of the bar to obtain equal opportunity for minorities by addressing factors that contribute to racial justice and economic opportunity. Given our nation's history of racial discrimination, *de jure* segregation, and the *de facto* inequities that persist, LCCRUL's primary focus is to represent the interests of African Americans in particular, other racial and ethnic minorities, and other victims of discrimination, where doing so can help to secure justice for all racial and ethnic minorities. LCCRUL and its affiliates have litigated numerous fair housing claims pursuant to the FHA, many of which have raised disparate impact claims.

Founded in 1909, the **National Association for the Advancement of Colored People ("NAACP")** is the nation's oldest, largest and most recognized civil rights organization. The mission of the NAACP is to ensure the political, educational, social and economic equality of rights for all persons, and to eliminate racial hatred and racial discrimination. NAACP Washington Bureau Director, Clarence Mitchell, Jr., was a major force behind passage of Title VIII and the NAACP has long advocated for fair housing through policy and litigation. *See, e.g.*, *NAACP v. Ameriquest, et al.*, 635 F. Supp. 2d 1096 (C.D. California 2009); *NAACP v. Town of Huntington*; 844 F.2d 926 (2nd Cir.1988); *NAACP, Boston Chapter v. Sec. of HUD*, 817 F.2d 149 (1st Cir. 1987). The **NAACP Milwaukee Branch** has a particularly strong history of combatting discrimination in homeowner's insurance, having spent over a decade litigating the seminal case *NAACP v. American Family Mutual Insurance*, 978 F.2d 287 (7th Cir. 1992).

The **NAACP Legal Defense and Educational Fund, Inc. ("LDF")** is a non-profit legal organization that, for more than seven decades, has helped African Americans secure their civil and constitutional rights. Throughout its history, LDF has challenged public and private policies and practices that deny African Americans housing opportunities and isolate African-American communities. *See, e.g.*, *McGhee v. Sipes*, 334 U.S. 1 (1948) (companion case to *Shelley v. Kraemer*, 334 U.S. 1 (1948)); *Cent. Ala. Fair Hous. Ctr. v. Lowder Realty Co.*, 236 F.3d 629 (11th Cir. 2000)

(racial steering); *Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994) (racial discrimination in public housing and assistance programs); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) (redlining in homeowner's insurance business); *Kennedy Park Homes Ass'n v. City of Lackawanna*, 436 F.2d 108 (2d Cir. 1970) (exclusionary zoning); *Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, No. 95-309, 2006 WL 581260 (D. Md. Jan. 10, 2006) (federal government's obligation to affirmatively further fair housing); Consent Decree, *Byrd v. First Real Estate Corp. of Ala.*, No. 95-CV-3087 (N.D. Ala. May 14, 1989) (racial steering); *Price v. Gadsen Corp.*, No. 93-CV-1784 (N.D. Ala. filed Aug. 30, 1993) (unfair lending practices); *Brown v. Artery Org., Inc.*, 654 F. Supp. 1106 (D.D.C. 1987) (redevelopment plans that unfairly eliminate affordable housing); *see also* LDF et al., *The Future of Fair Housing: Report on the National Commission of Fair Housing and Equal Opportunity* (Dec. 2008). LDF has also long played an instrumental role in advancing the doctrine of disparate impact discrimination. *See, e.g.*, *Lewis v. City of Chicago*, 560 U.S. 205 (2010); *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971).

The **National Community Reinvestment Coalition ("NCRC")** is a nonprofit public interest organization founded in 1990. NCRC, both directly and through its network of six hundred community-based member organizations, works to increase access to basic banking services, including credit and savings, and to create and sustain affordable housing, job development and vibrant communities for America's working families. NCRC, through its National Neighbors civil rights program, seeks to advance fair lending and open housing practices nationwide and actively assists in efforts to affirmatively further fair housing and eliminate discrimination that is detrimental to the economic growth of low to moderate income and traditionally underserved communities.

The **National Consumer Law Center ("NCLC")** is a national research and advocacy organization focusing on justice in consumer financial transactions, especially for low income and elderly consumers. Since its founding as a nonprofit corporation in 1969, NCLC has been a resource center addressing numerous consumer finance issues affecting equal access to fair credit in the

marketplace. NCLC publishes a 20-volume Consumer Credit and Sales Legal Practice Series, including Credit Discrimination, Sixth Ed., and has served on the Federal Reserve System Consumer-Industry Advisory Committee and committees of the National Conference of Commissioners on Uniform State Laws. NCLC has also acted as the Federal Trade Commission's designated consumer representative in promulgating important consumer protection regulations.

