IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-08564 |
| v. | ) ) ) | Judge Amy J. St. Eve |
| SHAUN DONOVAN, in his official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

### DECLARATION OF MICHAEL DAWDY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

I, Michael Dawdy, declare as follows:

1. I am over eighteen years of age and am not suffering under any legal or physical disability.

2. I submit this declaration in support of Plaintiffs' Motion for Summary Judgment and in Opposition to Defendants' Motion To Dismiss and/or for Summary Judgment. I am testifying to the statements below based on my personal knowledge.

3. I am an Assistant Vice President working for State Auto Insurance Companies ("State Auto") in Columbus, Ohio. I am the Product Manager for personal lines insurance in multiple regions of the United States for State Auto, representing approximately $410,000,000 in personal lines written premium for calendar year 2013. The lines of insurance which I manage include homeowners insurance. I work closely with our underwriting and staff organizations, so

I have personal knowledge of our underwriting practices with respect to homeowners insurance. I also work closely with credentialed actuaries, so I have personal knowledge of the risk-based pricing systems State Auto uses in pricing homeowners insurance.

4. State Auto is a group of affiliated corporations that include state-licensed property and casualty insurance companies authorized to write homeowners insurance. State Auto is a member of the Property Casualty Insurers Association of America. I estimate that State Auto presently provides homeowners insurance to approximately 325,000 households located in 28 states in the United States. Those states are: Alabama, Arizona, Arkansas, Colorado, Connecticut, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Michigan, Minnesota, Mississippi, Missouri, North Carolina, North Dakota, Ohio, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, West Virginia, and Wisconsin.

5. Generally speaking, homeowners insurance is a multi-line product that includes coverage for (A) the policyholder's dwelling against a broad range of perils, including but not limited to fire and wind, (B) other non-business structures at the same location against similar perils, (C) the policyholder's personal property against theft, fire, wind and certain other perils, and (D) certain of the policyholder's additional living expenses if the use of the dwelling is lost due to an insured peril. In addition, a homeowners insurance policy provides coverage for certain personal liability of the policyholder to third parties.

6. State Auto, like many insurers, provides homeowners insurance coverage on certain industry-standardized forms that were developed by the Insurance Services Office, Inc., commonly known as ISO, a state-law authorized and licensed insurance advisory

organization. These standardized ISO forms, which generally are approved by state insurance regulators, facilitate the collection of statistical data that is used for risk-based pricing. In addition to, or in lieu of, the basic homeowners coverages described above, State Auto has developed a variety of its own customized forms and endorsements. We file such forms and endorsements with state insurance regulators in all states in which we operate, except in Colorado, where a summary disclosure is filed.

7. In addition to the forms and endorsements described above, State Auto also has developed its own rating plans and supporting underwriting guidelines for homeowners insurance. Generally, these rating manuals or plans are filed with and subject to the approval of state insurance regulators.

8. State Auto develops its own risk-based rates and rating factors for homeowners insurance ("Homeowners Rates") pursuant to its state-approved rating plans described above. These Homeowners Rates have developed over the years through the application of actuarial principles designed to estimate as accurately as possible the average cost of providing the particular form of homeowners insurance issued to the policyholder, focused on determining the risk of the covered losses actually being incurred. State Auto develops Homeowners Rates based upon actuarially accepted practices.

9. State Auto's Homeowners Rates, and any changes in such Rates, are filed with state insurance regulators along with supporting information as needed, and the submitted filing is subject to state regulatory approval/acknowledgement as a condition of the continued use of such Homeowners Rates. In many states, Homeowners Rates must be approved by the insurance regulators before they can be used. In other states, like Illinois, State Auto can use Homeowners Rates filed with the state insurance regulator without first

3

obtaining explicit approval, but those rates are still subject to review by the state insurance regulator. State Auto also files its underwriting guidelines in approximately ten of the 28 states in which it writes homeowners insurance. State Auto is also subject to the state insurance commissioners' examination to determine, among other things, whether State Auto is writing homeowners insurance in conformity with its filed Homeowners Rates, rating plans and underwriting rules and guidelines.

10. On November 16, 2011 the Department of Housing and Urban Development published its proposed rule on Implementation of the Fair Housing Act's Discriminatory Effects Standard. HUD issued its final rule on February 15, 2013, providing that the Fair Housing Act, 42 U.S.C. 3604 ("FHA") prohibits "disparate impact" discrimination (the "Disparate-Impact Rule"). The final rule became effective on March 18, 2013.

11. State Auto does not collect data indicating the race, color, ethnicity, religion, national origin, or disability of its policyholders and therefore does not use such data in developing rates for or underwriting homeowners insurance. State Auto writes homeowners insurance in Maryland. Maryland law prohibits the collection of data about race, creed, color and national origin in connection with homeowners insurance. Md. Code Ins., § 27-501(c)(1). None of the foregoing factors are identified as risk-related factors in any of the State Auto homeowner insurance rating plan manuals. State Auto does not consider any of the foregoing factors, nor does it consider sex or familial status, in its rating or underwriting of homeowners insurance.

12. State Auto conforms with state laws in the states in which it operates concerning the rating of homeowners insurance, and collects and maintains statistical data, actuarial analyses, and other information sufficient to justify and support its rates under the

4

applicable state insurance rating laws. State Auto does not believe it is required, as a matter of state law, to actively determine whether its filed and approved Homeowners Rates, as developed pursuant to its filed and state-approved rating plans, have a disparate impact on any particular class of persons as defined in the FHA.

13. The Disparate-Impact Rule thus makes State Auto subject to different and conflicting obligations under state and federal law in terms of what State Auto must do to legally use its Homeowners Rates without the threat of liability.

14. State Auto has considered the cost of collecting the data it would need to determine its ability to defend itself under the Disparate-Impact Rule and has concluded that collecting such data would present additional expense to State Auto. It would require revision to State Auto's business practices and systems, which could only be done at an additional material expense. Further, collection of data necessary to assess compliance with the Disparate-Impact Rule would inconvenience the policyholder.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 15, 2014.

_____
Michael Dawdy

## **CERTIFICATE OF SERVICE**

I hereby certify that, on May 16, 2014, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

    s/ Brian M. Boynton
Brian M. Boynton
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: seth.waxman@wilmerhale.com