IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURER'S ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:13-cv-08564 |
| v. | ) ) | Judge Amy J. St. Eve |
| | ) ) | Magistrate Judge Susan E. Cox |
| SHAUN DONOVAN, in his official capacity as Secretary of the Housing and Urban Development And UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF RONALD JOSEPH ZALESKI, SR. IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**

I, Ronald Joseph Zaleski, Sr., declare as follows:

1.      I am over eighteen years of age and am not suffering under any legal or physical

disability.

2.      I submit this declaration in support of Plaintiff's Motion for Summary Judgment

and in opposition to Defendants' Motion to Dismiss and/or for Summary Judgment.  I am

testifying to the statements below based on my personal knowledge.

3.      I am Executive Vice President and Chief Actuary of Selective Insurance

Company of America ("Selective").  I have held the Chief Actuary position since 1999, when I

joined Selective.  I first started working as an actuary in the insurance industry in 1976 and have

previously served as the Chief Actuary at both TIG Insurance Company and Zurich Personal

Insurance. I am a Fellow of the Casualty Actuarial Society and a Member of the American Academy of Actuaries.

4.     Selective is an insurance company organized and existing under the laws of the state of New Jersey and is a member of the Property Casualty Insurers Association of America.

5.     Selective is licensed to write property casualty insurance, including homeowners insurance, in forty jurisdictions across the United States, including in Arkansas, the District of Columbia, Illinois, Indiana, Iowa, Maryland, Minnesota, Missouri, Nebraska, North Dakota, South Dakota and Wisconsin.

6.     As the Chief Actuary at Selective, I am responsible for developing Selective's rating and pricing plans for all risks, including homeowners. As part of my job, I assess the statistical data used in Selective's risk-based modeling and ensure that Selective's rating plans meet the various state legal and regulatory requirements and are approved by the appropriate state regulators.

7.     Like many insurance companies, Selective calculates its rates in part based on historic data and loss information compiled by Insurance Services Offices ("ISO"). ISO is recognized by the industry as a leading source for information about property casualty risks and the factors relevant to the rating and pricing of insurance coverage.

8.     Pursuant to a limited antitrust exemption for insurance under the McCarran-Ferguson Act, Selective and other insurers are able to confidentially and anonymously coordinate data collection and share information relevant to pricing trends and policy development through ISO, which, in turn, shares aggregated data and actuarial conclusions about risks in each of the various states and smaller geographic areas with insurers, including Selective, that subscribe to ISO's services.

- 2 -

9.      I understand that on February 15, 2013 the Department of Housing and Urban
Development issued its final rule interpreting the Fair Housing Act to prohibit insurance
practices, including the pricing of homeowners insurance, that result in a disparate impact on
certain groups or individuals with protected characteristics (the "Disparate-Impact Rule").

10.     The Disparate-Impact Rule, if applied to the business of insurance, would require
Selective to compile and track personal data of every applicant and insured including
information concerning the individual's race, color, religion, national origin, sex, familial status,
and/or disability.

11.     With regard to homeowners insurance, Selective (i) does not collect and compile
data concerning the race, color, religion, national origin, or disability of an applicant or insured,
and (ii) does not consider such data to be risk-related factors relevant to coverage or rates.

12.     In calculating rates for homeowners insurance, Selective uses the underlying risk
considerations identified both internally and by ISO, and performs a multivariate analysis of
factors including the applicant's actual loss experience, amount of coverage, location of the
premises, construction and age of the dwelling, whether fire and burglar alarms are installed in
the dwelling, and the dwelling's proximity to fire hydrants and fire stations.

13.     Selective does not specifically analyze the demographics of a geographic area
before calculating the risk and the appropriate rate on a property in that particular area.

14.     In the vast majority of the jurisdictions where Selective is licensed to write
property casualty insurance, the laws specifically provide that insurance rates may not be
excessive or unfairly discriminatory and further require that insurers file proposed rates with the
state regulators for review and approval.

- 3 -

15.     In most cases, Selective's rates are approved by state insurance regulators before Selective sells any policies to customers using these calculated rates.

16.     As part of the rate submission process, Selective's actuaries certify that, to the best of their knowledge, Selective's rates comply with the applicable laws and regulations of the specific jurisdiction. An insurance regulator's approval confirms that Selective's rates are not excessive or unfairly discriminatory against any one group or individual with specific characteristics.

17.     Maryland law prohibits insurers from soliciting information concerning the race, creed, color or national origin of any insured: "[A]n insurer or insurance producer may not make an inquiry about race, creed, color, or national origin in an insurance form, questionnaire, or other manner of requesting general information that relates to an application of insurance." MD Ins. Code § 27-501 (c) (1).

18.     To perform any analysis under the Disparate Impact Rule, Selective must obtain personal data on every applicant and insured. The cost of soliciting and collecting this exercise would be enormous. Moreover, request for sensitive data represents an unwelcomed imposition on an applicant and insured.

19.     Even if the requested personal information would be voluntarily disclosed and the volume of data amassed, it would be at a minimum very difficult for actuaries to isolate every factor considered in a multivariate analysis to evaluate whether use of a particular risk factor has a disparate impact on the rates for a particular group or individual with a defined characteristic.

20.     Even if we could determine whether use of particular factors had a disparate impact, eliminating those factors in a risk and rate assessment would compromise the actuarial soundness of the risk-based rating plans that are generally accepted as the industry standard and

- 4 -

that are used by Selective.

21.     Selective has no evidence that its rates have a disparate impact on any particular group of applicants or insureds, or in any specific area or demographic.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of May, 2014.

Ronald Joseph Zaleski, Sr.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on May 16, 2014, I electronically filed the foregoing document with

the Clerk of the Court for the U.S. District Court for the Northern District of Illinois using the

CM/ECF system, which sent notification of such filing to counsel of record in this case.


___s/ Brian M. Boynton_____

Brian M. Boynton

WILMER CUTLER PICKERING HALE AND

DORR LLP

1875 Pennsylvania Avenue, NW

Washington, DC 20006

Tel.: (202) 663-6000

Fax: (202) 663-6363

Email: seth.waxman@wilmerhale.com