# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

_____
)
PROPERTY CASUALTY INSURERS )
ASSOCIATION OF AMERICA, )
)
                  Plaintiff, )
)     No. 1:13-cv-08564
     v. )
)     Judge Amy J. St. Eve
SHAUN DONOVAN, in his official capacity as )
Secretary of Housing and Urban Development, )
and the UNITED STATES DEPARTMENT OF )
OF HOUSING AND URBAN DEVELOPMENT, )
)
              Defendants. )
_____ )

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
## TO DISMISS AND/OR FOR SUMMARY JUDGMENT

STUART F. DELERY
Assistant Attorney General

JOCELYN SAMUELS
Acting Assistant Attorney General

ZACHARY T. FARDON
United States Attorney

DAMON Y. SMITH
Acting General Counsel
MICHELLE ARONOWITZ
Deputy General Counsel for
  Enforcement and Fair Housing
JEANINE M. WORDEN
Associate General Counsel
  for Fair Housing
KATHLEEN M. PENNINGTON
Assistant General Counsel
  for Fair Housing Enforcement
M. CASEY WEISSMAN-VERMEULEN
AYELET R. WEISS
Attorneys
*Of counsel*

RACHEL J. HINES
Assistant Branch Director
Federal Programs Branch

KYLE R. FREENY (Cal. Bar No. 247857)
DANIEL P. MOSTELLER (DC Bar No. 980802)
U.S. Department of Justice
20 Massachusetts Ave., N.W.
Washington, DC 20001
Tel: (202) 514-5108/Fax: (202) 616-8470
Email: Kyle.Freeny@usdoj.gov

*Counsel for Defendants*

# TABLE OF CONTENTS

**PAGE**

ARGUMENT ..................................................................................................................1

I.      Plaintiff Has Still Failed to Demonstrate Standing...........................................1

II.     Plaintiff Has Failed to Show That Its McCarran-Ferguson Challenge Is Ripe...................3

III.    Plaintiff's Facial McCarran-Ferguson Challenge Fails as a Matter of Law .......................7

        A.      Plaintiff Overstates the Breadth of McCarran-Ferguson .........................................8

        B.      Plaintiff Fails to Show That All Applications of the Rule Are
                Preempted ...................................................................................................11

        C.      An Analysis of Impairment Is Incomplete Without Considering State
                Fair Housing Laws ....................................................................................14

IV.     Plaintiff's Procedural Attacks on the Rule Are Without Merit...........................................17

        A.      Plaintiff's Claim That HUD Failed to "Meaningfully" Address
                McCarran-Ferguson Repackages Its Substantive McCarran-Ferguson
                Claim..........................................................................................................17

        B.      HUD Was Not Required to Accept Insurers' Unsupported Predictions
                About the Rule's Effect When Responding to Comments ...................................18

        C.      HUD Reasonably Explained Its Refusal to Create an Insurance
                Exemption....................................................................................................20

        D.      HUD Reasonably Responded to a Comment on the Filed-Rate
                Doctrine.......................................................................................................22

V.      HUD Acted Reasonably in Adopting a Burden-Shifting Framework ...............................23

CONCLUSION...............................................................................................................25

## TABLE OF AUTHORITIES

**CASES**                                   **PAGE(S)**

*Ali v. Mukasey,*
521 F.3d 737 (7th Cir. 2008) ........................................................20

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,*
367 F.3d 212 (4th Cir. 2004) ........................................................15

*Am. Med. Ass'n v. Mathews,*
429 F. Supp. 1179 (N.D. Ill. 1977) ...............................................22

*Am.'s Cmty. Bankers v. FDIC,*
200 F.3d 822 (D.C. Cir. 2000) ......................................................13

*AmSouth Bank v. Dale,*
386 F.3d 763 (6th Cir. 2004) ..........................................................5

*Ass'n of Flight Attendants v. DOT,*
564 F.3d 462 (D.C. Cir. 2009) ........................................................2

*Axiom Ins. Managers Agency, LLC v. Indem. Ins. Corp.,*
No. 11-2051, 2011 WL 3876947 (N.D. Ill. Sept. 1, 2011) ...........6, 10

*BancOklahoma Mortg. Corp. v. Capital Title Co.,*
194 F.3d 1089 (10th Cir. 1999) ....................................................15

*Burrell v. State Farm & Cas. Co.,*
226 F. Supp. 2d 427 (S.D.N.Y. 2002).............................................10

*Caine v. Burge,*
897 F. Supp. 2d 714 (N.D. Ill. 2012) ...............................................9

*Caritas Med. Ctr. v. Johnson,*
603 F. Supp. 2d 81 (D.D.C. 2009) .................................................13

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*
467 U.S. 837 (1984).......................................................................23

*DRG Funding Corp. v. Sec'y of HUD,*
76 F.3d 1212 (D.C. Cir. 1996) .........................................................7

*Dehoyos v. Allstate Corp.,*
345 F.3d 290 (5th Cir. 2003) ................................................9, 11, 23

*Doe v. Mutual of Omaha Ins. Co.*,
    179 F.3d 557 (7th Cir. 1999) ...........................................................................5, 9, 10

*Estate of Escobedo v. Bender*,
    600 F.3d 770 (7th Cir. 2010) ...........................................................................3

*Francia v. Mount Vernon Fire Ins. Co.*,
    53 Conn. L. Rptr. 697, 2012 WL 1088544 (Super. Ct. 2012) ...........................................16

*Franklin v. Allstate Corp.*,
    No. 06-1909, 2007 WL 1991516 (N.D. Cal. July 3, 2007) ...............................................10

*Gilligan v. Jamco Dev. Corp.*,
    108 F.3d 246 (9th Cir. 1997) ...........................................................................25

*Graoch Assocs. #33, L.P. v. Lousiville/Jefferson Cnty. Metro Human Relations*
    *Comm'n*, 508 F.3d 366 (6th Cir. 2007)...........................................................................20

*HUD v. Carter*,
    No. 03-90-0058-1, 1992 WL 406520 (HUD ALJ May 1, 1992).......................................24

*HUD v. Twinbrook Vill. Apartments*,
    Nos. 02-00-0256-8, 02-00-0257-8, and 02-00-0258-8, 2001 WL 1632533 (HUD
    ALJ Nov. 9, 2001) ...........................................................................24

*Highmark, Inc. v. UPMC Health Plan, Inc.*,
    276 F.3d 160 (3d Cir. 2001)...........................................................................15

*Humana Inc. v. Forsyth*,
    525 U.S. 299 (1999)........................................................................... <u>passim</u>

*Hwy. J Citizens Grp. v. Mineta*,
    349 F.3d 938 (7th Cir. 2003) ...........................................................................21

*Inclusive Cmtys. Project, Inc. v. Tex. Dep't Hous. & Cmty. Affairs*,
    747 F.3d 275 (5th Cir. 2014), *petition for cert. filed*, 82 U.S.L.W. 3686
    (U.S. May 13, 2014) (No. 13-1371)...........................................................................23

*Jones v. Travelers Cas. Ins. Co. of Am.*,
    No. 13-cv-2390, 2013 WL 4511648 (N.D. Cal. Aug. 22, 2013) .......................................16

*Koretoff v. Vilsack*,
    707 F.3d 394 (D.C. Cir. 2013) ...........................................................................24, 25

*LaBarre v. Credit Acceptance Corp.*,
    175 F.3d 640 (8th Cir. 1999) ...........................................................................6

*Loparex LLC v. NLRB,*
  591 F.3d 540 (7th Cir. 2009) ........................................25

*Lumpkin v. Farmers Grp., Inc.,*
  No. 05-2868, 2007 WL 6996777 (W.D. Tenn. July 6, 2007)............................13

*Metavante Corp. v. Emigrant Sav. Bank,*
  619 F.3d 748 (7th Cir. 2010) ........................................24

*NAACP v. Am. Family Mut. Ins. Co.,*
  978 F.3d 287 (7th Cir. 1992) ........................................9, 11, 12

*NLRB v. Bell Aerospace Co.,*
  416 U.S. 267 (1974)........................................21

*NLRB v. Louis Weiss Mem'l Hosp.,*
  172 F.3d 432 (7th Cir. 1999) ........................................25

*Nat'l Ass'n of Home Builders v. Defenders of Wildlife,*
  551 U.S. 644 (2007)........................................18

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,*
  663 F.3d 470 (D.C. Cir. 2011) ........................................2

