# ATTACHMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:13-CV-08564 |
| | ) ) | Judge Amy St. Eve |
| SHAUN DONOVAN, in his official capacity as Secretary of Housing and Urban Development, and the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) ) | |

**BRIEF OF THE STATE OF ILLINOIS AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

LISA MADIGAN
Attorney General
State of Illinois

CAROLYN E. SHAPIRO
Solicitor General

CLIFFORD W. BERLOW
STEPHEN M. SOLTANZADEH
Assistant Attorneys General
100 W. Randolph St., 12th Floor
Chicago, IL 60601
(312) 814-2127

Attorneys for Amicus Curiae State of Illinois.

# TABLE OF CONTENTS

<u>Page(s)</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTEREST OF THE AMICUS CURIAE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    In States Whose Insurance Regulations Are Inconsistent With The Rule,
      Liability Under The Rule Will Be Preempted . . . . . . . . . . . . . . . . . . . . . . . . 7

II.   For States That Impose Disparate Impact Liability On The Insurance
      Industry, The Rule Will Complement, Rather Than Impair, State Policy . . . 9

III.  State Regulatory Authority Over Insurance Is Not Inherently Jeopardized By
      The Mere Possibility Of Federal FHA Liability . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*2922 Sherman Ave. Tenants' Ass'n v. Dist. of Columbia*,
444 F.3d 673 (D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Allstate Ins. Co. v. Mercier*,
913 F.3d 273 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*American Deposit Corp. v. Schacht*,
84 F.3d 834 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Atkins v. City of Chicago Comm'n on Human Relations ex rel. Lawrence*,
667 N.E.2d 664 (Ill. App. Ct. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Autry v. Nw. Premium Servs., Inc.*,
144 F.3d 1037 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bd. Of Trustees of S. Ill. Univ. v. Knight*,
516 N.E.2d 991 (Ill. App. Ct. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Boozell v. United States*,
979 F. Supp. 670 (N.D. Ill. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Dawn Equipment Co. v. Micro-Trak Sys., Inc.*,
186 F.3d 981 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Dehoyos v. Allstate Corp.*,
345 F.3d 290 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Doe v. Mutual of Omaha*,
179 F.3d 557 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Fed. Trade Comm'n v. Travelers Health Ass'n*,
362 U.S. 293 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hartford Cas. Ins. Co. v. Borg-Warner Corp.*,
913 F.2d 419 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ii

*Humana Inc. v. Forsyth,*
525 U.S. 299 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5-6, 7, 9, 12, 15

*Interstate Material Corp. v. Ill. Human Rights Comm'n,*
654 N.E.2d 713 (Ill. App. Ct. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jackson v. Cerpa,*
696 F.Supp.2d 962 (N.D. Ill. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jackson v. Sedgwick Claims Mgmt. Servs., Inc.,*
731 F.3d 556 (6th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights,*
558 F.2d 1283 (7th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*NAACP v. Am. Family Mut. Ins. Co.,*
978 F.2d 287 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2-3, 7, 9, 15

*Ojo v. Farmers Group, Inc.,*
356 S.W.3d 421 (Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ojo v. Farmers Group, Inc.,*
565 F.3d 1175 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ojo v. Farmers Group, Inc.,*
600 F.3d 1205 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Page v. Liberty Mut. Fire Ins. Co.,*
869 F. Supp. 596 (N.D. Ill. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*People v. R.L.,*
634 N.E.2d 733 (Ill. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Peyton v. Dep't of Human Rights,*
700 N.E.2d 451 (Ill. App. Ct. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Quackenbush v. Allstate Ins. Co.,*
517 U.S. 706 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Saunders v. Farmers Ins. Exchange,*
440 F.3d 940 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

iii

*South-Suburban Housing Ctr. v. Greater South Suburban Bd. of Realtors*,
935 F.2d 868 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Szkoda v. Ill. Human Rights Comm'n*,
706 N.E.2d 962 (Ill. App. Ct. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Trafficante v. Metro. Life Ins.*,
409 U.S. 205 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Turner v. Human Rights Comm'n*,
532 N.E.2d 392 (Ill. App. Ct. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Other Authorities:**

