# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, <br><br>  Plaintiff, <br><br>  v. <br><br> SHAUN DONOVAN, in his official capacity as Secretary of Housing and Urban Development, and the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT <br><br>  Defendants. | Case No. 13-cv-08564 <br><br> Judge Amy J. St. Eve <br><br> Magistrate Judge Susan E. Cox |

*AMICI CURIAE* **BRIEF OF THE AMERICAN FINANCIAL SERVICES ASSOCIATION, THE CONSUMER MORTGAGE COALITION, THE INDEPENDENT COMMUNITY BANKERS OF AMERICA®, AND THE MORTGAGE BANKERS ASSOCIATION IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Paul F. Hancock (*pro hac vice*)
K&L GATES LLP
Southeast Financial Center, Suite 3900
200 South Biscayne Boulevard
Miami, FL 33131-2399
(305) 539-3300
paul.hancock@klgates.com

Andrew C. Glass (*pro hac vice*)
Roger L. Smerage (*pro hac vice*)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100
andrew.glass@klgates.com
roger.smerage@klgates.com

Todd E. Pentecost (Bar No. 6270419)
K&L GATES LLP
70 West Madison Street
Suite 3100
Chicago, IL 60602-4207
(312) 372-1121
Todd.Pentecost@klgates.com

*Counsel for Amici Curiae*

The American Financial Services Association ("AFSA"), the Consumer Mortgage Coalition ("CMC"), the Independent Community Bankers of America® ("ICBA"), and the Mortgage Bankers Association ("MBA") (collectively, "*amici*") respectfully submit this brief as *amici curiae* in support of plaintiff's motion for summary judgment.[1]

- AFSA is a national trade association for providers of financial services to consumers, including residential mortgage loans. AFSA seeks to promote responsible, ethical lending to informed borrowers and to improve and protect consumers' access to credit.

- CMC is a national trade association comprised of residential mortgage lenders, servicers, and service providers. CMC was formed in 1995 to pursue reform of the mortgage origination process, and its members participate in every stage of the home financing process.

- The ICBA, a national trade association, is the nation's voice for nearly 7,000 community banks of all sizes and charter types. ICBA member community banks seek to improve cities and towns by using local dollars to help families purchase homes and are actively engaged in the business of residential mortgage lending in the communities that they serve.

- The MBA is the national association representing the real estate finance industry, an industry that employs more than 280,000 people in virtually every community in the country. Headquartered in Washington, D.C., the association works to ensure the continued strength of the nation's residential and commercial real estate markets, to expand homeownership, and to extend access to affordable housing to all Americans. Its membership of over 2,200 companies includes all elements of real estate finance, including mortgage companies, mortgage brokers, commercial banks, thrifts, Wall Street conduits, and life insurance companies.

*Amici* believe that in considering plaintiff's motion for summary judgment, the Court would find it of valuable assistance to review the analysis that *amici* presented in a brief that they recently submitted to the United States Supreme Court in the matter styled *Township of Mount Holly v. Mt. Holly Gardens Citizens in Action, Inc.*, No. 11-1507. Notwithstanding the fact that

---

[1] No counsel for any party authored this brief in whole or in part, and no counsel for any party made a monetary contribution intended to fund the preparation or submission of this brief. No person or entity other than *amici curiae*, their respective members, and their counsel made a monetary contribution intended to fund the preparation or submission of this brief.

the Supreme Court had granted certiorari in *Mount Holly* and in a similar case raising the same issue the term before, the cases were settled before the Supreme Court could rule on them. Nonetheless, the points raised in the amici's *Mount Holly* brief are highly relevant to the instant case and highly important to the *amici* and their members.

*Amici*'s members are subject to Section 805 of the Fair Housing Act (the "Act"), which prohibits discrimination in residential real estate-related transactions. 42 U.S.C. § 3605. *Amici* and their members vigorously support the Act and strongly oppose discrimination "because of race, color, religion, sex, handicap, familial status, or national origin" in any aspect of mortgage lending. *Id.* At the same time, *amici* have serious concerns that recognition of a disparate-impact theory of liability under the Fair Housing Act, as asserted by the United States Department of Housing and Urban Development ("HUD") in the Rule at issue, would allow challenges to legitimate business practices that themselves raise no inference of unlawful discrimination. *See* 24 C.F.R. §100.500. As Congress intended, the focus of the Act is to ensure the fairness of the processes governed by the Act rather than the outcomes of otherwise fair and non-discriminatory processes. *Amici* and their members have an interest in the disposition of this case, as plaintiff's challenge to the HUD's Rule raises issues that *amici*'s members face with respect to compliance with the Fair Housing Act and HUD's Rule implementing it.

