IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-08564 |
| v. | ) ) | Judge Amy J. St. Eve |
| SHAUN DONOVAN, in his official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO THE BRIEF OF THE
STATE OF ILLINOIS AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS**

PCI has demonstrated that HUD's decision to apply its Disparate Impact Rule to homeowners insurance violates the McCarran-Ferguson Act and the Administrative Procedure Act. The *amicus curiae* brief filed by the State of Illinois (Dkt. No. 80) provides no basis to question that conclusion. Illinois does not dispute that PCI has standing to bring this suit, and it offers no reason for this Court to withhold review. On the merits, Illinois argues that the Disparate Impact Rule is consistent with Illinois law. Illinois, however, can cite no legal authority for that surprising assertion. At bottom, its brief reflects only the public housing policy preferences of its authors, not an authoritative description of the actual content of Illinois insurance law. Illinois contends that PCI is bringing a "field preemption" challenge to the Rule, but that is incorrect. PCI has explained why application of the Rule to homeowners insurance is fundamentally inconsistent with risk-based actuarially sound pricing and underwriting, and PCI has demonstrated that the Rule actually conflicts with the common elements of specific state insurance regulations in every state, including those which specifically require or authorize

actuarial risk-based pricing. Moreover, Illinois cannot explain how application of the Rule to insurance can be squared with the Seventh Circuit's decision in *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557, 564 (7th Cir. 1999), which made clear that, under the McCarran-Ferguson Act, federal courts applying federal statutes cannot be asked to pass judgment on whether challenged insurance practices are actuarially justified or consistent with state law.

I.  ILLINOIS DOES NOT CHALLENGE PCI'S STANDING AND RAISES NO VALID GROUND FOR WITHHOLDING REVIEW

Illinois does not challenge PCI's standing to bring this action, and it offers no persuasive reason why this Court should withhold review of PCI's purely legal challenge. Like HUD in its final brief (*see* Dkt. No. 74 at 1-2), Illinois does not contest that PCI has demonstrated that its members are injured. Moreover, Illinois does not dispute that the injury to PCI's members is traceable to the Rule. Illinois suggests in passing (at 7) that relief from this Court is not necessary, even if HUD's Disparate Impact Rule conflicts with state insurance laws, because "[n]othing about the Rule alters the basic framework of the McCarran-Ferguson Act." Illinois's theory seems to be that there is no need for this Court to declare the Rule preempted, even if it conflicts with a state's laws, because the Rule will automatically "have no effect within that state." Dkt. 80 at 9. There is no legal support for such an approach.

PCI and its members are entitled to a judicial determination that application of the Rule to insurance is invalid to the extent it conflicts with state law regulating the business of insurance. Absent relief from this Court, the Rule will impose irreconcilable obligations on homeowners insurers under federal and state law, placing them in an entirely untenable position of regulatory uncertainty and subjecting them to potentially severe liability. In these circumstances, insurers are entitled to review. *See, e.g.*, *Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 586-87 (7th Cir. 2011) (businesses would be

affected by a new regulation because it would threaten to impose costly sanctions on companies that failed to comply); *Chamber of Commerce of U.S. v. Reich*, 57 F.3d 1099, 1101 (D.C. Cir. 1995) (per curiam) (businesses were harmed by a new rule because they were forced to choose "between taking immediate action to their detriment and risking substantial future penalties for non-compliance"); *Nat'l Mining Ass'n v. U.S. Dep't of Interior*, 70 F.3d 1345, 1349 (D.C. Cir. 1995) (regulated entities were "caught in the regulatory crossfire between state and federal authorities").

