IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-08564 |
| v. | ) ) | Judge Amy J. St. Eve |
| SHAUN DONOVAN, in his official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) | |

**PLAINTIFF'S SUPPLEMENTAL POST-ARGUMENT BRIEF**

Plaintiff Property Casualty Insurers Association of America ("PCI") respectfully submits this supplemental brief pursuant to the Court's August 22, 2014 Order directing the parties to address "(1) whether Plaintiff's challenge to the Disparate Impact Rule as violating the McCarran-Ferguson Act constitutes a facial or as-applied challenge to the Rule, and (2) if it is a facial challenge, whether *Reno v. Flores*, 507 U.S. 292 (1993), provides the applicable test for judging the Rule's validity." (Dkt. No. 95.) As explained below, this case does not raise a facial challenge to HUD's Disparate Impact Rule, and in any event, *Reno v. Flores* does not provide the applicable test for addressing a facial challenge to a regulation.

**I.  PCI'S CHALLENGE TO THE APPLICATION OF HUD'S RULE TO RISK-BASED PRICING AND UNDERWRITING OF HOMEOWNERS INSURANCE IS NOT A FACIAL CHALLENGE**

PCI has not brought a facial challenge to HUD's Disparate Impact Rule. To the contrary, PCI has challenged the application of that Rule to only a tiny fraction of the activities it covers: risk-based pricing and underwriting of homeowners insurance.

A facial challenge is one that seeks the invalidation of an entire statute or regulation. *See, e.g.*, *Brown v. Entertainment Merchs. Ass'n*, 131 S. Ct. 2729 (2011) (striking down California statute prohibiting sale of violent video games to minors as facially unconstitutional). That is plainly not the type of challenge PCI has asserted in this case. PCI does not seek to vacate the Rule in its entirety or even to challenge the Rule's application to the vast majority of the housing practices to which it applies. If PCI prevails, HUD's Rule will remain valid and will govern a huge swath of housing practices and actors.[1] The Rule will continue to apply to home sellers, landlords, sublessors, condo boards, lendors, real estate agents, house-listing services, and numerous other categories of entities involved in the housing market. *See, e.g.*, 24 C.F.R. § 100.50 *et seq.* It will continue to cover a wide variety of housing practices, such as the sale, rental, and advertising of dwellings; it will continue to prohibit practices such as intimidation or deception of prospective purchasers, restricting the list of options presented to prospective purchasers, and enacting land-use rules that might discourage prospective purchasers; and it will continue to regulate numerous other practices and actions. *Id.*

PCI's challenge is only to the *application* of HUD's Disparate Impact Rule to risk-based pricing and underwriting of homeowners insurance.[2] This type of challenge, directed toward only one application out of many and not seeking to have the regulation struck down, is an "as-applied" challenge, not a facial challenge. The fact that PCI has brought a pre-enforcement suit does not render its objection to one particular subset of applications of the Rule a facial challenge. Indeed, the Seventh Circuit has dealt with pre-enforcement challenges to categories

---

[1] In contrast, a facial challenge to the Rule in every application is pending in the United States District Court for the District of Columbia. *See American Ins. Ass'n v. United States Dep't of Hous. & Urban Dev.*, No. 13-cv-966 (D.D.C.).

[2] As explained in its reply brief, PCI does not concede that the Rule extends beyond pricing and underwriting to other insurance practices. (*See* PCI Opp. & Reply Dkt. No. 44 at 22 n.11.)

of applications and termed such challenges "as applied." *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 586-588 (7th Cir. 2012) (pre-enforcement challenge to Illinois eavesdropping statute as applied to audiovisual recordings of police officers performing their duties in public places).

