# EXHIBIT 5



July 29, 2015

Regulations Division
Office of the General Counsel
Department of Housing and Urban Development
451 17th Street, SW
Washington, DC 20410

    Re:    **Docket No. FR-5508-F-02, Implementation of the Fair Housing Act's Discriminatory Effects Standard**

            *Property Casualty Insurers Association of America v. Donovan*, **66 F. Supp.3d 1018 (N.D. Ill. 2014)**

Dear Sir or Madam:

       On September 3, 2014, Judge St. Eve of the U.S. District Court for the Northern District of Illinois issued a memorandum opinion and order in *Property Casualty Insurers Association of America v. Donovan*, 66 F. Supp.3d 1018 (N.D. Ill. 2014) (*PCI*), granting summary judgment to PCI on its claims that the Department of Housing and Urban Development's (HUD's) "application of the Disparate Impact Rule to homeowners insurance was arbitrary and capricious." *Id*. at 1030. Judge St. Eve remanded the case to HUD for further consideration of whether the Disparate Impact Rule (*Implementation of the Fair Housing Act's Discriminatory Effects Standard*, 78 Fed. Reg. 11460 (Feb. 15, 2013)) can lawfully be applied to homeowners insurance.

       On September 25, 2014, PCI informed HUD of its intent to submit additional comments to HUD to address the issues identified in the district court's remand decision and requested that HUD re-open the public comment period to inform others that HUD expects to fully consider the complex issues presented by application of the Disparate Impact Rule (the "Rule") to homeowners insurance. On January 26, 2015, PCI submitted the promised additional comments to HUD setting forth the following reasons that the Disparate Impact Rule cannot lawfully be applied to homeowners insurance. PCI noted that application of the Rule to homeowners insurance would (i) impair state regulation of insurance in violation of the McCarran-Ferguson Act, (ii) fundamentally interfere with the provision of homeowners insurance, and (iii) impose needless costs on providers of homeowners insurance and their customers. Consistent with the relief PCI sought in the district court and the direction given by that court on remand to HUD, PCI requested that HUD exempt homeowners insurance from the Rule.

       On June 25, 2015, the U.S. Supreme Court handed down its decision in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, No. 13-1371. The Supreme Court held that the Fair Housing Act (FHA) permits assertion

444 North Capitol Street NW, Suite 801, Washington, DC 20001   Telephone 202-639-0490   Facsimile 202-639-0494

Regulations Division
Page 2

of disparate-impact claims, but the Court emphasized that disparate-impact liability must be limited in key respects. The Supreme Court's explanation of those limitations further supports PCI's contention that homeowners insurance should be exempted from the Disparate Impact Rule. PCI thus submits these supplemental comments to take account of the Supreme Court's decision.[1]

## I. The Supreme Court's Decision

In *Texas Department of Housing and Community Affairs*, the Supreme Court held that the FHA permits disparate-impact claims. But the Court stressed that "[g]overnmental or private policies are not contrary to the disparate-impact requirement unless they are 'artificial, arbitrary and unnecessary barriers.'" Slip Op. at 21 (quoting *Griggs v. Duke Power Co*., 401 U.S. 424, 431 (1971)). The Court identified the "heartland of disparate-impact suits" as those that target "artificial barriers to housing." Slip Op. at 18. In order to ensure that disparate-impact claims are properly limited, the Court held that two key "safeguards" must be put in place. *Id*. at 20, 22.

The first of those safeguards is "[a] robust causality requirement." *Id*. at 20. Such a requirement, the Court explained, "ensures that '[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact' and thus protects defendants from being held liable for racial disparities they did not create." *Id*. (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 653 (1989). Referring approvingly to the opinion below of Fifth Circuit Judge Jones, the Court held up as a paradigmatic case of claims lacking the required causality element those where another "law substantially limits the [defendant's] discretion." *Id*. at 21.

A second safeguard to ensure that disparate-impact claims are "properly limited" is giving potential defendants "leeway to state and explain the valid interest served by their policy." *Id*. at 18. Homeowners insurers exemplify the potential defendants the Court had in mind, in that the extensive state regulation of their industry provides a quintessential case of the "valid interest[s]" to which the Court made reference. Businesses, the Court also stated, "must be given latitude to consider market forces." *Id*. at 19. Again, homeowners insurance markets, with their dependence on actuarially sound, risk-based pricing, form a perfect example of the market forces the Court indicated must be respected in determining the scope of disparate-impact liability.

The Supreme Court cautioned that without these two safeguards "disparate-impact liability might cause race to be used and considered in a pervasive way." *Id*. at

---

[1] HUD has not yet opened a public comment period. But PCI is submitting these comments now in an abundance of caution, given the remand from Judge St. Eve and HUD's statement in other litigation that it is "currently reviewing its regulation in light of the judgment" in *PCI*. Motion to Govern Future Proceedings and Response to Plaintiffs' Motion to Vacate and Remand, *American Insurance Ass'n v. United States Department of Housing and Urban Development*, No. 14-5321 (D.C. Cir. July 24, 2015).

