IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CRAIG CLEMMENSEN, in his official capacity as Acting Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br><br> Defendants. | Case No. 1:13-cv-08564 |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR LEAVE TO AMEND COMPLAINT**

Plaintiff Property Casualty Insurers Association of America ("PCI") respectfully requests leave to file its proposed First Amended Complaint to add and update claims based on recent developments in this action under the Administrative Procedure Act ("APA"). 5 U.S.C. §§ 701-706. As the Court is aware, this case concerns an ongoing challenge to the Department of Housing and Urban Development's ("HUD") regulation on disparate-impact claims under the Fair Housing Act ("FHA"). In September 2014, the Court granted partial summary judgment to PCI, concluding that HUD's explanation for the regulation was arbitrary and capricious in numerous respects. The Court remanded the matter to HUD. After two years, HUD finally issued a supplemental explanation in October 2016. HUD's revised explanation remains arbitrary and capricious in that it still fails adequately to address the concerns identified in the Court's remand order and fails altogether to address the Supreme Court's intervening decision in

*Texas Department of Housing & Community Affairs v. The Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015).

PCI seeks leave to amend its complaint to take account both of HUD's supplemental explanation and of the limitations on disparate-impact claims announced in *Inclusive Communities*. In the event the Court declines to grant leave to amend, PCI intends to raise its claims in a new action. In such event, PCI respectfully suggests that the Court consider making a request for reassignment under Northern District of Illinois Internal Operating Procedure (IOP) 13(d) for the reasons discussed below.

## BACKGROUND

Because the Court published a thorough summary judgment opinion with detailed instructions to HUD for how to proceed on remand, PCI understands that the Court is familiar with this ongoing dispute. Given the passage of time and significant developments since remand, however, PCI provides the following factual summary to contextualize both its new and unresolved claims.

In 2012, PCI filed a complaint alleging that HUD had violated the APA, the McCarran-Ferguson Act, and Supreme Court precedent by promulgating a rule authorizing the application of disparate-impact liability under the Fair Housing Act to the provision and pricing of homeowners insurance. *See* Dkt. 1.

In September 2014, the Court granted partial summary judgment in PCI's favor and remanded the case to HUD. The Court held that application of the disparate-impact rule to homeowners insurance was arbitrary and capricious. *See* Dkts. 99, 100. The Court determined that HUD had failed "to provide a reasoned explanation to prefer case-by-case application of McCarran-Ferguson preclusion over rule-making." *Prop. Cas. Ins. Ass'n of Am. v. Donovan*, 66

F. Supp. 3d 1018, 1048-49 (N.D. Ill. 2014). The Court found that HUD had "failed to give adequate consideration to . . . comments regarding the filed-rate doctrine." *Id.* at 1050. And the Court concluded that HUD had acted in an arbitrary and capricious manner by not making any "effort to evaluate the substance of the insurance industry's concerns" that "exposing them to disparate impact liability would undermine the fundamental nature of insurance." *Id.* at 1051. The Court remanded the matter to HUD with instructions that HUD should provide "further explanation" to address these deficiencies. *Id.*

PCI then asked HUD to reopen the comment period to allow additional comments in light of the Court's decision. HUD failed to do so, but PCI nevertheless submitted a letter explaining how the disparate-impact rule would conflict with or impair state regulation of insurance in violation of the McCarran-Ferguson Act, would prohibit practices that are necessary for and fundamental to the provision of homeowners insurance, and would impose needless costs on homeowners insurance providers and consumers alike.

The case remained on remand at HUD for two years. During that time, in June 2015, the Supreme Court decided *Texas Department of Housing & Community Affairs v. The Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015), significantly narrowing the scope of disparate-impact liability under the FHA. In *Inclusive Communities*, the Supreme Court restricted liability to ensure that "regulated entities are able to make the practical business choices and profit-related decisions that sustain a vibrant and dynamic free-enterprise system." *Id.* at 2518. The Court imposed a "robust causality requirement" to establish a prima facie case, *id.* at 2523, and specified that only "artificial, arbitrary, and unnecessary" practices may trigger liability. *Id.* at 2524. The Court also warned against policies that would encourage the consideration of race "in a pervasive way," as that would raise serious constitutional concerns.

*Id.* at 2523. In light of this superseding, controlling decision, PCI submitted a letter to HUD in July 2015 explaining how the disparate-impact rule was invalid in light of *Inclusive Communities*.

