IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. 1:13-cv-08564 |
| v. | ) ) | |
| BENJAMIN S. CARSON, SR., in his official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**REPLY IN SUPPORT OF**
**MOTION FOR LEAVE TO AMEND COMPLAINT**

The government's opposition brief provides no basis to deny PCI leave to amend its complaint to address the recent developments in this matter following the Court's remand to the Department of Housing and Urban Development ("HUD"). The government's primary contention is that the Court's order remanding the case to HUD for further consideration was a final, appealable judgment that precludes the Court from continuing to hear this case. That contention, however, disregards settled law holding that an order remanding a matter to an administrative agency for further consideration is not final. Because the Court's remand order was not a final, appealable order, the Court retained jurisdiction over the case and has every right to evaluate whether HUD adequately addressed the concerns set forth in the Court's detailed remand order. The government also argues that PCI should be denied leave to amend because the claims in its proposed amended complaint are futile. But the proposed amended complaint raises multiple significant claims regarding the adequacy of HUD's further analysis that should be addressed in the context of dispositive motions, not PCI's motion for leave to amend.

In short, the Court's 2014 remand order contemplated that HUD would take action in "further proceedings," and the amended complaint will allow the Court to assess whether HUD, in fact, adequately discharged its responsibilities in the intervening two years.

**ARGUMENT**

**I.      THIS COURT HAS JURISDICTION TO GRANT LEAVE TO AMEND THE COMPLAINT**

When this Court remanded the case to HUD, it did not relinquish jurisdiction over subsequent review of the "further proceedings" prescribed in its opinion. *See Prop. Cas. Ins. Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1054 (N.D. Ill. 2014). Like most remands that compel an administrative agency to undertake additional proceedings, the order was non-final and non-appealable by its nature. Ample authority recognizes that after issuing such an order, a district court retains jurisdiction to review the agency's ensuing actions.

**A.      This Court's Remand Order Was Not a Final, Appealable Judgment**

It is well established that a court order that merely remands a case to an administrative agency for further proceedings generally is not a final, appealable judgment. *See* 15B C. Wright et al., Federal Practice & Procedure § 3914.32 (online ed. 2017) ("The general rule is that a remand is not appealable as a final decision . . . ."). The Seventh Circuit has repeatedly recognized this general rule. *Doctors Nursing & Rehab. Ctr. v. Sebelius*, 613 F.3d 672, 681 n.6 (7th Cir. 2010) ("[R]emands to the agency are not ordinarily final judgments that are appealable under 28 U.S.C. § 1291."); *Rush Univ. Med. Ctr. v. Leavitt*, 535 F.3d 735, 738 (7th Cir. 2008) ("Remand usually signifies that a decision is not final."); *Edgewater Found. v. Thompson*, 350 F.3d 694, 696 (7th Cir. 2003) ("Remands usually are not appealable, because they are not 'final' decisions . . . ."); *Travis v. Sullivan*, 985 F.2d 919, 920 (7th Cir. 1993) ("generally an order by a district court remanding a case to an administrative agency is not final"); *Kapco Mfg. Co. v. C &*

*O Enters.*, 773 F.2d 151, 153 (7th Cir. 1985) ("[A]n order remanding a case to an administrative agency for reconsideration almost always is interlocutory."). Relying primarily on *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975 (7th Cir. 1999), the government argues that the Seventh Circuit has abandoned the decades-old rule that remands to agencies generally are non-final. Opp. at 6 & 7 n.4. But the two most recent Seventh Circuit decisions addressing this issue that the government cites affirm, rather than "undermine," the general rule. In 2003, *Edgewater Foundation v. Thompson* explained that "[r]emands usually are not appealable, because they are not 'final' decisions." 350 F.3d at 696. And in 2008, *Rush University Medical Center v. Leavitt* reaffirmed that a "[r]emand usually signifies that a decision is not final." 535 F.3d at 738). Yet again, in 2010, *Doctors Nursing and Rehabilitation Center* held that "remands to the agency are not ordinarily final judgments that are appealable under 28 U.S.C. § 1291." 613 F.3d at 681 n.6. These decisions refute the government's contention that the Seventh Circuit has abandoned the longstanding general rule that remand orders are not final.[1]

