**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 13-CV-8564 |
| BENJAMIN S. CARSON, SR., in his official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Property Casualty Insurers Association of America ("PCI") moves pursuant to Federal Rule of Civil Procedure 15(a)(2) to file a First Amended Complaint. (R. 107.) Defendants the United States Department of Housing and Urban Development ("HUD") and Benjamin Carson, in his official capacity as Secretary of HUD (collectively, "Defendants"), oppose PCI's motion. For the following reasons, the Court grants in part and denies in part PCI's motion.

## BACKGROUND[1]

### I.     Promulgation of the Disparate Impact Rule

In 2013, HUD issued a final rule recognizing that liability under the Fair Housing Act ("FHA") may arise from a facially neutral practice that has discriminatory effects on certain

---

[1] The Court presumes the parties' familiarity with the relevant facts and the Court's September 2014 Memorandum Opinion and Order in this case. (*See* R. 99.) The Court, however, provides a brief summary and describes the relevant developments since September 2014.

groups of people, regardless of whether discriminatory intent exists (the "Disparate Impact Rule" or the "Rule"). (R. 99 at 1.) The Disparate Impact Rule also established a three-step burden-shifting approach to deciding disparate-impact claims. (*Id.*) Under this approach, the plaintiff initially bears the burden of proving that a housing practice has a disparate impact on individuals with a protected characteristic or perpetuates segregation in the housing market. (*Id.* at 11–12, 17.) The burden then shifts to the defendant to prove that the challenged practice "has a necessary and manifest relationship to one or more of the defendant's . . . legitimate, nondiscriminatory interests." (*Id.* at 12, 17 (quoting Implementation of the Fair Housing Act's Discriminatory Effects Standard, 76 Fed. Reg. 70921, 70924 (Nov. 16, 2011)).) If the defendant satisfies this burden, the plaintiff may still establish liability by proving a less discriminatory method of serving the same interests. (*Id.* at 12, 17.)

In its proposed rule, HUD included "the provision and pricing of homeowner's insurance" as an example of a housing policy or practice that may have a disparate impact on protected groups. (*Id.* at 12 (quoting Implementation of the Fair Housing Act's Discriminatory Effects Standard, 76 Fed. Reg. at 70924).) PCI, among other associations representing the homeowners insurance industry, submitted comments to HUD. (*Id.* at 12–13.) The industry representatives (1) disputed whether the FHA allowed for disparate-impact liability in any context; (2) contended that application of the Disparate Impact Rule to homeowners insurance would violate the McCarran-Ferguson Act and the "filed rate" doctrine; (3) argued that imposing disparate-impact liability on homeowners insurance is incompatible with the nature of insurance, which relies on risk-based pricing; and (4) contended that the burden-shifting framework outlined in the proposed rule was inappropriate. (*Id.* at 13–14.) Based on these arguments, the insurance industry requested that HUD either exempt insurance underwriting and pricing from

2

the Disparate Impact Rule or build safe harbors into the Rule for certain actuarial risk factors, like the age and condition of the property. (*Id.* at 14.) The industry's comments failed to persuade HUD, which did not make any changes to the Disparate Impact Rule in its final rule. (*Id.* at 15–17.) HUD found the Rule sufficiently flexible to alleviate the industry's concerns on a case-by-case basis. (*Id.* at 15.)

## II. The Current Litigation from the Filing of the Complaint Until the Court's September 2014 Memorandum Opinion and Order

PCI filed suit in November 2013 seeking to invalidate the Disparate Impact Rule as it applies to the provision and pricing of homeowners insurance. (R. 1; R. 99 at 17.) As the Court described in its September 2014 opinion, PCI claimed the Disparate Impact Rule was invalid under the Administrative Procedure Act ("APA") for a variety of reasons:

> First, PCI argues that application of the Disparate Impact Rule to the insurance industry would violate the McCarran-Ferguson Act. (*See* [R. 1] at Count I.) Second, PCI argues that HUD's issuance of the Disparate Impact Rule was arbitrary and capricious because HUD failed to adequately consider the Rule's conflict with the McCarran-Ferguson Act, the filed rate doctrine, and the nature of insurance. (*See id.* at Counts II-IV.) Finally, PCI challenges the three-step burden-shifting framework HUD adopted in the Disparate Impact Rule as arbitrary, capricious, and not in accordance with law. (*See id.* at Counts V-VI.)

(R. 99 at 17.) PCI moved for summary judgment and HUD filed a cross-motion seeking dismissal for lack of subject matter jurisdiction or, in the alternative, summary judgment in HUD's favor on all claims. (*See* R. 20; R. 30; R. 99 at 17–18.)

