**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-08564 |
| v. | ) ) | Judge Amy J. St. Eve |
| BENJAMIN S. CARSON, SR., in his official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) | |
| Defendants. | ) | |

<u>**MEMORANDUM IN SUPPORT OF THE PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................1

I.      Prior Proceedings Before This Court ...........................................................................1

II.     PCI's Post-Remand Comments......................................................................................3

III.    The Supreme Court's Decision in *Inclusive Communities* ..........................................3

IV.     PCI's Post-*Inclusive Communities* Comment ..............................................................4

V.      HUD's Supplemental Explanation.................................................................................4

ARGUMENT ........................................................................................................................4

I.      The Supplemental Explanation Did Not Adequately Consider the Impact of the
        McCarran-Ferguson Act .............................................................................................5

        A.      The Supplemental Explanation Ignored the Key Holding of the Seventh
                Circuit's Controlling Decision in *Doe v. Mutual of Omaha* ...................................5

        B.      HUD's Rejection of an Exemption for Risk-Based Pricing and Underwriting
                Was Arbitrary and Capricious ................................................................................6

                1.      HUD Largely Failed to Address Whether to Grant an Exemption for
                        Risk-Based Pricing and Underwriting .......................................................7

                2.      HUD's Reasoning Was Internally Inconsistent .........................................9

                3.      HUD's Reliance on the Rule's Burden-Shifting Framework Was
                        Arbitrary and Capricious...........................................................................10

        C.      HUD's Reliance on State Antidiscrimination Laws Was Arbitrary .....................14

        D.      HUD Erroneously Relied on an Asserted Need for Factual Development............15

II.     The Supplemental Explanation Did Not Adequately Consider the Disparate Impact
        Rule's Effects on the Business of Insurance...............................................................16

III.    The Supplemental Explanation Did Not Adequately Explain Why the Disparate
        Impact Rule Would Not Violate the Filed-Rate Doctrine .................................................18

IV.     The Supplemental Explanation Inadequately Addressed *Inclusive Communities*............19

CONCLUSION......................................................................................................................20

i

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ass'n of Priv. Sector Colls. and Univs. v. Duncan,*
  681 F.3d 427 (D.C. Cir. 2012) ...............................................................................9

*Clement v. SEC,*
  674 F.2d 641 (7th Cir. 1982) ............................................................................9, 13

*Defs. of Wildlife v. E.P.A.,*
  420 F.3d 946 (9th Cir. 2005), *rev'd on other grounds*, 551 U.S. 644 (2007).........10

*Dehoyos v. Allstate Corp.,*
  345 F.3d 290 (5th Cir. 2003) ...............................................................................7

*Doe v. Mutual of Omaha Ins. Co.,*
  179 F.3d 557 (7th Cir. 1999) ..................................................................... *passim*

*Encino Motorcars, LLC v. Navarro,*
  136 S. Ct. 2117 (2016) .....................................................................................4, 9

*Gen. Chem. Corp. v. United States,*
  817 F.2d 844 (D.C. Cir. 1987) .............................................................................10

*Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cty. Metro Human Relations Comm'n,*
  508 F.3d 366 (6th Cir. 2007) ........................................................................ 13-14

*H.J. Inc. v. Nw. Bell Tel. Co.,*
  954 F.2d 485 (8th Cir. 1992) ...............................................................................19

*Humana, Inc. v. Forsyth,*
  525 U.S. 299 (1999)....................................................................................11, 12

*Jones v. Travelers Cas. Ins. Co. of Am.,*
  No. C-13-02390, 2015 WL 5091908 (N.D. Cal. May 7, 2015)..............................15

*Illinois v. United States,*
  666 F.2d 1066 (7th Cir. 1981) ..............................................................................9

*Keogh v. Chicago & N.W. Ry. Co.,*
  260 U.S. 156 (1922).............................................................................................18

*Lifschultz Fast Freight, Inc. v. Consol. Freightways Corp. of Del.,*
  805 F. Supp. 1277 (D.S.C. 1992)........................................................................19

*Lumpkin v. Farmers Grp., Inc.*,
No. 05-2868, 2007 U.S. Dist. LEXIS 98994 (W.D. Tenn. Apr. 26, 2007) ...........................18

*Lumpkin v. Farmers Grp., Inc.*,
No. 05-2868, 2007 WL 6996777 (W.D. Tenn. July 6, 2007)....................................................7

*McCray v. Fidelity Nat'l Title Ins. Co.*,
682 F.3d 229 (3d Cir. 2012)..................................................................................................19

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ............................................................................................... *passim*

*N.A.A.C.P. v. Am. Family Mut. Ins. Co.*,
978 F.2d 287 (7th Cir. 1992) ...............................................................................................17

*Nationwide Mut. Ins. Co. v. Cisneros*,
52 F.3d 1351 (6th Cir. 1995) ...............................................................................................15

*Prop. Cas. Ins. Ass'n of Am. v. Donovan*,
66 F. Supp. 3d 1018 (N.D. Ill. 2014) ...................................................................... *passim*

*Saunders v. Farmers Ins. Exch. (Saunders I)*,
440 F.3d 940 (8th Cir. 2006) ..........................................................................................15, 19

*Saunders v. Farmers Ins. Exch. (Saunders II)*,
537 F.3d 961 (8th Cir. 2008) .....................................................................................2, 15, 16

*Schilke v. Wachovia Mortg., FSB*,
820 F. Supp. 2d 825 (N.D. Ill. 2011) ...............................................................................18, 19

*Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.*,
476 U.S. 409 (1986)..............................................................................................................18

*St. James Hosp. v. Heckler*,
760 F.2d 1460 (7th Cir. 1985) ..............................................................................................12

*Taffet v. Southern Co.*,
967 F.2d 1483 (11th Cir. 1992) (en banc) ...........................................................................19

*Texas Dep't of Hous. and Cmty. Affairs v. The Inclusive Cmtys. Project, Inc.*,
135 S. Ct. 2507 (2015) ...............................................................................................3, 17, 20

*Viens v. Am. Empire Surplus Lines Ins. Co.*,
113 F. Supp. 3d 555 (D. Conn. 2015)....................................................................................15

