# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, <br><br> Plaintiff, <br> v. <br><br> MARCIA L. FUDGE, in her official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, <br><br> Defendants. | Case No. 1:13-cv-08564 <br><br> Chief Judge Rebecca R. Pallmeyer |

**UNOPPOSED MOTION OF AMERICAN CIVIL LIBERTIES UNION, AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS, CHICAGO AREA FAIR HOUSING ALLIANCE, CHICAGO LAWYERS' COMMITTEE FOR CIVIL RIGHTS, LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW, NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC., NATIONAL CONSUMER LAW CENTER AND NATIONAL FAIR HOUSING ALLIANCE
<u>FOR LEAVE TO FILE A BRIEF *AMICUS CURIAE*</u>**

The American Civil Liberties Union, American Civil Liberties Union of Illinois, Chicago Area Fair Housing Alliance, Chicago Lawyers' Committee for Civil Rights, Lawyers' Committee for Civil Rights Under Law, NAACP Legal Defense & Educational Fund, Inc., National Consumer Law Center and National Fair Housing Alliance (collectively "*amici*") through counsel, respectfully move this Court for leave to file a brief *amicus curiae* of 25 pages in length, on behalf of themselves and similarly positioned fair housing and civil rights organizations, in support of Defendants' opposition to Plaintiff's Renewed Motion for Summary Judgement (Doc. #221). In support of this Motion, *amici* state as follows:

1. The American Civil Liberties Union ("ACLU") is a nationwide, non-partisan organization with more than 1.7 million members dedicated to the principles of liberty and

equality embodied in the Constitution and this nation's civil rights laws.  Since its founding in 1920, the ACLU has litigated numerous cases aimed at ending segregation and racial discrimination in all its forms, and it has appeared frequently as *amicus curiae* in cases implicating these issues.  Of particular relevance to this case, the ACLU advocates for people who have historically been denied their civil rights to housing on the basis of race and membership in other protected classes.  *See, e.g.*, *Park View Heights Corp. v. City of Black Jack*, 605 F.2d 1033, 1035 (8th Cir. 1979), *cert. denied*, 445 U.S. 905 (1980) (plaintiffs' counsel in Fair Housing Act challenge to zoning ordinance that blocked construction of integrated housing development); *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) (plaintiffs' counsel in Fair Housing Act challenge to redlining in homeowner's insurance business); *Adkins v. Morgan Stanley*, No. 12-CV-7667 (S.D.N.Y. filed Oct. 15, 2012) (plaintiffs' counsel in Fair Housing Act challenge to discrimination in mortgage securitization).

2. The American Civil Liberties Union of Illinois ("ACLU-IL") is a state affiliate of the national ACLU, and a statewide, non-profit, non-partisan organization with more than 60,000 members dedicated to protecting and defending civil rights and civil liberties and promoting fairness and dignity for all people in Illinois.  The ACLU-IL has long advocated for fair housing and racial justice in Illinois, including by initiating a landmark, class action lawsuit alleging that the Chicago Housing Authority engaged in racial discrimination in public housing policy, which went to the U.S. Supreme Court as *Hills v. Gautreaux*, 425 U.S. 284 (1976).  ACLU-IL continues to engage in legislative advocacy and litigation to combat practices that have a disparate impact on people of color, people with criminal records, women, transgender people, and other marginalized groups.

3. Chicago Area Fair Housing Alliance ("CAFHA") is a non-profit membership association of organizations, governmental bodies, and individuals working to combat housing discrimination and promote equitable place-based opportunity through education, advocacy, and collaborative action. Through research, education, and advocacy and organizing, CAFHA furthers fair housing rights and fights for housing justice. Several CAFHA member organizations have litigated cases raising disparate impact claims.

