**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-08564 |
| v. | ) ) | Chief Judge Rebecca R. Pallmeyer |
| MARCIA L. FUDGE, in her official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**<u>OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................1

I. PCI's Summary Judgment Motion Is Ripe For Review ...........................................1

    A. PCI Has Alleged Hardship From Further Delay In Adjudicating Its
       Challenge To The Rule ................................................................................ 2

    B. Resolving PCI's Motion Would Not Disrupt Further Administrative
       Action ........................................................................................................ 3

    C. No Factual Development Is Required ........................................................... 4

II. HUD's Failure To Adequately Consider *Inclusive Communities* Was Arbitrary
    And Capricious ......................................................................................................5

    A. Defendants' Arguments Cannot Overcome HUD's Failure To
       Meaningfully Consider *Inclusive Communities* ........................................... 5

    B. Defendants Do Not Persuasively Reconcile The Rule With *Inclusive
       Communities* ............................................................................................... 5

III. The Supplement Did Not Adequately Assess Whether An Exemption Is Required
    By The McCarran-Ferguson Act ............................................................................8

    A. HUD Did Not Address The Relevant Holding Of *Doe v. Mutual Of
       Omaha* ........................................................................................................ 9

    B. HUD Did Not Genuinely Consider A Specific Exemption For
       Homeowners Insurers' Risk-Based Pricing And Underwriting Practices ........... 11

    C. HUD's Weighing Of The Costs Of Case-By-Case Adjudication Under The
       Rule's Burden-Shifting Framework Was Arbitrary And Capricious ................. 13

    D. HUD Refused To Accept That The Logical Result Of Liability Under The
       Rule Would Be To Invalidate Risk-Based Practices ....................................... 14

    E. State Antidiscrimination Laws Do Not Justify A Case-By-Case Approach......... 15

    F. HUD's Observation That The McCarran-Ferguson Analysis Is Fact-
       Intensive Does Not Respond To Comments That An Exemption Is
       Required Under The Rule ............................................................................ 16

IV. HUD Did Not Adequately Explain Why An Exemption Was Not Warranted In
    Light Of The Rule's Threat To The Fundamental Nature Of The Insurance
    Business ...............................................................................................................18

V. HUD Failed Adequately To Consider The Filed-Rate Doctrine ........................19

CONCLUSION....................................................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*American Petroleum Institute v. Environmental Protection Agency*,
   683 F.3d 382 (D.C. Cir. 2012)...........................................................................4

*American Public Communications Council v. Federal Communications
   Commission,* 215 F.3d 51 (D.C. Cir. 2000) .....................................................9

*Appalachian Power Co. v. Environmental Protection Agency*,
   251 F.3d 1026 (D.C. Cir. 2001)........................................................................11

*Association of American Medical Colleges v. United States*,
   217 F.3d 770 (9th Cir. 2000) .............................................................................2

*Association of Private Sector Colleges and Universities v. Duncan*,
   681 F.3d 427 (D.C. Cir. 2012)..........................................................................13

*Bagdonas v. Department of Treasury*,
   93 F.3d 422 (7th Cir. 1996) ...............................................................................1

*Chamber of Commerce of the United States v. Reich*,
   57 F.3d 1099 (D.C. Cir. 1995)........................................................................2, 3

*Cigar Association of America v. U.S. Food and Drug Administration*,
   480 F. Supp. 3d 256 (D.D.C. 2020)................................................................4, 5

*County of Cook, Illinois v. Wells Fargo and Co.*,
   314 F. Supp. 3d 975 (N.D. Ill. 2018) .................................................................6

*Dehoyos v. Allstate Corp.*,
   345 F.3d 290 (5th Cir. 2003) ...........................................................................17

*Delta Air Lines, Inc. v. Export-Import Bank of the United States*,
   85 F. Supp. 3d 250 (D.D.C. 2015)......................................................................3

*Doe v. Mutual of Omaha Insurance Co.*,
   179 F.3d 557 (7th Cir. 1999) ..................................................................9, 16, 17

*E.F. Transit, Inc. v. Cook*,
   878 F.3d 606 (7th Cir. 2018) .............................................................................4

*Environmental Defense Fund v. Federal Energy Regulatory Commission*,
   2 F.4th 953 (D.C. Cir. 2021)............................................................................14

*Georgia v. Wheeler*,
418 F. Supp. 3d 1336 (S.D. Ga. 2019)....................................................................................4

*Humana Inc. v. Forsyth*,
525 U.S. 299 (1999)...............................................................................................10, 15

*Humane Society of the United States v. Locke*,
626 F.3d 1040 (9th Cir. 2010) ..............................................................................15

*Inclusive Communities Project, Inc. v. Lincoln Property Co.*,
920 F.3d 890 (5th Cir. 2019) ..................................................................................9

*LoggerHead Tools, LLC v. Sears Holding Corp.*,
328 F. Supp. 3d 885 (N.D. Ill. 2018) .....................................................................8

*Lumpkin v. Farmers Grp. (Lumpkin II)*,
2007 U.S. Dist. LEXIS 98949 (W.D. Tenn. July 6, 2007) ....................................18

*McCray v. Fidelity National Title Insurance Co.*,
682 F3d 229 (3d Cir 2012)....................................................................................20

*Motor Vehicle Manufacturers Association of the United States, Inc. v. State Farm
Mutual Automobile Insurance Co.*, 463 U.S. 29 (1983) ....................................5, 10

*National Fair Housing Alliance v. Travelers Indemnity Co.*,
261 F. Supp. 3d 20 (D.D.C. 2017) ......................................................................6, 8

*Ohio Forestry Association v. Sierra Club*,
523 U.S. 726 (1998)...............................................................................................2

*Oviedo Town Ctr, II, L.L.P. v. City of Oviedo, Florida*,
759 Fed. App'x 828 (11th Cir. 2018) (per curiam)..............................................6, 8

*Pacific Coast Federation of Fishermen's Assocations, Inc. v. National Marine
Fisheries Service*, 253 F.3d 1137 (9th Cir. 2001)..................................................12

