**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:13-cv-08564 |
| MARCIA L. FUDGE, in her official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) | Chief Judge Rebecca R. Pallmeyer |
| Defendants. | ) ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF**
**UNDISPUTED MATERIAL FACTS**

Pursuant to Local Rule 56.1(b)(2), Plaintiff Property Casualty Insurers Association of

America (PCI) hereby submits responses to Defendants' Statement of Undisputed Material Facts

(Dkt. 232-1):

**FACT NO. 1:**

Defendant Department of Housing and Urban Development (HUD) is the federal
executive agency responsible for administering and interpreting the Fair Housing Act, Pub. L.
No. 90-284, 82 Stat. 81 (1968) (codified as amended at 42 U.S.C. §§ 3601-3619). *See* 42 U.S.C.
§ 3614a; *see also* 78 Fed. Reg. 11,460, 11,460 (Feb. 15, 2013).

**RESPONSE TO FACT NO. 1:** Undisputed.

**FACT NO. 2:**

Defendant Marcia Fudge is the Secretary of Housing and Urban Development and is sued
in her official capacity. *See* HUD, Marcia L. Fudge, Secretary of HUD,
https://www.hud.gov/about/leadership/marcia_fudge (last accessed June 25, 2021).

**RESPONSE TO FACT NO. 2:** Undisputed.

**The Rulemaking**

**FACT NO. 3:**

On November 16, 2011, HUD issued a Notice of Proposed Rulemaking ("NPRM"), in which HUD proposed to "add[] a new subpart . . . to its Fair Housing Act regulations . . . [to] confirm that the Fair Housing Act may be violated by a housing practice that has a discriminatory effect." 76 Fed. Reg. 70,921, 70,924 (Nov. 16, 2011).

**RESPONSE TO FACT NO. 3:** Undisputed that HUD set forth the quoted statements above in

the Notice of Proposed Rulemaking. PCI disputes the substance of HUD's statements, which are

legal conclusions that are in dispute in this litigation.

**FACT NO. 4:**

In that same NPRM, HUD proposed "establish[ing] a uniform standard of liability for facially neutral housing practices that have a discriminatory effect" to resolve "minor variation in how HUD and the courts have applied th[e] theory." 76 Fed. Reg. at 70,923.

**RESPONSE TO FACT NO. 4:** Undisputed that HUD set forth the quoted statements above in

the Notice of Proposed Rulemaking. PCI disputes the substance of HUD's statements, which are

legal conclusions that are in dispute in this litigation.

**FACT NO. 5:**

HUD proposed adopting an approach whereby "liability is determined by a burden-shifting approach" modeled after the well-established frameworks applicable to disparate impact claims brought under other antidiscrimination laws such as Title VII. 76 Fed. Reg. at 70,923.

**RESPONSE TO FACT NO. 5:** Undisputed that HUD set forth the quoted statement above in

the Notice of Proposed Rulemaking. PCI disputes the substance of HUD's statement, which is a

legal conclusion that is in dispute in this litigation.

- 2 -

**FACT NO. 6:**

HUD issued its Final Rule on February 15, 2013, which made several changes to the wording of its proposed rule in response to comments suggesting a need for greater clarity, but it retained the basic substance of the proposal.  78 Fed. Reg. 11,460.

**RESPONSE TO FACT NO. 6:** PCI disputes Defendants' subjective characterization of HUD's

Final Rule, which is a legal conclusion.

**FACT NO. 7:**

In the preamble to that Rule, HUD announced that it was "formaliz[ing] its longstanding view that discriminatory effects liability is available under the Act and establishes uniform standards for determining when a practice with a discriminatory effect violates the Fair Housing Act." 78 Fed. Reg. at 11,463.

**RESPONSE TO FACT NO. 7:** Undisputed that HUD set forth the quoted statement above in

the Rule Explanation.  PCI disputes the substance of HUD's statement, which is a legal

conclusion that is in dispute in this litigation.

**FACT NO. 8:**

HUD noted that its construction of the FHA to encompass disparate impact was consistent with the interpretation adopted by eleven courts of appeals.  78 Fed. Reg. at 11,476.

**RESPONSE TO FACT NO. 8:** PCI disputes HUD's characterization of its construction of the

FHA, which rests on its subjective assessment, and disputes the substance of HUD's statement,

which is a legal conclusion that is in dispute in this litigation.

**FACT NO. 9:**

In the preamble to the Rule, HUD observed that "for the minority of entities that have, in the over 40 years of the Fair Housing Act's existence, failed to institutionalize methods to avoid engaging in illegal housing discrimination and plan to come into compliance as a result of this rulemaking, the costs [of the Rule] will simply be the costs of compliance with a preexisting statute, administrative practice and case law." 78 Fed. Reg. at 11,479.

