UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARCIA FUDGE, in her official capacity as Secretary of Housing and Urban Development, and the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>Defendants. | No. 1:13-cv-08564<br>Judge Rebecca Pallmeyer |

## PCI'S OPPOSITION TO HUD'S MOTION TO CONTINUE STAY

In response to this Court's order directing Defendant's counsel to indicate whether they have a good-faith belief that HUD's final rule will differ meaningfully from the 2013 Rule, HUD represents that it cannot make this disclosure, invoking the deliberative-process privilege. Dkt. 261. Instead, HUD seeks to extend the stay in this case yet again, representing that doing so would avoid premature litigation on an open record. But three years ago, the parties were in a virtually identical position; the case was stayed, HUD had failed to promulgate a final rule approximately two years after proposing to do so, and the presumptive deadline to conclude the interagency review process was drawing near. The Court lifted the stay in the case then—even absent publication of a final rule—to consider PCI's challenge to the 2013 Rule. It should do the same now.

1

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Property Casualty Insurance Association (PCI)[1] initiated this Administrative Procedure Act action in 2013, challenging the application of HUD's Rule, entitled *Implementation of the Fair Housing Act's Discriminatory Effects Standard*, 78 Fed. Reg. 11460 (Feb. 15, 2013) ("the 2013 Rule"), to risk-based pricing and underwriting of homeowners, property, and hazard insurance. In 2014, this Court granted summary judgment in part to PCI, holding that HUD's decision to apply the 2013 Rule to risk-based pricing and underwriting of homeowners insurance was arbitrary and capricious. *Property Cas. Ins. Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1046-51 (N.D. Ill. 2014). The Court ordered HUD to either better explain its decision or institute a new rule. *Id.* at 1050. Nearly two years later, in 2016, HUD issued a supplemental explanation without modifying the 2013 Rule, and PCI moved again for summary judgment. More than five years later, PCI has been unable to obtain relief on its claims, but not for lack of effort on its part to move the litigation forward.

From 2017 to 2020, the parties agreed to stay the case to allow the prior Administration to reconsider HUD's 2013 Rule, then to allow HUD time for notice and comment rulemaking. When HUD failed to publish a new rule after two years and after the presumptive time for regulatory review by the Office of Information and Regulatory Affairs ("OIRA") passed, PCI requested that the Court lift the stay and enter a briefing schedule for PCI to file a renewed motion for summary judgment on the 2013 Rule. Dkts. 198, 200. This Court did so "because after many months HUD ha[d] not yet adopted a new rule[.]" Dkt. 201. Weeks later, HUD promulgated a final rule (the "2020 Rule"), which substantially amended the 2013 Rule but which was

---

[1] Effective January 1, 2019, the American Insurance Association merged with and into PCI. Effective February 5, 2019, PCI re-domesticated and changed its name to the American Property Casualty Insurance Association.

subsequently enjoined by a federal court before it went into effect, *Mass. Fair Housing Ctr. v. U.S. Dep't of Housing and Urban Dev.*, 2020 WL 6390143 (D. Mass. Oct. 24, 2020), *appeal dismissed*, No. 21-1003 (1st Cir. Feb. 9, 2021). The 2013 Rule has thus remained continuously operative.

In 2021, PCI again sought leave to file a renewed motion for summary judgment in light of HUD's public pronouncements indicating that it intended to reinstate the substance of the 2013 Rule after the 2020 Rule was enjoined. *See also* Reinstatement of HUD's Discriminatory Effects Standard, 86 Fed. Reg. 33,590 (June 25, 2021) (proposing to recodify 2013 Rule and opening a new notice and comment period). This Court granted PCI's motion, and the parties fully briefed cross-motions for summary judgment on PCI's claims that the 2013 Rule is arbitrary and capricious for, among other things, failing to adequately consider the Supreme Court's intervening decision in *Texas Department of Housing and Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015), and failing to explain why an exemption for risk-based pricing and underwriting practices of homeowners insurers was not warranted by the McCarran-Ferguson Act.