The **National Fair Housing Alliance ("NFHA")** is a consortium of approximately 97 private, non-profit, fair housing organizations, state and local civil rights groups, and individuals. In conjunction with its members, NFHA strives to eliminate housing discrimination and ensure equal housing opportunities for all people through leadership, education and outreach, membership services, public policy initiatives, advocacy, and enforcement. As part of its enforcement activities, NFHA assists its members and participates in federal and state court litigation brought under the FHA and state and local fair housing laws. In addition to bringing its own claims, NFHA monitors federal cases brought under the FHA and files amicus briefs in cases in which it has an interest. Identifying and eliminating discrimination in the availability and marketing of homeowner's insurance has been one of NFHA's highest priorities for almost two decades. NFHA has dedicated significant resources to the study of the homeowner's insurance market, and has received grants and contracts with the U.S. Department of Housing and Urban Development (HUD) to investigate homeowner's insurers. NFHA has also been a complainant or a plaintiff in many cases involving racial discrimination in the availability and marketing of homeowner's insurance. For example, NFHA was the plaintiff in *National Fair Housing Alliance et al. v. Prudential Insurance Company*, 208 F. Supp. 2d 46 (D.D.C. 2002), and in *National Fair Housing Alliance et al. v. Travelers Insurance Company*, Case No. 1:00-cv-1506 (D.D.C. filed June 26, 2000). NFHA was the lead complainant in *National Fair Housing Alliance v. State Farm Insurance Companies*, Case No. 05-94-1351-8 (HUD), and *National Fair Housing Alliance v. Allstate Insurance Company*, Case No. 03-94-0529-8 (HUD). NFHA has filed amicus briefs in several insurance discrimination cases, including

5

*United Farm Bureau Mutual Insurance Company v. Metropolitan Human Relations Comm'n.*, 24 F.3d 1008 (7th Cir. 1994), and *Ojo v. Farmers Group, Inc.*, 600 F.3d 1205, 1208 (9th Cir. 2010).

The **National Housing Law Project ("NHLP")** is a private, non-profit, national housing and legal advocacy center established in 1968. NHLP's mission is to advance housing justice for poor people by increasing and preserving the supply of decent, affordable housing; improving existing housing conditions, including physical conditions and management practices; expanding and enforcing low-income tenants' and homeowners' rights; and increasing housing opportunities for racial and ethnic minorities. Through policy advocacy and litigation, NHLP has been responsible for many critically important changes to federal housing policy and programs that have resulted in increased housing opportunities and improved housing conditions for poor people. NHLP has worked with thousands of advocates, attorneys, and agencies throughout the country on cases involving tenants and homeowners. For decades, NHLP has been involved in efforts to promote fair housing opportunity for all.

The case at bar has critical implications for the efficacy of the U.S. Department of Housing and Urban Development's disparate impact regulation, which encapsulates decades of Fair Housing Act jurisprudence. Disparate impact analysis has long-provided an essential tool for identifying and ending patterns, practices, and polices that have a disproportionately negative impact on protected groups. Without this important tool, it will be extremely difficult, if not impossible, to address pervasive and covert housing discrimination.

The **Poverty & Race Research Action Council ("PRRAC")** is a civil rights policy organization based in Washington, D.C., committed to bringing the insights of social science research to the fields of civil rights and poverty law. PRRAC's housing work focuses on the government's role in creating and perpetuating patterns of racial and economic segregation, the long term consequences of segregation for low income families of color in the areas of health,

education, employment, and economic mobility, and the government policies that are necessary to remedy these disparities.

The **Sherman Park Community Association ("SPCA")**, established in 1971, is Milwaukee's longest running membership based neighborhood organization. SPCA's purpose is to identify and publicize the advantages of living in Sherman Park; educate the Milwaukee community of these advantages; improve communications within and outside the community concerning schools, housing, public safety, business and other community needs and concerns; to explore and further promote innovative projects that will initiate actions furthering integrated urban living. SPCA's history includes fighting illegal practices including block busting, racial steering and red lining.