*Nat'l Park Hospitality Ass'n v. Dep't of Interior,*
  538 U.S 803 (2003)........................................4

*Nationwide Mut. Ins. Co. v. Cisneros,*
  516 U.S. 1140  1996 WL 33467765 ........................................3

*Natural Res. Def. Council, Inc. v. EPA,*
  859 F.2d 156 (D.C. Cir. 1988)........................................7

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
  927 F. Supp. 2d 870 (C.D. Cal. 2013) ........................................5, 10, 15

*Ojo v. Farmers Group, Inc.,*
  600 F.3d 1205 (9th Cir. 2010) ........................................3

*Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.,*
  240 F. Supp. 2d 24 (D.D.C. 2003), *rev'd on other grounds,*
  351 F.3d 1229 (D.C. Cir. 2003) ........................................8

*Reno v. Flores,*
  507 U.S. 292 (1993)........................................7, 11

iv

*Saunders v. Farmers Ins. Exch.,*
  440 F.3d 940 (8th Cir. 2006) ........................................................4

*Shalala v. Guernsey Mem'l Hosp.,*
  514 U.S. 87 (1995).........................................................................21

*South Carolina ex rel. Tindal v. Block,*
  717 F.2d 874 (4th Cir. 1983) .......................................................19

*State Civil Rights Comm'n v. Cnty. Line Park, Inc.,*
  738 N.E.2d 1044 (Ind. 2000) ......................................................16

*Tex. Indep. Producers & Royalty Owners Ass'n v. EPA,*
  410 F.3d 964 (7th Cir. 2005) .........................................................2

*Thompson v. Clark,*
  741 F.2d 401 (D.C. Cir. 1984) ...............................................22, 23

*Toledo Fair Hous. Ctr. v. Nationwide Mut. Ins. Co.,*
  704 N.E.2d 667 (Ohio Ct. Com. Pl. 1997)..................................12

*Trs. of Marion Kingdom Hall of Jehovah's Witnesses v. City of Marion,*
  638 F. Supp. 2d 962 (S.D. Ill. 2007)..............................................7

*U.S. Satellite Broad. Co. v. FCC,*
  740 F.2d 1177 (D.C. Cir. 1984) ...................................................19

*United Farm Bureau Mut. Ins. Co. v. Metro. Human Relations Comm'n,*
  24 F.3d 1008 (7th Cir. 1994) .......................................................15

*United States v. Boyle,*
  469 U.S. 241 (1985)......................................................................23

*United States v. Wahchumwah,*
  710 F.3d 862 (9th Cir. 2013) .........................................................8

*Wai v. Allstate Ins. Co.,*
  75 F. Supp. 2d 1 (D.D.C. 1999) ...................................................10

*Wards Cove Packing Co. v. Atonio,*
  490 U.S. 642 (1989) .....................................................................24

*Weiss v. First Unum Life Ins. Co.,*
  482 F.3d 254 (3d Cir. 2007)....................................................14, 16

*Wis. Cent., Ltd. v. Shannon*,
    539 F.3d 751 (7th Cir. 2008) ........................................................................4

## STATUTES

5 U.S.C. § 556(d) ..............................................................................24, 25
15 U.S.C. §§ 1011-1015 .........................................................................1
42 U.S.C. § 12201(c)(1) .........................................................................10
42 U.S.C. § 3610(f) ...............................................................................15
42 U.S.C. §§ 3601-3619 ...........................................................................2

## RULES AND REGULATIONS

24 C.F.R. § 100.500(b) ............................................................................9
24 C.F.R. § 100.70(d)(4) ........................................................................10
78 Fed. Reg. 11,460 (Feb. 15, 2013) ....................................................<u>passim</u>

## STATE CODES AND STATUTES

40 Tex. Admin. Code § 819.124(b)(4) .....................................................15
910 Ind. Admin. Code 2-2-4(d)(4) ...........................................................15
775 Ill. Comp. Stat. 5/10-102 .................................................................16
Ariz. Admin. Code § 10-2-104(B)(4) ........................................................15
Haw. Code R. § 12-46-305(8) .................................................................16
Ind. Code § 22-9.5-7-1 ..........................................................................16
Ind. Code § 27-2-17-5(b) .......................................................................16
Kan. Admin. Regs. § 21-60-5(d)(5) ..........................................................15
Ky. Rev. Stat. Ann. § 344.367 ................................................................15
Md. Code Ann., Ins. § 2-202 ...................................................................10
Md. Code Regs. 14.03.04.04(F)(6) ...........................................................15
Me. Code R. § 4(D)(4)(d) ........................................................................15
N.C. Gen. Stat. § 41A-5(a)(2) .................................................................16
Ohio Rev. Code Ann. § 4112.02(H)(4) .......................................................15
S.C. Code Ann. Regs. 65-211(A)(2)(r) ......................................................15
Tenn. Code Ann. § 4-21-601(c) ...............................................................15
Va. Code Ann. § 36-96.4(B)(2) ................................................................15
Wis. Stat. § 106.50(6m) .........................................................................15

## MISCELLANEOUS

Holmes Appleman on Insurance 2d § 3.7 (1996) ........................................6
20 Fed. Prac. & Proc. Deskbook § 61 .......................................................13

In its Opposition, Plaintiff stakes out the extraordinary position that the Department of Housing and Urban Development's ("HUD's") Discriminatory Effects Rule ("Rule"), 78 Fed. Reg. 11,460 (Feb. 15, 2013), is reverse-preempted in all its applications to insurance in all fifty states, even where the federal standard embodied in the Rule is identical to applicable state law. In doing so, Plaintiff effectively urges the Court to read the McCarran-Ferguson Act ("McCarran-Ferguson"), 15 U.S.C. §§ 1011-1015, to impose a form of field preemption – a reading that the Supreme Court rejected over a decade ago in *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999). Because McCarran-Ferguson does not license the kind of abstract finding of preemption that Plaintiff urges here, divorced from any particular application of federal law to any specific insurance practice in any particular state, Plaintiff's claim fails on the merits. It is also unripe for similar reasons.

Plaintiff's other attacks on the Rule fare no better. As Defendants demonstrated in their opening brief, HUD reasonably responded to the comments submitted by the insurance industry, and Plaintiff offers nothing in its Opposition that would call that conclusion into question. In addition, nothing in Plaintiff's Opposition casts doubt on the reasonableness of HUD's judgment about how to allocate the burden of proof in disparate impact claims – a judgment that is entitled to significant deference.

## ARGUMENT

## I.    Plaintiff Has Still Failed to Demonstrate Standing

In their opening brief, Defendants explained that Plaintiff lacks Article III standing, having failed to demonstrate that any of its members suffered a concrete injury fairly traceable to the Rule. *See* Defs.' Mem. at 11-15. In its Opposition, Plaintiff attempts to correct this defect by tendering declarations from its members alleging that they are injured as a result of the

-1-

availability of disparate impact liability under the Fair Housing Act ("FHA"), 42 U.S.C.

§§ 3601-3619.  Even taken as true, however, the identified harms are not traceable to the Rule,

but to preexisting legal obligations.

Initially, Plaintiff disputes that it even needs to demonstrate traceability, relying on the

proposition that "standing is presumed" when "the parties bringing suit are the 'objects' of the

agency action being challenged."  Pl.'s Opp. at 2.  But this is a presumption rather than a

categorical rule, and it is overcome where, as here, a party challenges a regulation that duplicates

preexisting legal duties.  *See Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 663

F.3d 470, 474 (D.C. Cir. 2011).  Plaintiff argues that this exception does not apply here because,

unlike the permit at issue in *National Ass'n of Home Builders*, the Rule "increased the threat" of

harm to its members.  Pl.'s Opp. at 12.  But this assertion simply begs the question of whether

the Rule fundamentally altered insurers' duties under the FHA.  And as Defendants demonstrated

in their opening brief, it did not.  Rather, it "formaliz[ed] . . . a long-recognized legal

interpretation" of the FHA to provide for disparate impact claims against all entities subject to

the FHA, including insurers.  78 Fed. Reg. at 11,468.  Plaintiff offers nothing more than

speculation that its members face a greater threat of liability as a result of the Rule than they did

in its absence.[1]  "Conclusory statement[s]" in Plaintiff's declarations that merely "assert[] . . .

causation" do not satisfy Plaintiff's burden at this stage.  *Ass'n of Flight Attendants v. DOT*, 564

F.3d 462, 465-66 (D.C. Cir. 2009) (citing *Tex. Indep. Producers & Royalty Owners Ass'n v.