15 U.S.C. § 1012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 13

24 C.F.R. § 100.500 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

24 C.F.R. § 100.70 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

42 U.S.C. § 3601 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 3604 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

50 Ill. Admin. Code § 754.40 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

215 ILCS 5/424 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

775 ILCS 5/3-102 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Angelo Borselli, *Insurance Rates Regulation in Comparison with Open Competition*,
18 Conn. Ins. L.J. 109, 126 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Final Rule*,
78 Fed. Reg. 11460 (Feb. 15, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Ill. Dep't of Ins., Review Requirements Checklist: Home Owners,
http://insurance.illinois.gov/ Prop_Cas_IS3_Checklists/Homeowners.asp . . . . . . . 14

*Notice of Proposed Rulemaking*,
76 Fed. Reg. 70921 (Nov. 16, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Pub. Act 81-1267, 1980 Ill. Laws 247 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Pub. L. 90-284, 82 Stat. 81 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## INTEREST OF THE AMICUS CURIAE

Illinois has a strong commitment to eradicating racial discrimination and segregation in housing. The Fair Housing Act, ("FHA"), 42 U.S.C. § 3601 *et seq.*, is an important tool in that endeavor because it facilitates litigation aimed at "eliminating discrimination in housing and furthering integration in housing." *South-Suburban Housing Ctr. v. Greater South Suburban Bd. of Realtors*, 935 F.2d 868, 882 (7th Cir. 1991). The FHA, including its long-settled prohibition of facially neutral but effectively discriminatory housing practices, thus supports Illinois' policy goals.

Illinois also has a strong interest in a proper interpretation of the McCarran-Ferguson Act. Of course, such an interpretation must fully respect state policy choices in insurance regulation. But here, construing the McCarran-Ferguson Act to automatically preempt FHA disparate impact liability for insurers would do nothing to promote Illinois insurance regulation, which already accommodates disparate impact liability, while undermining Illinois housing civil rights policy.

Accessible homeowners' insurance is critical to ending housing discrimination and promoting integration because mortgage "lenders are unwilling to provide credit unless the borrower obtains insurance on the house." *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 290 (7th Cir. 1992). As a result, interpreting the McCarran-Ferguson Act to insulate facially neutral but effectively discriminatory insurance practices from disparate impact liability under the FHA would perpetuate entrenched impediments to home ownership for minority home buyers.

1

Because Plaintiff's view, if accepted, would undermine Illinois' commitment to eliminating racial discrimination in housing and would not promote Illinois' insurance regulation, *amicus* State of Illinois urges this Court to reject Plaintiff's novel interpretation of the McCarran-Ferguson Act, deny Plaintiff's motion for summary judgment, and grant Defendants' dispositive motion.

## BACKGROUND

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). It thus prohibits "discriminatory denials of insurance, and discriminatory pricing, that effectively preclude ownership of housing because of the race of the applicant." *NAACP*, 978 F.2d at 301; *accord* 24 C.F.R. § 100.70(d)(4). Additionally, it is well established that a violation of this prohibition "can be established by a showing of discriminatory effect without a showing of discriminatory intent." *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977); *see 2922 Sherman Ave. Tenants' Ass'n v. Dist. of Columbia*, 444 F.3d 673, 679 (D.C. 2006) (observing that all eleven circuits to have considered the issue have held that the FHA imposes disparate impact liability).

The FHA's prohibition on "discriminatory denials of insurance," of course, must be applied consistent with the McCarran-Ferguson Act, *see NAACP*, 978 F.2d

2

at 293-97, an earlier enacted statute providing that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance," 15 U.S.C. § 1012(b). The McCarran-Ferguson Act thus may preempt some FHA claims, but only if imposing federal liability would effectively "invalidate, impair, or supersede" state insurance law. *NAACP*, 978 F.2d at 295. That does not occur merely because there is "overlap between state and federal law." *Id*. Instead, the party asserting McCarran-Ferguson preemption "needs to show that the [FHA] conflicts with state law," bearing in mind that "[d]uplication is not conflict." *Id*.; *see also Humana Inc. v. Forsyth*, 525 U.S. 299, 313 (1999) (no preemption where federal claim "appears to complement" state law).