As explained in scholarly literature on the subject,[2] *amici* assert that nothing in the plain language of Section 804 or Section 805 of the Act, 42 U.S.C. §§ 3604–05, authorizes a disparate-impact theory of liability. Rather, the statute requires proof of discriminatory intent. Thus, *amici* emphasize that the use of the disparate-impact theory, in contravention of the statutory

---

[2] *See, e.g.,* P. Cubita & M. Hartmann, *The ECOA Discrimination Proscription and Disparate Impact – Interpreting the Meaning of the Words That Actually Are There*, 61 Bus. Law. 829 (Feb. 2006).

language, has deleterious effects on the residential mortgage lending industry. Sensible, risk-based credit standards – from basic minimum down payment and credit score requirements to more complex interactive risk attributes – are highly predictive of applicants' ability to repay debt. They may also yield lending outcomes across racial and ethnic groups that are disproportionate to their share of the population. These differential outcomes may form the basis for disparate-impact claims, even when all applicants were treated fairly and uniformly, and without any consideration of racial or other protected characteristics.

National data reveal that virtually any lender could face disparate-impact claims simply for implementing sensible, risk-based lending decisions. Indeed, mortgage lenders have already faced an onslaught of claims with no assertion that any consumer was treated differently *because of* race or ethnicity. These claims include challenges to basic underwriting criteria and to the standard business practice of allowing employees the discretion in pricing a loan to match a competitor's offer to a consumer. Newly-imposed restrictions on the lending industry as a result of the financial crisis only exacerbate the problems of the disparate-impact theory of liability. As a result of the government directives, credit standards have tightened, with clear racial and ethnic consequences, increasing the risk of disparate-impact challenges arising from complying with the new standards or from not offering products with less stringent requirements. Under a disparate-impact theory, lenders would face the double bind of incurring increased litigation risk simply by complying with government regulations and sensible lending standards. Recognition of the disparate-impact legal theory embodied in HUD's Rule does not advance *fair* housing or lending and may place lenders in an impossible situation where there is no choice that would avoid legal challenges.

For these reasons, and for those plaintiff sets forth in its memorandum in support of the motion for summary judgment (Dkt. No. 21), *amici* agree that HUD failed to consider and address the Rule's effect on business entities such as the residential mortgage lending industry. Accordingly, *amici* believe that in considering plaintiff's motion for summary judgment, the Court would find it of valuable assistance to review the analysis that *amici* presented to the United States Supreme Court in *Township of Mount Holly v. Mt. Holly Gardens Citizens in Action, Inc.*, No. 11-1507, which brief *amici* incorporate by reference herein and attach for the Court's convenience as Appendix A hereto.[3]

---

[3] The brief is also available at http://sblog.s3.amazonaws.com/wp-content/uploads/2013/09/BOS-3356187-v1-Mt__Holly__AS_FILED_Merits_Amicus_Brief_of_AFSA__CMC__ICBA__and_MBA.pdf.

Respectfully submitted,

*/s/ Roger L. Smerage*

Todd E. Pentecost (Bar No. 6270419)
K&L GATES LLP
70 West Madison Street
Suite 3100
Chicago, IL 60602-4207
(312) 372-1121
Todd.Pentecost@klgates.com

Paul F. Hancock (*pro hac vice*)
K&L GATES LLP
Southeast Financial Center, Suite 3900
200 South Biscayne Boulevard
Miami, FL 33131-2399
(305) 539-3300
paul.hancock@klgates.com

Andrew C. Glass (*pro hac vice*)
Roger L. Smerage (*pro hac vice*)
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, MA 02111
(617) 261-3100
andrew.glass@klgates.com
roger.smerage@klgates.com

*Counsel for Amici Curiae*

Dated: June 30, 2014

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of June, 2014, I caused the foregoing document entitled *Amici Curiae* Brief in Support of Plaintiff's Motion for Summary Judgment to be filed via the Court's CM/ECF system, which shall send notice to the following counsel of record for the parties:

Randolph D. Moss
Seth P. Waxman
Brian M. Boynton
Lynn Eisenberg
Matthew J. Tokson
Wilmer Cutler Pickering Hale and Dorr LLP
1875 Pennsylvania Ave., N.W.
Washington, DC 20006

Rowe W. Snider
Ashlee Marie Knuckey
Locke Lord LLP
111 South Wacker Drive
Chicago, IL 60606

Kyle R. Freeny
U.S. Department of Justice
Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC 20530

Daniel P. Mosteller
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-00001

AUSA
United States Attorney's Office (NDIL)
219 South Dearborn Street, Suite 500
Chicago, IL 60604

                                                */s/ Roger L. Smerage*_____
                                                Roger L. Smerage