## II. HUD'S DISPARATE IMPACT RULE CONFLICTS WITH ILLINOIS INSURANCE LAW

Illinois appears to suggest—for the first time, as far as PCI is aware—that Illinois law forbids the use of actuarially sound insurance risk factors if they have a disparate impact on a protected group. Dkt. 80 at 9-13. HUD itself did not make this argument in its briefs or the underlying Rule. And Illinois can point to no support for the argument in its statutes, regulations, or case law. In contrast to the Rule, Illinois insurance law applicable to homeowners insurance defines unfair discrimination as discrimination between "individuals or risks *of the same class or of essentially the same hazard and expense element* because of the race, color, religion, or national origin of such insurance risks or applicants." 215 Ill. Comp. Stat. 5/424(3) (emphasis added). The plain language of this statute provides that insurers may not discriminate between persons within *the same* insurance risk classification. It allows insurers to make distinctions between individuals who pose *different* risks. *Id.*; *see generally* PCI Mem. ISO Summ. J., Dkt. No. 21 at 5-7, 20-23. Illinois's contrary interpretation of 215 Ill. Comp. Stat. 5/424(3) is untenable. It disregards the phrase "between individuals or risks of the same class or of essentially the same hazard and expense element." In section 424(3), as well as sections 425 through 427, Illinois has exhaustively proscribed what constitutes unfair discrimination by

insurers and the methods by which the Illinois Director of Insurance may investigate and take action against any insurer who may be violating section 424(3).[1] *See Camarena v. Safeway Ins. Co.*, No. 00 C 5826, 2002 WL 472245, at *5-7 (N.D. Ill. 2002) (relying on *Humana* and *Mutual of Omaha* and holding that a federal discrimination claim that would require the court to examine the rates the insurer charged plaintiff and compare those to other rates would be "barred by the McCarran-Ferguson Act" because "it necessarily causes federal courts to decide whether an insurance policy is actuarially sound and consistent with state law, thereby stepping on the toes of state insurance commissioners"). And Section 424(3) directly conflicts with HUD's Disparate Impact Rule, which would impose prima facie liability on insurers for disparate impacts that result from classifying insureds on the basis of risk.[2]

Nothing in the Illinois Human Rights Act repeals or rewrites 215 Ill. Comp. Stat. 5/424(3). Illinois points to no provision of the Human Rights Act imposing disparate impact liability on homeowners insurers. Nor does Illinois identify a single case where a party attempted to sue an insurer under a disparate impact theory under the Illinois Human Rights Act.

---

[1] The Illinois statutes in question were specifically enacted as an exercise of state power contemplated by the McCarran-Ferguson Act. *See* 215 Ill. Comp. Stat. 5/421 ("The purpose of this article is to regulate trade practices in the business of insurance in accordance with the intent of Congress as expressed in the [McCarran-Ferguson Act], by defining, or providing for the determination of, all such practices in this State which constitute unfair methods of competition or unfair or deceptive acts or practices and by prohibiting the trade practices so defined or determined.").

[2] In its opening brief and Appendix, PCI also cited Illinois Admin. Code tit. 50, § 2603.40. *See* Dkt. 21 at 8 & Appendix A. That section permits providers of life, accident, and health insurance to differentiate between customers "on the basis of sex, sexual preference or marital status" if "such classification or differentiation is based upon expected claim costs and expenses derived by applying sound actuarial principles to relevant and reasonably current company or intercompany studies, claim costs and expense experience." To be clear, section 2603.40 does not itself apply to homeowners insurance. But it is nonetheless instructive, especially in conjunction with 215 Ill. Comp. Stat. 5/424(3). While not in direct conflict with the Rule due to its limited scope, section 2603.40 aligns with the proper construction of 215 Ill. Comp. Stat. 5/424(3) and further reinforces the degree to which Illinois insurance law permits reliance on actuarially justified risk factors.