## II. EVEN IF THIS WERE A FACIAL CHALLENGE, *RENO v. FLORES* WOULD NOT PROVIDE THE APPLICABLE STANDARD

Even if PCI's challenge were deemed "facial," the "no set of circumstances" standard referenced in *Reno v. Flores* would not apply. Rather, the relevant standard is whether a challenged statute or regulation is unlawful in a "large fraction" of cases, *see*, *e.g.*, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 895 (1992), or instead has a "plainly legitimate sweep," *see Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008). Here, application of the Rule to risk-based pricing and underwriting would have no plainly legitimate sweep.

### A. The "No Set of Circumstances" Language Is Dicta

In *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court suggested that a plaintiff challenging a statute or regulation on its face must establish that there exists "no set of circumstances" in which the statute or regulation would be valid. *See id.* at 745. That language was dicta. The Court in that case rejected a substantive due process attack on the Bail Reform Act. It noted that the "fact that the Bail Reform Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.* This appears to be the intended meaning of the "no set of circumstances" language, which immediately preceded this sentence and was unaccompanied by any citation. In other words, a regulation cannot be declared facially invalid and struck down just because it might be unlawful in a narrow set of circumstances or as applied to a narrow set of parties. *Id.*

3

The "no set of circumstances" language played no role in the Court's reasoning or decision in *Salerno*. The Court did not look for one set of circumstances where the Bail Reform Act was lawful and then declare the statute valid. Rather, the Court thoroughly analyzed and rejected the plaintiffs' substantive due process challenge as a whole and thus determined that the challenged statute was legitimate. *Id.* at 747-48; *see generally* Michael C. Dorf, *Facial Challenges to State and Federal Statutes*, 46 Stan. L. Rev. 235, 239-42 (conducting a detailed analysis of *Salerno* and finding "no apparent link" between its dicta and the actual decision).

In *Reno v. Flores*, the Supreme Court reiterated the "no set of circumstances" dicta from *Salerno*. *See* 507 U.S. at 301. But, as in *Salerno*, the Court did not actually purport to apply such a standard. Rather, the Court conducted a detailed substantive due process examination and rejected plaintiffs' challenge as a whole. *See id.* at 302-306. Here too, the "no set of circumstances" language was thus nonbinding dicta.

Indeed, the Supreme Court has expressly acknowledged that the standard to be applied to facial challenges is unresolved. *United States v. Stevens*, 559 U.S. 460, 472 (2010). The Seventh Circuit has recognized the same uncertainty. *Mann v. Calumet City, Ill.*, 588 F.3d 949, 951 (7th Cir. 2009).

**B.     The Supreme Court Does Not Apply The *Reno/Salerno* Dicta**

Courts and commentators have recognized that the Supreme Court does not itself follow the *Reno/Salerno* dicta and that the dicta does not determine case outcomes. The Seventh Circuit first recognized this fifteen years ago in *Karlin v. Foust*, 188 F.3d 446, 483 (7th Cir. 1999). The panel noted that the Supreme Court had abandoned the *Reno/Salerno* dicta in *Casey*, which ruled that a law was invalid if it unlawfully burdens abortion in a "large fraction of the cases in which [it] is relevant." 505 U.S. at 895; *see also Stenberg v. Carhart*, 530 U.S. 914 (2000) (finding a

4

statute unlawful in a pre-enforcement challenge without applying the *Salerno* dicta). A later Seventh Circuit opinion by Judge Easterbrook rejected the *Salerno* standard outright, after noting that it was *dicta*. *A Woman's Choice-E. Side Women's Clinic v. Newman*, 305 F.3d 684, 687 (7th Cir. 2002) (citing *Troxel v. Granville*, 530 U.S. 57, 85 n. 6 (2000), which characterized the *Salerno* standard as a "suggest[ion]").[3]

The Supreme Court has recognized its own refusal to decide cases based upon the *Reno/Salerno* dicta. For example, *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999) (plurality opinion of Justice Stevens), notes that "[t]o the extent we have consistently articulated a clear standard for facial challenges, it is not the *Salerno* formulation, which has never been the decisive factor in any decision of this Court, including *Salerno* itself (even though the defendants in that case did not claim that the statute was unconstitutional as applied to them, *see id.* at 745, n. 3, the Court nevertheless entertained their facial challenge)."