Regulations Division
Page 3

20. "Interpreting disparate-impact liability to be so expansive as to inject racial considerations into every housing decision" would perversely "tend to perpetuate race-based considerations rather than move beyond them." *Id*. at 21. These "limitations on disparate-impact liability," the Court instructed, "are also necessary to protect potential defendants against abusive disparate-impact claims." *Id*. at 21. The "specter of disparate-impact litigation," the Court recognized, could actually discourage businesses from undertaking the very activities that ensure a well-functioning housing market. *Id*. Unless that specter were vanquished, "the FHA would have undermined its own purpose as well as the free-market system." *Id*.

## II. The McCarran-Ferguson Act Requires an Exemption from Disparate-Impact Claims for Homeowners Insurance

In her September 3, 2014 decision remanding the *PCI* case to HUD, Judge St. Eve ordered HUD to explain why it had not provided an "exemption or safe harbors" for homeowners insurance in light of the potential conflicts between the Rule and state insurance laws and administrative regimes. *PCI*, 66 F. Supp.3d at 1027. Those conflicts, Judge St. Eve explained, raised grave doubts about the Rule's consistency with the McCarran-Ferguson Act. Judge St. Eve also directed HUD to address whether its Rule "could jeopardize [insurers'] use of actuarially sound underwriting factors that are 'at the very heart of the business of insurance.'" *Id.* at 1028. She held that HUD's responses to comments raising these issues had been inadequate because "HUD made no effort to evaluate the substance of the insurance industry's concerns, disregarding them merely because insurers would have an opportunity to raise their arguments as part of the burden-shifting framework." *Id.* at 1029.

In our January 26, 2015 comments, PCI discussed three reasons why HUD must provide an exemption for homeowners insurance.

*First*, application of the Disparate Impact Rule to homeowners insurance would impair state laws regulating insurance and therefore violate the McCarran-Ferguson Act. In *PCI*, the district court repeatedly criticized HUD for failing to explain how the Disparate Impact Rule could be squared with the McCarran-Ferguson Act. The court held that HUD could not "simply disregard the likelihood that McCarran-Ferguson preclusion will apply" before promulgating its regulations. *PCI*, 66 F. Supp.3d at 1027. It concluded that HUD had acted arbitrarily and capriciously because "it made no attempt to evaluate how often McCarran-Ferguson preclusion would apply and whether it would bar entire categories of disparate impact claims against insurers." *Id.*

The evaluation required by the district court shows that inclusion of homeowners insurance within the scope of the Disparate Impact Rule would violate the McCarran-Ferguson Act in multiple respects, by (i) impairing state laws requiring insurers to engage

in risk-based pricing; (ii) impairing state laws permitting insurers to engage in risk-based pricing; (iii) impairing state laws and regulations providing for state administrative review of insurance rates; (iv) impairing operation of the filed-rate doctrine; and (v) removing from state control and placing instead in the hands of federal judges the determination whether certain insurance pricing policies are permissible.

*Second*, application of the Disparate Impact Rule to homeowners insurance would interfere with the provision of homeowners insurance. As members of the insurance industry commented during HUD's rulemaking, "[t]he foundation of the business of insurance, and in particular underwriting and rate-making, is classifying insurance applicants and policyholders by risk." *PCI*, Admin. R. at 376; *see also NAACP v. American Family Mut. Ins. Co.*, 978 F.2d 287, 290 (7th Cir. 1992) ("Insurance works best when the risks in the pool have similar characteristics."). The essence of risk-based insurance practices is "identifying relationships between factors and risk of loss and allocat[ing] costs accordingly." *PCI*, Admin. R. at 376. As mandated or expressly permitted by state law, homeowners insurers use neutral actuarial factors (such as loss history, distance from a fire station, building material, etc.) to determine risk. They do not collect data on race or other protected class characteristics of insureds. *See id.*

HUD's Disparate Impact Rule would impose potential liability on insurers for using any of these factors (or any combination thereof), because if any factor were found to have a different effect on any protected class listed in 24 C.F.R. § 100.500(a), then insurers would be *prima facie* liable for discrimination. Thus, to ensure compliance with the Rule and avoid the risk of damaging liability, insurers would have to avoid the use of actuarial risk factors in the underwriting and pricing process. *PCI*, Admin. R. at 377. This would cause adverse selection, motivating lower risk customers to forego insurance altogether and threatening insurers' viability, thus decreasing competition and the availability of insurance coverage. *See id.* at 377-78; *American Family Mut. Ins. Co.*, 978 F.2d at 290.

*Third*, application of the Disparate Impact Rule to homeowners insurance would impose needless costs on providers of homeowners insurance and their customers.

### III. The Supreme Court's Reasoning Confirms that an Exemption for Homeowners Insurance Is Required

The two key safeguards the Supreme Court established on disparate-impact claims in *Texas Department of Housing and Community Affairs* provide further support for each of PCI's three arguments.