HUD finally published its supplemental explanation of the disparate-impact rule in October 2016. *See* 81 Fed. Reg. 69,012 (Oct. 5, 2016). HUD did not amend the disparate-impact rule in substance at all. Nor did its supplemental explanation meaningfully consider *Inclusive Communities* or its relation to the disparate-impact rule, despite PCI's comment alerting it to the significance of that decision. In addition, the supplemental explanation did not adequately address those deficiencies that this Court identified in its memorandum opinion. As it stands, the disparate-impact rule's application to the provision and pricing of homeowners insurance is thus wholly unlawful and inadequately supported by an arbitrary and capricious supplemental explanation.

PCI continues to suffer injury from having to comply with this invalid rule under the threat of prosecution. As such, it seeks to amend its complaint to enjoin application of the disparate-impact rule to the pricing and provision of homeowners insurance in light of the developments post-dating the filing of its complaint. In the event the Court denies leave to amend, PCI will file a new complaint raising these claims. PCI respectfully requests that this Court entertain any such action to promote efficiency and enforce compliance with its 2014 order.

**ARGUMENT**

I.  **Amendment Following A Remand To An Agency And Non-Ministerial Agency Action In Response Is Appropriate**

This Court remanded the matter to HUD without vacating the disparate-impact rule, instructing the agency to supplement its "arbitrary and capricious" explanation by more thoroughly considering comments submitted during rulemaking. Now that HUD has acted in response to the remand, the matter returns to this Court, where PCI should have the opportunity to revise its claims in light the Supreme Court's intervening decision in *Inclusive Communities* and the Court should have the opportunity to evaluate whether HUD satisfactorily responded to its order.

"Remands [to agencies] usually are not appealable, because they are not 'final decisions.'" *Edgewater Found. v. Thompson*, 350 F.3d 694, 696 (7th Cir. 2003); *see Travis v. Sullivan*, 985 F.2d 919, 920–921 (7th Cir. 1993); *Kapco Mfg. Co. v. C & O Enters., Inc.*, 773 F.2d 151, 153 (7th Cir. 1985); *see also Lakes Pilots Ass'n v. U.S. Coast Guard*, 359 F.3d 624, 625 (D.C. Cir. 2004). Application of that rule here supports granting leave to amend.

The Supreme Court has recognized there exists a "great variety in remands, reflecting in turn the variety of ways in which agency action may be challenged in the district courts and the possible outcomes of such challenges." *Sullivan v. Finkelstein*, 496 U.S. 617, 623 (1990). Following *Finkelstein*, the Seventh Circuit has established an exception to the general rule governing remands to agencies where parsing of the statute governing agency adjudication so requires. *See, e.g.*, *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 980 (7th Cir. 1999) (remand to an ERISA benefits administrator analogous to remand under "sentence four" of 42 U.S.C. § 405(g), Social Security Act provision that results in final order); *Curtis v. Shalala*, 12 F.3d 97, 100 (7th Cir. 1993) (a remand under "sentence four" of 42 U.S.C.

§ 405(g) a final order); *see also Edgewater Hosp., Inc. v. Bowen*, 857 F.2d 1123, 1129 (7th Cir. 1988) (district court's order "final" as to agency under statute that provided avenue for judicial review only for non-agency litigant), *amended*, 866 F.2d 228 (7th Cir. 1989).

It would be inappropriate to extend this exception to apply here. The decisions cited above determined particular remands to be final only after carefully analyzing the statute governing the particular administrative proceeding at issue. The FHA and the APA provide no similar guidance to apply. Nor did the decisions noted in the prior paragraph concern remands of challenges to agency *rulemaking*. Applying the exception here would be particularly inappropriate because the Court remanded the case so that HUD could perform something more than "a mechanical or otherwise 'ministerial' task, requiring no judgment or discretion." *Crowder v. Sullivan*, 897 F.2d 252, 252 (7th Cir. 1990) (citing *In re Riggsby*, 745 F.2d 1153, 1156 (7th Cir. 1984)). The Seventh Circuit has found that such remand orders are not final. *In re Stoecker*, 5 F.3d 1022, 1026 (7th Cir. 1993); *see also In re A.G. Fin. Serv. Ctr., Inc*, 395 F.3d 410, 413 (7th Cir. 2005) ("a remand almost always shows that a district court's decision is not final. . . . decisions recognize an exception: an impending ministerial act does not make a decision non-final, for routine action on remand is unlikely to precipitate a later appeal"). Evaluating and responding to comments submitted during rulemaking is hardly ministerial; it represents the apex of an agency's authority to make complex policy judgments. *See Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 346 (D.C. Cir. 2011) (characterizing notice-and-comment rulemaking as a "hallmark[]" of an agency's "fair and considered" judgment).