Accordingly, the key inquiry is whether the remand order in this case falls into one of the exceptions to the general rule. The government does not argue (nor could it) for the exception to finality that arises when the governing statute characterizes the remand order at issue as a final

---

[1] As the government notes (at 6), the Seventh Circuit's 1999 decision in *Perlman* observed that the Supreme Court's decisions in Social Security cases addressing "sentence four" remands "completed the process of making administrative remands generally appealable." 195 F.3d at 979. Read in context and in light of the Seventh Circuit's subsequent decisions, this line is best understood to refer only to the type of Social Security Act remands at issue in *Sullivan v. Finkelstein*, 496 U.S. 617 (1990), and *Forney v. Apfel*, 524 U.S. 266, 269 (1998), and analogous disability determinations. Any broader reading would be unnecessary to the resolution of *Perlman*, unsupported by the analysis in *Perlman*, and inconsistent with prior and subsequent Seventh Circuit precedent. *See United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (explaining that dicta is not binding).

decision. *See, e.g., Forney v. Apfel*, 524 U.S. 266, 269 (1998) ("This Court has previously held that this statutory language means what it says, namely, that a district court order remanding a Social Security disability benefit claim to the agency for further proceedings is a 'final judgment' for purposes of § 1291 and it is, therefore, appealable."). Nor does the government claim that HUD was required to perform only a ministerial task upon remand—another exception to the general rule that remand orders are not directly appealable. *See, e.g.*, *In re A.G. Fin. Serv. Ctr., Inc.*, 395 F.3d 410, 413 (7th Cir. 2005) (an impending ministerial act does not destroy an otherwise final and appealable remand order). Indeed, it is clear that HUD's proceedings after remand—where HUD was supposed to review anew the evidence submitted by the homeowners insurance industry and provide a new explanation for or revise its regulation—were far from ministerial. *See Pueblo of Sandia v. Babbitt*, 231 F.3d 878, 881 (D.C. Cir. 2000) (remand contemplating that an agency would "reconsider the facts" in the administrative record and "reconsider its position" was "more than the ministerial act of issuing a correct[ion]").

All that the government argues is that the remand order should be treated as "effectively final" because "HUD would have been 'unable to obtain review after its own action on remand.'" Opp. at 7 (quoting *Rush Univ. Med. Ctr.*, 535 F.3d at 738). This exception has been invoked when agency proceedings following remand "may end without further litigation—for, if the private claimant prevails, the agency cannot obtain judicial review of its own decision (even when that decision has been compelled by a judicial decision with which the agency disagrees)." *Rush*, 535 F.3d at 738; *see id.* (explaining that the remand proceeding ordered by the district court was "one that might well conclude without a return to court"); *see also Edgewater*, 350 F.3d at 697 (noting that the Supreme Court's decision in *Sullivan v. Finkelstein* "holds that a remand is final when the main question will not recur after the agency's new decision"). As the

Eleventh Circuit has explained:

> As a general rule, remand orders from district courts to administrative agencies are not final and appealable. *See Occidental Petroleum Corp. v. SEC*, 873 F.2d 325, 329–30 (D.C. Cir. 1989). Yet, there is a widely recognized distinction between remands where a district court simply orders the agency to proceed under a "certain legal standard," *see id.* at 330, and in situations where a district court remands for further consideration of evidence. A remand order generally is found appealable in the former cases because the agency, forced to conform its decision to the district court's mandate, cannot appeal its own subsequent order.

*MCI Telecomm. Corp. v. Bellsouth Telecomm. Inc.*, 298 F.3d 1269, 1271 (11th Cir. 2002); *see Perlman*, 195 F.3d at 979 ("The Supreme Court drew this line in *Finkelstein* in part because it was concerned that it would otherwise be impossible for the Commissioner to obtain review of an adverse decision by a district court. If the court directs the Commissioner to apply a specific rule, or accept specific evidence, and the Commissioner carries out that directive and awards benefits, the case may never return to court.").