The Court began its analysis by addressing its jurisdiction. It concluded that PCI's claim that the Disparate Impact Rule violates the McCarran-Ferguson Act was not ripe for review but that PCI had standing to assert its remaining claims. (R. 99 at 32, 38.) The Court then turned to the merits of PCI's claim that the Disparate Impact Rule's application to homeowners insurance

was arbitrary and capricious because HUD did not give adequate consideration to various comments from the insurance industry.

First, PCI argued that HUD had failed to adequately consider the insurance industry's comments that application of the Disparate Impact Rule to homeowners insurance would violate the McCarran-Ferguson Act.  (R. 99 at 39.)  HUD had "determined that the question of whether McCarran-Ferguson preclusion applies should be left to a case-by-case basis determination based on the facts at issue and the relevant state laws."  (*Id.* at 40.)  The Court concluded that "[a]lthough HUD had discretion to decide whether to proceed by case-by-case adjudication or rule-making, it [failed] to provide a reasoned explanation for preferring case-by-case adjudication over rule-making."  (*Id.* at 43.)  The Court noted that HUD's explanation "that the McCarran-Ferguson Act does not preclude HUD from issuing regulations that may apply to insurance policies does not mean that HUD can simply disregard the likelihood that McCarran-Ferguson preclusion will apply in promulgating its regulations."  (*Id.* at 42.)  Additionally, the Court explained that HUD "made no attempt to evaluate how often McCarran-Ferguson preclusion would apply and whether it would bar entire categories of disparate impact claims against insurers."  (*Id.*)  The Court also noted that HUD had failed to acknowledge case law that "called into question the viability of many (if not most) disparate impact claims against insurers in light of the McCarran-Ferguson Act."  (*Id.* at 43.)  In the end, these shortcomings in HUD's analysis were arbitrary and capricious, and the Court therefore "remand[ed] this case to HUD for further explanation."  (*Id.*)

Second, PCI argued that HUD had failed to adequately consider whether the Disparate Impact Rule violated the filed-rate doctrine, which "forbids courts from invalidating or modifying rates that have been filed with regulatory agencies."  (*Id.* (quoting *Schilke v.*

*Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 835 (N.D. Ill. 2011)).)  The Court explained that

HUD grouped the industry's concerns regarding the filed-rate doctrine with their concerns

related to the McCarran-Ferguson Act but that HUD did not provide any response to the

industry's comments about the filed-rate doctrine.  (*Id.* at 44.)  HUD's "failure to separately

discuss the filed-rate doctrine," however, did not by itself render the Disparate Impact Rule's

application to the provision of homeowners insurance arbitrary and capricious.  (*Id.*)  The Court

reasoned that the purpose of the filed-rate doctrine was similar to that of the McCarran-Ferguson

Act, and that "where the filed-rate doctrine applies, the McCarran-Ferguson Act almost certainly

applies too."  (*Id.*)  Nevertheless, because HUD failed to adequately consider the industry's

comments regarding the McCarran-Ferguson Act, it also failed to adequately consider the filed-

rate doctrine.  (*Id.* at 45.)  Thus, the Court ruled that "on remand, HUD must explain its decision

regarding the filed-rate doctrine or institute a new rule, as it must with respect to the industry's

McCarran-Ferguson comments."  (*Id.*)

Third, PCI argued that HUD had failed to adequately address the effect that the Disparate

Impact Rule would have on the insurance industry due to the nature of insurance.  (*Id.*)  HUD

had explained that the industry's concerns were misplaced because they incorrectly ignore the

burden-shifting scheme and "presume that once a discriminatory effect is shown, the policy at

issue is per se illegal."  (*Id.* at 46 (quoting Final Rule, 78 Fed. Reg. at 11475).)  The Court found

HUD's response arbitrary and capricious because HUD "made no effort to evaluate the

substance of the insurance industry's concerns, disregarding them merely because insurers would

have an opportunity to raise their arguments as part of the burden-shifting framework."  (*Id.*)

The Court explained that the authority upon which HUD relied in fact supported PCI's argument

that "HUD should include exemptions from the Disparate Impact Rule or create safe harbors in

the Rule for insurance practices that plaintiffs would have no chance of successfully challenging under the burden-shifting framework." (*Id.* at 47.) For these reasons, the Court determined that "HUD had an obligation to respond to the substance of [the industry's] concerns or, alternatively, provide a reasoned explanation why case-by-case determinations of the insurers' arguments are preferable to rule-making." (*Id.*) Accordingly, the Court "remand[ed] the[e] case to HUD for further explanation." (*Id.*)

Having resolved PCI's contentions regarding the adequacy of HUD's consideration of the industry's comments, the Court turned to PCI's argument that HUD's burden-shifting approach was contrary to law. (*Id.* at 48.) After engaging in the analysis outlined in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), and its progeny, the Court concluded that "PCI has provided no basis for the Court to invalidate the burden-shifting approach." (*Id.* at 49–51.)