*Wegoland Ltd. v. NYNEX Corp.*,
27 F.3d 17 (2d Cir. 1994)......................................................................................................19

**STATE CASES**

*H.J., Inc. v. Nw. Bell Corp.,*
    420 N.W.2d 673 (Minn. Ct. App. 1988) ................................................................19

*Schermer v. State Farm Fire & Cas. Co.,*
    721 N.W.2d 307 (Minn. 2006) ................................................................................18

*Toledo Fair Hous. Ctr. v. Nationwide Mut. Ins. Co.,*
    94 Ohio Misc. 2d 151 (C.P. 1997) .........................................................................15

**FEDERAL STATUTES, CODES & REGULATIONS**

15 U.S.C. § 1012(b) ........................................................................................................14

24 C.F.R. § 100.500(b) .....................................................................................................9

24 C.F.R. § 100.500(c)(2) .................................................................................................6

24 C.F.R. § 100.500(c)(3) .................................................................................................6

78 Fed. Reg. 11460 (Feb. 15, 2013) ...............................................................1, 9, 11, 16

81 Fed. Reg. 69012 (Oct. 5, 2016) ......................................................................... *passim*

**STATE STATUTES, CODES & REGULATIONS**

Md. Code Ins. § 27-501 ...................................................................................................13

Tenn. Code Ann. § 56-5-104(1) ........................................................................................7

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................................................15

## INTRODUCTION

This Court's 2014 Memorandum Opinion and Order concluded that the Department of Housing and Urban Development ("HUD") had acted arbitrarily and capriciously by failing to explain adequately its decision to apply its Fair Housing Act ("FHA") Disparate Impact Rule[1] to homeowners insurance. *See Prop. Cas. Ins. Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1046-51 (N.D. Ill. 2014) ("*PCI*"). Specifically, the Court held that HUD had not sufficiently addressed the impact of the McCarran-Ferguson Act on the application of the Rule to homeowners insurance. It further concluded that HUD had not adequately considered the effect of the Rule on the business of insurance and the application of the "filed-rate doctrine." After remand, HUD took almost two years to publish its revised explanation.[2] The new explanation is longer than the original, but it is no more adequate. Once again, HUD did not meaningfully address the significant concerns raised by the insurance industry—and this time by the Court as well. HUD's refusal to grant an exemption for risk-based pricing and underwriting of homeowners insurance was arbitrary and capricious.

## BACKGROUND

### I.     Prior Proceedings Before This Court

Plaintiff Property Casualty Insurers Association of America ("PCI") initiated the present suit on November 27, 2013, challenging application of the Disparate Impact Rule to the provision and pricing of homeowners insurance. Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts ("SOF") ¶ 45. PCI's motion for summary judgment explained the numerous ways in which application of the Rule to homeowners insurance was contrary to law

---

[1] *Implementation of the Fair Housing Act's Discriminatory Effects Standard*, 78 Fed. Reg. 11460 (Feb. 15, 2013).

[2] *Application of the Fair Housing Act's Discriminatory Effects Standard to Insurance*, 81 Fed. Reg. 69012 (Oct. 5, 2016).

and arbitrary and capricious. Dkt. No. 21 & Dkt. No. 44. This Court dismissed as unripe PCI's claim that the Rule facially violates the McCarran-Ferguson Act. *See PCI*, 66 F. Supp. 3d at 1040-42. It also upheld the Rule's burden-shifting framework. *See id.* at 1052-53. The Court otherwise granted summary judgment to PCI, concluding that HUD's explanation was arbitrary and capricious in several respects. *See id.* 1046-52.

The Court first found that HUD had provided insufficient justification for preferring case-by-case adjudication of McCarran-Ferguson preclusion claims over rulemaking. *Id.* at 1048. The Court rejected HUD's contention that it could disregard the McCarran-Ferguson Act entirely. The Court also observed that HUD had made "no attempt" to determine how often McCarran-Ferguson preclusion would apply and whether it would bar entire categories of disparate impact claims against insurers, finding "HUD's lack of analysis … particularly glaring in light of the Seventh Circuit's reasoning in *[Doe v.] Mutual of Omaha*, 179 F.3d [557,] 563-64 [(7th Cir. 1999)], and the Eighth Circuit's similar recognition in *Saunders [v. Farmers Ins. Exch.]*, 537 F.3d [961,] 967 [(8th Cir. 2008)]." *PCI*, 66 F. Supp. 3d at 1048. The Court noted that HUD had "failed to even acknowledge *Mutual of Omaha* and *Saunders*, which called into question the viability of many (if not most) disparate impact claims against insurers in light of the McCarran-Ferguson Act." *Id.* at 1049. The Court also determined that HUD had inadequately examined whether the filed-rate doctrine would bar application of the Rule. *Id.* at 1050. Finally, the Court concluded that HUD had made "no effort to evaluate" the substance of the homeowners insurance industry's argument that the Rule would prevent the use of actuarially sound risk factors and thereby undermine the fundamental nature of the insurance business. *Id.* at 1051. Accordingly, the Court remanded to HUD for further explanation of these issues.

## II.     PCI's Post-Remand Comments

In September 2014, PCI informed HUD that it intended to submit additional comments addressing the issues that this Court had instructed HUD to address on remand.  *See* Letter from PCI to HUD, at 1 (Sept. 25, 2014) (First Amended Complaint ("FAC") Ex. 3); SOF ¶ 53.  PCI then submitted comments further explaining how the Disparate Impact Rule would invalidate, impair, or supersede states' regulation of insurance and distort the homeowners insurance market.  *See* Letter from PCI to HUD (Jan. 26, 2015) (A.R. 4496-4513); SOF ¶ 54.  PCI emphasized that the Rule's burden-shifting process would impose liability on homeowners insurers for providing and pricing insurance using actuarially sound methods.  *Id.* at 8 (A.R. 4503); SOF ¶ 55.  PCI explained that prohibiting those methods would violate the McCarran-Ferguson Act and the filed-rate doctrine, as well as harm the homeowners insurance industry. *See id.* at 9-18 (A.R. 4504-4513); SOF ¶¶ 55, 56, 57.  PCI's comment also alerted HUD to the importance of the Supreme Court's upcoming consideration of *Texas Department of Housing and Community Affairs v. The Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015) (*"Inclusive Communities"*).  *See* Letter from PCI to HUD, at 5-6 (Jan. 26, 2015) (A.R. 4500-4501); SOF ¶ 58.