4. Chicago Lawyers' Committee for Civil Rights ("CLCCR") is a public interest law organization founded in 1969 that works to secure racial equity and economic opportunity for all. CLCCR provides legal representation through partnerships with the private bar and collaborates with grassroots organizations and other advocacy groups to implement community-based solutions that advance civil rights. As part of its Equitable Community Development and Housing practice, CLCCR advocates for equitable development and investment in historically disinvested communities of color, supporting the stabilization and improvement of housing. CLCCR also investigate complaints of housing discrimination throughout the Chicago metropolitan area, educates people about fair housing rights and obligations, and provides representation to individuals and groups to challenge discriminatory policies and practices based on race, national origin and other protected classes with the goal of combatting housing segregation in our region. Throughout its history, CLCCR has litigated numerous discrimination cases under the Fair Housing Act ("FHA") and other federal civil rights statutes, many of which have raised disparate impact claims.

5. Lawyers' Committee for Civil Rights Under Law ("LCCRUL") is a non-partisan, non-profit organization that was formed in 1963 at the request of President John F. Kennedy to involve the private bar in providing legal services to address racial discrimination. The principal

mission of LCCRUL is to secure, through the rule of law, equal justice under law, including working with communities across the nation to combat and remediate discriminatory housing practices. LCCRUL's objective is to use the skills and resources of the bar to obtain equal opportunity for minorities by addressing factors that contribute to racial justice and economic opportunity. Given the United States' history of racial discrimination, *de jure* segregation, and the *de facto* inequities that persist, LCCRUL's primary focus is to represent the interests of racial and ethnic minorities – African Americans in particular – and other victims of discrimination, where doing so helps secure justice for all racial and ethnic minorities. LCCRUL and its affiliates have litigated numerous fair housing claims pursuant to the FHA, many of which have raised disparate impact claims. *See Mhany Management, Inc. v. County of Nassau*, 819 F.3d 581 (2d Cir. 2016) (granting *Chevron* deference to the 2013 rule of the U.S. Department of Housing and Urban Development setting forth its interpretation of the FHA's disparate impact standard).

6. NAACP Legal Defense & Educational Fund, Inc. ("LDF") is a non-profit legal organization that, for more than seven decades, has helped African Americans secure their civil and constitutional rights. Throughout its history, LDF has challenged public and private policies and practices that deny African Americans housing opportunities and isolate African American communities. *See, e.g.*, *McGhee v. Sipes*, 334 U.S. 1 (1948) (companion case to *Shelley v. Kraemer*, 334 U.S. 1 (1948)); *Cent. Ala. Fair Hous. Ctr. v. Lowder Realty Co., Inc.*, 236 F.3d 629 (11th Cir. 2000) (racial steering); *Comer v. Cisneros*, 37 F.3d 775 (2d Cir. 1994) (racial discrimination in public housing and assistance programs); *NAACP, et al. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) (redlining in homeowner's insurance business); *Kennedy Park Homes Ass'n v. City of Lackawanna, N.Y.*, 436 F.2d 108 (2d Cir. 1970) (exclusionary zoning); *Open Communities All. v. Carson*, 286 F. Supp. 3d 148 (D.D.C. 2017) (federal

government's means of calculating housing vouchers);*Thompson v. U.S. Dep't of Hous. & Urb. Dev.*, No. 95-309, 2006 WL 581260 (D. Md. Jan. 10, 2006) (federal government's obligation to affirmatively further fair housing); Consent Decree, *Byrd v. First Real Estate Corp. of Ala.*, No. 95-CV-3087 (N.D. Ala. May 14, 1989) (racial steering); *Price v. Gadsen Corp.*, No. 93-CV-1784 (N.D. Ala. filed Aug. 30, 1993) (unfair lending practices); *Brown, et al. v. Artery Org., Inc.*, 654 F. Supp. 1106 (D.D.C. 1987) (redevelopment plans that unfairly eliminate affordable housing); *see also* LDF et al., *The Future of Fair Housing: Report on the National Commission of Fair Housing and Equal Opportunity* (Dec. 2008). LDF has also long played an instrumental role in advancing the doctrine of disparate impact discrimination. *See, e.g.*, *Lewis v. City of Chicago*, 560 U.S. 205 (2010); *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971); *Little, et al. v. Wash. Metro. Area Transit Auth.*, 249 F. Supp. 3d 394 (D.D.C. 2017).