*Property Casualty Insurers Assocation of America v. Donovan*,
66 F. Supp. 3d 1018 (N.D. Ill. 2014) ...........................................................*passim*

*Property Casualty Insurers Association of America v. Carson*,
2017 WL 2653069 (N.D. Ill. June 20, 2017) ....................................................8, 16

*River Cross Land Co., LLC v. Seminole County*,
2021 WL 2291344 (M.D. Fla. June 4, 2021)......................................................6, 8

*Roman Catholic Archdiocese of New York v. Sebelius*,
907 F. Supp. 2d 310 (E.D.N.Y. 2012) ..................................................................4

*Saunders v. Farmers Insurance Exchange*, 537 F.3d 961 (8th Cir. 2008) ...................18

*Schilke v. Wachovia Mortgage, FSB*,
820 F. Supp. 2d 825 (N.D. Ill. 2011) ...................................................................20

*Shays v. Federal Election Commission*,
424 F. Supp. 2d 100 (D.D.C. 2006) ....................................................................17

*Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*,
476 U.S. 409 (1986) ....................................................................................19, 20

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ..........................................................................................2

*Texas Dep't of Housing & Cmty Affairs v. Inclusive Communities Project, Inc.*,
576 U.S. 519 (2015) .......................................................................................7, 10

*Ventura Broad. Co. v. Federal Communications Commission*,
765 F.2d 184 (D.C. Cir. 1985) .........................................................................5, 11

*Whitman-Walker Clinic, Inc. v. U.S. Department of Health and Human Services*,
485 F. Supp. 3d 1 (D.D.C. 2020) .........................................................................6

*Wyoming v. Zinke*,
871 F.3d 1133 (10th Cir. 2017) ...........................................................................4

## STATUTES, RULES, REGULATIONS

15 U.S.C. § 1012 ...............................................................................................16

24 C.F.R. § 100.500(c)(2) .....................................................................................9

78 Fed. Reg. 11,473 (Feb. 15, 2013) .....................................................................7, 9

81 Fed. Reg. 69,012 (Oct. 5, 2016) .........................................................................1

## OTHER AUTHORITIES

Abraham, *Efficiency and Fairness in Insurance Risk Classification*, 71 Va. L.
Rev. 403, 414 (1985) ..........................................................................................2

## INTRODUCTION

In their opposition and cross-motion for summary judgment, Defendants again ask this Court to defer consideration of the validity of HUD's 2013 Disparate Impact Rule ("Rule") and 2016 Supplemental Explanation, Application of the Fair Housing Act's Discriminatory Effects Standard to Insurance, 81 Fed. Reg. 69,012 (Oct. 5, 2016) ("Supplement"). As PCI has explained, *see* Dkt. 214, Dkt. 216, Dkt. 219, this Court should decline their request. The Rule has remained in effect for seven years since the Court held it invalid for lack of reasoned decision-making, resulting in continuing hardship to PCI and its members. The Court should grant relief because the Supplement did not cure the defects the Court identified.

Defendants insist that the Supplement "carefully reconsidered" whether to exempt risk-based pricing and underwriting practices of homeowners insurance from the Rule and "reasonably explained" why HUD declined to do so. But their contentions either reflect the kind of "post hoc rationalization for agency action" that courts have uniformly found improper, *Bagdonas v. Dep't of Treasury*, 93 F.3d 422, 426 (7th Cir. 1996), or repeat the same inadequate justifications this Court previously rejected. HUD did not meaningfully consider the Supreme Court's 2015 decision in *Inclusive Communities*. Nor did it explain how, without an exemption, the Rule is consistent with the McCarran-Ferguson Act, the fundamental business of insurance, or the filed-rate doctrine. Accordingly, the Court should grant PCI's motion for summary judgment and hold that HUD's Rule is arbitrary and capricious to the extent it applies to risk-based pricing and underwriting of homeowners insurance.

## ARGUMENT

## I. PCI's Summary Judgment Motion Is Ripe For Review

Despite acknowledging (at 11) that HUD "has proposed to recodify the instant Rule," Defendants argue under the prudential-ripeness doctrine that this Court should decline to resolve

PCI's motion for summary judgment because the pending rulemaking "could" supersede the

Rule. In evaluating the ripeness of a challenge to a rule, courts examine: "(1) whether delayed

review would cause hardship to the plaintiffs; (2) whether judicial intervention would

inappropriately interfere with further administrative action; and (3) whether the courts would

benefit from further factual development." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726,

733 (1998).[1] PCI satisfies each of these considerations.

### A. PCI Has Alleged Hardship From Further Delay In Adjudicating Its Challenge To The Rule

Courts assess the hardship of delaying judicial review of a challenged rule by asking

whether the rule causes the plaintiff to experience "an immediate and significant change in

the … conduct of their affairs with serious penalties attached to noncompliance." *Ass'n of Am.

Med. Colleges v. United States*, 217 F.3d 770, 783 (9th Cir. 2000); *Chamber of Commerce of

U.S. v. Reich*, 57 F.3d 1099, 1101 (D.C. Cir. 1995).

As this Court already found in rejecting Defendants' standing argument, 66 F. Supp. 3d

1018, 1044 (N.D. Ill. 2014) ("*PCI I*"), PCI's members incur costs and must make fundamental

changes to their business each day that they are not exempt from the Rule, including by

collecting demographic data they do not ordinarily obtain from customers. Dkt. 222-1 ("SOF")

¶¶ 92, 97, 99. Additionally, PCI's members face the burden of justifying their risk-based

practices on a case-by-case basis in multiple jurisdictions based on two different standards. On

the one hand, state insurance laws prohibit unfair discrimination, defined as charging different

rates to individuals with similar risk profiles. *See* Abraham, *Efficiency and Fairness in

Insurance Risk Classification*, 71 Va. L. Rev. 403, 414 (1985). On the other hand, the Rule

---

[1] The Supreme Court has questioned the soundness of the prudential-ripeness doctrine, acknowledging that it is "in some tension with ... the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (quotation marks omitted). This tension, too, counsels against Defendants' ripeness arguments.

prohibits practices that have a disparate impact on a class protected by the FHA. *See* SOF ¶¶ 22, 28, 47, 68, 98.