**RESPONSE TO FACT NO. 9:** Undisputed that HUD set forth the quoted statements above in

the Rule Explanation. PCI disputes the substance of HUD's statements, which are legal

conclusions that are in dispute in this litigation.

**FACT NO. 10:**

HUD adopted a three-part burden-shifting framework where: (1) the party bringing the claim of discrimination first bears the burden of proof to show that a practice actually or predictably results in a discriminatory effect; (2) if the first step is satisfied, the defendant or respondent has the burden of proving that the practice is "necessary to achieve one or more [of its] substantial, legitimate, nondiscriminatory interests"; and (3) if the second step is satisfied, the party bringing the claim may still prevail upon proving that the asserted interest "could be served by another practice that has a less discriminatory effect." 78 Fed. Reg. at 11,482 (quoting 24 C.F.R. § 100.500(b)-(c)).

**RESPONSE TO FACT NO. 10:** Undisputed that HUD set forth the quoted statements above in

the Rule Explanation. PCI disputes the substance of HUD's characterizations of the steps of the

burden-shifting rule, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 11:**

HUD noted that the Rule's framework was "not a significant departure from HUD's interpretation to date or that of the majority of federal courts." 78 Fed. Reg. at 11,480.

**RESPONSE TO FACT NO. 11:** Undisputed that HUD set forth the quoted statement above in

the Rule Explanation. PCI disputes the substance of HUD's statement, which is a legal

conclusion that is in dispute in this litigation.

- 4 -

**FACT NO. 12:**

HUD concluded that the three-part burden shifting framework adopted in the Rule was "the fairest and most reasonable approach to resolving" discriminatory effects claims under the FHA. 78 Fed. Reg. at 11,473-74.

**RESPONSE TO FACT NO. 12:** Undisputed that HUD set forth the quoted statement above in the Rule Explanation. PCI disputes the substance of HUD's statement, which is a legal conclusion that is in dispute in this litigation.

**Comments Submitted During the Rulemaking**

**FACT NO. 13:**

During the comment period, HUD received nearly 100 public comments in response to its proposed rule (many of which had multiple signatories) from entities representing a wide variety of interests, including individuals, fair housing and legal aid organizations, state and local fair housing agencies, state Attorneys General, state housing finance agencies, public housing agencies, mortgage lenders, credit unions, banks, real estate agents, and law firms. AR9-610.

**RESPONSE TO FACT NO. 13:** Undisputed.

**FACT NO. 14:**

Three trade associations representing the homeowner's insurance industry, including Plaintiff, also submitted comments. AR372-83 (Cmt. of Nat'l Ass'n of Mut. Ins. Cos.); 455-59 (Cmt. of Am. Ins. Ass'n); 553-56 (Cmt. of Prop. Cas. Insurers Ass'n of Am.).

**RESPONSE TO FACT NO. 14:** Undisputed.

**FACT NO. 15:**

Six state Attorneys General submitted a joint comment during the rulemaking that strongly "commend[ed]" the Rule at issue, calling the availability of disparate impact claims "squarely aligned with the interest of our states" and noting that the Rule would complement the states' own "extensive efforts" to address the lingering "barriers to equal housing opportunities." AR560-61.

**RESPONSE TO FACT NO. 15:** PCI disputes Defendants' characterization of the comment, which rests on their subjective assessment, and disputes substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 16:**

HUD received comments that contended that the proposed burden-shifting framework was too favorable to the party bringing the claim and other comments that contended that it was too favorable to the party subject to the claim. *Compare, e.g.*, AR381- 83 (Cmt. of Nat'l Ass'n of Mut. Ins. Cos.) (arguing that framework places too heavy a burden on defendants), *with, e.g.,* AR481-483 (Cmt. of Nat'l Fair Hous. Alliance, et al.) ("We respectfully suggest that the burden of proof should be assigned to the defendant or respondent to show that there is no less discriminatory alternative. . . .  In litigation involving insurance or lending - where private companies scrupulously protect proprietary information such as credit scores, actuarial data and risk assessment - there is an even stronger rationale for imposing the burden on the defendant, whose knowledge will be vastly superior to that of a plaintiff and who will uniquely possess information with respect to less discriminatory alternatives.").

**RESPONSE TO FACT NO. 16:** Undisputed, but incomplete.  PCI notes that HUD also received comments that, among other things, challenged the burden-shifting framework as contrary to law.

**HUD's Responses to Comments**

**FACT NO. 17:**

HUD grouped the comments it received into 42 different issues and responded to each of those 42 issues in turn.  *See* 78 Fed. Reg. at 11,465-79.

**RESPONSE TO FACT NO. 17:** PCI disputes Defendants' conclusion that HUD "responded to each" of the issues raised by the industry; the adequacy of HUD's responses is a question of law that is in dispute in this litigation.