After the close of briefing on the parties' cross-motions, the Court struck the parties' pleadings and stayed the case until August 24, 2022. Since that time, HUD has sought multiple additional stays while continuing to take no action on a final rule, and offering no basis to doubt that its intention remains simply to reinstate the 2013 Rule as written or to think that the final rule will differ in any material respect from the 2013 Rule. Meanwhile, the ongoing harm to PCI's members from the 2013 Rule has persisted despite this Court's holding more than eight years ago that the Rule is arbitrary and capricious.

This Court acknowledged in its most recent minute order that HUD "does not challenge the assertion that the likely result of further administrative process is reinstatement of the Rule that was the subject of Plaintiff's initial challenge" and ordered HUD to "advise the court whether they have a good-faith belief that the final rule will differ meaningfully from the 2013 Rule and, if so, the basis for that belief." Dkt. 260. It warned that absent such communication, it would "lift the stay, reinstate the parties' motions, and proceed to a hearing or ruling." Dkt. 260. In response, HUD filed the instant motion to further extend the stay in this case.

**ARGUMENT**

Despite having publicly announced that the proposed rule will "reinstate" the 2013 Rule, HUD now invokes the deliberative-process privilege to avoid disclosing whether its anticipated final rule will differ meaningfully from the 2013 Rule, representing that "the Government is still deliberating about the contents of the Final Rule." Dkt. 261. Be that as it may, as HUD acknowledges, the time for deliberations is limited and the deadline fast approaching. Executive Order 12866 specifies that the presumptive period of OIRA review is limited to 90 days. Executive Order 12866 (Regulatory Planning and Review) § 6(b)(2)(B), 58 Fed. Reg. 51735, 51742 (Sept. 30, 1993); https://www.reginfo.gov/public/jsp/Utilities/faq.myjsp; *see also* Dkt 261 (acknowledging that Executive Order 12866 generally requires OIRA to complete its review within 90 days). HUD represented to this Court that it sent the final discriminatory effects rule to OIRA on December 7, 2022, and sought "expedited review." Dkt. 259 at 3. Accordingly, the deadline for OIRA to complete its review is March 7, 2023.

However, Executive Order 12866 also makes clear that it "is intended only to improve the internal management of the Federal Government" and that nothing in it "shall affect any otherwise available judicial review of agency action." 58 Fed. Reg. at 51745. And it specifies

4

that for "those regulatory actions that are governed by a statutory or court-imposed deadline, the agency shall, to the extent practicable, schedule rulemaking proceedings so as to permit sufficient time for OIRA to conduct its review." *Id.* at 51742. All this indicates that OIRA review is not meant to be an obstacle to judicial review and, in a case such as this one where litigation is ongoing, HUD has a responsibility to push the rulemaking process (including OIRA review) forward.

This Court previously lifted a stay in this case where HUD failed to promulgate a new rule within two years of proposing to do so, and where OIRA's review concluded without publication of a final rule. Dkt. 201. It should do the same here. HUD first announced its intent to reexamine its discriminatory effects rules in a status report filed with this Court in February 2021. Dkt. 212. HUD represented that it was "actively examining" its position in response to a January 26, 2021 directive from President Biden titled "Memorandum on Redressing Our Nation's and the Federal Government's History of Discriminatory Housing Practices and Policies," which ordered the Secretary of HUD to, "as soon as practicable, take all steps necessary to examine the effects of the [2020 Rule], including the effect that amending the [2013 Rule] has had on HUD's statutory duty to ensure compliance with the Fair Housing Act." *See* https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/26/memorandum-on-redressing-our-nations-and-the-federal-governments-history-of-discriminatory-housing-practices-and-policies/. Dkt. 212. In April 2021, HUD sent a draft proposed rule to the Office of Management and Budget ("OMB") for inter-agency review. The title of the proposed rule indicated HUD's intent to "reinstate[]" the 2013 Rule. *See* https://www.reginfo.gov/public/do/eoDe-tails?rrid=162113.