EPA*, 410 F.3d 964, 972-73 (7th Cir. 2005)).

---

[1] Plaintiff's claim that "HUD has already begun to take action against insurers under the new Rule" is
based on the faulty premise that because an investigation was initiated "after the promulgation of the
Rule," it would not have occurred but for the Rule.  Pl.'s Opp. at 12 & n.3.  Notably, the standard data
request form used by HUD to investigate the case cited in Plaintiff's Opposition has been used since
October 2002.   *See* Schwartz Decl. Ex. A at 3, *Am. Ins. Ass'n v. HUD*, No. 13-cv-966, Dkt. 27-1 (D.D.C.
Feb. 24, 2014).

Plaintiff also argues that costs associated with a disparate impact standard must be attributed to the Rule because "it was not [previously] established that disparate impact liability could lawfully be imposed on insurers." Pl.'s Opp. at 11. In support, Plaintiff cites two decisions prior to the Rule in which courts left the question open. Pl.'s Opp. at 10-11. But all the courts actually to have ruled on whether the FHA provides for disparate impact claims against insurers, along with all of HUD's interpretations on the matter, found that it did. *See* Defs.' Mem. at 6;[2] *cf. Estate of Escobedo v. Bender*, 600 F.3d 770, 783 (7th Cir. 2010) (holding that, for purposes of defining "clearly established law" in qualified immunity analysis, "[i]n the absence of controlling precedent from our circuit, courts look to other circuits to ascertain whether there was such a clear trend in the case law that the recognition of the right by a controlling precedent was merely a matter of time").[3] Indeed, members of the insurance industry have been on record since at least 1996 indicating that they understood themselves to be subject to disparate impact liability. *See* Brief for Nat'l Ass'n of Mut. Ins. Cos. & Am. Ins. Ass'n as Amici Curiae in Support of the Petition, *Nationwide Mut. Ins. Co. v. Cisneros*, 516 U.S. 1140 (1996) (No. 95-714), 1996 WL 33467765, at *14-15 & n.11.

## II. Plaintiff Has Failed to Show That Its McCarran-Ferguson Challenge Is Ripe

Plaintiff's McCarran-Ferguson claim is also unripe, because it seeks a ruling on all hypothetical future applications of the Rule, without regard to the type of insurance practice challenged (which could be anything from claims settlement processes to the refusal to write

---

[2] Plaintiff is wrong to dismiss the relevance of *Ojo v. Farmers Group, Inc.*, 600 F.3d 1205 (9th Cir. 2010) (en banc), to this consensus. *See* Pl.'s Opp. at 10. *Ojo* construed the FHA to provide for disparate impact claims against insurers as a matter of statutory interpretation. *See* 600 F.3d at 1207-08. It then separately turned to a case-specific McCarran-Ferguson analysis. *See id.* at 1208-10.

[3] Plaintiff compounds this error by arguing that it was not even clear, prior to the Rule, that disparate impact claims were available under the FHA against any party. *See* Pl.'s Opp. at 11. Plaintiff bases this argument on the absence of a Supreme Court decision on the issue, even though eleven circuits have held that the FHA provides for such claims. *See* Defs.' Mem. at 4-5.

policies in a particular geographic area); the justification for the practice (which may or may not involve an actuarial justification); or the state in which the practice occurs. This claim manifestly lacks the concreteness necessary for proper adjudication.

Plaintiff clings to the generic proposition that a legal challenge to a regulation is *typically* ripe for review. *See* Pl.'s Opp. at 13-14. This generalization avails Plaintiff of nothing because even purely legal claims are unfit for review where "further factual development" is necessary to adequately "deal with the legal issues presented." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S 803, 811-12 (2003) (internal quotation marks omitted). And contrary to the implication in Plaintiff's Opposition, *see* Pl.'s Opp. at 14, the fact that a claim requires no judicial "fact-finding" – as is nearly always the case with Administrative Procedure Act ("APA") claims – does not mean that it does not need further factual development to allow for proper adjudication. *See Nat'l Park Hospitality Ass'n*, 538 U.S. at 811-12.

McCarran-Ferguson preemption is a "fact-specific issue" that turns on the specific contours of the federal claim asserted. *See, e.g.*, *Saunders v. Farmers Ins. Exch.*, 440 F.3d 940, 945 (8th Cir. 2006). As such, it is not amenable to decision in an abstract, facial challenge. *See Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759-60 (7th Cir. 2008). Plaintiff dismisses the Eighth Circuit's analysis in *Saunders* as "snippets of dicta," Pl.'s Opp. at 16, when it is anything but. The Eighth Circuit's discussion of the fact-dependent nature of the preemption inquiry drove its decision to remand the case to the district court "to develop a record adequate" to decide the question. *Saunders*, 440 F.3d at 946; *see also id*. ("[T]he record on appeal does not sufficiently delineate either the nature of plaintiffs' price discrimination claims, the specific relief they seek, or the extent of Missouri's insurance rate regulation to decide the McCarran-Ferguson Act impairment issue.").

-4-

Nor is *Saunders* alone in treating the impairment analysis mandated by McCarran-Ferguson as a context-dependent, rather than categorical, inquiry. *See*, *e.g.*, *AmSouth Bank v. Dale*, 386 F.3d 763, 781 (6th Cir. 2004) ("[W]hen assessing whether a general federal statute that creates a cause of action 'impairs' the operation of a state law, the proper inquiry is whether *the particular suit being brought* would impair state law.") (emphasis added); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 927 F. Supp. 2d 870, 878 (C.D. Cal. 2013) ("[A]s numerous courts have noted, it is not simply enough to find that all 'RICO claims' are reverse-preempted by the insurance laws of a particular state. . . . [A] court [must] focus on the precise federal claim asserted.") (internal quotation marks omitted). This conclusion necessarily follows from the Supreme Court's context-dependent analysis in *Humana*. *See* 525 U.S. at 311 (deciding whether state law preempted a RICO claim based on the "the facts of [the] case" in question); *see also AmSouth Bank*, 386 F.3d at 781 (noting that *Humana* "analyz[ed] [the] effect of McCarran-Ferguson . . . on [a] RICO suit with respect to [the] particular suit, rather than [on] only [the] general operation of [the] statute").

Plaintiff fails to identify a single instance in which a federal court has exercised jurisdiction over a McCarran-Ferguson challenge to all hypothetical future applications of a general federal cause of action.[4] Although Plaintiff claims that courts "often strike down federal laws that conflict with state insurance laws without reference to specific facts," Pl.'s Opp. at 14, none of the cases it cites support this proposition. Rather, all four cases cited by Plaintiff arose in the context of a specific application of federal law, such that the court in each case was able to make a determination about preemption on the basis of a known factual setting and a finding of

---

[4] Plaintiff's suggestion that the Seventh Circuit's decision in *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999), contemplates a categorical preemption inquiry, without regard to factual context, is a misreading of that case and conflicts with the Supreme Court's decision in *Humana*. As Defendants noted in their opening brief, *Mutual of Omaha* involved a specific application of a federal law in a concrete factual setting. Defs.' Mem. at 22-23.

interference with a specific state law.[5]  Moreover, the Court need not conclude that preemption can never be decided in a pre-enforcement challenge to find the present case unfit for adjudication.  Even assuming it would be possible to adjudicate a pre-enforcement challenge where the relevant facts were fully crystallized, this is far from such a claim.  Instead, it challenges a wide range of hypothetical and undefined applications of the Rule in fifty different states and asks the Court to treat them as one undifferentiated mass.

Although the Oklahoma Insurance Commissioner, in an *amicus* brief, echoes Plaintiff's call to decide the McCarran-Ferguson issue on a categorical basis, *see* Okla. Br. at 2 (Doc. No. 49), his arguments actually highlight the unripeness of Plaintiff's claim.  In particular, his assertion that a "one-size-fits-all" approach to insurance regulation is inappropriate in light of the state-by-state variations in insurance practice, *id.* at 5, undercuts any suggestion that Plaintiff's claim can be evaluated in a wholesale fashion across all fifty states.[6]  *See, e.g.*, Holmes, Appleman on Insurance 2d § 3.7 (1996) ("One cannot speak of a single set of regulations of insurers, but only of 51 separate sets."); *id.* ("Given 50 state insurance laws and 50 different insurance departments (with diverse resources, administrative traditions, and political constellations), there is no consistency of regulation among the various states.").