Against that settled legal backdrop, the Department of Housing and Urban Development sought to formalize the longstanding view that the FHA "prohibit[s] housing practices with a discriminatory effect, even where there has been no intent to discriminate." *Notice of Proposed Rulemaking*, 76 Fed. Reg. 70921, 70921 (Nov. 16, 2011). Despite the fact that the Department did not seek to change the substantive law, representatives of the insurance industry objected to the proposed rule, arguing "that application of the disparate impact standard would interfere with state regulation of insurance in violation of the McCarran-Ferguson Act." *Final Rule*, 78 Fed. Reg. 11460, 11474 (Feb. 15, 2013). The Department nevertheless adopted the proposal at 24 C.F.R. § 100.500 (the "Rule"), explaining

3

that McCarran-Ferguson preemption "depends on the facts at issue and the language of the relevant State law" and thus does not automatically preclude disparate impact liability nationwide. 78 Fed. Reg. at 11475.

Having failed to obtain a blanket exemption for the insurance industry from FHA disparate impact liability through the rulemaking process, Plaintiff brought this lawsuit, claiming a "fundamental inconsistency between a disparate impact standard and established risk-based insurance practices," which, regardless of the specific content of state law, necessarily triggers McCarran-Ferguson Act preemption of the FHA. (Doc. 21 at 3). The Defendants have moved to dismiss and the parties have cross-moved for summary judgment. *Amicus* briefs have been filed on behalf of Defendants by a group of civil rights and consumer rights advocates, (Doc. 33), and on behalf of Plaintiff by the Oklahoma Commissioner of Insurance, (Doc. 48) (subsequently joined by the Insurance Commissioners of Alabama, Louisiana, Mississippi, and Nevada, (Doc. 64)).

## ARGUMENT

Defendants' memorandum in support of their motion for summary judgment explains how the imposition of disparate impact liability under the FHA squares with the the McCarran-Ferguson Act. (Doc. 31). In this filing, *amicus* highlights the reality that the Rule leaves unchanged states' status as the primary source of insurance regulation and leaves intact any state regulation that is inconsistent with disparate impact liability. Yet for some states, like Illinois, no conflict or inconsistency exists. In fact, in Illinois, the availability of disparate impact liability

4

under federal law actually enhances the effectiveness of existing state laws and supports state policy. Therefore, the nationwide preemption that Plaintff seeks is inappropriate and does not respect individual states' policy choices.

"States, as a matter of tradition and express federal consent, have an important interest in maintaining precise and detailed regulatory schemes for the insurance industry." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 733 (1996) (Kennedy, J., concurring). For that reason, the McCarran-Ferguson Act vests the states with "primary responsibility for regulating the insurance industry." *Hartford Cas. Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419, 426 (7th Cir. 1990); *accord Allstate Ins. Co. v. Mercier*, 913 F.3d 273, 279 (7th Cir. 1990) ("The states regulate insurance companies for the protection of their residents."). And the McCarran-Ferguson Act establishes that where a federal law of general application would "invalidate, impair, or supersede" state insurance law, the federal law is preempted in that state. 15 U.S.C. § 1012(b). Accordingly, federal courts correctly have affirmed the primacy of Illinois law in the past where it conflicts with a federal statute. *E.g. American Deposit Corp. v. Schacht*, 84 F.3d 834, 843 (7th Cir. 1996); *Boozell v. United States*, 979 F. Supp. 670, 676 (N.D. Ill. 1997).

At the same time, the Supreme Court has "reject[ed] any suggestion that Congress intended to cede the field of insurance regulation to the States." *Humana, Inc.*, 525 U.S. at 308-09. Instead, "[w]hen federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any

declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." *Id*. at 310.