-4-

None of the disparate-impact cases cited by Illinois even involved housing disputes, much less claims against homeowners insurers. *See* Dkt. 80 at 10. Thus, there does not appear to be any tension between the Illinois Human Rights Act and 215 Ill. Comp. Stat. 5/424(3). There is certainly no direct conflict between the two statutes. And even if there were a conflict, 215 Ill. Comp. Stat. 5/424(3) would prevail. The relevant provision in the Illinois Human Rights Act was passed *before* 215 Ill. Comp. Stat. 5/424(3). *See* P.A. 81-1267 (1980); P.A. 92-399, § 424 (2001). If the statutes conflicted, the later-enacted statute would trump the earlier-enacted one. *Jahn v. Troy Fire Prot. Dist.*, 163 Ill. 2d 275, 282 (1994). Moreover, "where there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail." *Hernon v. E.W. Corrigan Const. Co.*, 149 Ill. 2d 190, 195 (1992) (internal quotation marks and alteration omitted). In this case, the Illinois Insurance Code section governing "unfair discrimination" specific to insurance companies would trump the general discrimination laws set forth in the Illinois Human Rights Act, which are applicable to all entities.

In sum, there is no support for interpreting 215 Ill. Comp. Stat. 5/424(3) to apply disparate impact liability against insurers that use actuarially justified risk factors to classify individuals on the basis of risk. Illinois's Attorney General cannot rewrite state statutes by filing an *amicus* brief expressing certain policy preferences. Only the repeal or revision of 215 Ill. Comp. Stat. 5/424(3) could eliminate the conflict between Illinois's insurance laws and HUD's Rule.

### III. PCI HAS SHOWN THAT HUD'S DISPARATE IMPACT RULE CONFLICTS WITH STATE REGULATION OF INSURANCE IN EVERY STATE

Illinois contends that PCI's position is "that the McCarran-Ferguson Act preempts *the field* of insurance regulation from any federal interference," even absent a conflict between state

and federal law. Dkt. 80 at 15 (emphasis added). That is not correct. PCI is not claiming that "any federal law scrutinizing insurance automatically interferes with state regulatory authority over insurance." *Id.* Rather, PCI has demonstrated that the Rule actually conflicts with the common elements of specific state insurance regulations in every state, including those which specifically require or authorize actuarial risk-based pricing.. *See* PCI Mem. ISO Summ. J., Dkt. No. 21 at 20-25 & Appendix A; PCI Opp. & Reply, Dkt. No. 44 at 22-26. PCI's briefs and statutory Appendix lay out this conflict in detail. Illinois does not dispute that application of HUD's Rule to insurance conflicts with the laws of the other 49 states. *See, e.g.*, Dkt. 80 at 7 ("tak[ing] no position" on whether the Rule conflicts with Oklahoma law). And, as explained above, there is no support for Illinois's contention that the Rule does not conflict with Illinois law.

PCI has also demonstrated that, under Seventh Circuit precedent, the Disparate Impact Rule is preempted because it would largely displace the regulation of insurance rate-setting and underwriting into the federal courts, which "obviously would interfere with the administration of state law." *Mutual of Omaha*, 179 F.3d at 564. Like HUD, Illinois has no meaningful response to this point. The Disparate Impact Rule requires insurers to prove in federal court that any insurance practice with a disparate impact is actuarially sound—that it is "necessary to achieve [insurers'] substantial, legitimate, nondiscriminatory interests." 24 C.F.R. § 100.500(b); *see also* Defs. Mem. ISO Mot. to Dismiss, Dkt. No. 31 at 10, 12, 18-19, 33, 34, 36 (stating that insurers will defend their practices in federal court under the Rule's business justification defense); ACLU *Amicus* Br. ISO Defs., Dkt. No. 33 at 16 (noting that the Rule requires federal courts to "distinguish[] between those aspects of the insurance business that are based on legitimate actuarial considerations and those that are not."). But the Seventh Circuit in *Mutual of Omaha*

made clear that the McCarran-Ferguson Act prohibits that result. *See* 179 F.3d at 563-64. The Seventh Circuit explained that "[s]tate regulation of insurance is comprehensive and includes rate and coverage issues, so if federal courts are now to determine whether [particular insurance practices] are actuarially sound and consistent with principles of state law they will be stepping on the toes of state insurance commissioners." *Id.* (citation omitted). Illinois cites *Mutual of Omaha* but makes no attempt to reconcile its position with that decision. *See* Dkt. 80 at 13.