Commentators have also noted that the Supreme Court routinely hears and grants facial challenges without applying the *Reno/Salerno* dicta. For example, in the years following *Salerno* and *Reno*, the Court has struck down statutes based on facial challenges under the Qualifications Clause, the Presentment Clause, the Suspension Clause, the Commerce Clause, the Import-Export Clause, Article II and Article III separation of powers, the Privileges and Immunities Clause, and the Fifth and Fourteenth Amendments—all without applying the *Reno/Salerno* dicta. Richard H. Fallon, Jr., *Fact and Fiction About Facial Challenges*, 99 Cal.

---

[3] A later Seventh Circuit panel repeated the *Reno/Salerno* dicta. *See Home Builders Ass'n of Greater Chicago Area v. U.S. Army Corp. of Eng'rs*, 335 F.3d 607 (7th Cir. 2003). But this citation was itself dicta—the panel did not apply the *Reno/Salerno* standard but instead found that a challenged agreement between an agency and local authorities was lawful because a regulation specifically authorized agencies to coordinate with local authorities. *Id.* at 620. Moreover, an earlier Seventh Circuit panel had rejected the *Salerno* standard, *Newman*, 305 F.3d at 687, and one panel cannot overturn another, especially in dicta.

L. Rev. 915, 935-940 (2011) (listing cases). Especially relevant here, the Supreme Court has found statutes and regulations preempted and thus wholly unenforceable under the Supremacy Clause without applying the *Reno/Salerno* dicta. *Id.* at 936; *see, e.g.*, *Haywood v. Drown*, 556 U.S. 729 (2009); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525 (2001). Indeed, a study of Supreme Court decisions following *Salerno* found that the Court continued to hear and approve facial challenges at a high rate. Fallon, 99 Cal. L. Rev. at 941-42.

### C. The Appropriate Inquiry Is Whether HUD's Regulation Has A "Plainly Legitimate Sweep"

Rather than apply the "no set of circumstances" dicta, the Supreme Court adjudicates facial challenges by declaring a law invalid when the law is unlawful in a "large fraction" of cases. *See, e.g.*, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 895 (1992). Or, put another way, the Court assesses whether a challenged statute or regulation has a "plainly legitimate sweep." *Stevens*, 559 U.S. at 472. Courts have implicitly applied this standard in numerous cases, *see supra* Part II.B, and have expressly applied it in several more, *see, e.g.*, *Washington State Grange*; 552 U.S. at 449; *Casey*, 505 U.S. at 895; *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 202 (2008) (plurality); *Washington v. Glucksburg*, 521 U.S. 702, 740 n.7 (1997) (J. Stevens, concurring in the judgment); *Newman*, 305 F.3d at 687; *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 961-62 (9th Cir. 2014); *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 415 (2d Cir. 2013); *United States v. Comstock*, 627 F.3d 513, 518-19 (4th Cir. 2010); *General Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010).

### D. If Taken Literally, The *Reno/Salerno* Dicta Would Lead To Nonsensical And Unjust Rulings

Taken literally, the *Reno/Salerno* dicta would mean that a statute or regulation that is unlawful in 99.9% of circumstances could not be facially challenged, because there would exist

6

some set of circumstances where it would be lawful. For example, suppose a State enacted a statute that "no person in this state may bear arms." This statute would be patently unconstitutional. But there are numerous sets of circumstances under which the statute would be valid—it would be valid as applied to felons, minors, and the mentally ill, and valid as to areas such as schools and government buildings. Faced with such a case, there is no doubt that a court would strike the law down. *See District of Columbia v. Heller*, 554 U.S. 570, 635 (2008) (striking down the District of Columbia's ban on handgun possession).