Most fundamentally, the Supreme Court's determination that FHA disparate-impact claims must satisfy "[a] robust causality requirement" confirms that the Disparate

Regulations Division
Page 5

Impact Rule cannot be applied to homeowners insurance without running afoul of the McCarran-Ferguson Act and interfering in the lawful operation of homeowners insurance markets. Slip Op. at 20. In describing the causality requirement, the Court identified as a quintessential example of claims lacking the required causality element those where another "law substantially limits the [defendant's] discretion." *Id*. at 21. That is precisely the circumstance in which companies offering homeowners insurance find themselves. Application of disparate-impact liability under the FHA to homeowners insurers would leave them caught between conflicting federal and state legal regimes and thus place them in just the "double bind of liability" the Court instructed must be avoided. *Id*. at 19.

As PCI described at length in its January 26, 2015 comments, companies offering homeowners insurance are regulated by a panoply of state laws requiring the use of actuarially sound pricing methods for homeowners insurance, expressly delineating and permitting the use of such methods, and requiring the filing of homeowners insurance rates with state administrative bodies for approval. PCI January 26, 2015 Comments at 7-13. Those state laws mandate or expressly permit homeowners insurers to use neutral actuarial factors (such as loss history, distance from a fire station, building material, etc.) to determine risk and generally prohibit insurers from charging inadequate rates to various risk classifications. They thus "substantially limit" the discretion of homeowners insurance companies in a manner that would make it impossible to ascribe any apparently disparate effects of the companies' underwriting or pricing practices to their independent choices. As the Supreme Court emphasized, when companies' policies are subject to legal constraints of these sorts, it is the companies' obligation to comply with those legal requirements that is the cause of any resulting disparate effects, not the companies' own decisions. Interpreting the FHA to permit disparate-impact claims against companies in these circumstances would penalize them for following state law, placing them in the sort of "double bind of liability" the Court warned against. That is just what the McCarran-Ferguson Act prohibits.

The Supreme Court's instruction that disparate-impact claims be defined in a way that gives "latitude to consider market forces" also reinforces PCI's contention that disparate-impact liability should not be permitted against homeowners insurers. Slip Op. at 19. As PCI highlighted in its earlier comments, insurance markets run efficiently when insurance is priced in accord with actuarially sound, risk-based factors. PCI January 26, 2015 Comments at 2-3, 16-17. This sends appropriate and socially beneficial market signals about risk taking and risk mitigation. The extensive state-law framework governing the pricing of homeowners insurance is intended to promote such efficient operation. The "specter of disparate-impact litigation," however, as the Court recognized, could actually discourage businesses from undertaking the very activities that ensure a well-functioning housing market and in particular actuarially sound, risk-based pricing. Slip Op. at 21. Unless that specter were vanquished, "the FHA would have

Regulations Division
Page 6

undermined its own purpose as well as the free-market system." *Id.* Under the McCarran Ferguson Act regulation of the market for homeowners insurance is reserved to the states. Exempting homeowners insurance from disparate-impact claims is necessary to ensure that the threat of disparate-impact litigation does not impair states' legal regimes governing the pricing of homeowners' insurance or hinder the efficient operation of insurance market in accord with those state-law regimes.

Finally, the Supreme Court's caution that the FHA should not be interpreted to promote the use of racial (or other suspect) classifications supports each of PCI's arguments. "Interpreting disparate-impact liability to be so expansive as to inject racial considerations into every housing decision," the Court explained, would perversely "tend to perpetuate race-based considerations rather than move beyond them." Slip Op. at 21. But that is just what extending disparate-impact liability to homeowners insurers would do.

State law ensures that homeowners insurers price their products in accordance with risk-based, actuarially sound factors. State law does not permit reliance on, and homeowners insurers do not rely on, racial (or other suspect) classifications in pricing their products. Yet, the failure to exempt homeowners insurers from disparate-impact liability would effectively require them to compile data on the racial (and other suspect) characteristics of their customers in a defensive effort to ensure that they would not be accused of causing prohibited disparate impacts in insurance provision. Exempting homeowners insurance from disparate-impact liability would thus ensure compliance with the Supreme Court's direction that race-based considerations not be injected where they are properly absent. By introducing race-based considerations where none currently exist, the application of disparate-impact liability to homeowners insurers would, contrary to the McCarran-Ferguson Act, significantly undermine the state regulation of unfair discrimination. It would also interfere with the provision of homeowners insurance by imposing significant and needless costs on providers of homeowners insurance and their customers.

\*     \*     \*     \*

Regulations Division
Page 7

      The Supreme Court's decision in *Texas Department of Housing and Community Affairs* strongly supports PCI's arguments that HUD should exempt homeowners insurance from the Disparate Impact Rule. For all the reasons given above and in PCI's earlier comments, HUD should act promptly to establish such an exemption.

                                Sincerely,

                                Robert Gordon
                                Senior Vice President
                                Policy Development and Research