The Seventh Circuit has characterized *Finkelstein* as suggesting that "a remand is final when the main question will not recur." *Edgewater Found.*, 350 F.3d at 697. Here, the main question will recur: Are the disparate-impact rule and the accompanying explanation provided by

HUD for refusing to provide an exemption or safe harbor for risk-based homeowners insurance pricing practices "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

As such, permitting amendment of the complaint is the appropriate procedure for bringing additional or revised claims for relief following a remand in an action challenging an agency's rulemaking. *See, e.g.*, *Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 698 F. Supp. 2d 168, 171 (D.D.C. 2010) (permitting amendment of complaint following remand to agency because agency "never provided a clear and coherent explanation for its [rule]"); *Nat. Res. Def. Council v. Evans*, No. C 01–0421, 2004 WL 2271595, at *5–6 (N.D. Cal. Mar. 29, 2004) (determining that amending complaint challenging regulation after remand to agency is appropriate).

## II.   PCI Satisfies All Of The Factors Favoring Amendment

Federal Rule of Civil Procedure 15(a)(2) instructs district courts to "freely give leave" to amend when "justice so requires." Fed. R. Civ. P. 15(a)(2). As such, "[l]eave to amend a complaint should be . . . given . . . [i]n the absence of any apparent or declared reason [to disallow the new filing]—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment." *Barry Aviation, Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178 (1962)) (internal quotation marks omitted). A trial court may also deny leave to amend when protracted litigation would place undue burdens on the courts, thus impairing "public interest in the prompt resolution of legal disputes." *Fort Howard Paper Co. v. Standard Havens, Inc.*, 901 F.2d 1373, 1380 (7th Cir. 1990) (internal quotation marks omitted).

Under these standards, leave to amend should be granted.

### A. This Is PCI's First Request for Amendment

As an initial matter, PCI has never been granted leave to amend its complaint, so there is no "repeated failure to cure deficiencies by amendments previously allowed" that would warrant denying the motion. *Barry Aviation*, 377 F.3d at 687. Nor is there any evidence to support a claim of bad faith or dilatory motive on PCI's part.

### B. PCI's Amendments Are Not Futile

None of PCI's new and revised claims are futile. Indeed, given the Supreme Court's decision in *Inclusive Communities*, PCI has an even stronger argument that the disparate-impact rule is arbitrary, capricious, an abuse of discretion or otherwise contrary to law. The Supreme Court specifically warned against practices that encourage the "pervasive" consideration of protected characteristics, stifle "practical business choices and profit-related decisions that sustain a vibrant and dynamic free-enterprise system," and burden actors who provide housing. *Inclusive Communities*, 135 S. Ct. at 2518, 2523. By requiring homeowners insurers to consider how every sound business decision affects customers of different protected classes, the disparate-impact rule does exactly what the Supreme Court says it must not. The Supreme Court limited disparate-impact liability to situations where challenged policies are "artificial, arbitrary and unnecessary," *id.* at 2524, in part by requiring plaintiffs to show that a policy creates more than a "mere statistical disparity" to state a claim, *id.* at 2523. The burden-shifting component of the disparate- impact rule is at odds with those principles because it permits plaintiffs to state a prima facie claim simply by pointing to a statistical disparity and without providing evidence of a robust causal connection between a defendant's policies and any racial disparity.

Furthermore, HUD disregarded this Court's instructions to discuss aspects of the disparate-impact rule in greater detail on remand, confirming that HUD's supplemental

explanation, like its original one, is arbitrary and capricious.  Contrary to this Court's express direction, HUD failed to evaluate adequately how often McCarran-Ferguson preclusion would apply and whether it would bar entire categories of disparate-impact claims against insurers.  Rather, HUD claims—without support—that wholesale bars would contravene the purpose of the McCarran-Ferguson Act.  81 Fed. Reg. at 69,016.  Nor did HUD adequately address the filed-rate doctrine as it was instructed to do.  It ignored cases in which courts found that the doctrine barred federal challenges to state insurance law.  *Id.* at 69,018.  Finally, HUD again failed to address how the disparate-impact rule would affect the provision of homeowners insurance, even though the Court clearly instructed HUD to do so on remand.  HUD thus left unanswered critical questions about whether homeowners insurers would have to abandon the risk-based pricing practices that form the basis of their business, whether the cost, time, and inconvenience of individualized litigation outweighs crafting an exception for risk-based homeowners insurance pricing, and whether insurance companies are expected to collect data on protected characteristics to comply with the rule, which would be burdensome and sometimes violate state law.

Amending the complaint will allow the Court to resolve the outstanding issues in this litigation by determining whether HUD complied with its orders or whether PCI should be awarded relief because the disparate-impact rule is arbitrary and capricious.  Accordingly, PCI's proposed amended complaint is not futile.