In this case, there is no concern that the Court required HUD to apply a legal standard that the agency would be unable to challenge on appeal. Quite to the contrary, the Court merely held that HUD's rule was arbitrary and capricious because HUD had inadequately considered comments submitted during rulemaking. The Court ordered HUD only to provide additional analysis of the relevant issues—to undertake "further proceedings consistent with this Memorandum, Opinion and Order." *Donovan*, 66 F. Supp. 3d at 1054. HUD's assignment on remand was analogous to being required to consider additional evidence. *See Edgewater*, 350 F.3d at 697 ("In this suit the district court has postponed adjudication until after additional evidence has been analyzed. That is not a final decision."); *Flores v. United States*, No. 11–12119, 2015 WL 3887537, at *6 (E.D. Mich. June 24, 2015) (holding a remand "for further factual determinations" was analogous to a "sentence six" remand for consideration of further

evidence in the Social Security context and thus the remand order was not a final judgment).[2] There was every reason to believe the case would return to Court, and if it did not, that would have been because HUD decided that it should grant the relief the insurers sought—a circumstance in which HUD would have nothing to appeal. The government makes no meaningful argument to the contrary. It does not identify any legal ruling by this Court that it thought HUD had to follow on remand and would subsequently be unable to appeal. Indeed, the course of proceedings has demonstrated that HUD did not feel compelled to reverse course on remand—HUD adhered to its prior position, and it is PCI that once again seeks judicial review.

The conclusion that the Court's remand order was not final comports with the fundamental purposes for generally barring appellate review of remand orders. One of the purposes served by the general rule is to "avoid[] the prospect of entertaining two appeals, one from the order of remand and one from entry of a district court order reviewing the remanded proceedings." *Pueblo of Sandia*, 231 F.3d at 880 (internal quotation marks omitted). If the government were correct, PCI could have appealed the September 2014 remand order and then also litigated through appeal a new action challenging HUD's revised explanation. The general rule that remand orders are not final also "leaves open the possibility that no appeal will be taken in the event the proceedings on remand satisfy all parties." *Id.* But if the government's view were correct, then PCI could have appealed the September 2014 order before HUD even had a

---

[2] As noted, the Seventh Circuit in *Edgewater* concluded that the remand order at issue there requiring the agency to analyze additional evidence was non-final. *See* 350 F.3d at 697. It thus dismissed the appeal for want of jurisdiction. *See id.* The government cites (at 7) a portion of *Edgewater* in which the Court notes that "only an immediate appeal could vindicate the agency's interest in avoiding pointless (if not *ultra vires*) administrative proceedings." *Id.* at 696. The Court ultimately concluded, however, that the remand order at issue was not appealable, *see id.* at 697, notwithstanding the agency's interest in avoiding what the Court considered possibly "*ultra vires*" remand proceedings. Here, HUD's interest was even weaker; it does not contend that the proceedings on remand were in any respect *ultra vires*.

chance to issue an explanation that might have addressed any of PCI's claims.

Accordingly, the Court should find that the remand order was non-final.

### B. This Court Retains Jurisdiction To Review Proceedings Subsequent to a Non-Final, Non-Appealable Remand Order

The Court's September 2014 order remanding this case to HUD did not purport to divest the Court of jurisdiction over further proceedings following remand, nor could it have. Because the order was not a final, appealable order, it necessarily could not divest the Court of jurisdiction over further proceedings following remand—only a final order ends a case.

District courts routinely reopen cases following agency actions after remands for "further proceedings." *See, e.g.*, *Swedish Am. Hosp. v. Sebelius*, 773 F. Supp. 2d 1, 2, 11 (D.D.C. 2011) (remanding for "further proceedings" because agency action was "arbitrary"); Minute Order Granting Joint Mot. to Reopen Case, *Swedish Am. Hosp. v. Sebelius*, No. 08–2046 (D.D.C. Oct. 17, 2014). The government cites (at 4-5) a number of decisions that hold that "once final judgment has been entered, the district court lacks jurisdiction to entertain a motion for leave to amend the complaint." *Camp v. Gregory*, 67 F.3d 1286, 1289-90 (7th Cir. 1995); *see also Sparrow v. Heller*, 116 F.3d 204, 206 (7th Cir. 1997); *Precision Brand Prods., Inc. v. Downers Grove Sanitary Dist.*, No. 08-CV-5549, 2009 WL 3853153, at *2 (N.D. Ill. Nov. 17, 2009). But those decisions—which involved dismissals, not remands to administrative agencies—have no applicability to the present dispute, where there was no final judgment. As explained above, the Court's remand order in this case was not a final, appealable order. As a result, the Court's entry of a document titled "Judgment in a Civil Case" did not extinguish its jurisdiction to review the "further proceedings" it ordered, even if the Court intended for the document to be a final judgment. *See, e.g.*, *Edgewater*, 350 F.3d at 697–98 (holding, despite district court's statement that order was "final and appealable," that "district judges cannot determine the scope of