To summarize, the Court (1) dismissed PCI's McCarran-Ferguson claim for lack of subject matter jurisdiction; (2) granted summary judgment to HUD on PCI's challenge to HUD's burden-shifting framework; and (3) granted summary judgment to PCI on its remaining claims that HUD's application of the Disparate Impact Rule to homeowners insurance was arbitrary and capricious. (*Id.* at 52.) As a result of the partial grant of summary judgment to PCI, the Court remanded the case to HUD for further proceedings consistent with the Court's opinion. (*Id.*) The Clerk of Court then filed an entry of judgment in which he summarized the Court's rulings. (R. 100.) The judgment noted that the Court remanded the case to HUD for further proceedings. (*Id.*) The Clerk also administratively closed the case. The docket remained quiet until the filing of the current motion with the exception of various motions to withdraw as counsel and an order granting a motion to withdraw. (*See* R. 102; R. 103; R. 104; R. 105; R. 106.)

### III.     Agency Proceedings upon Remand and PCI's Filing of the Current Motion

After the Court issued its opinion, PCI asked HUD to reopen the comment period, but HUD did not do so.  (R. 108, Mem. Supp. Mot. Leave to Am. Compl., at 3; R. 107-1, Proposed Am. Compl.. ¶¶ 7–8, 10–11.)  PCI nevertheless submitted comments to HUD.  (R. 108 at 3; R. 107-1 at ¶¶ 8, 10.)  On October 5, 2016, HUD published a supplemental explanation of the Disparate Impact Rule in the Federal Register.  *See* Application of the Fair Housing Act's Discriminatory Effects Standard to Insurance, 81 Fed. Reg. 69012 (Oct. 5, 2016).  HUD reaffirmed the Disparate Impact Rule in full.  *Id.* at 69012.

PCI filed the motion before the Court seeking leave to amend its complaint.  (R. 107.)  PCI argues that "HUD's supplemental explanation remains arbitrary and capricious in that it still fails adequately to address concerns raised in the Court's prior decision and fails altogether to address the Supreme Court's intervening decision in *Texas Department of Housing & Community Affairs v. The Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015)."  (*Id.*)

### LEGAL STANDARD

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Here, Defendants do not consent.  (R. 122.)  Under the Rule, "court[s] should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nevertheless, "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile."  *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008); *see also Heng v. Heavner, Beyers & Mihlar, LLC*, 849 F.3d 348, 354 (7th Cir. 2017).  "A motion to amend should state with particularity the grounds for the motion and should be accompanied by the proposed amendment."  *Gonzalez-Koeneke v. West*, 791 F.3d 801, 806

(7th Cir. 2015) (quoting *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1139 (7th Cir. 1986)).

"District courts may refuse to entertain a proposed amendment on futility grounds when the new pleading would not survive a motion to dismiss." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 685 (7th Cir. 2014) (quoting *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 869 (7th Cir. 2013)).  The Seventh Circuit has held that when the district court dismisses a plaintiff's original complaint, the court should generally give the plaintiff "at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).  Under such circumstances, a court should grant leave to amend "[u]nless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Id.* at 519–20 (emphasis in original) (quoting *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004)).  Denials of leave to amend are generally reviewed for abuse of discretion, but where a district court denies leave to amend based on futility, the appellate court will conduct de novo review using Rule 12(b)(6) standards.  *Id.* at 524.

Relevant to a futility argument, "[a] motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014).  Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A plaintiff's "[f]actual allegations must be enough to

raise a right to relief above the speculative level." *Id.* Put differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In determining the sufficiency of a complaint under the plausibility standard, courts must "accept all well-pleaded facts as true and draw reasonable inferences in [a plaintiff's] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016); *see also Domanus v. Locke Lord LLP*, 847 F.3d 469, 478 (7th Cir. 2017).

## ANALYSIS

### I.     Jurisdiction After Remanding to an Agency for Further Consideration

PCI argues that the Court did not divest itself of jurisdiction over this case when it remanded certain matters to HUD for further proceedings and that the Court's September 2014 decision in this case was not final and appealable. (R. 108 at 5–7; R. 125, Pl.'s Reply, 2–11.) Defendants argue that the "Court's order was . . . a final judgment for purposes of appeal," and that even if that were not the case, the Court relinquished jurisdiction in September 2014. (R. 122, Defs.' Opp. Br., 4–8.) The Court agrees with PCI.