## III.     The Supreme Court's Decision in *Inclusive Communities*

While this case was pending before HUD on remand, the Supreme Court issued its decision in *Inclusive Communities*.  The Court held that disparate-impact discrimination claims are cognizable under the FHA.  But, as discussed in more detail below, the Court also circumscribed the scope of those claims in important respects, making clear that the FHA is not intended to interfere with legitimate business decisions or hold defendants "liable for racial disparities they did not create."  135 S. Ct. at 2523.

## IV. PCI's Post-*Inclusive Communities* Comment

Shortly after the Supreme Court issued its decision in *Inclusive Communities*, PCI submitted comments explaining that HUD must consider the Supreme Court's newly articulated limitations on disparate-impact liability. *See* Letter from PCI to HUD (July 29, 2015) (A.R. 4615-4621); SOF ¶ 61. PCI emphasized that *Inclusive Communities* prohibited application of the Rule to legitimate business practices, including risk-based homeowners insurance practices. *See* Letter from PCI to HUD, at 5-7 (July 29, 2015) (A.R. 4619-4621); SOF ¶¶ 61.

## V. HUD's Supplemental Explanation

On October 5, 2016, HUD published its Supplemental Explanation. *See* 81 Fed. Reg. 69012. The Supplemental Explanation rejected insurers' request for an exemption from the Rule, concluding that exemptions would be "unworkable and inconsistent with" the objectives of the FHA and that insurers' concerns "can and should be addressed on a case-by-case basis." *Id.*

## ARGUMENT

HUD's refusal to exempt risk-based pricing and underwriting of homeowners insurance from the Disparate Impact Rule was arbitrary and capricious. "[A]n agency must give adequate reasons for its decisions" and "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) (internal quotation marks omitted). An agency decision is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As explained below, in several important respects the Supplemental Explanation fell short of these obligations.

4

## I.     The Supplemental Explanation Did Not Adequately Consider the Impact of the McCarran-Ferguson Act

This Court previously concluded that HUD had failed to address sufficiently the impact of the McCarran-Ferguson Act, noting that HUD had "made no attempt to evaluate how often McCarran-Ferguson preclusion would apply and whether it would bar entire categories of disparate impact claims against insurers" and that HUD had "failed to even acknowledge *Mutual of Omaha*." 66 F. Supp. 3d at 1048-49. The Supplemental Explanation fares no better.

### A.     The Supplemental Explanation Ignored the Key Holding of the Seventh Circuit's Controlling Decision in *Doe v. Mutual of Omaha*

The Seventh Circuit held in *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557, 564 (7th Cir. 1999), that "requir[ing] federal courts to determine whether [challenged insurance practices] are actuarially sound and consistent with state law" violates the McCarran-Ferguson Act. The Court explained that "[s]tate regulation of insurance is comprehensive and includes rate and coverage issues, so if federal courts are now to determine whether [particular insurance practices] are actuarially sound and consistent with principles of state law they will be stepping on the toes of state insurance commissioners." *Id.* (citation omitted). Indeed, this Court observed that "*Mutual of Omaha* supports PCI's argument that the McCarran-Ferguson Act bars any claims that require courts to determine whether an insurer's practices are actuarially sound and consistent with state law." 66 F. Supp. 3d at 1039; *see also id.* at 1028-29 (describing *Mutual of Omaha*). This Court rejected HUD's argument that the relevant language in *Mutual of Omaha* was dicta. *See id.* at 1039 n.6 ("*Mutual of Omaha* is binding on this Court.").

As applied to risk-based pricing and underwriting, the Disparate Impact Rule mandates exactly the kind of federal-court review that *Mutual of Omaha* forbids. It requires insurers to show in federal court that any use of actuarial risk factors that has a disparate impact is

"necessary to achieve one or more [of its] substantial, legitimate, nondiscriminatory interests,"

24 C.F.R. § 100.500(c)(2)—in other words, to show that the practice is actuarially sound.

Insurers would also have to defeat the plaintiff's efforts to demonstrate that "the challenged

practice could be served by another practice that has a less discriminatory effect." *Id.*

§ 100.500(c)(3); *see also* Letter from PCI to HUD, at 14-15 (Jan. 26, 2015) (A.R. 4509-4510).

HUD's only example of a less discriminatory alternative was an "alternative risk-based

practice." 81 Fed. Reg. at 69017. Federal courts would thus impermissibly be required to assess

the actuarial soundness of insurance practices at both the second and third prongs of HUD's

burden-shifting test.

Despite this Court's emphasis on *Mutual of Omaha*, the Supplemental Explanation made

no effort to address the decision's key holding. It mentioned *Mutual of Omaha* only once, and it

did so simply to support the uncontroversial point that the McCarran-Ferguson Act bars

application of disparate-impact liability only when it would conflict with state law. *See* 81 Fed.

Reg. at 69015. HUD never addressed the clear holding of *Mutual of Omaha* that this Court

noted and found applicable here: that the McCarran-Ferguson Act prohibits a federal court from

determining whether an insurer's practices "are actuarially sound and consistent with state law."

*Mutual of Omaha*, 179 F.3d at 564. HUD's failure to address this critical issue renders its

Supplemental Explanation arbitrary and capricious. *See Motor Vehicle Mfrs.*, 463 U.S. at 43.

### B.     HUD's Rejection of an Exemption for Risk-Based Pricing and Underwriting Was Arbitrary and Capricious

In its prior motion for summary judgment and its comments to HUD, PCI demonstrated

that state insurance laws uniformly permit risk-based pricing and underwriting. *See* Dkt. No. 21

at 8, 20-23; Dkt. No. 44 at 22 & n.12; Letter from PCI to HUD, at 9-10 (Jan. 26, 2015) (A.R.

4504-4505); SOF ¶ 55.[3]  PCI also showed that almost all state laws expressly *require* the use of

risk-based pricing.  *See* Dkt. No. 21 at 9, 23-24; Letter from PCI to HUD, at 8-9 (Jan. 26, 2015)

(A.R. 4503-4504); SOF ¶ 55; *see also PCI*, 66 F. Supp. 3d at 1039 (noting that "some states

require insurers to use risk-based pricing" and that others "merely permit risk-based pricing").