7. National Consumer Law Center ("NCLC") is a national research and advocacy organization focusing on justice in consumer financial transactions, especially for low-income and elderly consumers. Since its founding as a non-profit Massachusetts corporation in 1969, NCLC has been a resource center addressing numerous consumer finance issues affecting equal access to fair credit in the marketplace. NCLC publishes a 21-volume Consumer Credit and Sales Legal Practice Series, including Credit Discrimination, Seventh Ed. (2018). NCLC also provides legal and technical consulting and assistance on consumer law issues to legal service, government, and private attorneys representing low-income consumers across the country. NCLC attorneys have written and advocated extensively on all aspects of consumer law affecting low-income people, conducting trainings for tens of thousands of legal services and private attorneys, and provided extensive oral and written testimony to numerous Congressional committees on various topics. In addition, NCLC attorneys regularly provide comprehensive

comments to federal agencies, including HUD, on the regulations under consumer laws that affect low-income consumers.

8. National Fair Housing Alliance ("NFHA") is a consortium of approximately 167 private, non-profit, fair housing organizations, state and local civil rights groups, and other organizations dedicated to fair housing advocacy. NFHA strives to eliminate housing discrimination and ensure equal housing opportunities for all people through leadership, homeownership, credit access, tech equity, education, member services, public policy, community development, and enforcement initiatives. NFHA is very interested in these issues because of its long history working to challenge public and private housing and housing-service providers that limit housing opportunities; and of specific relevance to the issues in this case, NFHA and its members have brought some of the preeminent cases dealing with discrimination allegations in the homeowners and commercial habitational insurance sectors. See e.g., *Nat'l Fair Hous. All. v. Prudential Ins. Co.*, 208 F. Supp. 2d 46 (D.D.C. 2002); *Toledo Fair Hous. Ctr., et al. v. Nationwide Ins. Co.*, 704 N.E. 2d 667 (C.P. Ohio 1997); *Nat'l Fair Hous. All. v. Travelers Indemnity Co.*, 261 F. Supp. 3d. 20 (D.D.C. 2017). NFHA also provides fair housing compliance services to several national insurance and financial service companies.

9. All *amici* are committed to vigorous enforcement of the FHA and have actively used and/or supported disparate impact analysis in their efforts to ensure non-discrimination in all aspects of the housing market, including the provision of homeowner's insurance. In addition, all *amici* submitted comments in support of the HUD regulation at issue here. Most recently, when HUD attempted to replace the Rule, multiple *amici* filed lawsuits arguing that the new rule was inconsistent with the FHA. *Nat'l Fair Hous. All., et al. v. Carson*, No. 3:20-cv-07388 (D.D.C. filed Oct. 22, 2020).

10. In 2015, building on forty-five years of unanimous precedent from all eleven federal courts of appeals to have addressed the issue, the U.S. Supreme Court held that disparate impact claims are authorized by the text, structure, and history of the FHA. *Texas Dep't of Hous. & Cmty. Affairs v. Inclusive Communities Project,* 576 U.S. 519 (2015). That decision is consistent with and alluded to HUD's long-standing interpretation of the FHA. Long before HUD formally promulgated its Discriminatory Effects Rule in 2013 – the subject of this Administrative Procedure Act challenge – facially neutral housing practices, including those related to the pricing and underwriting of homeowner's insurance, have been struck down where they are based on no legitimate business justification, yet operate to deprive people of color, persons with disabilities, families with children, and others on the basis of protected characteristics from the full range of housing products and services available.

11. Homeowner's insurance is an effective prerequisite to home mortgage credit. It is necessary, therefore, for protected groups to have equitable access to insurance to realize the dream of homeownership. Thus, disparate impact analysis has long provided an essential tool for identifying and ending patterns, practices, and polices that have a disproportionately negative impact on the ability of protected groups to participate in the market for owner-occupied homes. Without this important tool, it will be extremely difficult, if not impossible, to address pervasive and covert housing discrimination.