These injuries are not simply the cost of "[a]dditional delay." Cross-Motion at 11-12. Rather, they illustrate "a paradigm case of 'hardship,'" because PCI's members face the untenable choice "between taking immediate action to their detriment and risking substantial future penalties for non-compliance" due to the Rule. *Reich*, 57 F.3d at 1101. PCI has submitted—and the Court has found, 66 F. Supp. 3d at 1044—ample evidence of the kind of hardship that has a "known, direct, and immediate effect," *Delta Air Lines, Inc. v. Exp.-Imp. Bank of U.S.*, 85 F. Supp. 3d 250, 273 (D.D.C. 2015), and thus favors immediate review.

Defendants emphasize (at 11-12) that the Rule has "been in effect for the better part of a decade" and that PCI agreed to previous stays. But Defendants have not controverted any of the present and ongoing documented harms PCI has alleged. And the fact that PCI was willing to accept prior stays despite those ongoing harms when there was a strong likelihood the Rule would actually be changed to exempt risk-based pricing and underwriting of homeowners insurance or at a minimum to conform to *Inclusive Communities* does not mean those harms do not exist or that PCI should be required to endure hardship indefinitely.

### B. Resolving PCI's Motion Would Not Disrupt Further Administrative Action

Although Defendants tout the latest Notice of Proposed Rulemaking, they stop short of suggesting that this proceeding will yield any meaningful changes to the Rule. To the contrary, they repeatedly acknowledge that HUD seeks to recodify the Rule. *See* Cross-Motion at 11-12; Dkt. 229 at 5-6; Dkt. 226 at 4-5. Defendants are left to suggest (at 11) that "additional agency deliberations" might bear on the issues here. This remote contingency does not establish that resolving PCI's motion now would interfere with those proceedings. On the contrary, doing so would inform those proceedings.

In *American Petroleum Institute v. EPA*, the D.C. Circuit explained that "declining jurisdiction over a dispute while there is still time for the challenging party to 'convince the agency to alter a tentative position' provides the agency 'an opportunity to correct its own mistakes and to apply its expertise,' potentially eliminating the need for (and costs of) judicial review." 683 F.3d 382, 387 (D.C. Cir. 2012) (citation omitted). The Rule, however, is not a "tentative position." It is an established rule, reaffirmed by Defendant's 2016 Supplemental Explanation, that has "been in effect for the better part of a decade." Cross-Motion at 11. Other courts have found that a pending rulemaking does not warrant delay in considering a challenge to an agency position that, as here, had been promulgated through notice-and-comment rulemaking and was not "tentative." *See Cigar Ass'n of Am. v. U.S. Food & Drug Admin.*, 480 F. Supp. 3d 256, 280 (D.D.C. 2020); *Roman Catholic Archdiocese of N.Y. v. Sebelius*, 907 F. Supp. 2d 310, 334 (E.D.N.Y. 2012); *Georgia v. Wheeler*, 418 F. Supp. 3d 1336, 1350 (S.D. Ga. 2019).

Delay makes even less sense where it is so unlikely that further administrative proceedings will result in any meaningful change. This fundamentally distinguishes the present case from *Wyoming v. Zinke*, 871 F.3d 1133 (10th Cir. 2017), on which Defendants rely (at 11). There, unlike here, the court declined to hear a challenge to a regulation the agency had "commenced rescinding." *Id.* at 1142. And here, further delay would only encourage HUD to perpetually "stave off judicial review of a challenged rule simply by initiating a new proposed rulemaking." *Am. Petroleum Inst.*, 683 F.3d at 388.

### C.     No Factual Development Is Required

PCI's challenge presents entirely legal issues, which are "'quintessentially fit' for judicial decision." *E.F. Transit, Inc. v. Cook*, 878 F.3d 606, 610 (7th Cir. 2018). Accordingly, "[b]ecause … holding the matter in abeyance risks a hardship to [PCI] and [its] members," the

Court should again "reject[] [HUD's] eleventh-hour effort to avoid judicial review." *Cigar Ass'n*, 480 F. Supp. 3d at 280.

## II.     HUD's Failure To Adequately Consider *Inclusive Communities* Was Arbitrary And Capricious

### A.     Defendants' Arguments Cannot Overcome HUD's Failure To Meaningfully Consider *Inclusive Communities*

The Supplement's discussion of *Inclusive Communities* was limited to four footnote citations.  Such a "cursory response is not reasoned decision-making."  *Cigar Ass'n*, 480 F. Supp. 3d at 278.  None of the footnotes addresses the impact of *Inclusive Communities* on the Rule at all, let alone explains how applying the Rule to homeowners insurance could be consistent with the limits on disparate-impact liability the Supreme Court outlined.  *See* AR1813-1815 nn. 11, 13, 24, 42.  HUD thus did not "articulate a satisfactory explanation" for reconciling the Rule with *Inclusive Communities*, as it must do to survive arbitrary-and-capricious review. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

None of the efforts Defendants now make to harmonize the Rule with *Inclusive Communities* was set forth by HUD itself in the Supplement.  "[C]ourts may not accept [counsel's] *post hoc* rationalizations for agency action."  *State Farm*, 463 U.S. at 50.  Because HUD itself did not meaningfully consider *Inclusive Communities*' discussion of disparate-impact liability as it was required to do in 2016, its explanation was arbitrary and capricious for its failure to give "reasoned consideration to all the material facts and issues."  *See Ventura Broad. Co. v. FCC*, 765 F.2d 184, 189 (D.C. Cir. 1985) (quotation marks omitted).