**FACT NO. 18:**

HUD acknowledged and rejected comments from insurance groups based on the McCarran-Ferguson Act and the "filed-rate" doctrine because, "[b]y formalizing the discriminatory effects standard, the rule will not, as one commenter suggested, undermine the states' regulation of insurance." 78 Fed. Reg. at 11,475 (internal quotation marks omitted).

**RESPONSE TO FACT NO. 18:** Disputed. PCI disputes that HUD "acknowledged" comments

from insurance groups based on the McCarran-Ferguson Act and the "filed-rate" doctrine, given

this Court's conclusion that HUD failed to provide a reasoned explanation of its decision to leave

application of McCarran–Ferguson preclusion for a case-by-case determination, *Prop. Cas.*

*Insurers Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1047 (N.D. Ill. 2014) and "failed to give

adequate consideration to … comments regarding the filed-rate doctrine." *Id.* at 1050. PCI also

disputes the substance of HUD's statement, which is a legal conclusion that is in dispute in this

litigation.

**FACT NO. 19:**

HUD noted that "McCarran-Ferguson does not preclude HUD from issuing regulations that may apply to insurance policies," and that the Rule does "not alter the instruction of McCarran- Ferguson or its application," which "depends on the facts at issue and the language of the relevant State law relating to the business of insurance." 78 Fed. Reg. at 11,475 (internal quotation marks and brackets omitted).

**RESPONSE TO FACT NO. 19:** Undisputed that HUD set forth the quoted statements above in

the Rule Explanation. PCI disputes the substance of HUD's statements, which are legal

conclusions that are in dispute in this litigation.

**FACT NO. 20:**

HUD acknowledged and rejected comments from insurance groups about the purported effect the Rule would have on the insurance industry, indicating that it found the concerns raised by the insurance groups to be "misplaced." 78 Fed. Reg. at 11,475.

**RESPONSE TO FACT NO. 20:** Disputed. PCI disputes that HUD "acknowledged" comments from insurance groups about the effect the Rule would have on the insurance industry, given this Court's conclusion that "HUD's response to the insurance industry's concerns that exposing them to disparate impact liability would undermine the fundamental nature of insurance was arbitrary and capricious." *Prop. Cas. Insurers Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1051 (N.D. Ill. 2014). PCI also disputes the substance of HUD's statement, which is a legal conclusion that is in dispute in this litigation.

**FACT NO. 21:**

HUD noted that comments from the insurance industry about the effect of the Rule were based on an "incorrect" assumption "that once a discriminatory effect is shown, the policy or practice at issue is *per se* illegal." 78 Fed. Reg. at 11,475. HUD explained that the Rule distinguishes "unnecessary barriers proscribed by the [Act] from valid policies and practices crafted to advance legitimate interests," such that "even if a policy has a discriminatory effect, it may still be legal if supported by a legally sufficient justification." *Id.*

**RESPONSE TO FACT NO. 21:** Undisputed that HUD set forth the quoted statements above in the Rule Explanation. PCI disputes the substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 22:**

HUD acknowledged and rejected comments from insurance groups that requested that the insurance industry be exempted from the Rule, or that safe harbors be created for certain insurance practices. 78 Fed. Reg. at 11,475.

**RESPONSE TO FACT NO. 22:** Disputed. PCI disputes that HUD "acknowledged" comments from insurance groups that requested that the insurance industry be exempted from the Rule, or that safe harbors be created for certain insurance practices, where this Court concluded that "HUD made no attempt to determine whether the benefits of proceeding by case-by-case adjudications outweighed the benefits of including an exemption or safe harbors for insurers in the Disparate Impact Rule. *Prop. Cas. Insurers Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1048 (N.D. Ill. 2014).

**FACT NO. 23:**

HUD explained that it found the creation of special exemptions for the insurance industry to be "unnecessary" and that "creating exemptions beyond those found in the Act would run contrary to Congressional intent." 78 Fed. Reg. at 11,475.

**RESPONSE TO FACT NO. 23:** Undisputed that HUD set forth the quoted statements above in the Rule Explanation. PCI disputes the substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 24:**

In responding to comments that argued that the Rule would lead to increased litigation burdens for entities subject to the FHA, HUD explained that it "does not believe that the rule will lead to frivolous investigations or create excessive litigation exposure for respondents or defendants." 78 Fed. Reg. at 11,472. HUD based this conclusion in part on "how the discriminatory effects framework has been applied to date by HUD and by the courts." *Id.*

**RESPONSE TO FACT NO. 24:** Undisputed that HUD set forth the quoted statements above in the Rule Explanation. PCI disputes the substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 25:**

HUD acknowledged and rejected comments that it should alter the burdens of proof in the proposed burden-shifting standard, concluding that its chosen framework "is the fairest and most reasonable approach . . . because it does not require either party to prove a negative . . . [and] will ensure consistency in applying the discriminatory effects standard while creating the least disruption . . . ." 78 Fed. Reg. at 11,473-74.