Nearly two years have passed since HUD expressed its intent to reinstate the 2013 Rule, and the time for OIRA to conclude its regulatory review is drawing close. Three years ago, the

parties were in a virtually identical position—approximately two years had passed since HUD proposed enacting a discriminatory effects rule, the time for OIRA's review had nearly concluded, and the case was stayed. *See* Dkts. 198, 200. At that time, PCI requested that the Court immediately lift the stay to "put the parties in a position promptly to resume this litigation, if necessary, following the end of the period of OIRA review or sooner as appropriate, including if HUD issues the final rule prior to the end of the OIRA review period." Dkt. 198. In response, the Court first stayed the case until the end of OIRA's review period, Dkt. 199, and absent promulgation of a final rule at that time, lifted the stay in the case, Dkt. 201. The same arguments warrant lifting the stay here. PCI asks that the stay be lifted now so that, upon the expiration of OIRA's presumptive review period—or sooner, given that HUD requested expedited review of its rule—the Court can immediately renew the parties cross-motions for summary judgment on the 2013 Rule, which remains in effect.

       HUD maintains, however, that the Court should not "take up this matter" until PCI has had an opportunity to evaluate any final rule and HUD's responses to comments submitted during this notice-and-comment period and those in the recent past. Dkt. 261 at 5-6. But HUD's responses to comments from previous rulemaking cycles have been published in its final rules and any supplemental explanations, all of which have been published in the Federal Register. And to the extent that HUD has relevant responses to new comments in the latest rulemaking cycle, it will be published in any Final Rule that it issues. And in any event, HUD represents that it can assemble the final administrative record within 30 days of publication of any final rule, which should resolve any concerns that the Court will have make any decision on an open or otherwise incomplete record. Dkt. 261 at 4-5.

6

And all the while PCI's challenge goes unresolved, its members remain in the untenable position of having to decide whether to offer their products in particular states, and, if so, how to price their products and maintain sufficient reserves to cover the risk of future losses and liabilities without knowing what legal standard will ultimately govern. Specifically, PCI's members do not know whether they can continue their risk-based pricing, underwriting, and reserving practices as required by many states' insurance laws and as consistent with the McCarran-Ferguson Act, or whether they may be exposed to suit for those same practices under HUD's Rule. Operating under these conflicting legal standards threatens the integrity of this $119 billion industry, which is required by law in most states to tie product pricing and reserves to risk.

Accordingly, there is no reason to continue the stay of this case; if the Court lifts the stay now, it can immediately resume evaluating the parties' cross-motions for summary judgment on the 2013 Rule once OIRA's presumptive review period closes (or sooner). In the event that, contrary to every public indication, the final rule contains significant changes from the 2013 Rule, the parties can propose a supplemental briefing schedule or other relief as appropriate, just as they did approximately three years ago when HUD's 2020 Rule made significant changes to the 2013 Rule. *See* Dkt. 202 (stipulating explaining that "[i]n light of HUD's issuance of a final rule replacing the 2013 Rule, the parties do not believe it would be appropriate to proceed with summary judgment at this time and respectfully request that the Court vacate the summary judgment schedule").

## CONCLUSION

Accordingly, PCI asks the Court to immediately lift the stay in this case to renew the parties' cross-motions for summary judgment as soon as HUD publishes its final rule but in no circumstances later than March 7, 2023, the presumptive deadline for OIRA's regulatory review.

Dated: January 24, 2023

/s/ *Seth P. Waxman*
Seth P. Waxman (*pro hac vice*)
Catherine M.A. Carroll (*pro hac vice*)
Anuradha Sivaram (*pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Tel.: (202) 663-6000
Fax: (202) 663-6363
E-mail: seth.waxman@wilmerhale.com

Rowe W. Snider (# 03125194)
Alyssa M. Gregory (# 6320588)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Tel.: (312) 443-0700
Fax: (312) 896-0336
Email: rsnider@lockelord.com

*Counsel for Plaintiff*