Finally, Plaintiff's assertion of hardship as a result of deferring review of its abstract claim rests on a false dichotomy – that insurers must either abandon the use of all actuarial-based

---

[5] Plaintiff's citation to *LaBarre v. Credit Acceptance Corp.*, 175 F.3d 640 (8th Cir. 1999), is especially telling.  There, the Eighth Circuit held that a RICO claim against an insurer was barred by McCarran-Ferguson because Minnesota law did not allow a private right of action against insurers for fraud.  *Id.* at 642.  This Court, however, reached the opposite conclusion in the context of a RICO claim brought in Illinois.  *See Axiom Ins. Managers Agency, LLC v. Indem. Ins. Corp.*, No. 11-2051, 2011 WL 3876947, at *9 (N.D. Ill. Sept. 1, 2011).  These differing results highlight the context-dependent nature of the inquiry and the inappropriateness of deciding the issue on a categorical, nationwide basis.

[6] The Commissioner's brief also fails to address the Rule's effect on state regulation of insurance practices other than rate setting, even within Oklahoma.

underwriting and pricing practices or face liability under the FHA. *See* Pl.'s Opp. at 18. The Rule does not create *per se* liability for any insurance practice. *See* 78 Fed. Reg. at 11,475. Nor does it purport to alter the operation of McCarran-Ferguson or to decide how the preemption analysis should ultimately be decided in any particular instance.[7] *See id.*; *cf. DRG Funding Corp. v. Sec'y of HUD*, 76 F.3d 1212, 1215 (D.C. Cir. 1996) ("[C]laims of hardship will rarely overcome the finality and fitness problems inherent in attempts to review tentative decisions.") (internal quotation marks omitted). Plaintiff's predictions about its members' potential future liability, or potential future costs of defending against litigation under the Rule, are purely conjectural at this stage and cannot justify premature review. *See Natural Res. Def. Council, Inc. v. EPA*, 859 F.2d 156, 166 (D.C. Cir. 1988) ("A petitioner cannot show hardship by positing a speculative or hypothetical future harm."). Accordingly, Plaintiff has failed to discharge its burden of demonstrating that its McCarran-Ferguson claim is ripe for adjudication. *See Trs. of Marion Kingdom Hall of Jehovah's Witnesses v. City of Marion*, 638 F. Supp. 2d 962, 968 (S.D. Ill. 2007) ("A plaintiff has the burden of proving a case is ripe for adjudication.").

## III. Plaintiff's Facial McCarran-Ferguson Challenge Fails as a Matter of Law

Because Plaintiff's McCarran-Ferguson claim attacks the Rule on a facial, pre-enforcement basis, Plaintiff bears the burden of establishing "that no set of circumstances exists under which the regulation would be valid." *Reno v. Flores*, 507 U.S. 292, 301 (1993) (internal punctuation omitted). Plaintiff falls far short of meeting this burden. Plaintiff's contention that McCarran-Ferguson authorizes a finding of facial preemption, without the need for any state-specific or claim-specific analysis, is contrary to settled law. And in light of Plaintiff's burden, it is irrelevant to the outcome of this case that Plaintiff and its *amici* have identified some potential

---

[7] Plaintiff's suggestion that the Rule harms its members by "subjecting them to competing state and federal standards," Pl.'s Opp. at 8, is therefore incorrect, as it rests on the erroneous assumption that the Rule purports to supersede conflicting state law.

applications of the Rule that they believe would be preempted. Defendants have already

identified applications of the Rule that are consistent with state law, and Plaintiff has not refuted

them. Plaintiff's analysis of state law is also insufficient because it fails to account for state fair

housing laws, many of which parallel the FHA.

### A.    Plaintiff Overstates the Breadth of McCarran-Ferguson

As Defendants demonstrated in their opening brief, Plaintiff's facial pre-enforcement

attack on the Rule, without regard to the factual context in which the Rule may be applied, is

fundamentally incompatible with the framework for evaluating McCarran-Ferguson preemption.

*See* Defs.' Mem. at 20-23. Plaintiff's Opposition further confirms the extent to which its claim

rests on a faulty understanding of McCarran-Ferguson. Plaintiff erroneously reads McCarran-

Ferguson to foreclose any "federal court review of state-regulated practices" and, based on this

flawed analysis, asks this Court to categorically invalidate the Rule without engaging in any

state-specific or claim-specific analysis. Pl.'s Opp. at 19. In his *amicus* brief, the Oklahoma

Insurance Commissioner advances the same mistaken view, contending that McCarran-Ferguson

"disavows the value of federal regulation" and makes regulation of insurance the "*exclusive*

province of States."[8] Okla. Br. at 3 (emphasis added).

This expansive view of McCarran-Ferguson advances a standard akin to field preemption

and is therefore inconsistent with the Supreme Court's decision in *Humana*. *See* Defs.' Mem. at

---

[8] The Commissioner also vaguely contends that the Rule raises "grave federalism concerns." Okla. Br. at 15-20. This claim has not been raised by Plaintiff and is thus not properly before this Court. *See United States v. Wahchumwah*, 710 F.3d 862, 868 n.2 (9th Cir. 2013) ("Generally, arguments not raised in a party's opening brief are deemed waived, and the court will not consider arguments raised only in amicus briefs.") (citation omitted); *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.,* 240 F. Supp. 2d 24, 42 (D.D.C. 2003) ("Unless raised by the parties, a court normally should not entertain statutory or constitutional challenges asserted solely by amici."), *rev'd on other grounds*, 351 F.3d 1229 (D.C. Cir. 2003). This argument also rests on the erroneous premise that the Rule purports to "supersede" state law, *see* Okla. Br. at 7, when in fact it expressly tracks the line between federal and state authority established by Congress in McCarran-Ferguson. When viewed properly, the Commissioner's "federalism concerns" merely restate his argument that the Rule categorically violates McCarran-Ferguson.

20-22; *see also Humana*, 525 U.S. at 310 (finding that the existence of a "comprehensive [state] administrative scheme that prohibits various forms of insurance fraud and misrepresentation" did not preclude federal adjudication of RICO claim); *Dehoyos v. Allstate Corp.*, 345 F.3d 290, 298 n.6 (5th Cir. 2003) ("[A]llowing the states to exercise exclusive or autonomous discretion in insurance regulation is not a valid rationale for finding [McCarran-Ferguson] preemption."). Plaintiff fares no better when it argues, based on a misreading of dicta in *Mutual of Omaha*, that McCarran-Ferguson applies expansively to all federal claims touching on "insurance rate-setting and underwriting" regardless of the nature of the federal claim or its consonance with state law. Pl.'s Opp. at 19. The breadth of that reading is refuted by *NAACP v. American Family Mutual Insurance Co.*, 978 F.3d 287 (7th Cir. 1992), in which the Seventh Circuit held that McCarran-Ferguson did not preempt an FHA disparate treatment challenge to "how, and at what price, [an insurer] writes . . . policies of insurance." *Id.* at 287, 290, 293-97; *cf. Caine v. Burge*, 897 F. Supp. 2d 714, 719 (N.D. Ill. 2012) ("This Court cannot assume that a subsequent panel of the Seventh Circuit can overrule another prior panel implicitly.").

Plaintiff also contends that the Rule is preempted as applied to every insurance practice in every state because its burden-shifting framework would require federal courts to pass on the "validity [of insurance practices] *under state law*." Pl.'s Opp. at 24 (emphasis added). But the Rule requires no such judgment in order to evaluate liability. *See* 24 C.F.R. § 100.500(b) (defining "legally sufficient justification" for purposes of FHA disparate impact liability without reference to state law). Where a federal court reviews a disparate impact claim brought under the FHA, it would be applying and enforcing federal, not state, law – even where the challenged practice also violates state law.[9] Moreover, it is clear that neither *Mutual of Omaha* nor

---

[9] *Mutual of Omaha* is distinguishable in this respect. The federal claim at issue in that case would have affirmatively required a court to evaluate whether the challenged insurance practice was "inconsistent

McCarran-Ferguson disables federal courts from deciding all questions of state insurance law, as Plaintiff suggests. After all, in order to decide whether McCarran-Ferguson applies in the first place, a federal court necessarily must "interpret[] . . . state laws regulating the insurance industry" to determine whether the federal claim in question would conflict with or impair state law. *See Negrete*, 927 F. Supp. 2d at 875 n.2; *see also Axiom*, 2011 WL 3876947, at *8 n.5.