In this case, the Rule, consistent with longstanding case law, see *supra* at 2, interprets the FHA as imposing federal liability for insurance practices that, despite lacking any legitimate business justification, have a disproportionately adverse impact "on a group of persons . . . because of race, color, religion, sex, handicap, familial status, or national origin." *See* 24 C.F.R. § 100.500(a). Plaintiff argues that attaching liability to such practices is *per se* barred by the McCarran-Ferguson Act, regardless of the specific contours of any particular state's legal terrain. (Doc. 45 at 26-27). But there are instances in which federal liability for those practices does not "directly conflict with state regulation," "frustrate any declared policy," or "interfere with a State's administrative regime." *See Humana, Inc.*, 525 U.S. at 310. In fact, for a state like Illinois, the Rule bolsters state law. As a result, there is no automatic, across-the-board conflict between disparate impact liability under the FHA and state insurance law.

It may well be that in some states disparate impact liability under the FHA cannot be applied to the insurance industry. But that depends entirely upon individual state policy choices, which by their very nature cannot be adjudicated definitively on a nationwide basis. As a result, Plaintiff's one-size-fits-all challenge to the Rule must fail.

6

I.     **In States Whose Insurance Regulations Are Inconsistent With The Rule, Liability Under The Rule Will Be Preempted.**

Because the McCarran-Ferguson Act provides that a state insurance regulation preempts a federal law of general application if they "directly conflict[]," *Humana, Inc.*, 525 U.S. at 310, the central premise of the *amicus* brief filed by the Oklahoma Insurance Commissioner—that the Rule, "if allowed to stand, will supersede Oklahoma law"—is wrong.  (Doc. 48 at 7, 11, 16).  To the contrary, if there is a direct conflict between the Rule and Oklahoma law (about which Illinois takes no position), that conflict will result in McCarran-Ferguson Act preemption within Oklahoma of disparate impact FHA claims related to insurance.  *See Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 582 (6th Cir. 2013) ("State law can eliminate federal remedies [] when authorized by reverse-preemption clauses, such as the one contained in the McCarran-Ferguson Act.").

Accordingly, the Oklahoma Insurance Commissioner's claim that the Oklahoma Insurance Department "is trying to figure out how it can do its job of regulating the business of insurance in Oklahoma in light of the Rule" is puzzling.  (Doc. 48 at 3).  Nothing about the Rule alters the basic framework of the McCarran-Ferguson Act, and so nothing in the Rule should alter the way in which a state regulates insurance.  In a state that, for its own policy reasons, has chosen to expressly eschew disparate impact liability in the insurance context or that has insurance regulations that are inconsistent with disparate impact liability, those policy choices will reign supreme within its borders, regardless of what federal law

7

provides. *See NAACP*, 978 F.2d at 297 ("If Wisconsin wants to authorize redlining, it need only say so; if it does, any challenge to that practice under the auspices of the Fair Housing Act becomes untenable.").

That is the lesson of the *Ojo v. Farmers Group, Inc.* litigation, which the Insurance Commissioner nevertheless contends "the Court should follow." (Doc. 48 at 8-10). There, the Ninth Circuit initially held that there could be no conflict between Texas law and application of the FHA to insurance practices under a disparate impact theory, 565 F.3d 1175, 1183-89 (9th Cir. 2009), before later holding *en banc* that the dispositive question under the McCarran-Ferguson Act could not be resolved categorically, as it turned on whether Texas law in fact conflicted with FHA liability in that case, 600 F.3d 1205, 1209-10 (9th Cir. 2010) (en banc) (per curiam). The Ninth Circuit therefore certified that question to the Texas Supreme Court, *id.*, which found that there was indeed a conflict. In other words, based on a specific examination of Texas law, the Texas Supreme Court held that the FHA claim was preempted in Texas, and it applied that holding only in Texas. *See Ojo v. Farmers Group, Inc.*, 356 S.W.3d 421, 424-34 (Tex. 2011).