Contrary to Illinois's assertion, PCI has not argued that every state's procedure for reviewing insurance rates is "identical." Dkt. 80 at 15. PCI has shown that the vast majority of states provide mechanisms for regulators to review and/or approve filed insurance rates. *See* PCI Mem. ISO Summ. J., Dkt. No. 21, Appendix A (omitting Illinois from the list of states with substantial oversight of filed rates); PCI Opp. & Reply, Dkt. No. 44 at 26. These state laws differ, but all of them provide for some form of rate approval, rate review, investigation of compliance with rate-setting laws, or other procedures for state administrators to approve insurance rates. *Id.* HUD's Rule would inevitably undermine state approvals of insurance rates by subjecting all insurers in a state to potential federal liability for their rate-setting practices. Moreover, even in the few states that do not approve rates, the Rule still violates McCarran-Ferguson, either because the state's insurance laws permit or require actuarial risk-based pricing or because federal courts would be required under the Rule to determine whether challenged insurance practices "are actuarially sound and consistent with principles of state law," which is sufficient basis alone to find a McCarran-prohibited conflict between the Rule and state insurance regulation. *See Mutual of Omaha*, 179 F.3d at 564.

Notably, Illinois does not defend any of the procedural shortcomings in HUD's rulemaking. At a minimum, HUD's failure to consider the numerous ways in which its Rule

conflicts with state insurance regulation was improper under the Administrative Procedure Act. Even if Illinois's laws could be construed to prohibit risk-based insurance practices that have a disparate impact (which Illinois has not shown), it was arbitrary and capricious for HUD to issue a Rule that sharply conflicts with the laws of nearly every state without acknowledging that it was doing so. Rather than address the conflict between the Rule and state law, HUD claimed that the McCarran-Ferguson Act applies only to courts, not federal agencies: "McCarran-Ferguson does not preclude HUD from issuing regulations that may apply to insurance policies. Rather, McCarran-Ferguson instructs *courts* on how to construe federal statutes, including the Act." 78 Fed. Reg. 11460, 11475 (Feb. 15, 2013) (A.R. 627) (emphasis added). This was both incorrect and wholly insufficient. *See, e.g.*, *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986); *Wabash Valley Power Ass'n v. Rural Electrification Admin.*, 988 F.2d 1480, 1491 (7th Cir. 1993); PCI Mem. ISO Summ. J., Dkt. No. 21 at 26-28.

\* \* \*

Illinois's *amicus curiae* brief thus fails to call into question PCI's demonstration that HUD's application of the Disparate Impact Rule to homeowners insurance violates the McCarran Ferguson Act and the Administrative Procedure Act.

Dated: July 9, 2014

        Respectfully submitted,

        By: /s/ Seth P. Waxman
        _____

        Seth P. Waxman (*pro hac vice*)
        Brian M. Boynton (*pro hac vice*)
        Matthew J. Tokson (*pro hac vice*)
        Lynn Eisenberg (*pro hac vice*)
        WILMER CUTLER PICKERING HALE AND DORR LLP
        1875 Pennsylvania Avenue, NW
        Washington, DC 20006

Tel.: (202) 663-6000
Fax: (202) 663-6363
E-mail: seth.waxman@wilmerhale.com

Rowe W. Snider (# 03125194)
Ashlee M. Knuckey (# 6300237)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Tel.: (312) 443-0700
Fax: (312) 896-0336
Email: rsnider@lockelord.com

*Attorneys for Plaintiff*

-9-

**CERTIFICATE OF SERVICE**

      I hereby certify that, on July 9, 2014, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

    /s/ Seth P. Waxman
Seth P. Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: seth.waxman@wilmerhale.com