Similarly, in this case, even if HUD could show that its Rule could be lawfully applied to risk-based pricing and underwriting in some extremely narrow set of circumstances, application of the Rule to risk-based pricing and underwriting generally would still be unlawful because in the vast majority of cases, applying the Rule to risk-based pricing and underwriting would violate the McCarran-Ferguson Act. (*See* PCI Br. Summ. J. Dkt. No. 21 at § I.B, I.C, I.D., App. A; Mot. Add'l Auth. Dkt. No. 94.) Application of the Rule to risk-based pricing and underwriting has no plainly legitimate sweep.

### III. PCI WOULD PREVAIL EVEN IF THE "NO SET OF CIRCUMSTANCES" STANDARD APPLIED

In any event, PCI would prevail even if the "no set of circumstances" standard applied to its McCarran-Ferguson Act challenge to the application of the Rule to risk-based pricing and underwriting of homeowners insurance.

*First*, for the reasons set forth in PCI's previously filed briefs, application of the Rule to risk-based pricing and underwriting would violate the McCarran-Ferguson Act in every case. The Court of Appeals made clear in *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 564 (7th Cir. 1999), that the McCarran-Ferguson Act precludes federal courts from being called upon to review and evaluate whether challenged insurance practices are actuarially sound and in

compliance with state insurance regulation. But that is exactly what HUD's Rule would require in any case challenging risk-based pricing and underwriting. The insurance laws of every state, moreover, conflict with the application of disparate impact to the use of actuarial risk factors. (PCI Br. Summ. J. Dkt. No. 21 at § I.A, I.B, I.C, I.D., App. A; Mot. Add'l Auth. Dkt. No. 94.)

*Second*, no matter what the standard is for finding a regulation facially invalid as contrary to statute, HUD's decision to apply its Rule to risk-based pricing and underwriting of homeowners insurance was arbitrary and capricious under the Administrative Procedure Act in numerous respects. *See* 5 U.S.C. § 706(2)(A); PCI Br. Summ. J. Dkt. No. 21 at § II-V. Indeed, HUD's treatment of the McCarran-Ferguson Act was itself substantively arbitrary and capricious. Comments by the insurance industry explained that application of a disparate impact standard to risk-based pricing and underwriting would contravene the McCarran-Ferguson Act. (*See* PCI Br. Summ. J. Dkt. No. 21 at 11-13 & 26.) But HUD simply declined to engage meaningfully with this important issue. Without even addressing the substance of the insurers' McCarran-Ferguson Act objection, HUD construed the FHA Act to invalidate and impair numerous state laws. (*See id.* at App. A; Mot. Add'l Auth. Dkt. No. 94.) At a minimum, HUD had an obligation to at least *consider* and *address* whether it was impairing state laws on a massive scale. *See, e.g.*, *Owner-Operator Indep. Drivers Ass'n v. Federal Motor Carrier Safety Admin.*, 656 F.3d 580, 587-88 (7th Cir. 2011); *United Mine Workers of Am. v. Dole*, 870 F.2d 662, 667 (D.C. Cir. 1989).

## CONCLUSION

For the reasons set forth above and in PCI's prior briefs, the Court should grant PCI's motion and vacate HUD's decision to apply its Disparate Impact Rule to risk-based pricing and underwriting of homeowners insurance.

Dated:  August 26, 2014

Respectfully submitted,

By:  /s/ Seth P. Waxman
_____

Seth P. Waxman (*pro hac vice*)
Brian M. Boynton (*pro hac vice*)
Matthew J. Tokson (*pro hac vice*)
Lynn Eisenberg (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
E-mail: seth.waxman@wilmerhale.com

Rowe W. Snider (# 03125194)
Ashlee M. Knuckey (# 6300237)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Tel.: (312) 443-0700
Fax: (312) 896-0336
Email: rsnider@lockelord.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 26, 2014, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

    /s/ Seth P. Waxman
Seth P. Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: seth.waxman@wilmerhale.com