### C. PCI Has Not Engaged in Undue Delay and HUD Would Not Suffer Undue Prejudice

PCI has not engaged in undue delay in seeking leave to amend and HUD will not be prejudiced by leave to amend being granted.  PCI has not delayed in returning to this Court.  HUD issued its revised explanation only five months ago, following two years of deliberation.

In any event, delay "on its own" is generally insufficient reason for a court to deny a motion to amend. *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008); *see also Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) ("Delay, standing alone, may prove an insufficient ground to warrant denial of leave to amend the complaint; rather, the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing." (internal quotation marks and citation omitted)). Only undue delay justifies denial of leave to amend, and delay is "undue" only when it results in prejudice—such as when a "delay in proceedings without explanation, no change in the facts since filing of the original complaint, and new theories that require additional discovery . . . occur together." *J.P. Morgan Chase Bank, N.A. v. Drywall Serv. & Supply Co.*, 265 F.R.D. 341, 347 (N.D. Ind. 2010).

None of these markers of undue delay is present here. Most of the time between this Court's remand and this motion is attributable to HUD's delay in issuing a supplemental explanation for the disparate impact rule. This Court remanded the case on September 3, 2014. Dkt. 99, 100. HUD only issued its supplemental explanation on October 5, 2016—more than two years later. Afterward, PCI took time to evaluate the issues in light of *Inclusive Communities* and potential policy shifts resulting from the change in administration—a notable "change in the facts since filing . . . the original complaint." *J.P. Morgan Chase Bank*, 265 F.R.D., at 347. If anything, PCI's taking time to reassess the case has benefitted HUD by giving new leaders at HUD and the Department of Justice time to familiarize themselves with the history of this matter and any new policy proposals.

Finally, PCI's new legal theories do not require any discovery. All its claims turn on questions of law and the adequacy of HUD's supplemental rule explanation—issues that this Court can resolve without having to look to matters outside the parties' papers.

### D. The Public Interest Favors Amendment

This case is not one that places a special burden on the judicial system. The litigation involves questions of law—not fact—and thus does not require protracted discovery proceedings or empaneling a jury. And while the case has remained on the court's docket for several years, it has been dormant for much of that time. Thus, judicial economy concerns provide no grounds to reject PCI's request for leave to amend.

### III. If the Court Declines To Grant Leave To Amend, PCI Respectfully Suggests That The Court Consider Making A Request For Reassignment Under IOP 13(d)

Given Rule 15(a)(2)'s liberal standard for permitting leave to amend, PCI believes that the Court should grant its motion. If the Court decides otherwise, however, PCI will file its amended complaint as a new action. In that event, PCI respectfully suggests that the Court consider making a request for reassignment under IOP 13(d)..

IOP 13 allows for judges to request reassignment of a case "[w]here two or more judges agree that the reassignment of one or more cases to one of them will enable the case or cases to be more efficiently administered and will serve to save judicial time." IOP 13; *see also Huff v. UARCO, Inc.*, 94 C 7585, 2000 WL 1530002, at *3 (N.D. Ill. Oct. 13, 2000) (addressing use of IOP 13(d)). To be clear, PCI understands that "IOP 13(d) does not confer any rights on litigants," which is why PCI is not formally requesting that the Court take any specific action. *Brieger v. Tellabs, Inc.*, No. 06 C 1882, 434 F. Supp. 2d 567, 569 (N.D. Ill. June 8, 2006) (citing IOP Intro. at 1). Instead, PCI is simply suggesting that a potential reassignment of a new action would meet the objectives of IOP 13(d) given this Court's familiarity with the history of the

litigation, the legal background, the issues presented, and the Court's prior ruling, which would allow the new case "to be more efficiently administered and will serve to save judicial time." Moreover, the Court is best-positioned to evaluate whether HUD complied with the instructions in its carefully-crafted remand order.

*   *   *   *

For all the foregoing reasons, PCI respectfully requests that this Court grant its Motion for Leave to Amend, seeking leave to file the proposed First Amended Complaint attached as Exhibit A to the Motion.

Dated: March 21, 2017

Respectfully submitted,

PROPERTY CASUALTY INSURERS
ASSOCIATION OF AMERICA

/s/ *Seth P. Waxman*
Seth P. Waxman (*pro hac vice*)
Jonathan Cedarbaum (*pro hac vice* to be filed)
Peter Gabrielli (*pro hac vice* to be filed)
Anuradha Sivaram (*pro hac vice* to be filed)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
E-mail: seth.waxman@wilmerhale.com

Rowe W. Snider (# 03125194)
Ashlee M. Knuckey (# 6300237)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Tel.: (312) 443-0700
Fax: (312) 896-0336
Email: rsnider@lockelord.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 21, 2017, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

    /s/ Seth P. Waxman
Seth P. Waxman
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: seth.waxman@wilmerhale.com