appellate jurisdiction or authorize appeals from interlocutory orders, other than through the means provided by 28 U.S.C. § 1292(b)"); *Stevens v. Santander Holdings USA Inc.*, 799 F.3d 290, 300 (3d Cir. 2015) (explaining that "a district court's assertion of finality cannot establish appellate jurisdiction to review a decision that is not otherwise 'final'" and finding remand order not final despite entry of separate judgment); *Young v. Prudential Ins. Co. of Am.*, 671 F.3d 1213, 1215 (11th Cir. 2012) (noting that "in evaluating whether a district court's order is final and appealable, we look to the substance of the order—not the label" and finding remand order not final despite entry of separate judgment); *American Haw. Cruises v. Skinner*, 893 F.2d 1400, 1403 (D.C. Cir. 1990) ("Qualification for court of appeals review . . . does not turn on whether the district court 'remanded but retained jurisdiction' pending further agency consideration, or remanded and simultaneously dismissed the civil action.").[3]

The government next asserts, relying on a single order from a different district court, that there is a distinction between "whether an agency remand is a final judgment for purposes of appeal" and "whether the court divested jurisdiction over this action when it remanded the case." Opp. at 5 (citing Mem. Op. & Order, *Dist. Hosp. Partners, L.P. v. Burwell*, No. 11–0116 (D.D.C. Feb. 22, 2016), ECF No. 133). Under the government's view, this Court lacks jurisdiction to consider PCI's challenge to the adequacy of HUD's Supplemental Explanation on remand—and PCI cannot appeal the Court's prior rejection of some of its claims—even if the Court's remand order was not a final, appealable order. But that reasoning contradicts a multitude of appellate decisions acknowledging that, where a remand order cannot be appealed because it is not a final

---

[3] The government cites *Holmstrom v. Metro Live Ins. Co.*, No. 07-CV-6044, 2011 WL 2149353, at *5 (N.D. Ill. May 31, 2011). *See* Opp. 5-6. But in that case (involving a request for fees under ERISA) the Court concluded that there was "no jurisdiction over the parties' dispute following [a] *voluntary dismissal*," not a remand order. *Holmstrom*, 2011 WL 2149353, at *5 (emphasis added).

judgment, the district court retains jurisdiction to review the agency's actions after remand and the parties can raise any remaining challenges to the remand order in an appeal from the final judgment ultimately entered following review of the agency's decision on remand. *E.g.*, *Am. Haw. Cruises*, 893 F.2d at 1403 ("A party not satisfied with the Coast Guard's decision after remand can come back to the district court with a challenge to the agency's reconsidered decision. If still aggrieved, a party could next appeal to this court seeking review of any still-disputed part of the district court's remand order as well as any ruling made by the district court subsequent to the remand."); *Loma Linda Univ. Kidney Ctr. v. Sebelius*, No. 11–5057, 2011 WL 13063715, at *1 (D.C. Cir. July 21, 2011) ("Once the proceedings on remand are concluded, appellants, if still aggrieved, may return to district court, and appeal any still-disputed part of the remand order as well as any district court ruling made after the remand."); *Biodiversity Legal Found. v. Babbitt*, Nos. 96-5033, 96-5054, 96-5055, 1997 WL 150095, at *1 (D.C. Cir. Feb. 10, 1997) ("[T]he district court's remand order is interlocutory and not immediately appealable. Appellants[] . . . can raise their challenges to the district court's remand order . . . once the district court issues a final order concluding the proceedings after remand." (citation omitted)); *see also Petralia v. AT&T Glob. Info. Sols. Co.*, 114 F.3d 352, 354 (1st Cir. 1997) ("[A]fter a new decision [on remand], a party seeking judicial review in the district court may do so . . . in the same civil action, and is not required to commence a new civil action."); *Stevens*, 799 F.3d at 299 (same); *Young*, 671 F.3d at 1216 (same).