### A.     The Court Did Not Issue a Final, Appealable Order

The parties dispute whether the Court previously issued a final, appealable order. An order remanding a case to an administrative agency generally is not an appealable final order. *See Rush Univ. Med. Ctr. v. Leavitt*, 535 F.3d 735, 738 (7th Cir. 2008) ("Remand usually signifies that a decision is not final."); *Edgewater Found. v. Thompson*, 350 F.3d 694, 696 (7th Cir. 2003) ("Remands usually are not appealable, because they are not 'final' decisions; but remands that otherwise may escape appellate review may be reviewable immediately."); *Travis v. Sullivan*, 985 F.2d 919, 920 (7th Cir. 1993) ("[O]rdinarily an order remanding a case to an

administrative agency is not final."); *Crowder v. Sullivan*, 897 F.2d 252, 252 (7th Cir. 1990) (per curiam); *Kapco Mfg. Co. v. C & O Enters., Inc.*, 773 F.2d 151, 153 (7th Cir. 1985) ("[A]n order remanding a case to an administrative agency for reconsideration is almost always interlocutory."); *see also Sierra Club v. U.S. Dep't of Agric.*, 716 F.3d 653, 656 (D.C. Cir. 2013) ("It is black letter law that a district court's remand order is not normally 'final' for purposes of appeal under 28 U.S.C. § 1291." (citation omitted)); *Fla. Wildlife Fed'n, Inc. v. Adm'r*, 737 F.3d 689, 693 (11th Cir. 2013); 15B Charles Alan Wright et al., *Federal Practice & Procedure: Jurisdiction* § 3914.32 (2d ed. online 2017) (explaining that "[t]he general rule is that a remand is not appealable as a final decision" and that "[a] partial remand is even more clearly not final"); James T. O'Reilly, *Administrative Rulemaking* § 13:8 (online ed. 2017) (noting that subject to certain exceptions, "[a] decision of a district court remanding a case to an agency for further consideration does not qualify as an appealable collateral order"). There are, however, certain exceptions to the general rule.

One such exception exists where a district court remands to an agency "when the proceeding may end without further litigation—for, if the private claimant prevails, the agency cannot obtain judicial review of its own decision (even when that decision has been compelled by a judicial decision with which the agency disagrees)." *Rush*, 535 F.3d at 738; *see Edgewater*, 350 F.3d at 697 (explaining that the Supreme Court in *Sullivan v. Finkelstein*, 496 U.S. 617 (1990), held that "remands that otherwise may escape appellate review may be reviewable immediately" and that remand is final "when the main question will not recur after the agency's new decision"); Wright et al., *supra*, § 3914.32 (noting the collateral order doctrine as an exception to the general rule regarding finality); *see also Sierra Club*, 716 F.3d at 656–57 (noting an exception that allows an immediate appeal where a government agency cannot

"challenge its own actions complying with a remand order"); *MCI Telecomm. Corp. v. Bellsouth Telecomm. Inc.*, 298 F.3d 1269, 1271 (11th Cir. 2002) (explaining that where a district court orders an agency to proceed under a particular legal standard on remand, the order is generally appealable "because the agency, forced to conform its decision to the district court's mandate, cannot appeal its own subsequent order"). Another exception exists where a district court remands to an agency for "a mechanical or otherwise 'ministerial' task, requiring no judgment or discretion." *Crowder*, 897 F.2d at 252 (quoting *In re Riggsby*, 745 F.2d at 1156); *see also In re A.G. Fin. Serv. Ctr., Inc.*, 395 F.3d 410, 413 (7th Cir. 2005).

Neither of these exceptions applies to the current case. First, the remand left HUD with far more than a "ministerial" task. Indeed, the Court ordered HUD to carefully consider various complicated issues that the insurance industry raised in comments, analyze the issues, and fully explain its reasoning. Moreover, it took more than two years until HUD issued its supplemental explanation. Second, this is not a case where the Court's ruling would be effectively unreviewable after remand. While the Court instructed HUD to give consideration to certain issues, it did not mandate or effectively mandate an outcome. Rather, the Court simply ordered HUD to consider issues it had not. Indeed, HUD *reaffirmed* the Disparate Impact Rule in all respects. HUD did not find itself in the situation falling within the exception to the general rule on finality in which it could not obtain judicial review of its own decision because it was forced to comply with the district court's mandate, as when a district court orders an agency to proceed under a different standard of review. *See MCI*, 298 F.3d at 1271. The Court did not "compel[] . . . [a] decision with which the agency disagrees" that the agency could not appeal. *See Rush*, 535 F.3d at 738. Nor is this is this a case in which the main questions would "not recur after the agency's new decision"—unless HUD ultimately agreed with PCI upon further

reflection or vice-versa.  *See Edgewater*, 350 F.3d at 697.  In short, the Court's remand was akin to cases in which a district court remands to an administrative agency for consideration of additional evidence.  Such remand orders are not final or appealable.  *See MCI*, 298 F.3d at 1271 (explaining that "there is a widely recognized distinction between remands where a district court simply orders the agency to proceed under a 'certain legal standard'"—where an order is appealable—and "situations where a district court remands for further consideration of evidence"); *see also Edgewater*, 350 F.3d at 697 (explaining that in cases in which the court remands to an agency and "postpone[s] adjudication until after additional evidence has been analyzed," there is no final decision); *Flores v. United States*, No. 11-12119, 2015 WL 3887537, at *6 (E.D. Mich. June 24, 2015) (concluding that a remand "for further factual determinations" was not final and comparing such an action to "sentence six" remands in Social Security Act cases in which courts remand for consideration of new evidence but "do[] not rule in any way as to the correctness of the administrative determination" (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991))).[2]