PCI similarly observed that the vast majority of states require insurers to file insurance rates with

state regulators for review and/or approval.  *See* Dkt. No. 21 at 9, 24-25; Letter from PCI to

HUD, at 12 (Jan. 26, 2015) (A.R. 4507); SOF ¶ 56.[4]  PCI explained that HUD's Disparate

Impact Rule would invalidate, impair, or supersede these laws, and thus contravene McCarran-

Ferguson, because it would impose liability on any insurer using a valid actuarial risk factor that

happens to have a disparate impact if some other, less effective factor could be used.  *See* Dkt.

No. 21 at 22-25; Letter from PCI to HUD, at 8-13 (Jan. 26, 2015) (A.R. 4503-4508); SOF ¶ 38.

In the Supplemental Explanation, HUD's only response to insurers' showing that the McCarran-

Ferguson Act requires an exemption for risk-based pricing and underwriting was to argue that

insurers could defend their practices under the Rule's burden-shifting framework.  *See* 81 Fed.

Reg. at 69015, 69017.  HUD's response was arbitrary and capricious for several reasons.

### 1.    HUD Largely Failed to Address Whether to Grant an Exemption for Risk-Based Pricing and Underwriting

In response to insurers' request for an exemption, HUD first threw up its hands, claiming

that it was "practically impossible . . . to define the scope of insurance practices covered by an

---

[3] On remand, HUD relies on *Lumpkin v. Farmers Group, Inc.*, No. 05-2868, 2007 WL 6996777 (W.D. Tenn. July 6, 2007).  *See* 81 Fed. Reg. at 69016.  In that case, the court correctly noted that, under Tennessee law, "[i]nsurance rates are not deemed to be unfairly discriminatory merely because different premiums are charged to insureds with like loss exposure but different expenses or to insureds with like expenses but different loss exposure, so long as the different rates reflect those differences reasonably accurately." *Id.* at *6.  But the court failed to recognize that such a law permits risk differentiation.  In any event, the court did not address Tenn. Code Ann. § 56-5-104(1), which affirmatively requires insurers to consider past and prospective loss experience, catastrophe hazards, and all other relevant factors.

[4] PCI's identification of the specific state laws at issue distinguishes this case from *Dehoyos v. Allstate Corp.*, 345 F.3d 290 (5th Cir. 2003).  *But see* 81 Fed. Reg. at 69015 (continuing to rely on *Dehoyos*).

exemption or safe harbor with enough precision to avoid case-by-case disputes over its application." 81 Fed. Reg. at 69013. HUD noted concerns raised by insurers about application of the Rule to "sound actuarial underwriting principles" and "accurate risk-based pricing," which would "threaten[]" "accurate risk assessment" and "the sound actuarial standards underpinning the insurance market." 81 Fed. Reg. at 69014. But HUD responded by declining to exempt "*all* insurance or . . . underwriting practices." *Id.* (emphasis added); *see id.* at 69015 (exempting all insurance or underwriting practices "would necessarily be overbroad"); *id.* at 69017 (rejecting "broad exemption" for "*all* insurance practices or *all* underwriting decisions").

By focusing on whether to exempt *all* insurance practices, HUD side-stepped the key issue—whether to exempt risk-based pricing and underwriting of homeowners insurance. PCI's primary argument has been that the use of actuarial risk factors is required or permitted by state insurance laws and is central to the business of insurance. *See, e.g.*, Letter from PCI to HUD, at 1 (Jan. 17, 2012) (A.R. 553) (explaining that the issue is whether HUD can prohibit "non-racially motivated and sound actuarial underwriting principles recognized by state insurance regulators . . . that permit accurate risk-based pricing"); Dkt. No. 21 at 2 (noting state law permits insurers "to make rating and underwriting decisions on the basis of objective risk factors"); Letter from PCI to HUD, at 2 (Jan. 26, 2015) (A.R. 4497) (focusing on "neutral risk factors"); *PCI*, 66 F. Supp. 3d at 1034 (describing PCI's litigation as "seeking to invalidate the Disparate Impact Rule as it applies to the provision and pricing of homeowners insurance").

Most of HUD's arguments were therefore unresponsive to PCI's primary contention. Even if HUD concluded that *some* insurance practices should be considered on a case-by-case basis—and therefore that an exemption for *all* insurance practices was unwarranted—it was arbitrary and capricious to rely on that conclusion to deny an exemption for risk-based pricing

and underwriting.[5] It was not "practically impossible" to define the scope of an exemption. 81 Fed. Reg. at 69013. HUD should have exempted risk-based pricing and underwriting of homeowners insurance.

### 2. HUD's Reasoning Was Internally Inconsistent

With respect to whether to grant an exemption for risk-based pricing and underwriting, the Supplemental Explanation had almost nothing to say. HUD did not dispute that state law uniformly permits and often requires insurers to consider actuarial risk factors. *See* 81 Fed. Reg. at 69015. Rather, it "recognizes that risk-based decision making is an important aspect of sound insurance practice." *Id.* Even more significantly, HUD conceded that "nothing in the Rule prohibits insurers from making decisions that are in fact risk-based." *Id.* HUD's sole rationale for denying an exemption for the use of actuarial risk factors was that insurers can later justify using such factors on a case-by-case basis under the Rule's burden-shifting framework. *See id.*

That rationale was arbitrary in several respects. *See infra* at 10-14. As an initial matter, it was internally inconsistent. The Supplemental Explanation stated that "nothing in the Rule prohibits insurers from making decisions that are in fact risk-based." *Id.* at 69015. But the very next sentence asserted that "[u]nder the standard established by the Rule, practices that an insurer can prove are risk-based, *and for which no less discriminatory alternative exist*s, will not give rise to discriminatory effects liability." *Id.* (emphasis added) (citing 24 C.F.R. § 100.500(b)). HUD has indicated that a purportedly less discriminatory alternative need not be "equally effective" as the challenged practice. 78 Fed. Reg. at 11473 (A.R. 625). HUD has thus made