12. This Court has the discretion to permit the filing of an *amicus curiae* brief. *Chamberlain Grp., Inc. v. Interlogix, Inc.*, No. 01 CV 6157, 2004 WL 1197258, at *1 (N.D. Ill. May 28, 2004); *see, e.g., Obrycka v. City of Chicago*, 913 F. Supp. 2d 598, 599 (N.D. Ill. 2012) (St. Eve, J.); *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 461 F. Supp. 2d 681, 683 (N.D. Ill. 2006) (St. Eve, J.) (granting leave to NFHA and others to file an

*amicus* brief). It is appropriate to allow *amicus* participation "in a case in which…the *amicus* has a unique perspective or specific information that can assist the court beyond what the parties can provide." *Chamberlain Grp.*, 2004 WL 1197257, at *1 (citing *Voices for Choices, et al. v. Ill. Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003); *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 616, 616 (7th Cir. 2000); *Ryan v. Commodity Futures Trading Comm'n.,* 125 F.3d 1062, 1063 (7th Cir. 1997)); *see also Nat'l Inst. of Family & Life Advocates v. Schneider*, 484 F. Supp. 3d 596 (N.D. Ill. 2020) (Pallmeyer, J.) (granting leave to fourteen medical organizations and practitioners to file *amicus curiae* briefs).

13. *Amici*'s experience raising disparate impact claims under the FHA – including claims of discrimination by homeowner's insurance providers– and their consistent support of the HUD regulation provide the Court with a unique perspective on the issues in this case and will "assist the court beyond what the parties can provide." *See Chamberlain,* at *1.

14. *Amici* were previously granted leave to file an *amicus curiae* brief in this matter. On April 18, 2014, *amici* filed their *amicus curiae* brief in support of Defendants' Motion to Dismiss and/or for Summary Judgment and in opposition to Plaintiff's Motion for Summary Judgment. (Doc. #33).

15. Per the Court's May 28, 2021 Docket Entries, Defendants' responsive pleading is now due on July 9, 2021. Inasmuch as *amici* will need to fully review this brief, they request leave to file their brief on or before July 16, 2021. In addition, *amici* seek leave to file a brief of no more than 25 pages.

16. On June 24, 2021, counsel for *amici* contacted counsel for Plaintiff and was informed on June 28, 2021 that Plaintiff consents to this motion. On June 21, 2021, in response

to counsel for *amici's* inquiry, counsel for Defendants stated that they generally does not oppose any timely amicus filings.

WHEREFORE, ACLU, ACLU-IL, CAFHA, CLCCR, LCCRUL, LDF, NCLC and NFHA respectfully request the Court grant this Unopposed Motion for Leave to File a Brief *Amicus Curiae* of no more than 25 pages on behalf of themselves and similarly positioned fair housing and civil rights organizations on or before July 16, 2021.

Dated: June 28, 2021

Respectfully submitted,

*/s/ Aneel L. Chablani*
Aneel L. Chablani
CHICAGO LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
100 North LaSalle Street, Suite 600
Chicago, IL 60602
Telephone: (312) 202-3658
Fax: (312) 630-1127

Olga Akselrod
Sandra Park
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 549-2500

Thomas Silverstein
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1401 New York Avenue, N.W., Suite 400
Washington, DC 20005
Telephone: (202) 662-8600
Fax: (202) 783-5113

Ajmel Quereshi
Megan Haberle
NAACP LEGAL DEFENSE & EDUCATIONAL
FUND, INC.
700 14th Street, NW, 6th Floor
Washington, DC 20005
Telephone: (202) 682-1300

Stuart T. Rossman
BBO #430640
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, MA 02110
Telephone: (617) 542-8010

Morgan Williams
NATIONAL FAIR HOUSING ALLIANCE
1331 Pennsylvania Avenue, NW Suite 650
Washington, DC 20004
Telephone: (202) 898-1661

Attorneys for *Amici Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2021, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

*/s/ Aneel L. Chablani*
Aneel L. Chablani
CHICAGO LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
100 North LaSalle Street, Suite 600
Chicago, IL 60602
Telephone: (312) 202-3658
Fax: (312) 630-1127