### B.     Defendants Do Not Persuasively Reconcile The Rule With *Inclusive Communities*

Even Defendants' post hoc arguments fail to provide a required reasoned explanation for HUD's position.  Defendants argue (at 13) that HUD was not obligated to address *Inclusive*

*Communities* because that decision "clearly endorsed" or at least "implicitly adopted" the Rule. But as even Defendants acknowledge, that is not the consensus view. Cross-Motion at 13 (citing *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 902 (5th Cir. 2019)); *see also Oviedo Town Ctr, II, L.L.P. v. City of Oviedo, Florida,* 759 Fed. App'x 828, 833-35 (11th Cir. 2018) (per curiam) (*Inclusive Communities* "promulgat[ed] detailed causation requirements as a means of *cabining* disparate impact liability") (emphasis added); *River Cross Land Co., LLC v. Seminole Cty.*, 2021 WL 2291344, at *22-24 (M.D. Fla. June 4, 2021) (*Inclusive Communities* "modified the level of causation the plaintiff is required to show"); *County of Cook, Ill. v. Wells Fargo & Co.*, 314 F. Supp. 3d 975, 990 (N.D. Ill. 2018) (*Inclusive Communities* "held" disparate-impact liability "limited in key respects"); *Nat'l Fair Hous. All. v. Travelers Indem. Co.*, 261 F. Supp. 3d 20, 22 (D.D.C. 2017) (*Inclusive Communities* "changed the pleading standards for disparate-impact claims"). To the extent HUD believed that *Inclusive Communities* supported the Rule, HUD remained obligated to consider the question, including contrary views expressed in comments to the agency, and explain why it believed that conclusion to be correct. *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 50 (D.D.C. 2020) (agency discharges its obligation to "consider an important aspect of the problem when it g[ives] the specific reasons for which it disagree[s] with the basis for the alleged problem") (quotation marks omitted).[2]

Defendants alternatively argue that *Inclusive Communities* simply explained in detail the longstanding limitations on disparate-impact liability HUD had already considered when crafting the Rule. But that is not the case. The *Inclusive Communities* Court explicitly stated that it

---

[2] Similarly, HUD was not relieved of the obligation to consider *Inclusive Communities* simply because the Supreme Court did not flag potential inconsistencies between its decision and the Rule. *Cf.* Cross-Motion at 15. Comments submitted to HUD argued that the Rule was inconsistent with that decision, and HUD was not free to ignore those comments because the inconsistency was not flagged by the Court, too.

"announced" new "cautionary standards," which in turn must be "incorporate[d]" in "disparate-impact suits"—language that belies the notion that *Inclusive Communities* merely surveyed existing precedent. *Texas Dep't of Housing & Cmty Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 544 (2015).

Nor are Defendants' other efforts to reconcile the Rule with *Inclusive Communities* convincing on their face. Cross-Motion at 14, 15. For example, the Rule's burden-shifting framework permits an insurer to defend itself only by asserting a "substantial" interest served by the challenged policy. But that requirement does not provide adequate "leeway" for insurers to also defend their "valid" interests, as they must be allowed to do lest disparate-impact cases become (contrary to *Inclusive Communities*) a means of "displac[ing] … private priorities, rather than solely removing … artificial, arbitrary and unnecessary barriers." 576 U.S. at 541, 544. Similarly, the Rule nowhere provides that a mere statistical disparity is insufficient to state a claim or show liability. The language Defendants quote (at 14) does not say so. Defendants assume the burden-shifting test ensures that only "artificial, arbitrary, and unnecessary" policies can be invalidated, but they acknowledge that a plaintiff can prevail in a disparate-impact challenge simply by showing the existence of a practice that is less discriminatory in effect. Cross-Motion at 15. The final step in the burden-shifting framework creates this conflict because a plaintiff's alternative need not be *equally* as effective in predicting loss as the challenged practice; thus there is no guarantee that the burden-shifting test will result in invalidation only of "artificial, arbitrary, and unnecessary" policies because it is not "artificial, arbitrary, [or] unnecessary" to rely on a factor that is more effective than an alternative in predicting loss. Finally, Defendants' claim that the Rule bars only "facially neutral practices that have an unjustified discriminatory effect on the basis of a protected characteristic," Cross-Motion at 15 (quoting 78 Fed. Reg. at 11,461), does not answer the concern that the Rule *also*

7

forces insurers to begin collecting data on race in order to mount defenses in litigation—thereby causing them to consider race in a pervasive way. SOF ¶¶ 78-79.

Defendants suggest that any failure of the Supplement to address the inconsistencies between the Rule and *Inclusive Communities* would be harmless given this Court's previous conclusion that the Rule "complies with the limitations discussed by the [*Inclusive Communities*] Court." Cross-Motion at 14 (citing 2017 WL 2653069, at *8-9 ("*PCI II*")). But this Court did not address the adequacy of HUD's 2016 Supplement. To the contrary, the Court allowed PCI to amend its complaint to raise whether "HUD adequately considered the impact of *Inclusive Communities* … with respect to how … [the decision] affects the various issues the Court ordered [HUD] to consider on remand." *Id.* at *9. It would have made no sense for the Court to permit PCI to add that claim if the Court had already rejected it.[3]

Accordingly, PCI is entitled to summary judgment on its claim that HUD's Supplement failed to adequately consider *Inclusive Communities*.

## III. The Supplement Did Not Adequately Assess Whether An Exemption Is Required By The McCarran-Ferguson Act

Recognizing that accurate risk-based pricing and underwriting practices are necessary to the integrity of the homeowners insurance market, *see* SOF ¶ 94, insurance laws in every State uniformly permit use of risk-based pricing and underwriting, and nearly all States expressly require it, SOF ¶¶ 47, 56; Dkt. 222 ("Motion") at 1-2 (discussing necessity of risk-based pricing). Yet the Rule allows disparate-impact plaintiffs to prevail by identifying alternative pricing and