**RESPONSE TO FACT NO. 25:** Undisputed that HUD set forth the quoted statements above in

the Rule Explanation. PCI disputes the subjective characterization that HUD "acknowledged"

industry comments; the adequacy of HUD's responses is a question of law. PCI disputes the

substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 26:**

HUD acknowledged and rejected comments that it should adopt a burden-shifting framework identical to the one set forth in *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642 (1989). HUD explained that the burden-shifting standard in *Wards Cove*, which was adopted by the Supreme Court for use in Title VII claims but quickly abrogated by Congress, does not and should not govern FHA claims, "in light of the wider range and variety of practices covered by the Act that are not readily quantifiable." 78 Fed. Reg. at 11,472-73. HUD further explained that its choice "is consistent with ... Congress's codification of the disparate impact standard in the employment context." Fed. Reg. at 11473.

**RESPONSE TO FACT NO. 26:** Undisputed that HUD set forth the quoted statements above in

the Rule Explanation. PCI disputes the subjective characterization that HUD "acknowledged"

industry comments; the adequacy of HUD's responses is a question of law. PCI disputes the

substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 27:**

HUD acknowledged and rejected comments that it should remove the word "necessary" from the definition of a "legally sufficient justification." HUD explained that it rejected this

- 10 -

suggestion because "HUD's substantial experience in administering the Fair Housing Act confirms that requiring a challenged practice with a discriminatory effect to be necessary best effectuates the broad, remedial goal of the Act" and "is also consistent with Congress's 1991 enactment of legislation codifying that, in the employment context, a practice that has a disparate impact must be consistent with 'business necessity' and must also be 'job related.'" 78 Fed. Reg. at 11,472 (citing 42 U.S.C. § 2000e-2(k)(1)(A)).

**RESPONSE TO FACT NO. 27:** Undisputed that HUD set forth the quoted statements above in the Rule Explanation. PCI disputes the subjective characterization that HUD "acknowledged" industry comments; the adequacy of HUD's responses is a question of law. PCI disputes the substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**PCI's Challenge to the 2013 Discriminatory Effects Rule**

<u>Initial Proceedings in District Court</u>

**FACT NO. 28:**

On November 27, 2013, PCI filed its original complaint, challenging the application of HUD's Disparate Impact Rule to the pricing of homeowners insurance. *See* ECF. No. 1.

**RESPONSE TO FACT NO. 28:** Undisputed.

**FACT NO. 29:**

The parties cross-moved for summary judgment, and HUD moved to dismiss. *See* ECF Nos. 21, 30.

**RESPONSE TO FACT NO. 29:** Undisputed.

**FACT NO. 30:**

On September 3, 2014, the Court issued a decision on the parties' motions. *See Prop. Cas. Ins. Ass'n of Am. v. Donovan* ("PCI"), 66 F. Supp. 3d 1018 (N.D. Ill. 2014).

**RESPONSE TO FACT NO. 30:** Undisputed.

**FACT NO. 31:**

The Court ruled in HUD's favor by ruling that the burden-shifting framework HUD adopted embodied a reasonable interpretation of the FHA, but it also ruled that some of HUD's responses to comments submitted by the insurance industry were arbitrary and capricious because they did not sufficiently consider or respond to the concerns raised regarding the McCarran-Ferguson Act, the filed-rate doctrine, and comments regarding the nature of the insurance industry. *Id.* at 1049-1051.

**RESPONSE TO FACT NO. 31:** Undisputed.

**FACT NO. 32:**

The Court remanded this case to HUD for further explanation on these issues. *Id.* at 1049-1050, 1054.

**RESPONSE TO FACT NO. 32:** Undisputed.

***Inclusive Communities* Decision**

**FACT NO. 33:**

While this case was on remand, the Supreme Court decided *Inclusive Communities*, which held that disparate impact claims are cognizable under the Act. *Texas Dep't of Hous. & Comm'y Affairs v. Inclusive Comm'ys. Project, Inc.*, 570 U.S. 519 (2019). The Court declined to consider what standards and burdens of proof should apply. *Inclusive Cmtys. Project, Inc.,* 573 U.S. 991 (2014), 2014 U.S. LEXIS 4912 at *1 ("Petition for writ of certiorari to the United States Court of Appeals for the Fifth Circuit granted limited to Question 1 presented by the petition."); *See also Questions Presented in*, *Inclusive Cmtys Project, Inc.*, 573 U.S. 991, THE UNITED STATES SUPREME COURT 1, 1, https://www.supremecourt.gov/qp/13-01371qp.pdf.