Plaintiff also argues that the Rule would categorically impair the operation of all state regulatory regimes because "State regulators carefully review insurance rates . . . to ensure that the rates are not unfairly discriminatory" (and may, in a few states, "also review underwriting guidelines"). Pl.'s Opp. at 26. Even setting aside the fact that this assertion does not purport to cover applications of the Rule to other types of insurance practices,[10] this argument fails because it is divorced from any meaningful analysis of individual states' law. For example, it assumes that every state law that grants insurance regulators authority to review rates for unfair discrimination is the exclusive means by which the state regulates rate-setting. *See Wai v. Allstate Ins. Co.*, 75 F. Supp. 2d 1, 5 (D.D.C. 1999) (explaining, in rejecting a McCarran-Ferguson defense to an FHA claim, that the Maryland Insurance Commissioner and state Commission on Civil Rights have "concurrent jurisdiction . . . over alleged discrimination" in underwriting and rate-setting practices) (citing Md. Code Ann., Ins. § 2-202) (internal quotation marks omitted). The argument also proves too much because an FHA challenge to insurance rates under a theory of disparate *treatment* would also overlap with state laws authorizing

---

with State law" in order to assess the insurer's liability under federal law (and not merely to assess a McCarran-Ferguson defense). *See* 179 F.3d at 561 (quoting 42 U.S.C. § 12201(c)(1)).

[10] Plaintiff suggests that the FHA allows claims against insurers only related to underwriting and pricing practices. *See* Pl.'s Opp. at 22 n.11. This is incorrect. The FHA authorizes a broad range of claims related to homeowners' insurance, including "providing . . . insurance differently," 24 C.F.R. § 100.70(d)(4), and has been applied, among other things, to the processing of insurance claims, *Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427, 442 (S.D.N.Y. 2002), and the payment of insurance claims, *Franklin v. Allstate Corp.*, No. 06-1909, 2007 WL 1991516, at *6 (N.D. Cal. July 3, 2007).

insurance regulators to review (and potentially approve) rates. And yet, as noted above, the Seventh Circuit expressly held in *American Family* that such a claim was not barred by McCarran-Ferguson. *See* 978 F.2d at 290, 293-97; *see also Dehoyos*, 345 F.3d at 295 ("Every circuit that has considered the question has determined that federal anti-discrimination laws may be applied in an insurance context, even where the state insurance agencies have mechanisms in place to regulate discriminatory practices.").

### B. Plaintiff Fails to Show That All Applications of the Rule Are Preempted

As noted in Defendants' opening brief, there are demonstrable instances of congruity between disparate impact claims under the FHA and state insurance regulatory regimes. *See* Defs.' Mem. at 23-24. The existence of these areas of congruity belies Plaintiff's suggestion that the Rule will "inevitably" be preempted in all cases. *See* Pl.'s Opp. at 21.

Plaintiff concedes that many states have "targeted laws limiting the use of [certain] risk factors," such as geographic area, and that these laws prohibit conduct that may also be subject to liability under the Rule where the conduct imposes an unjustified disparate impact. *See* Pl.'s Opp. at 23. Plaintiff nevertheless contends that these areas of state and federal overlap "cannot save the Rule" because the Rule applies "across the board to *all* risk-based underwriting and pricing practices." Pl.'s Opp. at 23. This argument fundamentally misplaces the burden in this case. It is not HUD's burden to demonstrate that state law would never preempt an application of the Rule. Rather, Plaintiff must show that the Rule is preempted in all its applications. *See Flores*, 507 U.S. at 301. Accordingly, the undisputed existence of these "targeted laws" is itself sufficient to preclude the relief Plaintiff seeks.

Defendants' opening brief also identified cases in which courts have found that disparate impact claims complement rather than impair state insurance law. *See* Defs.' Mem. at 23-24.

Although Plaintiff dismisses these cases as "unpersuasive," Pl.'s Opp. at 27-28, this Court should not ignore the judgment of courts that were deciding the issue in a defined factual context and were better positioned to make the relevant determination about impairment.

For example, Plaintiff contests the persuasiveness of the Seventh Circuit's decision in *American Family*, in which the court found that an FHA challenge to insurance redlining would not conflict with Wisconsin law because there was no "law, regulation, or decision in Wisconsin requiring redlining, condoning that practice, committing to insurers all decisions about redlining, or holding that redlining with discriminatory intent (*or disparate impact*) does not violate state law." 978 F.2d at 297 (emphasis added). Plaintiff asks the Court to ignore that language because the case involved a disparate treatment, rather than disparate impact, claim. But Plaintiff cannot explain away the court's express reference to disparate impact claims in its McCarran-Ferguson analysis, and this Court should not treat the Seventh Circuit's language as having been anything less than fully considered. Plaintiff also discounts the analysis in *American Family* because the court "did not consider any of the state laws involved in this case." Pl.'s Opp. at 28. But *no* state laws are "involved" in this purely abstract case. *See* Part II, *supra*.

Plaintiff mounts a similar attack on *Toledo Fair Housing Center v. Nationwide Mutual Insurance Co.*, 704 N.E.2d 667 (Ohio Ct. Com. Pl. 1997), inviting the Court to ignore an Ohio state court's decision that "the disparate impact approach does not conflict with Ohio insurance law," *id.* at 670, because the court did not, in Plaintiff's view, address the correct provisions of the insurance code, *see* Pl.'s Opp. at 28. This suggestion that the Court should second-guess the Ohio court's interpretation of Ohio law is hard to reconcile with Plaintiff's oft-repeated refrain that federal courts should leave decisions about state insurance law to state courts. The Court should also decline Plaintiff's invitation to ignore the conclusion of a federal district court in

-12-

Tennessee that Tennessee law did not reverse-preempt a disparate impact challenge to an insurance pricing practice, *see Lumpkin v. Farmers Grp., Inc.*, No. 05-2868, 2007 WL 6996777, at *6-7 (W.D. Tenn. July 6, 2007). *Cf.* 20 Fed. Prac. & Proc. Deskbook § 61 ("As a general proposition, a federal judge who sits in a particular state and has practiced before its courts may be better able to resolve complex questions about the law of that state than is some other federal judge who has no personal acquaintance with the law of the state.").

Perhaps recognizing that these areas of state and federal congruity are fatal to its claim, Plaintiff argues that the Court need not consider them because they represent a "post hoc" rationale for HUD's decision. Pl.'s Opp. at 24-25. This attack is wide of the mark. HUD relied in its rulemaking on the same argument it advances here – that the applicability of McCarran-Ferguson "depends on the facts at issue and the language of the relevant State law," such that McCarran-Ferguson does not categorically bar the Rule. 78 Fed. Reg. at 11,475. That HUD has provided additional context and support for its position during the course of this litigation – tailoring its defense of the Rule, as it must, to the specific arguments advanced by Plaintiff – does not render its position a post hoc rationalization. *See Am.'s Cmty. Bankers v. FDIC*, 200 F.3d 822, 836 (D.C. Cir. 2000) (holding that an agency may offer an argument "in support of its administrative position which bolsters rather than duplicates the consistent position upon which its decision was made"); *Caritas Med. Ctr. v. Johnson*, 603 F. Supp. 2d 81, 92 (D.D.C. 2009) (rejecting the argument that an agency's justifications were "post-hoc rationalizations" because "[w]hile the defendant's arguments in this litigation expand on the points raised in the text of the final rule, [its] position has not changed").

In light of Plaintiff's heavy burden to demonstrate facial invalidity, even if some specific applications of the Rule in specific states are preempted – a possibility that the Rule itself

accommodates – Plaintiff would not be entitled to relief. For this same reason, the *amicus* brief filed by the Oklahoma Insurance Commissioner (and joined, in part, by four other states, *see* Doc. No. 64) does not support Plaintiff's facial attack on the Rule.

### C. An Analysis of Impairment Is Incomplete Without Considering State Fair Housing Laws

Plaintiff's analysis of the Rule's purported impairment of state law fails not only because it does not demonstrate preemption in all cases, but also because it ignores state fair housing laws that bear directly on the issue. As explained in Defendants' opening brief, the analysis of state law mandated by McCarran-Ferguson must take into account state fair housing laws as they apply to insurance. *See* Defs.' Mem. at 27-28.