Texas law, like Oklahoma law, is not the law nationwide. And the McCarran-Ferguson Act does not preempt a federal remedy in every state because one state chooses to preempt it. *See Fed. Trade Comm'n v. Travelers Health Ass'n*, 362 U.S. 293, 300 (1960) (explaining that the McCarran-Ferguson Act was not intended to allow a state to "regulate activities carried on beyond its own borders");

8

*see also Page v. Liberty Mut. Fire Ins. Co.*, 869 F. Supp. 596, 599 (N.D. Ill. 1994).

Indeed, the approach to the McCarran-Ferguson Act that is *least* respectful of state

authority over insurance is the one the Oklahoma Insurance Commissioner now

urges: preempting a law nationwide that supports and bolsters one state's law

merely because another state disagrees with it.

Plainly, the better rule as a matter of federalism is the one that permits each

state to determine whether it wants the support of a federal disparate impact

remedy for property insurers when combating housing discrimination and

segregation.  Those that do not need only say so, or to simply enact regulations that

will not allow for it, in which case the Rule will have no effect within that state.  *See*

*NAACP*, 978 F.2d at 297.  That result, which leaves the final decision on this issue

to each state, does not weaken the states' predominance in the field of insurance

regulation.

## II. For States That Impose Disparate Impact Liability On The Insurance Industry, The Rule Will Complement, Rather Than Impair, State Policy.

The McCarran-Ferguson Act does not forbid a state from imposing liability

on insurance companies under a disparate impact theory.  Accordingly, for a state

like Illinois, which imposes disparate impact liability on insurance companies, the

Rule does not "frustrate any declared state policy or interfere with [that] State's

administrative regime."  *See Humana, Inc.*, 525 U.S. at 310.  Instead, the Rule

complements state law.

9

And this is no mere abstract possibility. The Illinois Human Rights Act, which governs housing discrimination in Illinois, *see* 775 ILCS 5/3-102 (2012), authorizes disparate impact claims. *See, e.g.*, *People v. R.L.*, 634 N.E.2d 733, 737 (Ill. 1994); *Peyton v. Dep't of Human Rights*, 700 N.E.2d 451, 456 (Ill. App. Ct. 1998); *Interstate Material Corp. v. Ill. Human Rights Comm'n*, 654 N.E.2d 713, 718 (Ill. App. Ct. 1995); *Bd. Of Trustees of S. Ill. Univ. v. Knight*, 516 N.E.2d 991, 995 (Ill. App. Ct. 1987); *see also Jackson v. Cerpa*, 696 F.Supp.2d 962, 962 (N.D. Ill. 2010). Moreover, Illinois courts often rely upon interpretations of the FHA when considering the scope of the Human Rights Act. *E.g.*, *Szkoda v. Ill. Human Rights Comm'n*, 706 N.E.2d 962, 968 (Ill. App. Ct. 1998); *Atkins v. City of Chicago Comm'n on Human Relations ex rel. Lawrence*, 667 N.E.2d 664, 668 (Ill. App. Ct. 1996); *Turner v. Human Rights Comm'n*, 532 N.E.2d 392, 398 (Ill. App. Ct. 1988). Indeed, the Human Rights Act was enacted *after* the FHA, meaning that the scope of the FHA was part of the background against which the Illinois General Assembly legislated. *See* Pub. Act 81-1267, 1980 Ill. Laws 247 (Section 3-102 of Human Rights Act effective June 30, 1980); Pub. L. 90-284, 82 Stat. 81 (1968) (FHA effective April 11, 1968); *see also Metro. Hous. Dev. Corp.*, 558 F.2d at 1289-90. Accordingly, the fact that the FHA applies to homeowners' insurance indicates that the Human Rights Act has the same reach. 24 C.F.R. § 100.70(d)(4).