In other words, appellate courts refuse to exercise jurisdiction over appeals of remand orders precisely *because* "[t]he litigation has not ended" and "may well return again" to the district court. *Mall Props., Inc. v. Marsh*, 841 F.2d 440, 441 (1st Cir. 1988); *see also Tice v. Am. Airlines*, 288 F.3d 313, 318 (7th Cir. 2002) ("[D]istrict courts should retain jurisdiction over a

suit that must be interrupted for reference of an issue to another forum rather than dismiss it if, should it be dismissed, there might later be grounds for reinstating it."). And crucially, appellate courts refuse jurisdiction over an interlocutory appeal of the resolution of all claims in a case that has been remanded—even claims that were resolved before remand—unless the district court enters final judgment on the resolved claims under Federal Rule of Civil Procedure 54(b). *See Seminole Nation of Okla. v. Norton*, No. 01-5418, 2002 WL 1364249, at *1 (D.C. Cir. May 24, 2002); *Am. Forest Paper Ass'n v. E.P.A.*, No. 96-5324, 1997 WL 255099, at *1 (D.C. Cir. Apr. 22, 1997) ("With respect to those claims upon which the district court granted summary judgment without remand, application of Fed. R. Civ. P. 54(b) deprives the district court's order of finality until the conclusion of the proceedings on all claims."); *Am. Forest Res. Council v. Ashe*, 301 F.R.D. 14, 18 (D.D.C. 2014) (granting Rule 54(b) judgment on claims that had been resolved because plaintiff "should not have to wait to appeal its [resolved] claims" while agency completes new rulemaking pursuant to remanded issue); *aff'd*, 601 F. App'x 1 (D.C. Cir. 2015).

These decisions rebut not only the government's claim that PCI's time for appeal has expired, but also its assertion that the Court cannot reopen the original proceedings. The decisions contemplated that at some point *after* remand, district-court proceedings would terminate and result in a final, appealable disposition. *E.g.*, *Am. Forest Paper Ass'n*, 1997 WL 255099 at *1. But if the government were correct that PCI could only file a new complaint, even though the Court's prior remand order was not itself appealable, then the Court's September 2014 rulings on the non-remanded issues would never become final and appealable. Under this view, district courts would have the "discretion" (Opp. at 5-6) to deprive parties of *any* opportunity to appeal adverse holdings contained in remand orders by simply opting not to expressly retain jurisdiction over further proceedings. That cannot be, and is not, the law.

## II. THE AMENDED COMPLAINT STATES MULTIPLE CLAIMS FOR RELIEF AND SHOULD NOT BE DISMISSED AS FUTILE

The government attempts to jump to the merits of the litigation to prevent PCI from amending its complaint, but the government has not come close to meeting the exceptionally high bar for showing that an amendment would be "futile." The Seventh Circuit has made clear that "'[a]mendment should be refused only if it appears *to a certainty* that plaintiff cannot state a claim.'" *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (emphasis added) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004) (quoting 5A Federal Practice & Procedure § 1357 (2d ed. 1990))). The government cannot meet that standard here.

Whether HUD's October 5, 2016 Supplemental Explanation adequately addressed the concerns identified by the Court in its remand order is a critical issue that the parties dispute and that should be briefed to the Court in due course. The government's opposition brief recites many of the points made in HUD's Supplemental Explanation and argues that HUD "carefully considered, and provided reasoned explanations pertaining to, each of the issues identified by the Court." Opp. at 11. PCI, however, contends that HUD provided no such thorough explanation on remand. PCI's proposed amended complaint catalogues numerous fundamental shortcomings in the Supplemental Examination. *See, e.g.*, First Am. Compl. ¶¶ 86–98; *see also* Mem. at 9.