---

[2] Defendants argue that the Court's prior decision was "effectively final" and appealable.  (R. 122 at 7.)  They do not, however, provide an explanation as to why this is so—for example, by explaining how the Court's remand was similar to a remand requiring an agency to use a certain legal standard or reach a particular result.  Defendants do cite, without further explanation, *Edgewater*, where the Seventh Circuit suggested that in the case before it, perhaps the agency remand was "otherwise unreviewable" from the agency's perspective because "only the [plaintiff] [could] seek judicial review of the new administrative decision, and only an immediate appeal could [have] vindicate[d] the agency's interest in avoiding pointless (if not *ultra vires*) administrative proceedings."  350 F.3d at 696.  This statement, however, was dicta, as the court used qualifying language ("may well be") before stating its proposition, and the court ultimately determined that there was no final decision because the district court had remanded the case to the agency for consideration of additional evidence.  *Id.* at 696–97.  Moreover, the facts of *Edgewater* distinguish it from the current case.  There, the parties agreed on the amount of money that a hospital owed Medicare and the amount Medicare owed the hospital in return.  *Id.* at 695.  They disputed, however, the agency's calculation of interest under a statute.  *Id.*  The district court remanded the case to the agency on grounds that neither party had raised as pertinent, including calculation of the amount that Medicare owed the hospital.  *Id.* at 696.  Thus, the Seventh Circuit was simply commenting on an unusual situation in which "[o]ne might have anticipated an appeal by the Administrator, on the ground that a district court lacks authority to treat the bureaucracy as an ombudsman that may be directed to inquire into whatever issues pique the judge's curiosity."  (*Id.*)  In the current case, in contrast, the Court remanded on grounds that the parties disputed.  Finally, *Edgewater* reiterated the rule that "[r]emands usually are not appealable, because they are not 'final' decisions."  *Id.* at 696.

Defendants make a number of counterarguments. First, they cite cases for the proposition that when a court enters judgment and closes a case, the court lacks jurisdiction to allow the amendment of a complaint. (R. 122 at 4–5.) The cases Defendants cite—*Sparrow v. Heller*, 116 F.3d 204 (7th Cir. 1997); *Precision Brand Prod., Inc. v. Downers Grove Sanitary Dist.*, No. 08-CV-5549, 2009 WL 3853153 (N.D. Ill. Nov. 17, 2009); and *Camp v. Gregory*, 67 F.3d 1286 (7th Cir. 1995)—involved dismissals rather than agency remands. Additionally, there was no final judgment in this case previously, which is what divests a court of jurisdiction. *See Camp*, 67 F.3d at 1289. While the Clerk of Court filed a document entitled "Judgment in a Civil Case" in this action and "closed" the case, closing a case is an administrative action and the judgment merely reiterated the Court's ruling—a partial dismissal on subject matter jurisdiction grounds, a remand to the agency for further proceedings, and a grant of summary judgment to HUD on PCI's challenge to HUD's burden-shifting framework. (R. 100.) The filing of this administrative document does not strip the Court of its jurisdiction. *Edgewater*, 350 F.3d at 697–98 (explaining that an order is not necessarily final and appealable even if a district court says it is); *Flores*, 2015 WL 3887537, at *4–5 (explaining that the closure of a case was "made for statistical purposes" and that it was "appropriate to permit plaintiff to now seek final judgment"); *see also Stevens v. Santander Holdings USA Inc.*, 799 F.3d 290, 300 (3d Cir. 2015); *Young v. Prudential Ins. Co. of Am.*, 671 F.3d 1213, 1215–16 (11th Cir. 2012).

Second, Defendants argue that PCI "misstates the general rule regarding appealability of agency remands by citing to outdated cases holding that remands to agencies generally are not final, appealable orders." (R. 122 at 6.) Defendants rely primarily on a 1999 Seventh Circuit case, *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 979 (7th Cir. 1999), to support this proposition. *Rush* and *Edgewater*, however, postdate

*Perlman* and reiterate the longstanding rule that remands to agencies generally are not final

orders. This rule—which the Wright and Miller treatise as well as the decisions of other courts

recognize, *see supra*—applies in this case. While *Perlman* does contain some language that

suggests otherwise, *see* 195 F.3d at 979 (explaining that the Supreme Court's decisions in

*Finkelstein* and *Forney v. Apfel*, 524 U.S. 266 (1998), "undermined" the premise that

administrative remands were non-final and "completed the process of making administrative

remands generally appealable"); (R. 122 at 6), Defendants ignore the context of this language.