---

[5] *See Encino Motorcars*, 136 S. Ct. at 2125 (requiring "a rational connection between the facts found and the choice made"); *Clement v. SEC*, 674 F.2d 641, 647 (7th Cir. 1982) (vacating agency's explanation for rule change where it did not adequately address a prong of challenger's argument); *Illinois v. United States*, 666 F.2d 1066, 1080 (7th Cir. 1981) (agency must "fairly and adequately addresses the complex issues and arguments of the parties before it"); *Ass'n of Priv. Sector Colls. and Univs. v. Duncan*, 681 F.3d 427, 449 (D.C. Cir. 2012) (explanation was arbitrary and capricious where agency responded to question related to commenters' concerns, but "never really answered" commenters' precise questions).

clear that under its Rule disparate-impact liability does, in fact, extend to purely risk-based practices as long as there exists some other practice that produces less of a disparate impact, even if it is not "equally effective" as the challenged practice. HUD did not acknowledge the discrepancy in its logic, even though commenters identified this flaw. *See* Letter from PCI to HUD, at 8 (Jan. 26, 2015) (A.R. 4503) ("[T]he burden-shifting framework established by the Rule would result in insurers facing potential liability even for using actuarially justified risk factors. . . . [E]ven if every risk factor were proved necessary, plaintiffs could still prevail by showing [a less discriminatory alternative].");  Letter from NAMIC to HUD, at 5-6 (Jan. 17, 2012) (A.R. 376-377). By conceding that risk-based decision making is protected, but then stating that it is not, the Supplemental Explanation was internally inconsistent and thus arbitrary and capricious. *See Gen. Chem. Corp. v. United States*, 817 F.2d 844, 857 (D.C. Cir. 1987) (agency analysis "arbitrary and capricious" where explanation was "internally inconsistent and inadequately explained"); *Defs. of Wildlife v. E.P.A.*, 420 F.3d 946, 959 (9th Cir. 2005) ("[I]nternally contradictory agency reasoning renders resulting action arbitrary and capricious." (internal quotation marks omitted)), *rev'd on other grounds*, 551 U.S. 644 (2007).

### 3. HUD's Reliance on the Rule's Burden-Shifting Framework Was Arbitrary and Capricious

The Court previously found that "HUD made no effort to evaluate the substance of the insurance industry's concerns, disregarding them merely because insurers would have an opportunity to raise their arguments as part of the burden-shifting framework." *PCI*, 66 F. Supp. 3d at 1051; *id.* (holding that HUD had failed to "provide a reasoned explanation why case-by-case determinations of the insurers' arguments are preferable to rulemaking"). HUD's continued reliance on the burden-shifting framework on remand was thus inconsistent with this Court's decision. It was also arbitrary and capricious. The burden-shifting inquiry is not an adequate

substitute for an exemption to the Rule for at least three reasons:

*First*, for the reasons explained above, applying the burden-shifting framework to a challenge to risk-based pricing and underwriting would require a federal court to pass judgment on the actuarial soundness of the challenged practice. But that is precisely what *Mutual of Omaha* holds would violate the McCarran-Ferguson Act. *See supra* at 5-6.

*Second*, under the framework established by HUD, the FHA would invalidate, impair, and supersede state laws governing risk-based pricing and underwriting. The McCarran-Ferguson Act ensures that federal laws of general applicability do not "'invalidate, impair, or supersede' [a] State's law." *Humana, Inc. v. Forsyth*, 525 U.S. 299, 307 (1999). To invalidate means "to render ineffective," and to supersede is "to displace (and thus render ineffective) while providing a substitute rule." *Id.* (internal quotation marks omitted). This is exactly what happens at the third step of HUD's burden-shifting framework. Under the Rule, insurers can be held liable for using actuarially sound risk factors in any case where a plaintiff can identify an alternative factor that would merely "serve the defendant's legitimate business interests." *PCI*, 66 F. Supp. 3d at 1052. And in its rulemaking, HUD declined to require that the alternative practice be "equally effective" as the challenged practice. 78 Fed. Reg. at 11473 (A.R. 625).

The Rule would thus make homeowners insurers liable for risk-based pricing and underwriting practices they are permitted or required to use as a matter of state law. States permit insurers to discriminate between risk pools, prohibiting only "*unfairly* discriminatory" rates—that is, rates that discriminate between insureds posing the same risk. *See* Dkt. No. 21 at 8, 21-22. But the Rule prohibits distinctions based on actuarial risk, requiring courts to determine whether less predictive alternative factors would have less of a disparate impact than challenged factors. This displaces states' prohibition of only "unfairly" discriminatory rates with

a different federal standard under the FHA.  At a minimum, it "impair[s]" state laws.  *See Humana*, 525 U.S. at 309-310 ("The dictionary definition of impair is [t]o weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." (internal quotation marks omitted)).  Application of the Rule to risk-based pricing and underwriting permitted or required as a matter of state law would not only directly conflict with state law but also "frustrate … declared state policy" and "interfere with a State's administrative regime."  *Id*. at 310.  In relying on the Rule's burden-shifting framework, HUD ignored this Court's warning that challenges to "rate classifications may usurp core rate-making functions of the State's administrative regime."  *PCI*, 66 F. Supp. 3d at 1048-49.

PCI has repeatedly explained this objection to HUD.  *See* Dkt. No. 44 at 33; Letter from PCI to HUD, at 17 (Jan. 26, 2015) (A.R. 4512); SOF ¶ 57.  But HUD completely ignored it in the Supplemental Explanation.  This failure even to respond is reason alone to find the Supplemental Explanation inadequate.  *See St. James Hosp. v. Heckler*, 760 F.2d 1460, 1469 (7th Cir. 1985) (failure to respond to significant criticisms renders agency rulemaking inadequate).