---

[3] To the extent the Court's prior statement carried any greater significance, the Court made that statement in the context of a motion to amend, without fully developed briefing. The court may freely reconsider such a statement (and should do so here) as multiple courts have since held that *Inclusive Communities'* disparate-impact test in fact differs from the test in the Rule. *See, e.g., Lincoln Prop. Co.*, 920 F.3d at 902; *Oviedo Town Ctr. II,* 759 Fed. App'x at 833-35; *River Cross Land Co.*, 2021 WL 2291344, at *22-24; *County of Cook, Ill.*, 314 F. Supp. 3d at 990; *Travelers*, 261 F. Supp. 3d at 22; *see also LoggerHead Tools, LLC v. Sears Holding Corp.*, 328 F. Supp. 3d 885, 896 (N.D. Ill. 2018) ("The law-of-the-case doctrine is 'no more than a presumption, one whose strength varies with the circumstances.'" (quoting *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012))).

underwriting practices that are less effective in predicting loss and thus, if ordered by a court, could override a lawful and actuarially sound practice in violation of state law, 78 Fed. Reg. 11,473. And the Rule requires federal courts to scrutinize the actuarial soundness of pricing and underwriting practices to evaluate whether they fulfill "legitimate, nondiscriminatory interests," 24 C.F.R. § 100.500(c)(2)—"something that [*Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999)] prohibits federal courts from doing," *PCI I*, 66 F. Supp. 3d at 1039.

Citing *Mutual of Omaha* and other authority, this Court held that, in promulgating the Rule, HUD failed adequately to consider the clash between the Rule and the McCarran-Ferguson Act and explain why it chose to address that conflict through case-by-case adjudication instead of an exemption. *PCI I*, 66 F. Supp. 3d at 1048. In particular, the Court faulted HUD for making no "attempt to evaluate *how often* McCarran-Ferguson preclusion would apply." *Id.* (emphasis added). The Supplement failed to cure those defects in several critical respects.

### A.    HUD Did Not Address The Relevant Holding Of *Doe v. Mutual Of Omaha*

As this Court previously underscored, *Mutual of Omaha* held that requiring "federal courts to determine whether [challenged insurance practices] are actuarially sound and consistent with state law" violates the McCarran-Ferguson Act. *PCI I*, 66 F. Supp. 3d at 1028-29, 1038-39. HUD's Supplement nowhere grapples with that key holding. Instead, HUD adhered to its assumption that there would be at least some unspecified number of cases in which disparate-impact liability under the Rule would not violate McCarran-Ferguson, and that an exemption from the Rule for risk-based pricing and underwriting of homeowners insurance would therefore result in under-enforcement of the Fair Housing Act. AR1816; *see also* Cross-Motion at 28. But that is precisely the unexamined assumption this Court previously found inadequate, criticizing HUD for making "no attempt" to determine "how often McCarran-Ferguson preclusion would apply." SOF ¶ 49; *PCI I*, 66 F. Supp. 3d at 1048. The Supplement again fails to address how

often courts applying the Rule would "proscribe conduct that the State's laws governing insurance permit" in violation of McCarran-Ferguson. *Humana Inc. v. Forsyth*, 525 U.S. 299, 303 (1999).

To the extent the Supplement did discuss potential conflicts between the Rule and McCarran-Ferguson, it insisted—arbitrarily, and contrary to *Mutual of Omaha*—that courts applying the Rule would not have to assess the actuarial soundness of "purportedly" risk-based practices because a plaintiff could potentially show that such practices in fact rested on business judgments. AR1816; *see also* Cross-Motion 19. But that is the inquiry *Mutual of Omaha* forbids. As the Supplement itself acknowledges, the Rule requires insurers to "prove" that challenged practices "are risk-based"—*i.e.*, that they are actuarially sound and reflect the risk-based pricing principles required by state law. AR1816.

Defendants now offer additional reasons why *Mutual of Omaha* poses no concern. Cross-Motion at 20-21. But these explanations had to be offered by HUD itself in the Supplement, and they were not. Counsel's argument is no substitute for an agency's reasoned explanation. *State Farm*, 463 U.S. at 50. Nor are Defendants' arguments convincing. For instance, they suggest (at 20-21) that courts in some cases might not have to assess the actuarial soundness of a challenged practice at step three of the burden-shifting test because, in certain cases, the court might be able to elect the better of two risk-based practices. But doing so would contravene *Inclusive Communities*. 576 U.S. at 544. Moreover, even assuming that two actuarially sound risk-based practices were available in some unknown number of cases, hypothesizing unusual cases in which courts might *not* be compelled to proscribe state-law-authorized risk-based practices fails to answer the critical questions of whether and how frequently federal courts *would* be compelled to make the impermissible actuarial assessment of alternative practices required or authorized by state law. And it does not rebut PCI's contentions

that courts will be compelled to do so regularly, which would warrant an exemption for risk-based pricing and underwriting of homeowners insurance.

HUD's conclusions that an exemption would "necessarily be overbroad" and that the costs of an exemption "do not outweigh" the benefits, Cross-Motion at 16, were arbitrary given that any "weighing" exercise HUD conducted failed to consider how often McCarran-Ferguson preclusion would arise in challenges to homeowners insurance practices. Without analyzing this, HUD could not offer a "reasoned consideration" of whether homeowners insurers would likely prevail so frequently in litigation that an exemption would be justified. *See Ventura Broad. Co.*, 765 F.2d at 189. HUD's failure is all the more glaring in light of this Court's clear direction that HUD must adequately explain its choice to subject homeowners insurers to case-by-case litigation despite the conflict between the Rule and the McCarran-Ferguson Act. HUD's failure to confront *Mutual of Omaha* warrants summary judgment.