**RESPONSE TO FACT NO. 33:** Disputed. PCI disputes Defendants' interpretation of *Inclusive Communities*, which is a question of law. *Inclusive Communities* announced several standards that must govern disparate impact claims under the Act. For example, the Court explained that "[d]isparate-impact liability mandates the removal of artificial, arbitrary, and unnecessary barriers, not the displacement of valid governmental policies" or "legitimate objectives." *Texas Dep't of Hous. & Comm'y Affairs v. Inclusive Comm'ys. Project, Inc.*, 576 U.S. 519, 540, 544 (2015) (internal citations and quotations omitted). It also provided that respondents must be

- 12 -

permitted "leeway to state and explain the valid interest served by their policies" and "latitude to consider market factors" and be "allowed to maintain a policy if they can prove it is necessary to achieve a valid interest." *Id.* at 541, 542. And to state a claim "at the prima facia stage," plaintiffs must meet a "robust causality requirement," lest a mere "statistical disparity" threaten respondents with costly litigation and compel their use of potentially unconstitutional "numerical quotas" or other explicit and suspect considerations of race. *Id.* at 542. The Court cautioned against a rule that would hold defendants "liable for racial disparities they did not create," allow plaintiffs to second-guess "which of two reasonable approaches" a defendant should follow, or encourage the consideration of race "in a pervasive way." *Id.* at 541-542.

## 2016 Supplemental Explanation

**FACT NO. 34:**

On October 5, 2016, HUD issued its Supplemental Explanation, titled "Application of the Fair Housing Act's Discriminatory Effects Standard to Insurance," which again concluded "that categorical exemptions or safe harbors for insurance practices are unworkable and inconsistent with the broad fair housing objectives and obligations embodied in the Act." 81 Fed. Reg. 69,012 (AR1813-1820).

**RESPONSE TO FACT NO. 34:** Undisputed that HUD set forth the quoted statements above in the Supplemental Explanation. PCI disputes the substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 35:**

While the finding remained the same, in its explanation, HUD provided additional responses to insurance industry comments. 81 Fed. Reg. 69,014-19.

**RESPONSE TO FACT NO. 35:** PCI disputes the subjective characterization that HUD

provided "additional responses" to industry comments; the adequacy of HUD's responses is a

question of law.

<u>HUD's Further Explanation Regarding McCarran-Ferguson</u>

**FACT NO. 36:**

In response to comments about the McCarran-Ferguson Act, HUD explained why it rejected the comments requesting a categorical exemption for the insurance industry. HUD stated that "McCarran-Ferguson does not require HUD to do so, and that categorical exemptions would undermine the Act's broad remedial purpose and contravene HUD's own statutory obligation to affirmatively further fair housing." *Id.* at 69,014.

**RESPONSE TO FACT NO. 36:** Undisputed that HUD set forth the quoted statements above in

the Supplemental Explanation. PCI disputes the subjective characterization that HUD

"explained" why it rejected industry comments; the adequacy of HUD's responses is a question

of law. PCI disputes the substance of HUD's statements, which are legal conclusions that are in

dispute in this litigation.

**FACT NO. 37:**

HUD further stated that "the mere fact that a state has the authority to regulate insurance or has adopted ratemaking regulations does not suffice on its own to create the kind of conflict, frustration of purpose, or interference that triggers McCarran-Ferguson. Rather, the inquiry . . . depends on the relevant state law and other case-specific variables." *Id.* at 69015-69016 (citing *Humana v. Forsyth*, 525 U.S. 299, 312 (1999); *Dehoyos v. Allstate,* 345 F.3d at 290 (5th Cir. 2003); *Doe v. Mutual of Omaha*, 179 F.3d 557 (7th Cir. 1999)).

**RESPONSE TO FACT NO. 37:** Undisputed that HUD set forth the quoted statements above in

the Supplemental Explanation. PCI disputes the substance of HUD's statements, which are legal

conclusions that are in dispute in this litigation.

**FACT NO. 38:**

In explaining that the McCarran-Ferguson analysis "depends on the relevant state law and other case- specific variables," HUD expressly discussed *Doe*. AR1816. HUD explained that *Doe* "does not foreclose all discriminatory effects claims against insurers as barred by McCarran-Ferguson" because, as the Fifth Circuit recognized, "'[i]n *Doe*, there was an actual *state insurance law* which purportedly conflicted with the application of the [ADA] to the particular question at issue.'" AR1816 (quoting *Dehoyos.*, 345 F.3d at 298 n.6).

**RESPONSE TO FACT NO. 38:** Undisputed that HUD cited to *Doe* in its Supplemental

Explanation. PCI disputes the characterization of HUD's citation as a "discussion" or

"explanation" and disputes the substance of the underlying conclusions. The adequacy and

soundness of HUD's responses are legal conclusions that are in dispute in this litigation.