Plaintiff's contention that state fair housing laws are not relevant to the McCarran-Ferguson analysis because they were not enacted "for the purpose of regulating the business of insurance," Pl.'s Opp. at 25, is without merit. In *Humana*, the Supreme Court considered the "application of other state laws, [both] statutory or decisional," on the grounds that a state's insurance code is not "hermetically sealed," and must be read in light of other state laws governing insurance. *See* 525 U.S. at 307, 312-13. Other courts considering McCarran-Ferguson claims since *Humana* have looked to state laws other than those exclusively applicable to insurance. For example, several courts have looked to a state's generally applicable consumer protection code to hold that federal law does not impair state insurance law and thus is not reverse-preempted. *See Weiss v. First Unum Life Ins. Co.*, 482 F.3d 254, 265-66 (3d Cir. 2007) (holding a federal claim for fraudulent conduct did not impair state insurance laws because of an insurer's potential liability under New Jersey's Consumer Fraud Act, which covers conduct "in connection with the sale or advertisement of any merchandise or real estate, or with [its] subsequent performance"); *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 168 (3d

-14-

Cir. 2001) (considering generally-applicable Pennsylvania Unfair Trade Practice Consumer Protection Law); *Negrete*, 927 F. Supp. 2d at 888-89 (considering generally-applicable Minnesota Prevention of Consumer Fraud Act and Nebraska Consumer Protection Act); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 232 & n.22 (4th Cir. 2004) (considering generally-applicable state common law and statutory claims); *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1099-1100 (10th Cir. 1999) (same). Such decisions belie Plaintiff's claim that *Humana* makes a limited set of state laws relevant to the McCarran-Ferguson analysis. *See* Pl.'s Opp. at 25 n.15.

Similar logic dictates consideration of state fair housing laws here. Generally-applicable state fair housing laws frequently apply to insurance practices, given the common state practice of modeling such laws after the FHA. *See, e.g.*, *United Farm Bureau Mut. Ins. Co. v. Metro. Human Relations Comm'n*, 24 F.3d 1008, 1013-14 (7th Cir. 1994) (relying on precedent interpreting the FHA to hold that Indiana fair housing law covers insurance); *see also* 42 U.S.C. § 3610(f) (providing incentives for states to create fair housing laws "substantially equivalent" to the FHA). Indeed, statutes and administrative codes in at least thirteen states explicitly provide that state fair housing laws apply to insurance.[11] Accordingly, state fair housing laws can and do inform the proper construction of a state's insurance code.[12] *See Weiss*, 482 F.3d at 264 (looking

---

[11] Ariz. Admin. Code § 10-2-104(B)(4); Ga. Comp. R. & Regs. 186-2-.02(2)(d)(4)(iv); 910 Ind. Admin. Code 2-2-4(d)(4); Kan. Admin. Regs. § 21-60-5(d)(5); Ky. Rev. Stat. Ann. § 344.367; 94-348-8 Me. Code R. § 4(D)(4)(d); Md. Code Regs. 14.03.04.04(F)(6); Ohio Rev. Code Ann. § 4112.02(H)(4); S.C. Code Ann. Regs. 65-211(A)(2)(r); Tenn. Code Ann. § 4-21-601(c); 40 Tex. Admin. Code § 819.124(b)(4); Va. Code Ann. § 36-96.4(B)(2); Wis. Stat. § 106.50(2)(e).

[12] Although Plaintiff implies that state fair housing laws could conflict with, and be superseded by, unidentified insurance provisions permitting or requiring the use of actuarial risk factors, *see* Pl.'s Opp. at 25, Plaintiff does not demonstrate that this is typically true, let alone true in all states and all cases. Indeed, Plaintiff's effort to attribute exclusivity to state insurance codes is demonstrably flawed. As one illustration, Plaintiff points to Ind. Code § 27-2-17-5(b) as a law that expressly insulates an insurer's rates from challenge so long as they have some actuarial basis. *See* Pl.'s Opp. at 22 n.12, 23. That provision, however, is non-exclusive on its face: It provides that "*[t]his subsection does not*

to state laws that operate "in tandem" with insurance code as part of impairment analysis).

Because state fair housing laws place limits on the way insurance companies can deal with insureds as a matter of state law – limits that are in many cases coextensive with the Rule – they are undoubtedly relevant to any preemption analysis.[13]  For example, Connecticut's fair housing law, which provides for a private right of action for discrimination based on lawful source of income, prohibits insurers from making underwriting and pricing decisions based on the presence of government-subsidized tenants.  *See Francia v. Mount Vernon Fire Ins. Co.*, 53 Conn. L. Rptr. 697, 2012 WL 1088544 (Super. Ct. 2012).  Such conduct may also subject an insurer to liability under the Rule where it results in an unjustified disparate impact based on a characteristic protected by the FHA.  *Cf. Jones v. Travelers Cas. Ins. Co. of Am.*, No. 13-cv-2390, 2013 WL 4511648, at *1 (N.D. Cal. Aug. 22, 2013) (detailing a California property owner's FHA disparate impact claim challenging a refusal to write policies for housing with government-subsidized tenants).  Thus, as this example demonstrates, disparate impact claims under the FHA may complement state law, notwithstanding a state's general sanctioning of actuarial-based underwriting or pricing.  *Cf. Francia*, 2012 WL 108854, at * 8 (rejecting an argument that claim was inconsistent with an insurer's need to engage in risk differentiation).

In sum, because Plaintiff has not demonstrated that the Rule can never be validly applied in a manner consistent with state law, Plaintiff's claim fails as a matter of law.

---

preclude an insurer from refusing to issue or renew or from canceling a policy based on sound underwriting or actuarial principles."  Ind. Code § 27-2-17-5(b) (emphasis added); *see also id*. § 27-2-17-5(f) (noting that the rate setting law "is not intended to restrict" jurisdiction of the state's civil rights commission).

[13] Many state fair housing laws also provide a private cause of action against insurers for violations.  *See*, *e.g.*, 775 Ill. Comp. Stat. 5/10-102; Ind. Code § 22-9.5-7-1; Wis. Stat. § 106.50(6m).  And many emulate the FHA in authorizing disparate impact liability, whether through statute, *e.g.*, N.C. Gen. Stat. § 41A-5(a)(2), regulation, *e.g.*, Haw. Code R. § 12-46-305(8), or caselaw, *e.g.*, *State Civil Rights Comm'n v. Cnty. Line Park, Inc.*, 738 N.E.2d 1044, 1049 (Ind. 2000).

-16-

## IV.    Plaintiff's Procedural Attacks on the Rule Are Without Merit

As Defendants demonstrated in their opening brief, Plaintiff's procedural attacks on the
Rule under the APA lack merit because HUD considered, and reasonably explained its reasons
for rejecting, comments submitted by the insurance industry.  Nothing in Plaintiff's Opposition
demonstrates otherwise.

### A.    Plaintiff's Claim That HUD Failed to "Meaningfully" Address McCarran-Ferguson Repackages Its Substantive McCarran-Ferguson Claim

It is beyond dispute that HUD considered the effect of McCarran-Ferguson on its
proposed rule and concluded that it did not bar the Rule's adoption.  *See* Pl.'s Resp. to Defs.'
Stmt. of Undisputed Material Facts ("SUMF") ¶ 24.  Specifically, HUD found that the Rule "will
not interfere with any State regulation of the insurance industry," because it "does not alter" the
application of McCarran-Ferguson in any specific instance.  78 Fed. Reg. at 11,475.  Plaintiff is
thus demonstrably wrong when it claims that HUD did "not even attempt to analyze whether the
Rule conflicts with state insurance laws."  Pl.'s Opp. at 29.

Plaintiff's nominal procedural attack on HUD's McCarran-Ferguson explanation is not,
for the most part, a procedural attack at all.  Instead, it is a recapitulation of its first cause of
action, premised on the notion that HUD's "view of the McCarran-Ferguson Act is plainly
incorrect."  Pl.'s Opp. at 29.  As such, Plaintiff's second cause of action fails for largely the same
reasons as its substantive McCarran-Ferguson challenge.  *See* Part III, *supra*.