Additionally, the Illinois Insurance Code itself prohibits "*any unfair discrimination* between individuals or risks of the same class or of essentially the

10

same hazard and expense element because of race, color, religion, or national origin of such insurance." 215 ILCS 5/424(3) (2012) (emphasis added). Thus, Illinois' policy of combating discrimination through disparate impact liability is accommodated by its insurance law. Indeed, in this regard, Illinois law is markedly different from Oklahoma's insurance law, which expressly defines "unfair discrimination" as only explicit classification based on race, color, creed, or national origin. (Doc. 48 at 10) (citing Okla. Stat. Ann. Tit. 36, § 985).

For a state like Illinois, therefore, the Rule complements state policy. In those states, disparate impact liability has reinforced, and will continue to reinforce, a policy of combating housing discrimination and segregation through a federal private right of action. *Cf. Trafficante v. Metro. Life Ins.*, 409 U.S. 205, 211 (1972) ("[S]ince the enormity of the task of assuring fair housing makes the role of the [United States] Attorney General in the matter minimal, the main generating force must be private suits in which . . . the complainants act not only on their own behalf but also as private attorneys general in vindicating a policy that Congress considered to be of the highest priority."). The practical effect of this dual federal-state remedy is not the frustration of state law, as Plaintiff claims. It is greater enforcement of Illinois' own policy.

It is no answer for Plaintiff to claim that state fair housing laws "are not even relevant" to analysis under the McCarran-Ferguson Act because they "were not enacted for the purpose regulating the business of insurance." (Doc. 45 at 24-25). Of course, a state law of general application, *i.e.* a state law not enacted for the

specific purpose of regulating the business of insurance, will not preempt a conflicting federal remedy, even if that general law applies to insurance. *Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1042-43 (7th Cir. 1998). But that does not mean that the converse is also correct—that a state law of general application has no bearing on whether there is a conflict between a federal statute and a state insurance statute, as Plaintiff argues. (Doc. 45 at 24-25). If the state insurance statute is consistent with or has been harmonized with a state law of general application such that the state insurance statute does not conflict with federal law, the McCarran-Ferguson Act does not require a federal court to turn a blind eye to that reality. *Humana*, 525 U.S. at 312-13 (considering state law as a whole); (Doc. 31 at 27-28); (Doc. 74 at 14-16). To hold otherwise would have the absurd result of requiring federal courts to assume erroneous interpretations of state law when considering whether state and federal laws conflict. *Cf. Dawn Equipment Co. v. Micro-Trak Sys., Inc.*, 186 F.3d 981, 986 (7th Cir. 1999) ("As a court sitting in diversity, we attempt to predict how the [State] Supreme Court would decide the issues presented here.").

At the heart of this case is a dispute as to whether Plaintiff's McCarran-Ferguson Act arguments should be adjudicated on a national basis or in the context of each state's laws. Plaintiff's preference for context-free preemption would have the ironic result of using the McCarran-Ferguson Act to undermine state law in states like Illinois. For that reason, McCarran-Ferguson Act preemption of the Rule

should be considered in the context of specific state laws, which requires case-by-case adjudication.

### III. State Regulatory Authority Over Insurance Is Not Inherently Jeopardized By The Mere Possibility Of Federal FHA Liability.

Plaintiff's central legal theory is that state regulation of insurance is so comprehensive that federal disparate impact liability necessarily will "invalidate, impair, or supersede" state law. 15 U.S.C. § 1012(b). But under the McCarran-Ferguson Act, "the question is not whether the state administrative regime has 'occupied that field.' Instead, the question is whether the [state and federal] regulatory goals are in harmony." *Dehoyos v. Allstate Corp.*, 345 F.3d 290, 299 (5th Cir. 2003) (citing *Humana, Inc.*, 525 U.S. at 308-09). So long as the two policies coincide, state regulatory power is not undermined.