Among other things, HUD left unanswered critical questions that the Court directed it to explore on remand. For example, this Court noted that HUD had previously "made no attempt to evaluate how often McCarran-Ferguson preclusion would apply and whether it would bar entire categories of disparate-impact claims against insurers." *Donovan*, 66 F. Supp. 3d at 1048. The Court had explained that the Seventh Circuit's opinion in *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999), "supports PCI's argument that the McCarran-Ferguson Act

bars any claims that require courts to determine whether an insurer's practices are actuarially sound and consistent with state law." *Donovan*, 66 F. Supp. 3d at 1039. And the Court faulted HUD for failing adequately to address that decision. *See id.* at 1048. On remand, however, HUD again failed adequately to address *Mutual of Omaha*, discussing it only in passing, without acknowledging the salient aspect of its holding noted by this Court. *See* 81 Fed. Reg. 69012, 69015 (Oct. 5, 2016); *see also* First Am. Compl. ¶¶ 90–91.

Nor does the Supplemental Explanation adequately explain why piecemeal adjudication, rather than rulemaking, should determine whether purely risk-based insurance practices violate the Fair Housing Act ("FHA"). In response to comments explaining that the disparate-impact rule would force homeowners insurers to abandon the risk-based pricing practices that form the basis of their business, HUD asserted that "nothing in the Rule prohibits insurers from making decisions that are in fact risk-based." 81 Fed. Reg. at 69,015. But immediately thereafter, HUD stated that "practices that an insurer can prove are risk-based, *and for which no less discriminatory alternative exists*, will not give rise to discriminatory effects liability." *Id.* (emphasis added); *see also* First Am. Compl. ¶¶ 94–95. The highlighted qualification contradicts the preceding statement, indicating that the disparate-impact rule will, in fact, prohibit purely risk-based pricing in some situations. HUD makes no attempt to square the two sentences, and that type of flawed reasoning is arbitrary and capricious. *See Gen. Chem. Corp. v. United States*, 817 F.2d 844, 857 (D.C. Cir. 1987) (agency's analysis "arbitrary and capricious and not supported by substantial evidence on the record considered as a whole" where explanation was "internally inconsistent and inadequately explained"). Moreover, HUD's only example of "a less discriminatory alternative" to insurers' purely risk-based practices is "an alternative risk-based practice." 81 Fed. Reg. at 69,017. This cursory suggestion does not begin

to explain how current pricing practices, which are already risk-based, could somehow continue to be risk-based if insurers were forced to ignore any risk factor that might be linked to a disparate impact.

HUD likewise failed adequately to address whether insurance companies are expected to collect data on protected characteristics, which would be burdensome and sometimes violate state (and perhaps federal) law. First Am. Compl. ¶ 97; *see Texas Dep't of Hous. & Cmty. Affairs v. The Inclusive Cmtys. Project, Inc.* ("*Inclusive Communities*"), 135 S. Ct. 2507, 2524 (2015) ("Difficult questions might arise if disparate-impact liability under the FHA caused race to be used and considered in a pervasive and explicit manner to justify governmental or private actions that, in fact, tend to perpetuate race-based considerations rather than move beyond them."). The parties' disputes about these fundamental questions can best be addressed in dispositive motions. At this stage, there is no basis to conclude that PCI's challenges to HUD's revised analysis as arbitrary and capricious are "certain[]" to fail. *Runnion*, 786 F.3d at 520.

The government also contends that it adequately addressed the Supreme Court's intervening decision in *Inclusive Communities* and "repeatedly" cited the decision in its Supplemental Explanation. Opp. at 10. In fact, the government cited *Inclusive Communities* only three times, and those very citations only demonstrate the inadequacy of the government's grappling with *Inclusive Communities*. They contain no substantive analysis, and none addresses the portions of *Inclusive Communities* PCI relies upon in its claims. There is thus ample basis to conclude that HUD failed adequately to address *Inclusive Communities*, and that PCI's proposed amendment to the complaint to add this claim is therefore not futile.

In its brief, the government also argues that *Inclusive Communities* defines the scope of permissible disparate-impact claims in exactly the same way as does the disparate-impact rule.