The *Perlman* court discussed Supreme Court cases dealing with "sentence four" remands in

Social Security Act cases, where the text of the Social Security Act mandates that such remands

are appealable. 195 F.3d at 978–79; *Forney v. Apfel*, 524 U.S. 266, 267, 269–70 (1998)

(discussing *Finkelstein*, which "reasoned, primarily from the language of [42 U.S.C.] § 405(g)"

that sentence four remands were appealable, and extending *Finkelstein*'s holding to cases in

which the claimant rather than the agency seeks to appeal); *Finkelstein*, 496 U.S. at 619, 623–25

(holding that sentence four remands are immediately appealable by the agency, but expressly

stating that "the issue before [the court] is not the broad question whether remands to

administrative agencies are always immediately appealable"). Thus, the language from *Perlman*

upon which Defendants rely is inapposite to the current case. Moreover, in *Edgewater*, a case

the Seventh Circuit decided after *Perlman*, the court explained:

> To the extent that *Finkelstein*, *Schaefer*, and *Forney* can
> be generalized beyond § 405(g), we concluded in *Perlman*[, 195 F.3d
> at 979] . . . that the rule they establish is this: "If the district court
> finds that the [administrative] decision was erroneous and enters a
> judgment wrapping up the litigation, that decision is appealable
> even if extra-judicial proceedings lie ahead; but if the court
> postpones adjudication until after additional evidence has been
> analyzed, then it has not made a final decision."

350 F.3d at 697. The current case is analogous to cases in which courts remand to an agency for examination of additional evidence. It therefore falls within the general rule that "[r]emands usually are not appealable." *Id.* at 696.

In short, the Court's September 2014 order remanding this case to HUD for further consideration of the insurance industry's comments was not a final, appealable order.

### B.     The Court Did Not Divest Itself of Jurisdiction

Defendants argue that "whether an agency remand is a final judgment for purposes of appeal is a separate question from the one relevant here: whether the Court divested jurisdiction over this action when it remanded the case to HUD for further proceedings, entered judgment, and the case was closed." (R. 122 at 5.) As support, Defendants cite *District Hospital Partners, L.P. v. Burwell*, No. 11-0116 (ESH), Dkt. No. 133, at 2 (D.D.C. Feb. 22, 2016), where the court explained that it did not retain jurisdiction expressly or implicitly upon an administrative remand "[a]lthough it certainly had the discretion to do so" even though the remand order was "not a final, appealable order." The court explained that "the lack of a final, appealable order [does not] necessarily mean[] that the Court *must* have retained jurisdiction." *District Hosp.*, No. 11-0116 (ESH), at 2 (emphasis in original). Otherwise, the court reasoned, "there would be no discretion for district courts to exercise." *Id.* Other courts within the D.C. Circuit have said that "although courts have discretion to retain jurisdiction pending completion of a remand and to order progress reports in the meantime, this discretion is also exercised only in unusual circumstances, not present here, such as 'cases alleging unreasonable delay of agency action or failure to comply with a statutory deadline, or for cases involving a history of agency noncompliance with court orders or resistance to fulfillment of legal duties.'" *Alegent Health-Immanuel Med. Ctr. v. Sebelius*, 917 F. Supp. 2d 1, 3 (D.D.C. 2012) (quoting *Baystate Med. Ctr.*

*v. Leavitt*, 587 F. Supp. 2d 37, 41 (D.D.C. 2008)); *Baystate*, 587 F. Supp. 2d at 41 (collecting cases).

The Court doubts that these non-binding cases are applicable here, where it was not the Court's intention to relinquish jurisdiction and the Court did not order progress reports or actively oversee proceedings during the remand. *See Alegent*, 917 F. Supp. 2d at 3; *Baystate*, 587 F. Supp. 2d at 41. Retaining jurisdiction to permit the parties to reopen the litigation after HUD completed its court-ordered review was prudent and efficient in this case. The Court simply ordered the agency to give further consideration to certain issues; it did not order a particular result. It is possible that HUD could have ignored the Court, complied entirely with the Court's order, or could have misapprehended the Court's order. In the event Plaintiffs believed that HUD had failed to comply with the Court's order, there was no reason to force Plaintiffs to refile simply to renew a challenge go HUD's actions during proceedings on remand. *See Am. Haw. Cruises v. Skinner*, 893 F.2d 1400, 1403 (D.C. Cir. 1990) ("A party not satisfied with the Coast Guard's decision after remand can come back to the district court with a challenge to the agency's reconsidered decision."); *see also Biodiversity Legal Found. v. Babbitt*, Nos. 96-5033, 96-5054, 96-5055, 1997 WL 150095, at *1 (D.C. Cir. 1997) ("Appellants/cross-appellees can raise their challenges to the district court's remand order, and the order denying reconsideration, once the district court issues a final order concluding the proceedings after remand."). Additionally, by retaining jurisdiction after remand proceedings completed, the Court avoided the inefficient and disfavored splitting of this case into piecemeal litigation for possible appeals of fully adjudicated claims. *See Cont'l Cas. Co. v. Anderson Excavating & Wrecking Co.*, 189 F.3d 512, 518 (7th Cir. 1999) (explaining that Federal Rule of Civil Procedure 54(b) orders "permit[] piecemeal appeal[s]. which [are] disfavored in the federal