*Third*, even if an insurer could successfully defend purely risk-based practices under the Rule's burden-shifting framework, HUD's denial of an exemption would still be arbitrary and capricious.  Requiring insurers using risk-based pricing or underwriting to needlessly defend themselves under the burden-shifting framework in every case would impose significant and wholly unjustified expenses on the industry.  Under HUD's approach, every insurer would have to defend each of the actuarial risk factors it uses, perhaps even on a region-by-region basis as different plaintiffs assert alleged disparate impacts among particular populations of insureds.  HUD's only response was that an exemption for risk-based insurance pricing would not reduce insurers' costs because "[t]he arguments and evidence that would be necessary to establish

whether a practice qualifies for the requested exemption would effectively be the same as the arguments and evidence necessary for establishing a legally sufficient justification." 81 Fed. Reg. at 69017. HUD provided no basis, however, for its counterintuitive assumption that it would cost as much to demonstrate eligibility for an exemption for risk-based pricing and underwriting as it would to litigate the actuarial soundness of a challenged practice.

Moreover, as commenters explained, the Rule would require insurers to establish not merely that a practice is purely risk-based; it would also require insurers to litigate the third step of the burden-shifting approach, disputing that less discriminatory alternatives exist. *See* Letter from PCI to HUD, at 14 (Jan. 26, 2015) (A.R. 4509); Cracas Decl. ¶ 13; SOF ¶ 78. This would be especially difficult for insurers because they do not collect data on subscribers' race, ethnicity, or other protected characteristics and have no other means of anticipating disparities. Letter from NAMIC to HUD, at 12 (Jan. 17, 2012) (A.R. 383).[6] And assuming they could collect the necessary data to defend themselves, it would be very expensive and would intrude upon policyholders who would be required to self-report race and ethnicity data. Cracas Decl. ¶¶ 11– 12; Dawdy Decl. ¶ 14; SOF ¶ 77. The Supplemental Explanation arbitrarily and capriciously failed to consider these added costs. *See Motor Vehicle Mfrs*, 463 U.S. at 54-55 (agency should weigh benefits and costs); *Clement*, 674 F.2d at 647 (agency erred in "refus[ing] to acknowledge that . . . economic reality" might constrain businesses' behavior). As this Court has recognized, case law HUD itself previously relied upon makes clear that there is no need to "engage in the Sisyphean task of working through the burden-shifting framework in each individual case when the plaintiff has no chance of success." *PCI*, 66 F. Supp. 3d at 1051 (quoting *Graoch Assocs.*

---

[6] *See also* Cracas Decl. ¶ 6; Dawdy Decl. ¶ 11; Zaleski Decl. ¶ 11; Amica Decl. ¶ 7. Insurers might not even be permitted to collect that data, given state prohibitions on "treating similar risks in a dissimilar manner." Letter from NAMIC to HUD, at 5, 12 (Jan. 17, 2012) (A.R. 376, 383); Cracas Decl. ¶ 10; Dawdy Decl. ¶ 11; *see also* Md. Code Ins. § 27-501 (prohibiting solicitation of information about protected characteristics).

*#33, L.P. v. Louisville/Jefferson Cty. Metro Human Relations Comm'n*, 508 F.3d 366, 375-76 (6th Cir. 2007)). In the Supplemental Explanation, however, HUD failed even to acknowledge *Graoch*.

### C. HUD's Reliance on State Antidiscrimination Laws Was Arbitrary

HUD also argued that an exemption is inappropriate in light of certain state anti-discrimination laws that may apply to insurance. 81 Fed. Reg. at 69016. HUD reasoned that such an exemption would "deprive all states of federal support in addressing discriminatory insurance practices" and asserted that an exemption would therefore "be at odds with the purpose of [the] McCarran-Ferguson [Act]." *Id.* This reasoning was arbitrary and capricious.

The McCarran-Ferguson Act was not intended to promote "federal support" for state enforcement of state antidiscrimination laws. State antidiscrimination laws are irrelevant to the McCarran-Ferguson Act analysis, which asks only whether the application of federal law would invalidate, impair, or supersede state laws enacted "for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b). State antidiscrimination laws—which states may enforce themselves, if appropriate—are not enacted "for the purpose of regulating" insurance and thus have no bearing on whether application of the Disparate Impact Rule to risk-based pricing and underwriting would violate the McCarran-Ferguson Act.

Moreover, even if a state's fair-housing law were identical to the FHA and would permit a disparate impact challenge to risk-based pricing and underwriting in state court, any federal litigation under HUD's Disparate Impact Rule would still require federal courts applying federal law to second-guess the actuarial soundness of insurance practices regulated by state law— contrary to the express holding of *Mutual of Omaha*. *See* 179 F.3d at 564 ("Even if the formal criteria are the same under federal and state law, displacing their administration into federal

14

court—requiring a federal court to decide whether an insurance policy is consistent with state law—obviously would interfere with the administration of the state law."). HUD's reliance on snippets of discussion from out-of-circuit district court decisions and a state court decision, none of which addressed these issues,[7] provided no basis for disregarding the plain text of the McCarran-Ferguson Act and the Seventh Circuit's controlling decision in *Mutual of Omaha*.

### D. HUD Erroneously Relied on an Asserted Need for Factual Development

HUD also asserted in passing that "McCarran-Ferguson requires a fact-intensive inquiry." 81 Fed. Reg. at 69016. It is not clear that HUD intended this to be a basis for denying a targeted exemption for risk-based pricing and underwriting—as opposed to an exemption for *all* insurance practices. But if it did, HUD offered no support for the proposition. Under *Mutual of Omaha*, and in light of the uniform state laws permitting or requiring the use of actuarial risk factors, factual development is unnecessary to exempt risk-based pricing and underwriting.