**B.      HUD Did Not Genuinely Consider A Specific Exemption For Homeowners Insurers' Risk-Based Pricing And Underwriting Practices**

PCI and others sought an exemption for the risk-based pricing and underwriting practices of homeowners insurance, which rely on long-recognized, verifiable factors that demonstrably correlate with losses. *See, e.g.*, SOF ¶¶ 11, 29, 56, 58 (identifying as examples of such factors the type of construction materials used to build a house, history of previous losses, proximity to fire hydrants or a fire station, and presence of a security system).[4] Defendants insist that HUD "addressed" this request "head-on" by explaining why an exemption for "risk-based factor[s]"

---

[4] Unlike amici, Defendants do not argue that PCI's request for an exemption for long-recognized risk-based homeowners insurance practices is not properly before the agency or the Court. *Cf.* Dkt. 233 at 26. Nor could they. PCI raised this request in a letter to HUD pending issuance of the supplemental explanation, which is incorporated into the administrative record. *See* SOF ¶¶ 54-55. And in the Supplement, HUD acknowledged that it was responding "to certain insurance industry comments" requesting "exemptions … from liability." SOF ¶ 54. Given that HUD received and considered PCI's comment and incorporated it into the administrative record, this is not a case where a plaintiff has failed to "alert the agency" of its request. *Appalachian Power Co. v. EPA*, 251 F.3d 1026, 1036 (D.C. Cir. 2001).

would not be appropriate.  Cross-Motion at 21 (citing AR1818).   But HUD's explanation was inadequate because it again assumed away the existence of the problem commenters identified—that there exists a longstanding class of risk-based homeowners insurance practices that warrant exemption from the Rule.

HUD first simply downplayed whether insurers truly use objective, risk-based pricing and underwriting practices, surmising—contrary to the record, *see* SOF ¶¶ 47, 62—that many risk-based practices are "not, in fact, risk-based."  Cross-Motion at 21 (citing AR1815).  *See Pacific Coast Fed'n of Fishermen's Ass'ns v. National Marine Fisheries Serv.*, 253 F.3d 1137, *amended and superseded by*, 265 F.3d 1028 (9th Cir. 2001) (agency decision arbitrary and capricious where it "assum[ed] away" an important issue).

And for those practices acknowledged to be risk-based, HUD maintained that an exemption would be "overbroad and quickly outdated" in light of variation in state laws and the likelihood that they would "change over time."  Cross-Motion at 22 (citing AR1817-18).  But HUD did not explain why those state laws addressing "long-recognized," verifiable, actuarially sound factors used by the homeowners insurance industry that demonstrably correlate with losses would substantially vary across jurisdictions or over time (and how often).  SOF ¶¶ 11, 29.  And given its conjectural premise, HUD could not meaningfully reject that McCarran-Ferguson might *always* be triggered in litigation over this class of practices, given that every successful challenge brought under the Rule to an established risk-based pricing or underwriting practice would necessarily require a court to invalidate a practice authorized by state insurance law, repeating the precise result forbidden by McCarran-Ferguson.  And without explaining why that would not be the case, HUD could not reasonably justify why case-by-case adjudication would be superior to an exemption for the narrow class of practices that PCI identifies—longstanding risk-based pricing and underwriting practices of homeowners insurance.

HUD's failure to address the specific requested exemption renders the Supplement arbitrary and capricious.

### C. HUD's Weighing Of The Costs Of Case-By-Case Adjudication Under The Rule's Burden-Shifting Framework Was Arbitrary And Capricious

PCI noted that the ability of homeowners insurers to raise defenses in individual cases was not an adequate substitute for an exemption, given that litigation would impose "significant and unjustified expenses on the industry." Motion at 17. PCI submitted uncontroverted evidence of these costs, including those associated with collecting data on customers' race and ethnicity and the impact on the industry from being required to use less effective risk-based pricing practices as a result of successful challenges. SOF ¶¶ 58, 62, 95, 96, 97. HUD's Supplement did not meaningfully take this into consideration.

Defendants argue (at 23) that any challenge to the burden-shifting framework is "foreclosed" because this Court "expressly upheld the reasonableness of the Rule's burden-shifting framework." But this Court evaluated only whether the Rule's burden-shifting framework was consistent with pre-*Inclusive Communities* precedent. 66 F. Supp. 3d at 1052. It did not conclude that applying the framework to homeowners insurance practices specifically would be reasonable. Defendants also contend (at 24) that the fact that "insurers will incur costs defending themselves" and the possibility that McCarran-Ferguson "could preempt" disparate-impact claims did not require a categorical exemption. But they do not explain why that would be the case if, as PCI claims, *each* adjudication would not only impose financial costs on insurers and ultimately their policyholders, SOF ¶ 62, but would also trigger McCarran-Ferguson concerns. And they certainly do not provide authority excusing HUD for failing to consider these issues raised during the comment period. *Cf. Ass'n of Priv. Sector Colleges & Univs. v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012).

As to PCI's contention that the burden-shifting framework may impose costs by requiring insurers to adopt less effective risk-based practices, Defendants do not separately address it except to cite HUD's determination that the benefits of case-by-case adjudication generally outweigh the costs of under-enforcement of the FHA. *See* Cross-Motion at 24-25. But without factoring into the calculus the economic consequences of requiring the industry to adopt less-effective practices, *see* SOF ¶¶ 58, 70, 95-96, HUD was in no position to meaningfully engage in a balancing exercise. Accordingly, determination of this issue was arbitrary and capricious. *Envt'l Def. Fund v. FERC*, 2 F.4th 953 (D.C. Cir. 2021).

### D. HUD Refused To Accept That The Logical Result Of Liability Under The Rule Would Be To Invalidate Risk-Based Practices

PCI repeatedly pointed to a fundamental inconsistency in HUD's logic: that HUD purported to preserve risk-based practices from liability but adopted a Rule that will inevitably be used in successful challenges to invalidate risk-based practices. SOF ¶¶ 58, 95-96. And, as discussed above, *supra* at 8-11, that would violate the McCarran-Ferguson Act. HUD did not address this reality—let alone contest how often it would occur—in attempting to reconcile case-by-case adjudication with the McCarran-Ferguson Act.