**FACT NO. 39:**

In addition, HUD noted that in some cases, "a discriminatory effects claims brought under the Fair Housing Act against insurers survive McCarran-Ferguson defenses even when an insurer points to a specific state law and alleges that it is impaired." *Id.* at 69,016 (citing *Lumpkin v. Farmers Grp.*, *(Lumpkin II),* No. 05-2868 Ma/V, 2007 U.S. Dist. LEXIS 98949, at *19 (W.D. Tenn. July 6, 2007) (rejecting a McCarran-Ferguson defense to a disparate impact challenge to credit scoring in insurance pricing, holding that disparate impact liability in that context did not impair the state's law mandating that "insurance rates cannot be 'unfairly discriminatory.'"); *Saunders v. Farmers Ins. Exch.*, 440 F.3d 940 (8th Cir. 2006) (remanding the case "for further inquiry into several unknowns about the facts and Missouri law.")).

**RESPONSE TO FACT NO. 39:** Undisputed that HUD set forth the quoted statements above in

the Supplemental Explanation. PCI disputes HUD's characterization of the cited cases and the

substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 40:**

HUD further explained that variations in state insurance laws and their application have yielded disparate case law regarding whether a particular law is indeed reverse- preempted by

McCarran Ferguson.  Therefore, HUD concluded that "a one-size-fits-all exemption that would inevitably insulate insurers engaged in otherwise unlawful discriminatory practices from Fair Housing Act liability."  *Id.* at 69,016 (internal citations omitted).

**RESPONSE TO FACT NO. 40:** Undisputed that HUD set forth the quoted statements above in the Supplemental Explanation.  PCI disputes the characterization of HUD's response as an "explanation," and disputes the substance of HUD's statements.  The adequacy and soundness of HUD's responses are legal conclusions that are in dispute in this litigation.

**FACT NO. 41:**

HUD also noted that other state laws, including state fair housing laws, bear on insurance companies' actions, which "indicat[es] that those states do not consider disparate impact liability to conflict with the nature of insurance.  Categorical exemptions or safe harbors of the types requested by the commenters would deprive all states of federal support in addressing discriminatory insurance practices—even those states that welcome or depend on such support. This outcome would be at odds with the purpose of McCarran-Ferguson to support the autonomy and sovereignty of each individual state in the field of insurance."  *Id.* at 69,016-17 (internal citations omitted).  HUD then discussed multiple examples of state anti-discrimination laws that were found not to impair the state's regulation of insurance.

**RESPONSE TO FACT NO. 41:** Undisputed that HUD set forth the quoted statements above in the Supplemental Explanation.  PCI disputes the substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

<u>HUD's Further Explanation Regarding the Filed Rate Doctrine</u>

**FACT NO. 42:**

With regard to the filed rate doctrine, HUD declined to issue a blanket exemption for insurance pricing based on the filed-rate doctrine because the agency "does not anticipate that the filed-rate doctrine will bar discriminatory effects claims involving insurance pricing and preferred to instead institute case-by-case adjudication over the requested exemption" in light of the FHA's "broad remedial goals."  *Id.* at 69,017-18.

**RESPONSE TO FACT NO. 42:** Undisputed that HUD set forth the quoted statements above in the Supplemental Explanation. PCI disputes the substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 43:**

HUD explained that it "is not aware of any case, and no commenter cited one, in which a court has applied the filed rate doctrine to defeat any sort of claim under the Act, although several courts have rejected such attempts." *Id.* at 69,018 and n.81 (internal citations omitted) (citing *Saunders v. Farmers Ins. Exch*, 440 F.3d 940, 944-46 (8th Cir. 2006); *Dehoyos v. Allstate Corp.*, 345 F.3d 290, 297 n.5 (5th Cir. 2003); *Lumpkin v. Farmers Grp., Inc. (Lumpkin I),* No. 05-2868 Ma/V, 2007 U.S. Dist. LEXIS 98994, at *20-22 (W.D. Tenn. Apr. 26, 2007)).

**RESPONSE TO FACT NO. 43:** Undisputed that HUD set forth the quoted statements and cited cases in the Supplemental Explanation. PCI disputes HUD's characterization of the cited cases and the substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 44:**

HUD continued, "[t]he fit between the filed rate doctrine and discriminatory effects claims is attenuated, at best, because discriminatory effects claims do not challenge the reasonableness of the insurance rates but rather their discriminatory effects. To the extent there is any conflict between the directives of the federal Fair Housing Act and those of state ratemaking regulations, the Supremacy Clause tips any legislative competition in favor of the federal antidiscrimination statutes." *Id.* at 69,018 (internal quotations and citations omitted) (emphasis in original).

**RESPONSE TO FACT NO. 44:** Undisputed that HUD set forth the quoted statements above in the Supplemental Explanation. PCI disputes the substance of HUD's statements, which are legal conclusions that are in dispute in this litigation.

**FACT NO. 45:**

HUD also noted that the case law varies in how the filed-rate doctrine applies. Further, "[e]ven where it does apply, a filed rate doctrine defense must be examined specifically in the context of the laws and regulatory structures at issue. This would be a fact-intensive issue that would include consideration of the particular state's ratemaking structures. The case-by-case approach best accommodates these variations." *Id.* at 69,018 (internal quotations and citations omitted).