Moreover, HUD did not, as Plaintiff claims, "shunt its obligation to address the
McCarran-Ferguson Act to the courts."  Pl.'s Opp. at 29.  Rather, HUD sensibly recognized that
the question of whether McCarran-Ferguson would preempt the FHA, as construed by the Rule,
must be decided on a case-by-case basis since the outcome would "depend[] on the facts at issue
and the language of the relevant State law."  78 Fed. Reg. at 11,475.  In doing so, HUD referred

to courts' decision-making on this issue as shorthand for a case-specific, rather than categorical, determination. This shorthand is hardly surprising, since the portions of all three insurance industry comments concerning McCarran-Ferguson focused on judicial determinations of whether disparate impact claims could proceed through litigation. *See* A.R. at 379-80, 456-57, 554-55. HUD also did not "disclaim application of [McCarran-Ferguson] to agencies," as Plaintiff contends. Pl.'s Opp. at 30. Instead, HUD disclaimed the assertion by insurance groups that McCarran-Ferguson acts as a complete bar to federal disparate impact claims, *see*, *e.g.*, A.R. at 554 (positing "explicit reservation of insurance regulatory powers to the states"), concluding that McCarran-Ferguson did not categorically "preclude HUD from issuing regulations that may apply to insurance," *see* 78 Fed. Reg. at 11,475. The sufficiency of HUD's explanation does not depend, as Plaintiff implies, on its length or artfulness. Where, as here, "the agency's path may be reasonably discerned," its decision must be upheld. *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 658 (2007).

> **B.    HUD Was Not Required to Accept Insurers' Unsupported Predictions About the Rule's Effect When Responding to Comments**

Plaintiff also concedes, as it must, that HUD acknowledged and rejected comments from insurance groups about the purported effect the Rule would have on the insurance industry. *See* Pl.'s Resp. to Defs.' SUMF ¶ 25. HUD explained that the objections it received about the effect the Rule would have on the business of insurance incorrectly "presume[d] that once a discriminatory effect is shown, the policy at issue is *per se* illegal." 78 Fed. Reg. at 11,475; *see* A.R. at 377 (erroneously predicting that, as a result of the Rule, insurers "would have to charge everyone the same rate, regardless of risk"). HUD further explained that fears about frivolous or excessive litigation as a result of the Rule were misplaced and contrary to HUD's decades of experience administering the FHA. 78 Fed. Reg. at 11,472. Contrary to Plaintiff's suggestion,

an agency's unwillingness to accept assumptions underlying a comment, when those assumptions run contrary to the considered views and experience of the agency, does not somehow transform the agency's express rejection of those comments into a "non-response," *see* Pl.'s Opp. at 32; *cf. S.C. ex rel. Tindal v. Block*, 717 F.2d 874, 885 (4th Cir. 1983) ("There is no requirement for the Secretary to discuss every fact or opinion contained in the public comments.").

Plaintiff also attempts to discount part of HUD's explanation because of its placement in a section of the preamble discussing the "general application of the Rule" rather than "its specific application to insurers."  Pl.'s Opp. at 33.  The APA does not cognize such hyper-technical distinctions, nor does it require the level of granularity that Plaintiff demands.  *See U.S. Satellite Broad. Co. v. FCC*, 740 F.2d 1177, 1188 (D.C. Cir. 1984) (noting that agency need not have "explicitly discussed each and every contention made by" commenters and upholding "implicit" rejection of comments as sufficient under the APA).  Moreover, Plaintiff's attempt to discount sections of the Rule not singularly devoted to the insurance industry rests on its faulty assertion that insurance is "unlike any other business" in having to predict customer risk.  Pl.'s Opp. at 33. But commenters from other industries – most notably, the lending industry – made similar arguments about their considerations of risk.  *See* 78 Fed. Reg. at 11,476-77.  Accordingly, there is no sound basis to ignore HUD's clearly pertinent response.

### C.    HUD Reasonably Explained Its Refusal to Create an Insurance Exemption

Plaintiff similarly concedes that HUD acknowledged and rejected comments requesting that insurance practices be exempted from the Rule.  *See* Pl.'s Resp. to Defs.' SUMF ¶ 27; *see also* 78 Fed. Reg. at 11,475 (noting that creation of categorical exemptions "beyond those found in the Act would run contrary to Congressional intent" and was also "unnecessary").  As

-19-

explained in Defendants' opening brief, Congress expressly included several exemptions to disparate impact liability in the FHA, but did not do so for insurance practices. *See* Defs.' Mem. at 35. It can hardly be deemed "unreasonable," Pl.'s Opp. at 34, for HUD to give effect to that congressional choice by declining to create its own exemption for the insurance industry. Plaintiff makes no effort to contend with this aspect of HUD's explanation.

Instead, Plaintiff focuses narrowly on a footnote in the Rule that quoted the Sixth Circuit's statement that "[n]othing in the text of the FHA instructs us to create practice-specific exceptions" to liability. *See* 78 Fed. Reg. at 11,475 n.141 (quoting *Graoch Assocs. #33, L.P. v. Lousiville/Jefferson Cnty. Metro Human Relations Comm'n*, 508 F.3d 366, 376 (6th Cir. 2007)). In its Opposition, Plaintiff faults HUD for quoting this language instead of the court's dicta that observed that "categorical bars" may be justified "if no disparate impact challenge to a particular practice could ever succeed." *See* Pl.'s Opp. at 34-35; *see also Graoch*, 508 F.3d at 375-76. As previously indicated, it cannot be said that no disparate impact challenge to an insurance practice could ever succeed. Moreover, the fact that a court may find a categorical bar appropriate hardly means that HUD – which is authorized to definitively construe and enforce the FHA – is also required to reach the same result. *See Ali v. Mukasey*, 521 F.3d 737, 742-43 (7th Cir. 2008) (holding prior judicial precedents "require reexamination now that the [agency] has fully developed its own position, for administrative discretion belongs to the agency rather than to the court"). And in this case, HUD concluded that categorical exemptions beyond those created by Congress was not warranted. Though Plaintiff may disagree with that choice, the APA "does not mandate particular results, but simply prescribes the necessary process." *See Hwy. J Citizens Grp. v. Mineta*, 349 F.3d 938, 953 (7th Cir. 2003). Having followed the necessary process, HUD is entitled to summary judgment on this claim.

Plaintiff's claim that "[a]t a minimum, HUD should have acknowledged that [the] use of actuarial risk factors is a 'substantial, legitimate, nondiscriminatory interest,'" Pl.'s Opp. at 35, reflects significant confusion about the scope of the rulemaking and the agency's obligations under the APA. When an agency promulgates a rule, it is not required to address every single aspect of the subject matter to which the rule pertains. An agency is well within its discretion to leave certain issues to be addressed in the course of future adjudications. *See NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) ("[T]he choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion."); *see also Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 96 (1995) ("The APA does not require that all specific applications of a rule evolve by further, more precise rules rather than by adjudications."). The Rule formalized HUD's interpretation of the FHA to encompass disparate impact claims, and it set forth a framework by which such claims would be analyzed through future case-by-case administrative and judicial application. It did not purport to decide the outcome in any particular case. *See* 78 Fed. Reg. at 11,471 (explaining that the FHA "covers many different types of entities and practices" and therefore the Rule "does not provide examples of interests that would always qualify as substantial, legitimate, nondiscriminatory interests for every respondent or defendant in any context"). HUD was not obligated to convert the Rule into a detailed exploration of how disparate impact claims should be decided in the insurance context.

### D.     HUD Reasonably Responded to a Comment on the Filed-Rate Doctrine

HUD addressed the single comment that it received about the filed-rate doctrine in the same context in which the comment was presented – as an illustration of the commenter's argument that the proposed rule would "undermine the state-based regulatory regime." A.R. at 378. Where a commenter raises a narrow issue in conjunction with another encompassing issue,

it is hardly arbitrary and capricious for the agency to respond by addressing the issues jointly. *See Am. Med. Ass'n v. Mathews*, 429 F. Supp. 1179, 1210 (N.D. Ill. 1977) ("The Secretary need not . . . laboriously respond to each comment submitted; in particular, he need not address each comment in the precise terms in which it was raised."); *see also Thompson v. Clark*, 741 F.2d 401, 408 (D.C. Cir. 1984) (noting that the APA "has never been interpreted to require the agency to respond to every comment, or to analyze every issue or alternative raised by the comments, no matter how insubstantial").