That is the rule of *Humana*, even when accounting for the fact that "[s]tate regulation of insurance is comprehensive and includes rate and coverage issues." *Doe v. Mutual of Omaha*, 179 F.3d 557, 564 (7th Cir. 1999). Plaintiff attempts to avoid this reality by claiming that state regulatory oversight of the rate charged and coverage provided necessarily amounts to state endorsement of every practice used to generate those offerings. (Doc. 45 at 26-27). This claim is inaccurate. States have long varied in how they exercise their regulatory authority over rate-setting. "Currently, there are six different types of rate regulation systems," consisting of "the prior approval, file and use, use and file, flex rating, modified prior approval, and no file methods." Angelo Borselli, *Insurance Rates Regulation in*

13

*Comparison with Open Competition*, 18 Conn. Ins. L.J. 109, 126 (2011). These regulatory approaches range in scrutiny from the "prior approval" system, which requires insurers "to file the rates and wait for the approval by the insurance commissioner before using them," to the "no file system," which provides that "rates do not need to be filed with or approved by the state insurance commissioner." *Id*. at 126-127.

For homeowners insurance, Illinois is a "use and file" state, meaning that "rates must be filed with the insurance commissioner within a specified period of time after their first use." *Id*. at 126; *see* 50 Ill. Admin. Code § 754.40 (homeowners insurance rates must be filed "no later than ten days after their stated effective date"). Once filed, an insurer can use the rate until and unless the Department determines that the rate is inconsistent with Illinois law. As a result, in Illinois, a federal challenge to a rate charged by an insurer does not necessarily constitute a challenge to a rate reviewed and approved by the Illinois Department of Insurance.

Furthermore, states vary in the way they review the methodology for setting insurance rates. For instance, Illinois, like many states, does not require insurers to disclose all of their actuarial judgments and underwriting decisions with the Department of Insurance. *See* Ill. Dep't of Ins., Review Requirements Checklist: Home Owners, http://insurance.illinois.gov/ Prop_Cas_IS3_Checklists/ Homeowners.asp ("A company is not required to file rates . . . for individual Illinois risks which cannot be rated in the normal course of business rating because of special or unusual characteristics and must be rated on the basis of underwriting

14

judgment."). Consequently, many effectively discriminatory judgments made by insurers may not receive any scrutiny from Illinois regulators. Yet those sorts of facially neutral judgments can perpetuate the very discrimination that the Illinois Human Rights Act and the FHA seek to combat.

Plaintiff's claim that any federal law scrutinizing insurance automatically interferes with state regulatory authority over insurance therefore is too simplistic. Rate approval in one state may signify approval of underwriting judgments that would not be passed upon in another state. Regulatory review and approval of insurance rates are not identical across state lines, and so, for this reason too, nationwide McCarran-Ferguson preemption is highly inappropriate.

* * *

Functionally, Plaintiff's claim is that the McCarran-Ferguson Act preempts the field of insurance regulation from any federal interference. But the Supreme Court rejected that view in *Humana.* 525 U.S. at 308-09. Instead, where a federal law and a state's chosen policy are complementary, there is no federal interference with state power. *NAACP*, 978 F.2d at 295 (holding that insurance company "needs to show that the Fair Housing Act conflicts with state law" and "[d]uplication is not conflict"); *see also Saunders v. Farmers Ins. Exchange*, 440 F.3d 940, 946 (8th Cir. 2006) ("*Humana* teaches that the mere fact of overlapping complementary remedies under federal and state law does not constitute impairment for McCarran-Ferguson Act purposes."). And because there is nothing about the Rule that automatically

15

conflicts with state law, nationwide McCarran-Ferguson preeemption is unwarranted.

## CONCLUSION

For the reasons stated above, the State of Illinois as *amicus curiae* urges the Court to grant Defendants' motion to dismiss and/or for summary judgment and to deny Plaintiff's motion for summary judgment.

Dated: June 27, 2014        Respectfully submitted,

                                         LISA MADIGAN
Attorney General
State of Illinois

                                         CAROLYN E. SHAPIRO
Solicitor General

                                         CLIFFORD W. BERLOW
Assistant Attorney General

                                         /s/ *Stephen M. Soltanzadeh*
STEPHEN M. SOLTANZADEH
Assistant Attorney General
100 W. Randolph St., 12th Floor
Chicago, IL 60601
(312) 814-2127

                                           Attorneys for *Amicus Curiae* the State of Illinois.

16