Opp. at 9. On the contrary, as PCI noted in opening brief (at 8), the disparate-impact rule "does exactly what the Supreme Court says it must not": It requires homeowners insurers to analyze how every business decision affects customers of different protected classes, even though the Court warned against practices that encourage the "pervasive" consideration of protected characteristics. *Inclusive Communities*, 135 S. Ct. at 2524. The government maintains that *Inclusive Communities* only contained language that has "long been part of the [disparate-impact] standard." Opp. at 9. But neither in its brief—nor, more importantly, in the Supplemental Explanation—does HUD identify that language or justify its contentions about the relationship between the limitations on disparate-impact liability established in *Inclusive Communities* and its inadequately bounded disparate-impact rule. *See Moab v. Gonzales*, 500 F.3d 656, 659 (7th Cir. 2007) (agency's order must be upheld, if at all, only on the basis articulated by the agency itself). These complex issues cannot be adjudicated outside of dispositive motions with robust briefing and argument.

Finally, the government objects (at 8) to the fact that PCI's amended complaint restates the McCarran-Ferguson Act and burden-shifting claims previously addressed by the Court. But that is not a basis for finding the amended complaint to be futile. At a minimum, those claims are properly included in the amended complaint to avoid any doubt that they have been preserved for appeal. Because the Court's remand order was not a final, appealable order, the dismissal of these claims is not *res judicata. Cf.* Opp. at 8-9.[4] Moreover, to the extent HUD's Supplemental Explanation has altered the analysis of these issues, they can properly be raised

---

[4] In any event, the Court's dismissal of PCI's McCarran-Ferguson Act claims was a ruling on ripeness grounds that is never barred by res judicata. *See, e.g.*, *Harris v. Quinn*, 656 F.3d 692, 701 (7th Cir. 2011) ("[W]hen a complaint is dismissed because it is not ripe . . . it is dismissed without prejudice unless it appears beyond a doubt that there is no way the plaintiffs' grievance could ever mature into justiciable claims."), *aff'd in part, rev'd in part and remanded on other grounds*, 134 S. Ct. 2618 (2014).

following remand. The government faults PCI for not providing any reason to question the prior ripeness determination of its McCarran-Ferguson Act claims, but doing so at the motion-to-amend stage would be premature. All PCI is required to do is set forth a short and plain statement of the facts supporting its claims. *See* Fed. R. Civ. P. 8(a).

## CONCLUSION

For the foregoing reasons and those given in PCI's opening brief, the Court should grant PCI leave to amend its complaint.[5]

Dated: May 1, 2017

Respectfully submitted,

PROPERTY CASUALTY INSURERS
ASSOCIATION OF AMERICA

| | |
|---|---|
| Rowe W. Snider (# 03125194) | /s/ *Seth P. Waxman* |
| Ashlee M. Knuckey (# 6300237) | Seth P. Waxman (*pro hac vice*) |
| LOCKE LORD LLP | Jonathan G. Cedarbaum (*pro hac vice*) |
| 111 South Wacker Drive | Brian M. Boynton (*pro hac vice pending*) |
| Chicago, IL 60606 | Peter A. Gabrielli (*pro hac vice*) |
| Tel.: (312) 443-0700 | Anuradha Sivaram (*pro hac vice*) |
| Fax: (312) 896-0336 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| Email: rsnider@lockelord.com | 1875 Pennsylvania Avenue, NW |
| | Washington, DC 20006 |
| | Tel.: (202) 663-6000 |
| | Fax: (202) 663-6363 |
| | E-mail: seth.waxman@wilmerhale.com |

*Attorneys for Plaintiff*

---

[5] If the Court denies PCI's motion, PCI intends to file its amended complaint as a new action. In that event, PCI respectfully suggests that the Court consider requesting reassignment under IOP 13(d). In its opposition, the government states that it does "not oppose reassignment of any such action to this Court," but points out that any "new action would not meet the conditions for reassignment under Local Rule 40.4(b)," which requires both cases to be pending. Opp. at 13, n.8 (citing LR4-.4(b)(1), (4)). To be clear, PCI did not suggest that Local Rule 40.4 would apply to a new action. But IOP 13 does not require that both cases be pending—instead allowing for judges to request reassignment of a case "[w]here two or more judges agree that the reassignment of one or more cases to one of them will enable the case or cases to be more efficiently administered and will serve to save judicial time." *See* Memo. at 11-12.