system"); *Brown v. Patelco Credit Union*, No. 09-cv-5393, 2010 WL 5439714, at *3 (N.D. Ill. Dec. 28, 2010); *see also* Wright et al., *supra*, § 3914.32 (explaining that "[t]he general rule is that a remand is not appealable as a final decision" and that "[a] partial remand is even more clearly not final").

In sum, the Court did not intend to—and did not—strip itself of jurisdiction to consider the current motion nor would doing so have been an efficient course of action in light of the Court's non-final order remanding a portion of this case to HUD for further proceedings. The Court has the latitude to rule on the motion now before it, just as other courts have done under similar circumstances. *See Flores*, 2015 WL 3887537, at *4–5; *Swedish Am. Hosp. v. Sebelius*, No. 08-cv-2046 (D.D.C. Oct. 17, 2014) (reopening case after remand to agency in minute order); *Swedish Am. Hosp. v. Sebelius*, 773 F. Supp. 2d 1, 14 (D.D.C. 2011); *Tripoli Rocketry Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 698 F. Supp. 2d 168, 171 (D.D.C. 2010) (noting that the court permitted amendment of a complaint after a remand to an agency); *Defs. of Wildlife v. Kempthorne*, No. 04-1230 (GK), 2006 WL 2844232, at *12 (D.D.C. Sept. 29, 2006) ("A court retains jurisdiction to enforce the terms of its remand order when an agency fails to meet them."), *on reconsideration in part sub nom.*, *Defs. of Wildlife v. Salazar*, 842 F. Supp. 2d 181 (D.D.C. 2012). Accordingly, the Court turns to the merits of the motion before it.

## II.     Futility

Defendants argue that the Court should deny PCI's motion because the amendment would be futile. (R. 122 at 8.) The Court agrees in part.

First, Defendants contend that some of the counts in PCI's proposed amended complaint are duplicative of a count the Court previously dismissed or counts for which the Court entered summary judgment in favor of Defendants. (*Id.*) Count VI in the proposed amended complaint,

which alleges that the application of the Disparate Impact Rule to homeowners insurance violates the McCarran-Ferguson Act, is essentially the same as Count I of the original complaint, which the Court dismissed for lack of subject matter jurisdiction on ripeness grounds. (*Compare* R. 1 at ¶¶ 71–78, *with* R. 107-1 at ¶¶ 150–57; *see* R. 99 at 17, 31–32.) PCI appears to recognize that it has not altered this claim and indicates that "[a]t a minimum, th[e] claim[ is] properly included in the amended complaint to avoid any doubt that [it] ha[s] been preserved for appeal." (R. 125 at 14.) PCI does not point to any change of circumstance that renders the claim ripe, and the Court cannot discern such a change either. Accordingly, it is clear that the Court lacks jurisdiction over that claim. The Court denies PCI's motion with respect to Count VI.

Similarly, Count VII—in which PCI contends that the burden-shifting scheme is arbitrary and capricious, an abuse of discretion, and not in accordance with law, primarily under *Wards Cove Packaging Co. v. Antonio*, 490 U.S. 642 (1989)—and Count VIII—in which PCI contends that HUD failed to respond to comments regarding *Wards Cove*—are the same claims on which the Court granted summary judgment to Defendants. (*Compare* R. 1 at ¶¶ 99–108, *with* R. 107 ¶¶ at 158–67; *see* R. 99 at 17, 48–51.) PCI appears to recognize that these claims are duplicative of claims the Court has already resolved. (*See* R. 125 at 14–15.) Because the Court has already ruled on these counts against PCI, the Court denies PCI's motion with respect to Counts VII and VIII.