HUD relied on *Saunders v. Farmers Insurance Exchange (Saunders I),* 440 F.3d 940, 946 (8th Cir. 2006). But that court, reviewing a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, merely held that "the nature of the plaintiffs' price discrimination claims, the specific relief they [sought]," and the "extent of Missouri's insurance rate regulation" were not sufficiently clear "to decide the McCarran-Ferguson Act impairment issue." *Id.* Nowhere did the Eighth Circuit indicate that the plaintiffs had raised a disparate-impact theory of liability. When the case returned to the Eighth Circuit and it was clear that the plaintiffs were relying on a disparate-impact theory, the court noted that "HUD has never applied a disparate impact analysis to insurers," *Saunders v. Farmers Ins. Exch. (Saunders II)*, 537 F.3d 961, 964 n.3 (quoting *Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1362 (6th Cir. 1995)), and thus

---

[7] *See* 81 Fed. Reg. at 69016 (citing *Viens v. Am. Empire Surplus Lines Ins. Co.*, 113 F. Supp. 3d 555, 573 n.20 (D. Conn. 2015); *Toledo Fair Hous. Ctr. v. Nationwide Mut. Ins. Co.*, 94 Ohio Misc. 2d 151, 157 (C.P. 1997); *Jones v. Travelers Cas. Ins. Co. of Am.*, No. C-13-02390, 2015 WL 5091908, at *5 (N.D. Cal. May 7, 2015)).

that there was "doubt" as to whether it could, *id.* at 964. The court ultimately held that the

plaintiffs' FHA challenge was foreclosed by the McCarran-Ferguson Act because it would

"frustrate[] and interfere[] with" Missouri's administrative regime. *Id.* at 968. This hardly

counsels against a categorical exemption for the use of actuarial risk factors.[8]

## II.    The Supplemental Explanation Did Not Adequately Consider the Disparate Impact Rule's Effects on the Business of Insurance

This Court previously concluded that HUD had made "no effort to evaluate the substance

of the insurance industry's concerns" that the Rule would prevent the use of actuarially sound

risk factors and thereby undermine the fundamental nature of the insurance business. *PCI*, 66 F.

Supp. 3d at 1051. HUD's Supplemental Explanation suffers from the same flaw.

As explained above, because of the way HUD has implemented the burden-shifting

framework, the Disparate Impact Rule would prohibit purely risk-based practices. HUD noted

that an insurer can be liable for using an actuarial risk factor if the plaintiff proves the existence

of a less discriminatory "alternative risk-based practice." 81 Fed. Reg. at 69017. And HUD

claims that an insurer would face liability even if such an alternative practice were not "equally

effective" at measuring risk as the challenged practice. 78 Fed. Reg. at 11473 (A.R. 625).

Comments in the record, however, explained that accurate risk assessment is critical to the

business of insurance. *See* Letter from PCI to HUD, at 4 (July 29, 2015) (A.R. 4618) ("'[T]he

foundation of the business of insurance, and in particular underwriting and rate-making, is

classifying insurance applicants and policyholders by risk.'" (quoting A.R. 376)); SOF ¶ 16; *see*

*also* Letter from PCI to HUD, at 2 (Jan. 26, 2015) (A.R. 4497). "To actuarially determine rates

that most accurately measure loss potential, insurers identify relationships between factors and

---

[8] The Supplemental Explanation also asserted that case-by-case adjudication is required due to variation in state laws. *See* 81 Fed. Reg. at 69016. HUD, however, did not dispute that every state either permits or requires the use of actuarial risk factors. Alleged variation in state law is thus no basis for denying a targeted exemption for risk-based pricing and underwriting, as opposed to a broader exemption for homeowners insurance generally.

risk of loss and allocate costs accordingly." Letter from NAMIC to HUD, at 5 (Jan. 17, 2012) (A.R. 376); SOF ¶ 74. As the Seventh Circuit and commenters have observed, failure to differentiate between risk levels generates market inefficiency and adverse selection. *See N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 290 (7th Cir. 1992) ("Putting young and old, or city and country, into the same pool would lead to adverse selection: people knowing that the risks they face are less than the average of the pool would drop out."); Letter from PCI to HUD, at 4 (July 29, 2015) (A.R. 4618) ("[T]o ensure compliance with the Rule and avoid the risk of damaging liability, insurers would have to avoid the use of actuarial risk factors in the underwriting and pricing process. PCI, Admin. R. at 377. This would cause adverse selection, motivating lower risk customers to forego insurance altogether and threatening insurers' viability …. *See id.* at 377-78."); Letter from PCI to HUD, at 2 (Jan. 26, 2015) (A.R. 4497) ("Lower-risk customers would be overcharged for insurance, while other customers would not pay a rate commensurate with their risk of fire and other hazards."); SOF ¶¶ 76-77.

HUD was thus on notice that a less predictive "alternative risk-based practice" is not an adequate substitute for a more predictive risk factor that causes a disparate impact. The alternative would not as effectively address the original risk, which would create a market inefficiency and drive some consumers from the market. *See* Zaleski Decl. ¶ 20 (eliminating factors in a risk and rate assessment "would compromise the actuarial soundness of the risk-based rating plans."). That would dramatically transform the homeowners insurance industry, preventing insurers from "mak[ing] the practical business choices and profit-related decisions that sustain a vibrant and dynamic free-enterprise system." *Inclusive Cmtys.*, 135 S. Ct. at 2518. HUD's failure to consider this "important aspect" of the problem caused by applying the Rule to homeowners insurance was arbitrary and capricious. *Motor Vehicle Mfrs.*, 463 U.S. at 43.

### III. The Supplemental Explanation Did Not Adequately Explain Why the Disparate Impact Rule Would Not Violate the Filed-Rate Doctrine

HUD's Supplemental Explanation also did not adequately analyze whether the Disparate Impact Rule would violate the filed-rate doctrine when applied to the pricing of homeowners insurance. The filed-rate doctrine "forbids courts from invalidating or modifying rates that have been filed with regulatory agencies." *PCI*, 66 F. Supp. 3d at 1049 (quoting *Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 835 (N.D. Ill. 2011)); *see also Keogh v. Chicago & N.W. Ry. Co.*, 260 U.S. 156, 161-165 (1922). HUD did not dispute that the doctrine applies to insurance rates filed with state insurance commissions.[9]

Instead, HUD argued first that the filed-rate doctrine does not apply to FHA claims because they "'do not challenge the reasonableness of the insurance rates,' but rather their discriminatory effect." 81 Fed. Reg. at 69018 (quoting *Lumpkin, v. Farmers Grp., Inc.*, No. 05-2868, 2007 U.S. Dist. LEXIS 98994, at *20-22 (W.D. Tenn. Apr. 26, 2007)). This argument fails for multiple reasons. An FHA claim that an insured is being charged more because of the insured's race seeks to "invalidat[e]" the rate charged and thus squarely implicates the filed-rate doctrine. *Schilke*, 820 F. Supp. 2d at 835. A claimed discriminatory effect would occur through disparate rates, and it is difficult to imagine how the Rule could remedy such an effect other than by causing insurers to change their rates. Moreover, a court resolving an FHA claim under the Rule would, in fact, have to consider the reasonableness of the challenged rate at step two of the burden-shifting framework. In any event, it is well established that the filed-rate doctrine bars claims that do more than simply challenge the "reasonableness" of rates.[10]

___

[9] *See, e.g., Schermer v. State Farm Fire & Cas. Co.*, 721 N.W.2d 307, 311-19 (Minn. 2006) (filed-rate doctrine required dismissal of claim that higher prices for homeowners insurance for certain homes was racially discriminatory); *Schilke*, 820 F. Supp. 2d at 835 ("Numerous courts have held … filed-rate doctrine applies to … insurance.").