Defendants respond that "liability under the burden-shifting framework" cannot be conflated with "prohibiting" risk-based practices. Cross-Motion at 22-23. But they do not explain why these are not, in fact, one and the same—given that the remedy for a successful challenge to a risk-based practice would be an injunction prohibiting that practice in favor of an alternative that need not be equally effective in predicting loss. SOF ¶¶ 38, 58. Defendants insist, without basis (at 23) that homeowners insurers will still be able to "generally" use risk-based practices. But that dances around the issue. Neither the Supplement nor Defendants' Cross-Motion disavows that the Rule can impose liability for engaging in at least some risk-

14

based practices that are required or permitted under state insurance laws. *See* Cross-Motion at 23 (acknowledging that a claimant "may prevail on a discriminatory effects claim by showing that a particular risk-based practice could be substituted for one with a less discriminatory effect"); AR1816 (contending that the "mere fact that states have adopted ratemaking regulations does not trigger McCarran-Ferguson"). And the remedy for such liability is enjoining these state-law-approved risk-based practices, in violation of McCarran-Ferguson. *Humana*, 525 U.S. at 303.

It is no answer that any alternative practice plaintiffs may propose might also be risk-based. Cross-Motion at 19-20 (citing AR1818). For one, such a practice may never have been reviewed or accepted by state regulators. And because there is no requirement that the alternative be "equally effective" at predicting risk, there is no guarantee that the proposed alternative will not undermine the State's interest in ensuring an actuarially and financially sound insurance market. This is *per se* impairment of state insurance law under *Mutual of Omaha.*

HUD cannot "avoid its duty to confront [this] inconsistenc[y] by blinding itself to [it]." *Humane Soc. of U.S. v. Locke*, 626 F.3d 1040, 1051 (9th Cir. 2010). HUD's failure to even acknowledge the internal inconsistency in its Supplement renders its decision to permit case-by-case adjudication of challenges to homeowners insurance practices arbitrary and capricious.

### E. State Antidiscrimination Laws Do Not Justify A Case-By-Case Approach

Defendants additionally contend, as HUD argued in the Supplement, that litigating disparate-impact claims on a case-by-case basis under the Rule cannot "impair" state insurance laws in violation of McCarran-Ferguson because many States apply their own fair-housing laws to homeowners insurance practices. Cross-Motion at 26-27.[5]

---

[5] Defendants do not defend HUD's reasoning that exempting homeowners insurance from the Rule would "deprive all states of federal support in addressing discriminatory insurance practices" contrary to the "purposes of McCarran-Ferguson," AR1817. As PCI explained in its opening brief (at 19), the McCarran-Ferguson Act was not intended to provide federal support for state enforcement of state antidiscrimination laws.

But even assuming state anti-discrimination laws were coextensive with the Rule, the problem remains that the Rule calls for *federal* courts to weigh in on whether *federal* law would invalidate, impair, or supersede state laws enacted "for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b). As *Mutual of Omaha* explained, "[e]ven if the formal criteria are the same under federal and state law," requiring federal courts to decide whether an insurance practice complies with state law "obviously would interfere with the administration of the state law." 179 F.3d at 564. Defendants do not identify where HUD addressed this key teaching of *Mutual of Omaha*, *supra* at 9-11, and thus again have no answer to PCI's argument that the very exercise of disparate-impact analysis under the Rule would trigger McCarran-Ferguson preclusion. The Supplement thus fails to "adequately [] address concerns raised in the Court's prior decision." *PCI II*, 2017 WL 2653069 at *3.

### F. HUD's Observation That The McCarran-Ferguson Analysis Is Fact-Intensive Does Not Respond To Comments That An Exemption Is Required Under The Rule

PCI explained that no further factual development is needed to justify an exemption for risk-based pricing and underwriting practices of homeowners insurance because state laws uniformly require or permit such practices and a federal court would necessarily violate McCarran-Ferguson by evaluating (or enjoining) them under the Rule. *See* Motion at 20-21. HUD did not meaningfully challenge the premises of PCI's argument, but nevertheless declined to grant an exemption because "McCarran-Ferguson requires a fact-intensive inquiry" that depends on "case-specific variables." AR1817; *see also* Cross-Motion at 27-28.

Even assuming that McCarran-Ferguson issues can be fact-sensitive in some cases, that is beside the point: state law does *not* vary in requiring or permitting risk-based pricing to ensure that rates are not excessive, inadequate, or unfairly discriminatory. SOF ¶¶ 47, 56; *see* Motion at 2. Defendants do not explain how the fact-specific nature of a McCarran-Ferguson analysis is

relevant when deciding whether case-by-case adjudication is appropriate, where state law uniformly requires or permits risk-based pricing and evaluating risk-based practices in federal litigation always triggers McCarran-Ferguson concerns.[6]  HUD's analysis of McCarran-Ferguson cases, "while perhaps sufficient to summarize the complexities" of granting an exemption, "do[es] not explain why adjudication avoids these or additional complexities."  *Shays v. FEC*, 424 F. Supp. 2d 100, 115 (D.D.C. 2006).

Citing the same cases the Supplement relied on, Defendants again contend that McCarran-Ferguson "would not necessarily preempt all discriminatory effects claims based on states' general sanctioning of risk-based practices."  Cross-Motion at 28 (citing *Lumpkin v. Farmers Grp. (Lumpkin II)*, 2007 U.S. Dist. LEXIS 98949 (W.D. Tenn. July 6, 2007) and *Dehoyos v. Allstate Corp.*, 345 F.3d 290 (5th Cir. 2003)).  But neither *Lumpkin* nor *Dehoyos* rebuts the notion that requiring a federal court to evaluate the legality of a state-approved risk-based practice under the Rule, whether or not the practice is ultimately enjoined, "would interfere with the administration of the state [insurance] law" under *Mutual of Omaha*, 179 F.3d at 564—a position this Court already adopted and deemed binding.  66 F. Supp. 3d at 1039 & n.6.  In *Lumpkin*, the court found only that there was no conflict between the Rule and Tennessee insurance law because the state's insurance law did not *mandate* insurance scoring resulting in a disparate impact.  2007 U.S. Dist. LEXIS 98949 at *20-21.  But that does not completely resolve the McCarran-Ferguson issue, given state insurance law can be impaired short of a direct conflict between a federal statute and a state insurance provision.  And key to the *Dehoyos* court's conclusion was that the insurance company "had not cited any statute, regulation or court

---

[6] Defendants fault PCI for making only a "general reference to state laws permitting or requiring … risk based practices," contending that this "cannot possibly be detailed enough" to decide whether state insurance laws would conflict with disparate impact-claims to such a degree that an exemption is required.  Cross-Motion at 28-29.  But Defendants do not contest that States uniformly require or permit risk-based pricing.  No further chapter and verse was required.

decision that required or condoned any type of discriminatory credit scoring practice." 345 F.3d at 299. This failure of pleading in one case does not support HUD's analysis, especially where PCI has introduced evidence that the vast majority of States have statutes requiring risk-based policies. SOF ¶¶ 47, 85.[7]

For these reasons, HUD's reliance on variation in state insurance laws was unresponsive to PCI's concerns, and thus arbitrary and capricious.