**RESPONSE TO FACT NO. 45:** Undisputed that HUD set forth the quoted statements above in

the Supplemental Explanation. PCI disputes the substance of HUD's statements, which are legal

conclusions that are in dispute in this litigation.

<u>HUD's Further Explanation Regarding the Fundamental Nature of Insurance</u>

**FACT NO. 46:**

With regard to comments about the fundamental nature of insurance, which partially overlapped with the McCarran-Ferguson comments, HUD rejected commenters' request for a blanket exemption. HUD noted that granting the commenters' request "would immunize a host of potentially discriminatory insurance practices that do not involve actuarial or risk-based calculations. Insurers regularly engage in practices, such as marketing," "claims processing and payment," certain underwriting policies, and even some elements of ratemaking "that do not involve risk-based decision making and to which the Act applies in equal force." *Id.* at 69,017.

**RESPONSE TO FACT NO. 46:** Undisputed that HUD set forth the quoted statements above in

the Supplemental Explanation. PCI disputes the substance of the statements, which are legal

conclusions that are in dispute in this litigation, and disputes the contention that insurers

"regularly engage" in practices that "do not involve risk-based decision making." PCI has set

forth facts repeatedly noting that risk-based pricing is fundamental to the business of insurance.

PCI SOF ¶¶ 24, 66, 70, 94 (Dkt. 222-1).

**FACT NO. 47:**

HUD noted by way of example that "many of the state statutes referenced by commenters mandating that rates be reasonable, not excessive, inadequate, or unfairly discriminatory permit insurers, via the very same section of the insurance code, to rely on judgment factors in ratemaking." *Id.* Further, "price optimization practices, which a minority of states have started regulating, illustrate[] how non-actuarial factors, such as price elasticity of market demand, can impact insurance pricing in a manner similar to how such considerations affect pricing of products in non-actuarial industries." *Id.* (internal quotations citations omitted) (emphasis in original).

**RESPONSE TO FACT NO. 47:** Undisputed that HUD set forth the quoted statements above in

the Supplemental Explanation. PCI disputes the contention that "many" states permit insurers to

rely on judgment factors in ratemaking, as HUD supported its contention to citations to two state

statutes. 81 Fed. Reg. 69,017 n. 68. PCI disputes HUD's characterization of price optimization

practices, but this dispute is immaterial because the permissibility of, and limits on, price

optimization practices are not at issue in this case.

HUD's Further Explanation Regarding "Risk-Based" Pricing

**FACT NO. 48:**

HUD further declined to issue a "safe harbor for any risk-based factor or for the specific long-recognized factors suggested by one commenter." *Id.* HUD decided that "[c]reating a safe harbor for the use of any factor that an insurer could prove is in fact risk-based would be overbroad because it would foreclose claims where the plaintiff could prove the existence of a less discriminatory alternative, such as an alternative risk-based practice. Moreover, if HUD were to provide a safe harbor for the use of any factor that an insurer could prove is purely risk-based, entitlement to the safe harbor would inevitably necessitate a determination of whether the use of the factor is, in fact, risk-based," which would be no less burdensome than the effort needed to establish "a legally sufficient justification." *Id.*

**RESPONSE TO FACT NO. 48:** Undisputed that HUD set forth the quoted statements above in

the Supplemental Explanation. PCI disputes the substance of HUD's statements, which are legal

conclusions that are in dispute in this litigation.

**FACT NO. 49:**

Thus, HUD concluded that "an exemption for all provably risk-based factors would offer little added value for insurers not already provided by the Rule itself while foreclosing potentially meritorious claims in contravention of the Act's broad remedial goals and HUD's obligation to affirmatively further fair housing." *Id.*

**RESPONSE TO FACT NO. 49:** Undisputed that HUD set forth the quoted statements above in

the Supplemental Explanation. PCI disputes the substance of HUD's statements, which are legal

conclusions that are in dispute in this litigation.

**FACT NO. 50:**

HUD also rejected a commenter's suggestion to "[s]elect[] a few factors for exemption" because the commenter based the suggestion "on bare assertions about [the factors'] actuarial relevance, without data and without a full survey of all factors utilized by the homeowners insurance industry." *Id.* HUD further opined that "[e]ven if such data were available and a full survey performed, safe harbors for specific factors would still be overbroad because the actuarial relevance of a given factor can vary by context. Also, while use of a particular risk factor may be generally correlated with probability of loss, the ways in which an insurer uses that factor may not be." *Id.* Finally, "the actuarial relevance of any given factor may change over time as societal behaviors evolve, new technologies develop, and analytical capabilities improve." *Id.* (internal quotations citations omitted).

**RESPONSE TO FACT NO. 50:** Undisputed that HUD set forth the quoted statements above in

the Supplemental Explanation. PCI disputes the characterization of the comment as based only

on "bare assertions," which rests on HUD's subjective assessment, and disputes the substance of

the statements, which are legal conclusions that are in dispute in this litigation.