In its Opposition, Plaintiff dismisses this argument as a "post-hoc justification," going so far as to contend that the preamble to the Rule "provides no hint that HUD thought its argument about McCarran-Ferguson should also apply to the filed-rate doctrine." Pl.'s Opp. at 36. This claim is puzzling. The Rule's preamble explicitly grouped together "commenters [who] stated that application of the disparate impact standard would interfere with state regulation of insurance in violation of the McCarran-Ferguson Act or the common law 'filed rate doctrine,'" and then responded to them in the aggregate. *See* 78 Fed. Reg. at 11,474-75 (citation omitted).

Plaintiff also separately errs when it attempts to cast the solitary comment about the filed-rate doctrine as a "significant" one that merited a response of some unspecified greater length. Pl.'s Opp. at 36. The comment in question did not contain any "meaningful analysis" to suggest that the filed-rate doctrine – a judicially created abstention doctrine – would prevent all applications of the Rule in all fifty states of its own force. *See Thompson*, 741 F.2d at 409. Nor does Plaintiff attempt to explain how the filed-rate doctrine casts any doubt on the validity of the Rule. *Cf. Dehoyos*, 345 F.3d at 298 n.5 (rejecting filed-rate challenge to FHA disparate impact claims). As such, Plaintiff cannot claim to be prejudiced by the extent of the agency's response. *See Thompson*, 741 F.2d at 409 ("The failure to respond to comments is significant only insofar

-22-

as it demonstrates that the agency's decision was not 'based on a consideration of the relevant factors.'") (citation omitted).  Indeed, Plaintiff itself did not consider the issue significant enough to raise during the rulemaking.  *See* A.R. at 553-56.

## V.     HUD Acted Reasonably in Adopting a Burden-Shifting Framework

As explained in Defendants' opening brief, HUD's decision to adopt a burden-shifting framework based on FHA case law easily satisfies the deferential standard of review set forth in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  Observing that the Rule's "standards are in accordance with disparate impact principles and precedent," the Fifth Circuit recently endorsed the Rule's burden-shifting approach.  *Inclusive Cmtys. Project, Inc. v. Tex. Dep't Hous. & Cmty. Affairs*, 747 F.3d 275, 282 (5th Cir. 2014), *petition for cert. filed*, 82 U.S.L.W. 3686 (U.S. May 13, 2014) (No. 13-1371).  Plaintiff neither addresses *Chevron*'s deferential standard of review nor denies that HUD reasonably reconciled the body of FHA case law in existence at the time the Rule was promulgated.  That, by itself, defeats Plaintiff's claim.  *See United States v. Boyle*, 469 U.S. 241, 246 n.4 (1985) (holding that an agency interpretation "merits deference" when it "is consistent with Congress' intent, and over 40 years of case law").  Plaintiff also never addresses the Fifth Circuit's decision in *Inclusive Communities*, despite Defendants' extensive discussion of the case in their opening brief.

Instead, Plaintiff claims that the Rule "ignores" differences between the Rule's burden-shifting standards and those from abrogated Title VII case law.  *See* Pl.'s Opp. at 37-38, 40 (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989)).  These arguments do not call into question the reasonableness of HUD's burden-shifting framework for the reasons already articulated in Defendants' opening brief.  *See* Defs.' Mem. at 43-45.

Plaintiff separately urges the Court to find the Rule's burden-shifting framework invalid

in light of 5 U.S.C. § 556(d), which applies only in the context of agency adjudications.[14]  But, as explained in Defendants' opening brief, Plaintiff is precluded from challenging the Rule – at least in a facial, pre-enforcement claim – on the basis of an alleged legal defect that was never brought to the agency's attention during the rulemaking process.  *See Koretoff v. Vilsack*, 707 F.3d 394, 401 (D.C. Cir. 2013) ("[T]he price for a ticket to facial review is to raise objections in the rulemaking.").  Plaintiff does not dispute that HUD received no comments concerning Section 556(d).  Indeed, Plaintiff points to no comments that would have alerted HUD to Plaintiff's current view that agency adjudications of FHA claims are subject to a different legal standard than federal court adjudication of those same claims.[15]  Plaintiff instead endeavors to avoid waiver by casting its Section 556 claim as nothing more than "new authority" to support comments actually submitted during the rulemaking.  Pl.'s Opp. at 39-40 & n.22.  This argument strains credulity.  This is not a case in which Plaintiff is merely supplementing an earlier argument with additional judicial authority.  *See* Pl.'s Opp. at 39-40 (citing *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 773 n.20 (7th Cir. 2010)).  Rather, it is a case in which Plaintiff seeks to raise a new and independent ground for its challenge, for which the agency had no notice.  That effort is clearly foreclosed.  *See Koretoff*, 707 F.3d at 398 (concluding that comment challenging agency's authority to issue rule on one legal basis did not preserve the right to later contest that authority on another legal basis).

Plaintiff's response to Defendants' arguments on the merits of their Section 556 claim is

---

[14] Administrative law judges shifted the burden of persuasion to the respondent at the second stage of the FHA disparate impact framework prior to the Rule's enactment.  *See, e.g.*, *HUD v. Twinbrook Vill. Apartments*, Nos. 02-00-0256-8, 02-00-0257-8, and 02-00-0258-8, 2001 WL 1632533, at *17 (HUD ALJ Nov. 9, 2001); *HUD v. Carter*, No. 03-90-0058-1, 1992 WL 406520, at *6 (HUD ALJ May 1, 1992).

[15] Similarly, to the extent that Plaintiff is making a distinct argument that the Rule "must be vacated and remanded to allow HUD to consider whether employing different burden-shifting frameworks in courts and before the agency makes sense as a matter of policy," Pl.'s Opp. at 39 n.21, this argument is also waived because it was not raised during the rulemaking process.

also lacking.  Plaintiff fails to show why the carve-out under Section 556(d) for affirmative

defenses would not apply to the second step of the Rule's burden-shifting framework, inasmuch

as Plaintiff's own briefs refer to the second step of the framework as the "business justification

*defense*" stage.  *See* Pl.'s Mem. at 22 (emphasis added); Pl.'s Opp. at 19, 20 (emphasis added);

*see also Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 250-51 (9th Cir. 1997) (describing the

"affirmative defense of business necessity" to an FHA disparate impact claim).  Although

Plaintiff contends that the Seventh Circuit "does not permit the burden of persuasion to shift if

the charging party merely establishes a prima facie case," Pl.'s Opp. at 38 (alterations and

internal quotation marks omitted), this contention is plainly incorrect.  *See Loparex LLC v.

NLRB*, 591 F.3d 540, 546 (7th Cir. 2009) ("[T]he [NLRB] must make a *prima facie* showing

. . . .  Once the Board does so, the burden shifts to the employer to prove that it had a legitimate

business reason for making its decision.").  Put simply, Plaintiff has identified no authority that

would prevent the second stage of the disparate impact burden-shifting framework from being

regarded as an affirmative defense for purposes of Section 556.[16]

## CONCLUSION

Defendants' Motion to Dismiss or for Summary Judgment should therefore be granted.

Dated: June 20, 2014

Respectfully submitted,

STUART F. DELERY
Assistant Attorney General

JOCELYN SAMUELS
Acting Assistant Attorney General

ZACHARY T. FARDON
United States Attorney

---

[16] Plaintiff's reliance on *NLRB v. Louis Weiss Memorial Hospital*, 172 F.3d 432 (7th Cir. 1999), on this point is misplaced.  The outcome in that case turned on an analysis of the specific elements of the labor law claim at issue, *see id.* at 442, and Plaintiff offers nothing to suggest that those elements are identical or even analogous to the elements or stages of proof of a disparate impact claim under the FHA.

DAMON Y. SMITH
Acting General Counsel
MICHELLE ARONOWITZ
Deputy General Counsel for
  Enforcement and Fair Housing
JEANINE M. WORDEN
Associate General Counsel
  for Fair Housing
KATHLEEN M. PENNINGTON
Assistant General Counsel
  for Fair Housing Enforcement
M. CASEY WEISSMAN-VERMEULEN
AYELET R. WEISS
Attorneys
*Of counsel*

RACHEL J. HINES
Assistant Branch Director
Federal Programs Branch

 */s/ Kyle R. Freeny*
KYLE R. FREENY (Cal. Bar No. 247857)
DANIEL P. MOSTELLER (DC Bar No. 980802)
Attorneys
U.S. Department of Justice
20 Massachusetts Ave., N.W.
Washington, DC 20001
Tel: (202) 514-5108/Fax: (202) 616-8470
Email: Kyle.Freeny@usdoj.gov

*Counsel for Defendants*