Second, Defendants argue that Count V of the proposed amended complaint—in which PCI claims that application of the Disparate Impact Rule to homeowners insurance is contrary to the FHA as interpreted by the Supreme Court in *Inclusive Communities*—is without merit. (R. 122 at 9.) The Supreme Court in *Inclusive Communities* affirmed the Fifth Circuit's adoption of HUD's burden-shifting approach and held that disparate-impact claims are cognizable under the

FHA.  *See* 135 S. Ct. at 2514–15, 2525–26; *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, 747 F.3d 275, 282 (5th Cir. 2014) ("We now adopt the burden-shifting approach in 24 C.F.R. § 100.500 for claims of disparate impact under the FHA."); *Inclusive Cmtys. Project, Inc. v. Tex. Dep't of Hous. & Cmty. Affairs*, No. 3:08-CV-0546-D, 2015 WL 5916220, at *1, *3 (N.D. Tex. Oct. 8, 2015) (noting that the "[Supreme] Court did not disturb the Fifth Circuit's adoption of the HUD burden-shifting regimen"); *see also, e.g.*, *Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581, 618 (2d Cir. 2016) (explaining that in *Inclusive Communities*, "[t]he Supreme Court implicitly adopted HUD's approach"); *Borum v. Brentwood Vill., LLC*, 218 F. Supp. 3d 1, 21–22 (D.D.C. 2016) (applying HUD's burden-shifting framework).  In so ruling, the Supreme Court pointed out key limitations to disparate-impact liability to ensure that it is not imposed solely on the basis of a statistical disparity and instead targets "artificial, arbitrary, and unnecessary barriers."  *Inclusive Cmtys.*, 135 S. Ct. at 2522 (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)).  Accordingly, the Supreme Court noted that disparate-impact liability must "give housing authorities and private developers leeway to state and explain the valid interest served by their policies."  *Id.*  The Disparate Impact Rule does this in the second step of the burden-shifting scheme.  Additionally, the Supreme Court explained that "a disparate-impact claim that relies on a statistical disparity must fail if the plaintiff cannot point to a defendant's policy or policies causing that disparity."  *Id.* at 2523.  The Supreme Court did not indicate that HUD's burden-shifting approach violates this principle.  *See id.*; *see also* 24 C.F.R. § 100.500 ("[T]he plaintiff . . . has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect."); Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11460, 11469 (Feb. 15, 2013) ("Under th[e] rule, the charging party or plaintiff has the burden of proving that a challenged practice causes a

discriminatory effect.").[3]  The Supreme Court also cautioned that "[c]ourts should avoid interpreting disparate-impact liability to be so expansive as to inject racial considerations into every housing decision," *Inclusive Cmtys.*, 135 S. Ct. at 2524, although the Court further explained that "that race may be considered in certain circumstances and in a proper fashion" and that "mere awareness of race in attempting to solve the problems facing inner cities does not doom that endeavor at the outset," *id.* at 2525.  The Supreme Court did not indicate that HUD's burden-shifting regime violates these principles about racial considerations.

In short, the Supreme Court in *Inclusive Communities* expressly approved of disparate-impact liability under the FHA and did not identify any aspect of HUD's burden-shifting approach that required correction.  While *Inclusive Communities* cautions courts about imposing disparate-impact liability under certain circumstances, *see, e.g.*, *id.* at 2524 ("Courts should avoid interpreting disparate-impact liability to be so expansive as to inject racial considerations into every housing decision."); *id.* at 2523 ("Courts must therefore examine with care whether a plaintiff has made out a prima facie case of disparate impact and prompt resolution of these cases is important."), these concerns are best left for analysis in specific cases rather than in a facial, pre-enforcement challenge.  The Court therefore denies PCI's motion with respect to Count V, although the Court notes that it is possible that *Inclusive Communities* will be relevant to one or more of the remaining claims in the case in some fashion.

Third, Defendants challenge Counts II–IV, which allege that HUD failed to adequately consider the three issues the Court directed HUD to further examine upon remand.  Defendants spend a mere two pages on these arguments, (R. 122 at 11–12), and PCI addresses them in about three pages over two briefs, (R. 125 at 11–13; R. 108 at 8–9).  Given the importance and

---

[3] If the Disparate Impact Rule were applied in such a way that eliminated the need to prove causation, it would be contrary to the FHA under *Inclusive Communities*.  The Supreme Court's decision in *Inclusive Communities*, however, did not indicate that the Disparate Impact Rule is capable of such an application.

complexity of this case and given that the Court cannot discern based on the parties' briefs that these amended claims are clearly without merit, the Court grants PCI's motion with respect to these counts. This process will allow the parties to fully brief whether HUD satisfied its obligations pursuant to the Court's September 2014 order.[4]

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part PCI's motion. The motion is granted with respect to Counts I–IV and denied with respect to the remaining Counts.


**DATED: June 20, 2017**                                    **ENTERED**

_____
AMY J. ST. EVE
United States District Court

---

[4] The Court also grants PCI's motion with respect to Count I (whether HUD adequately considered the impact of *Inclusive Communities*), particularly with respect to how, if at all, *Inclusive Communities* affects the various issues the Court ordered PCI to consider on remand.