[10] *See, e.g., Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 415 & n.17 (1986) (filed-rate

HUD also argued that "the Supremacy Clause tips any legislative competition" between the Rule and state insurance regulations "in favor of the federal antidiscrimination statutes." 81 Fed. Reg. at 69018 (quoting *Saunders I*, 440 F.3d at 944). But HUD's position and the *Saunders* decision on which HUD relied are inconsistent with the weight of the case law holding that the filed-rate doctrine does bar *federal* challenges to rates filed with *state* agencies. *See, e.g., Wegoland*, v. NYNEX Corp., 27 F.3d 17, 20 (2d Cir. 1994) (finding RICO claim barred, noting "courts have uniformly held, and we agree, that the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies"); *Taffet v. Southern Co.*, 967 F.2d 1483, 1494 (11th Cir. 1992) (en banc) (filed-rate doctrine "applies with equal force to preclude recovery under RICO whether the rate at issue has been set by a state rate-making authority or a federal one").[11] This is all the more clear in a case involving state regulation of insurance, where the McCarran-Ferguson Act "overturn[s] the normal rules of pre-emption." *PCI*, 66 F. Supp. 3d at 1025.

## IV.    The Supplemental Explanation Inadequately Addressed *Inclusive Communities*

The Supplemental Explanation also did not consider the impact of the Supreme Court's decision in *Inclusive Communities* on the applicability of disparate-impact liability to risk-based pricing and underwriting. *Inclusive Communities* detailed key limitations on FHA disparate-impact liability. The Court emphasized that regulated entities must be free to make "the practical business choices and profit-related decisions that sustain a vibrant and dynamic free-enterprise

---

doctrine barred recovery of treble damages under antitrust laws even though antitrust claims do not challenge reasonableness of rates but rather method by which they were adopted); *Schilke*, 820 F. Supp. 2d at 836 (filed-rate doctrine foreclosed claims based on failure to disclose aspects of rates); *McCray v. Fidelity Nat'l Title Ins. Co.*, 682 F.3d 229, 235-42 (3d Cir. 2012) (filed-rate doctrine barred antitrust challenge to rates).

[11] *See also H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 495 (8th Cir. 1992) ("Allowing a RICO action . . . would similarly disrupt the state administrative process and constitute a 'collateral attack on a rate order,' contrary to state law.") (quoting *H.J., Inc. v. Nw. Bell Corp.*, 420 N.W.2d 673, 677 (Minn. Ct. App. 1988)); *Lifschultz Fast Freight, Inc. v. Consol. Freightways Corp. of Del.*, 805 F. Supp. 1277, 1296 (D.S.C. 1992).

system." 135 S. Ct. at 2518. And the Court cautioned that a rule encouraging the consideration of race "in a pervasive way" would raise serious constitutional questions. *Id.* at 2523.

For these reasons, the Court gave specific guidance on how disparate-impact claims may be litigated under the FHA. A disparate-impact claim may not be based "solely on a showing of statistical disparity." *Id.* at 2522. Instead, plaintiffs must satisfy a "robust causality requirement," pointing to specific policies that caused a disparity, to ensure that defendants are not "held liable for racial disparities they did not create." *Id.* at 2523. Defendants must have "leeway to state and explain the valid interest served by their policies" and "latitude to consider market factors" without plaintiffs second-guessing "which of two reasonable approaches" a defendant should follow. *Id.* at 2522–23. Under this regime, only policies that are "artificial, arbitrary, and unnecessary" should give rise to disparate-impact liability. *Id.* at 2524.

Despite the importance of *Inclusive Communities* and these constraints on disparate-impact liability, the Supplemental Explanation mentioned the decision only in a few footnotes that did not address these limitations. *See* 81 Fed. Reg. at 69013 nn.11&13, 69014 n.24, 69015 n.42. That the Supreme Court decided *Inclusive Communities* after this Court's remand did not permit HUD to ignore the decision, particularly where PCI submitted supplemental comments identifying how *Inclusive Communities* affected the Disparate Impact Rule. *See* PCI Letter to HUD (July 29, 2015) (A.R. 4615-4621). Ignoring *Inclusive Communities* and PCI's subsequent comments was arbitrary and capricious. *Motor Vehicle Mfrs.*, 463 U.S. at 43.

## CONCLUSION

For the foregoing reasons, the Court should grant PCI's motion for summary judgment and vacate HUD's Disparate Impact Rule to the extent that it applies to risk-based pricing and underwriting of homeowners insurance.

20

Dated: September 8, 2017

Respectfully submitted,

PROPERTY CASUALTY INSURERS
ASSOCIATION OF AMERICA

/s/ *Seth P. Waxman*

Seth P. Waxman (*pro hac vice*)
Jonathan G. Cedarbaum (*pro hac vice*)
Brian M. Boynton (*pro hac vice pending*)
Peter Gabrielli (*pro hac vice*)
Anuradha Sivaram (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
E-mail: seth.waxman@wilmerhale.com

Rowe W. Snider (# 03125194)
Ashlee M. Knuckey (# 6300237)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Tel.: (312) 443-0700
Fax: (312) 896-0336
Email: rsnider@lockelord.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 8, 2017, I electronically filed the foregoing document

with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois using

the CM/ECF system, which sent notification of such filing to counsel of record in this case.

/s/ *Seth P. Waxman*
Seth P. Waxman (pro hac vice)
WILMER CUTLER PICKERING HALE AND
  DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: seth.waxman@wilmerhale.com