## IV. HUD Did Not Adequately Explain Why An Exemption Was Not Warranted In Light Of The Rule's Threat To The Fundamental Nature Of The Insurance Business

PCI and others explained that preventing accurate risk-based pricing and underwriting practices would result in "adverse selection, motivating lower-risk customers to forego insurance altogether and threatening insurers' viability." SOF ¶¶ 19, 56, 58, 62, 70, 76-77, 94. The Court directed HUD to explain why an exemption from the Rule was not required in light of such threats to the business and competitive markets. 66 F. Supp. 3d at 1051.

Nothing Defendants cite here shows that HUD took this directive seriously. Defendants say HUD justified its decision not to grant an exemption on the ground that, in its view and experience, "decades of … applying disparate impact liability" had not yielded the consequences insurers predicted. Cross-Motion at 24, 30-31 (citing AR1816). But HUD presented no facts to rebut PCI's claim that preventing accurate risk-based pricing and underwriting would result in adverse selection and consequently jeopardize the viability of the homeowners insurance industry. Nor is HUD's "decades"-long retrospective view particularly relevant, given that the Rule has only been in effect for eight years. HUD's reliance on that experience was thus the sort

---

[7] Defendants do not endorse HUD's reliance on *Saunders*, which *upheld* a McCarran-Ferguson challenge to an FHA claim. *Saunders v. Farmers Insurance Exchange (Saunders II)*, 537 F.3d 961 (8th Cir. 2008).

of "*ipse dixit* conclusion … [that] epitomizes arbitrary and capricious decisionmaking."  *Am. Pub. Commc'ns Council v. FCC*, 215 F.3d 51, 53 (D.C. Cir. 2000).

     None of HUD's other justifications make up for this gap in reasoning.  While HUD claimed that disparate-impact liability would not prevent the use of *all* risk-based factors, *see* Cross-Motion at 30 (citing AR1816), that says nothing about whether the Rule will prohibit the use of *the most effective* risk-based factors, which is what is required to avoid deleterious consequences to the insurance industry.  SOF ¶ 96.  And Defendants' repetition (at 32) of HUD's declaration that it would be "inappropriate in the housing context" to require any alternative risk-based practice to be "equally effective," is *ipse dixit*, not considered explanation of this issue.

## V.    HUD Failed Adequately To Consider The Filed-Rate Doctrine

     Although, at this Court's direction, HUD discussed the filed-rate doctrine in the Supplement, its reasoning does not support its decision.  HUD questioned the applicability or "fit" of the filed-rate doctrine to challenges under the Rule, again noting the variation in state laws governing the filing of insurance rates.  *See* Cross-Motion at 33-34 (citing AR1819 n.92). But as PCI explained, the "vast majority" of States require insurers to file rates with state regulators for review or approval.  SOF ¶ 47.  And the filed-rate doctrine applies whenever rates have been filed; the extent or vigor of a state agency's review of them does not matter.  *See Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 417 n.19 (1986).

     HUD also claimed that a disparate-impact suit would not challenge the reasonableness of insurance rates.  Cross-Motion at 33 (AR1819).  But nothing would stop a plaintiff from bringing a disparate-impact claim alleging that a particular practice results in rate disparities based on race—indeed, such a claim seems a very likely use of the Rule.  And it is difficult to imagine how a court could remedy such a disparity under the Rule other than by "invalidating" the rate.

19

*Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 835 (N.D. Ill. 2011). HUD's explanation failed to consider these consequences.

Defendants question (at 34) whether the filed-rate doctrine applies to federal challenges to state insurance rates, contending that the doctrine bars only certain federal claims involving injuries to business or property like RICO and antitrust actions. Cross-Motion at 34-35. HUD did not rely on that argument in the Supplement, so it is foreclosed here.

Finally, Defendants dispute that a federal court would ever have to consider the "reasonableness" of insurance rates in a disparate-impact challenge. Cross-Motion at 35. But the filed-rate doctrine bars claims that do more than simply challenge the "reasonableness" of rates. *See, e.g., Square D Co.*, 476 U.S. at 415 & n.17 (filed-rate doctrine barred recovery of treble damages under antitrust laws even though claims challenged the method by which rates were adopted rather than rates' reasonableness); *Schilke*, 820 F. Supp. 2d at 836 (filed-rate doctrine foreclosed claims based on failure to disclose aspects of rates); *McCray v. Fidelity Nat'l Title Ins. Co.*, 682 F3d 229, 235-242 (3d Cir 2012) (filed-rate doctrine barred antitrust challenge to rates).

## CONCLUSION

The Court should grant PCI's motion for summary judgment and enjoin the Rule to the extent that it applies to risk-based pricing and underwriting of homeowners insurance.

Dated:  August 6, 2021                     Respectfully submitted,

PROPERTY CASUALTY INSURERS
ASSOCIATION OF AMERICA

/s/ *Seth P. Waxman*
Seth P. Waxman (*pro hac vice*)
Catherine M.A. Carroll (*pro hac vice*)
Anuradha Sivaram (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
E-mail: seth.waxman@wilmerhale.com

Rowe W. Snider (# 03125194)
Alyssa M. Gregory (# 6320588)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Tel.: (312) 443-0700
Fax: (312) 896-0336
Email: rsnider@lockelord.com

*Attorneys for Plaintiff*

21