**Renewed Proceedings in District Court**

**FACT NO. 51:**

Following HUD's Supplemental Explanation in 2016, PCI filed an amended complaint and moved for summary judgment. Dkt. 131; Dkt. 136.

- 20 -

**RESPONSE TO FACT NO. 51:** Undisputed.

**The 2020 Disparate Impact Rule**

**FACT NO. 52:**

After PCI moved for summary judgment, in 2018, HUD issued an advanced notice of proposed rulemaking ("ANPRM") stating that it was reviewing the 2013 Disparate Impact Rule, and the parties agreed to stay the case. Reconsideration of HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, 83 Fed. Reg. 28,560 (June 20, 2018); Dkt. Nos. 159, 188.

**RESPONSE TO FACT NO. 52:** Undisputed.

**FACT NO. 53:**

PCI submitted comments to the 2018 ANPRM. *See* https://www.regulations.gov/comment/HUD-2018-0047-0349; https://www.regulations.gov/comment/HUD-2018-0047-0384.

**RESPONSE TO FACT NO. 53:** Undisputed.

**FACT NO. 54:**

On August 19, 2019, HUD published an NPRM in the Federal Register. *See* HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, 84 Fed. Reg. 42,854 (Aug. 19, 2019).

**RESPONSE TO FACT NO. 54:** Undisputed.

**FACT NO. 55:**

APCIA[1] submitted comments to the 2019 NPRM. *See* https://www.regulations.gov/comment/HUD-2019- 0067-3436.

---

[1] Per Plaintiff's Statement of facts, effective January 1, 2019, AIA merged with and into PCI. Effective February 5, 2019, PCI re-domesticated and changed its name to the American Property Casualty Insurance Association ("APCIA"). This submission will refer to APCIA, rather than PCI, in the context of any events following the January 1, 2019 merger.

**RESPONSE TO FACT NO. 55:** Undisputed.


**FACT NO. 56:**

HUD issued its final rule on September 24, 2020, with an effective date of October 26, 2020. HUD's Implementation of the Fair Housing Act's Disparate Impact Standard, 85 Fed. Reg. 60288 (Sept. 24, 2020).

**RESPONSE TO FACT NO. 56:** Undisputed.


**FACT NO. 57:**

Prior to the effective date of the 2020 rule, the U.S. District Court for the District of Massachusetts issued a preliminary injunction in *Massachusetts Fair Housing Center v. HUD*, staying HUD's implementation and enforcement of the rule. *Mass. Fair Hous. Ctr. v. HUD*, No. 20-11765-MGM, 2020 U.S. Dist. LEXIS 205633 (D. Mass. Oct. 25, 2020). Consequently, the 2020 Rule never took effect.

**RESPONSE TO FACT NO. 57:** Undisputed.


**HUD's 2021 Notice of Proposed Rulemaking**

**FACT NO. 58:**

On January 26, 2021, President Biden issued a memorandum directing the Secretary of HUD to, "as soon as practicable, take all steps necessary to examine the effects of the [2020 Rule]." Joseph R. Biden, Memorandum on Redressing Our Nation's and the Federal Government' s History of Discriminatory Housing Practices and Policies, The White House (Jan. 26, 2021), https://www.whitehouse.gov/briefingroom/presidential-actions/2021/01/26/memorandum-on-redressing-our-nations-and-the-federal-govemmentshistory-of-discriminatory-housing-practices-and-policies/.

**RESPONSE TO FACT NO. 58:** Undisputed.


**FACT NO. 59:**

On June 25, 2021, HUD published a notice of proposed rulemaking in the Federal Register entitled "Reinstatement of HUD's Discriminatory Effects Standard." 86 Fed. Reg. 33,590.

**RESPONSE TO FACT NO. 59:** Undisputed.

**FACT NO. 60:**

     The comment period is 60 days.  86 Fed. Reg. 33,590.  Once the comment period closes, HUD will consider all comments received on the NPRM, including from Plaintiffs, before promulgating a final rule.

**RESPONSE TO FACT NO. 60:** Undisputed that the comment period is 60 days.  The

remainder of this paragraph consists of predictions about future events that PCI is not capable of

evaluating.

Date: August 6, 2021

PROPERTY CASUALTY INSURERS
ASSOCIATION OF AMERICA

/s/ *Seth P. Waxman*

Seth P. Waxman (*pro hac vice*)
Catherine M.A. Carroll (*pro hac vice*)
Anuradha Sivaram (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
E-mail: seth.waxman@wilmerhale.com

Rowe W. Snider (# 03125194)
Alyssa M. Gregory (# 6320588)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Tel.: (312) 443-0700
Fax: (312) 896-0336
Email: rsnider@lockelord.com

*Attorneys for Plaintiff*