**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-08564 |
| v. | ) ) | Chief Judge Rebecca R. Pallmeyer |
| MARCIA L. FUDGE, in her official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**<u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR
SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Page

INTRODUCTION ...........................................................................................................1

BACKGROUND ............................................................................................................2

    A.    State Regulation Of Risk-Based Pricing And Underwriting Of Homeowners Insurance.................................................................................2

    B.    The 2013 Rule......................................................................................3

    C.    This Court's Decision Holding The 2013 Rule Arbitrary And Capricious ............4

    D.    Post-Remand Developments.................................................................5

    E.    HUD's Arbitrary Reinstatement Of The 2013 Rule .............................6

ARGUMENT ................................................................................................................7

I.    HUD Failed To Justify The Rule's Fundamental Conflict With The McCarran-Ferguson Act ......................................................................................8

    A.    The McCarran-Ferguson Act Precludes Disparate-Impact Claims Against Insurers, And HUD Failed To Meaningfully Address This Conflict......................8

    B.    HUD's Decision To Address McCarran-Ferguson Preclusion On A Case-By-Case Basis Instead Of Categorically Exempting Risk-Based Pricing And Underwriting Regulated By State Law Was Arbitrary And Capricious........11

        1.    HUD Erroneously Concluded That An Exemption Is "Overbroad" Because Of A Need To Consider "Case-Specific Variables"...................12

        2.    HUD Arbitrarily Ignored The Cost of Case-By-Case Adjudication..........14

        3.    HUD Unreasonably Concluded That Mutual of Omaha Did Not Support An Exemption For Risk-Based Pricing And Underwriting ......................16

        4.    HUD's Reliance On Federal Support For State Antidiscrimination Laws Was Arbitrary And Capricious ........................................................17

II.    HUD Did Not Adequately Explain Why The Rule Would Not Violate The Filed-Rate Doctrine .......................................................................................18

III.    HUD Did Not Adequately Consider The Rule's Effects On The Business Of Insurance .......................................................................................19

    A.    HUD Misunderstood The Rule's Threat To Insurance...........................19

    B.    HUD Arbitrarily Waved Away The Significant Costs The Rule Would Impose.....................................................................................22

IV.    HUD Did Not Adequately Address *Inclusive Communities*.............................23

V.    The Rule Must Be Vacated As Applied To Risk-Based Pricing And Underwriting Of Homeowners Insurance ...........................................................25

CONCLUSION.............................................................................................................27

# TABLE OF AUTHORITIES

Page(s)

## CASES

**Cases**

*Allentown Mack Sales & Service, Inc. v. NLRB,*
    522 U.S. 359 (1998)..........................................................................................................25

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission,*
    988 F.2d 146 (D.C. Cir. 1993)..........................................................................................25

*Blue Cross & Blue Shield of Delaware, Inc. v. Elliott,*
    479 A.2d 843 (Del. Super. Ct. 1984)...................................................................................3

*Cook County v. Wolf,*
    498 F. Supp. 3d 999 (N.D. Ill. 2020)................................................................................25

*Dehoyos v. Allstate Corp.,*
    345 F.3d 290 (5th Cir. 2003)...........................................................................................13

*Department of Treasury v. Fabe,*
    508 U.S. 491 (1993)..........................................................................................................11

*Doe v. Mutual of Omaha Insurance Co.,*
    179 F.3d 557 (7th Cir. 1999)................................................................... *passim*

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016)............................................................................................................7

*Graoch Assocs. #33, L.P. v. Louisville/Jefferson County Metro Human Relations Commission,*
    508 F.3d 366 (6th Cir. 2007)...........................................................................................15

*Harrington v. Chao,*
    280 F.3d 50 (1st Cir. 2002).............................................................................................25

*Hoosier Environmental Council v. Natural Prairie Indiana Farmland Holdings, LLC,*
    2023 WL 2571678 (N.D. Ind. Mar. 20, 2023).................................................................25

*Humana Inc. v. Forsyth,*
    525 U.S. 299 (1999)................................................................................8, 9, 11, 17

*Humane Society of U.S. v. Zinke,*
    865 F.3d 585 (D.C. Cir. 2017).........................................................................................26

*In re Universal Underwriters Life Insurance Co.,*
    685 N.W.2d 44 (Minn. Ct. App. 2004)...............................................................................3

*Inclusive Communities Project, Inc. v. Lincoln Property Co.,*
    920 F.3d 890 (5th Cir. 2019) ........................................................23

*Johnson v. U.S. Office of Personnel Management,*
    783 F.3d 655 (7th Cir. 2015) ........................................................25

*Jones v. Travelers Casualty Insurance Co. of America,*
    2015 WL 5091908 (N.D. Cal. May 7, 2015) ...............................17, 21

*Lumpkin v. Farmers Group,*
    2007 WL 6996777 (W.D. Tenn. July 6, 2007) ................................13

*Massachusetts Fair Housing Center v. U.S. Dep't of Housing & Urban Development,*
    496 F. Supp. 3d 600 (D. Mass. 2020) ..............................................6

*McCray v. Fidelity National Title Insurance Co.,*
    682 F.3d 229 (3d Cir. 2012) .........................................................18

*Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.,*
    463 U.S. 29 (1983) ................................................................7, 20

*Property Casualty Insurers Ass'n of America v. Donovan,*
    66 F. Supp. 3d 1018 (N.D. Ill. 2014) ...................................... *passim*

*Saunders v. Farmers Insurance Exchange,*
    440 F.3d 940 (8th Cir. 2006) .......................................................14

*Saunders v. Farmers Insurance Exchange,*
    537 F.3d 961 (8th Cir. 2008) ................................................4, 14, 22

*Schermer v. State Farm Fire & Casualty Co.,*
    721 N.W.2d 307 (Minn. 2006) ......................................................18

*Schilke v. Wachovia Mortgage, FSB,*
    820 F. Supp. 2d 825 (N.D. Ill. 2011) ..............................................18

*South Branch LLC v. Commonwealth Edison Co.,*
    46 F.4th 646 (7th Cir. 2022) ........................................................19

*Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.,*
    476 U.S. 409 (1986) ...................................................................18

*Sugar Cane Growers Cooperative of Florida v. Veneman,*
    289 F.3d 89 (D.C. Cir. 2002) .......................................................26

*Taffet v. Southern Co.,*
    967 F.2d 1483 (11th Cir. 1992) (en banc) .......................................19

*Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*,
  576 U.S. 519 (2015) ...................................................................................................... *passim*

*Toledo Fair Housing Center v. Nationwide Mutual Insurance Co.*,
  704 N.E.2d 667 (Ohio C.P. 1997) .................................................................................18, 21

*Viens v. America Empire Surplus Lines Insurance Co.*,
  113 F. Supp. 3d 555 (D. Conn. 2015) ............................................................................17, 21

*Wegoland Ltd. v. NYNEX Corp.*,
  27 F.3d 17 (2d Cir. 1994) .................................................................................................3, 19

*West Virginia v. EPA*,
  142 S. Ct. 2587 (2022) ........................................................................................10, 11, 13

**Statutes, Rules, & Regulations**

5 U.S.C. § 706(2) ....................................................................................................................25

15 U.S.C.
  § 1011 ......................................................................................................................................8
  §§ 1011-1015 ............................................................................................................... *passim*
  § 1012(b) ..................................................................................................................................8

42 U.S.C. § 3605 ......................................................................................................................21

24 C.F.R.
  § 100.500(a) (2013) ..................................................................................................................3
  § 100.500(c)(2) ........................................................................................................................9

*Implementation of the Fair Housing Act's Discriminatory Effects Standard*, 78 Fed. Reg.
  11,460 (Feb. 15, 2013) .............................................................................................................1

*Application of the Fair Housing Act's Discriminatory Effects Standard to
  Insurance*, 81 Fed. Reg. 69,012 (Oct. 5, 2016) ..................................................................5, 6

*Reconsideration of HUD's Implementation of the Fair Housing Act's Disparate
  Impact Standard*, 83 Fed. Reg. 28,560 (June 20, 2018) .........................................................6

*Reconsideration of HUD's Implementation of the Fair Housing Act's Disparate
  Impact Standard*, 85 Fed. Reg. 60,288 (Sept. 24, 2020) ........................................................6

*Reinstatement of HUD's Discriminatory Effects Standard*, 86 Fed. Reg. 33,590
  (June 25, 2021) .........................................................................................................................6

*Reinstatement of HUD's Discriminatory Effects Standard*, 88 Fed. Reg. 19,450 (Mar. 31,
  2023) .............................................................................................................................. *passim*

**State Authorities**

Ind. Code Ann. § 27-1-22-5 ..............................................................................3

Md. Code Ann. Ins. § 27-501 ..........................................................................15

N.J. Stat. Ann § 17-29A-7 ................................................................................3

Ohio Rev. Code Ann. § 3935.03 ........................................................................3

Ohio Rev. Code Ann. § 3935.04 ........................................................................3

Tenn. Code Ann. § 56-5-104(1)........................................................................14

Wis. Stat. Ann. § 625.13 ..................................................................................3

**Other Authorities**

Jay B. Sykes, CONG. RSRCH. SERV., R45081, *Banking Law: An Overview of Federal Preemption in the Dual Banking System* (Jan. 23, 2018) ......................................21

Kenneth Abraham, *Efficiency and Fairness in Insurance Risk Classification*, 71 VA. L. REV. 403 (1985)........................................................................................2

*Letter from The Travelers Cos., Inc. to U.S. Sec. & Exch. Comm'n*, 2022 WL 192914 (Jan. 18, 2022)......................................................................................26

Michael Miller, *Disparate Impact and Unfairly Discriminatory Insurance Rates*, CAS. ACTUARIAL SOC'Y E-FORUM 276 (Winter 2009) ............................................2

**INTRODUCTION**

In 2014, this Court held that the Department of Housing and Urban Development's ("HUD") decision to apply its 2013 Disparate Impact Rule[1] ("Rule") to risk-based pricing and underwriting of homeowners insurance was arbitrary and capricious. *Property Cas. Insurers Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1046-1051 (N.D. Ill. 2014) ("*PCI*"). The Court held that HUD had inadequately considered concerns raised by the insurance industry that applying the Rule to homeowners insurance would violate the McCarran-Ferguson Act and the filed-rate doctrine and undermine the fundamental risk-based nature of homeowners insurance. *Id*. at 1048-1051. Remanding the case to HUD, the Court ordered the agency either to rationally explain its decision or to institute a new rule. *Id*. at 1050.

Nearly a decade and multiple attempts later, HUD reinstated the same Rule[2] with the same defects. HUD has now had four opportunities to justify its choice, but each time has failed to meaningfully address the concerns raised by this Court and industry comments. These repeated failures make clear that HUD cannot justify application of its rule to risk-based pricing and underwriting of homeowners insurance. Through the McCarran-Ferguson Act and the filed-rate doctrine, federal law directs that the business of insurance remain primarily in the hands of state regulators. HUD's Rule also undermines the fundamental nature of the business of insurance and fails to address its tension with recent Supreme Court precedent. This Court should vacate the Rule as applied to risk-based pricing and underwriting of homeowners insurance.

---

[1] *See Implementation of the Fair Housing Act's Discriminatory Effects Standard*, 78 Fed. Reg. 11,460 (Feb. 15, 2013).

[2] *See Reinstatement of HUD's Discriminatory Effects Standard*, 88 Fed. Reg. 19,450 (Mar. 31, 2023).

## BACKGROUND

### A.     State Regulation Of Risk-Based Pricing And Underwriting Of Homeowners Insurance

Risk-based pricing and underwriting is the process of setting insurance rates based on an insured's loss history and risk of future losses.  To calculate the probability that a future loss will occur and the likely cost of the loss, actuaries rely on a host of objective, verifiable factors that correlate with historical losses.  *See* Michael Miller, *Disparate Impact and Unfairly Discriminatory Insurance Rates*, CAS. ACTUARIAL SOC'Y E-FORUM 276, 284 (Winter 2009); Kenneth Abraham, *Efficiency and Fairness in Insurance Risk Classification*, 71 VA. L. REV. 403, 414 (1985).  For homeowners insurance, these factors commonly include, among others, the construction materials used to build a house, any history of previous losses, proximity to fire hydrants, and the presence of a security system.  SOF ¶ 9.

Using neutral, actuarially justified factors to calculate the probability and amount of potential losses is critical to insurers' ability to set rates that accurately reflect the cost of providing insurance—accuracy that is vital to the fair and efficient operation of insurance markets.  Abraham, 71 VA. L. REV. at 421.  If insurers' rates are too low relative to the risks covered by their policies, they will collect insufficient premiums to pay claims as projected losses materialize.  Over time, collecting insufficient premiums increases the risk of insurer insolvency, which compromises competitive markets.  Inaccurate pricing also reduces incentives for customers to mitigate risks, construct safer homes, and maintain existing homes (increasing what is often referred to as "moral hazard").  *Id.*

Rate setting and other aspects of insurance are comprehensively regulated by state laws that prohibit insurers from charging "excessive, inadequate, or unfairly discriminatory" rates. Abraham, 71 VA. L. REV. at 406.  To guard against "inadequate" rates and the risk of insurer

insolvency they pose, these state laws affirmatively permit or require risk-based pricing and underwriting.  SOF ¶¶ 45, 78.  State regulators carefully review insurance rates—often with their own actuaries—to ensure that rates reflect all the factors required by state law and are not excessive, inadequate, or unfairly discriminatory by treating similar risk profiles differently.[3] Federal law in turn ensures that States remain the primary regulators of insurance.  The McCarran-Ferguson Act, 15 U.S.C. §§ 1011-1015, precludes federal regulation from interfering with state regulation of insurance, and the filed-rate doctrine precludes challenges to rates approved by a state regulator, *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994).

### B.    The 2013 Rule

HUD's 2013 Rule provides that housing practices with a discriminatory effect violate the FHA even where there has been no intent to discriminate.  24 C.F.R. § 100.500(a) (2013). During the notice-and-comment period, representatives of the homeowners-insurance industry submitted comments seeking an exemption from the proposed rule for risk-based pricing and underwriting and explaining why applying the Rule to homeowners insurance would be unlawful and ill-advised.  SOF ¶ 9.  Among other things, the comments explained that applying disparate-impact liability to homeowners insurance would undermine actuarially sound risk-based pricing and underwriting by constraining insurers' ability to rely on risk factors that have some unintended, inadvertent disproportionate effect on a class protected by the FHA, even where all policyholders with similar risk profiles are treated similarly.  *Id.* ¶ 20; *see also id.* ¶¶ 45, 94.  As

---

[3]    *See, e.g.*, N.J. Stat. Ann § 17-29A-7 (review to prevent "rates that are unreasonably high or excessive, or are not adequate for the safeness and soundness of the insurer, or are unfairly discriminatory between risks in this State involving essentially the same hazards and expense elements"); Ohio Rev. Code Ann. §§ 3935.03, 3935.04 (review to ensure that "[r]ates shall not be excessive, inadequate, or unfairly discriminatory); *see also, e.g.*, Ind. Code Ann. § 27-1-22-5; Wis. Stat. Ann. § 625.13; *In re Universal Underwriters Life Ins. Co.*, 685 N.W.2d 44, 47 (Minn. Ct. App. 2004); *Blue Cross & Blue Shield of Del., Inc. v. Elliott*, 479 A.2d 843, 847 (Del. Super. Ct. 1984).

a result, the comments explained, the Rule would increase adverse selection, reducing the availability of coverage, because delinking prices from risk would lead insurers to abandon the market. That in turn would make insurance less affordable because remaining insurers would have to increase rates to address the resulting increase in claim frequency. *Id.* ¶¶ 20, 22. The comments further explained that disparate-impact liability would interfere with state regulatory regimes in violation of the McCarran-Ferguson Act and the filed-rate doctrine by subjecting insurers to liability for considering factors they are permitted or even required to consider under state law. *Id.* ¶¶ 10, 25.

### C. This Court's Decision Holding The 2013 Rule Arbitrary And Capricious

When HUD rejected the requested exemption in the 2013 Rule, PCI filed this lawsuit. *Id.* ¶ 43.[4] This Court granted summary judgment to PCI in part, holding that HUD's decision to apply the Rule to homeowners insurance was arbitrary and capricious. *PCI*, 66 F. Supp. 3d at 1046-1052. The Court held that HUD had failed to provide a reasoned explanation for its decision to reject a categorical exemption in favor of case-by-case application of McCarran-Ferguson preclusion. *Id.* at 1048. That "lack of analysis" was "particularly glaring" in light of *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557, 563-564 (7th Cir. 1999), and *Saunders v. Farmers Insurance Exchange*, 537 F.3d 961, 967 (8th Cir. 2008), both of which recognized the inherent conflict between federal disparate-impact liability and state rate regulation. *PCI*, 66 F. Supp. 3d at 1048-1049. Relatedly, this Court held, HUD had failed adequately to consider the filed-rate doctrine. *Id.* at 1050.

---

[4] Effective January 1, 2019, the American Insurance Association merged with and into PCI. Effective February 5, 2019, PCI re-domesticated and changed its name to the American Property Casualty Insurance Association. For clarity, this brief refers to both entities as "PCI."

The Court further held that HUD had made "no effort to evaluate" concerns that the Rule would undermine the fundamental nature of insurance by precluding reliance on actuarially sound risk factors. *PCI*, 66 F. Supp. 3d at 1051. HUD had disregarded those concerns on the ground that insurers could raise them on a case-by-case basis under the Rule's burden-shifting framework, but the Court made clear that HUD was obligated either to respond directly to the substance of those concerns or else provide a reasoned explanation for preferring case-by-case consideration, and HUD had done neither. *Id.* The Court remanded to HUD with instructions either to provide a reasoned explanation or to institute a new rule. *Id.* at 1050, 1054.

### D.    Post-Remand Developments

Following this Court's remand, the Supreme Court held in *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 542 (2015), that disparate-impact claims are cognizable under the FHA, but subject to significant limits. As the Court explained, the FHA is not intended to interfere with legitimate business practices or hold defendants "liable for racial disparities they did not create." *Id.* During HUD's remand proceedings, PCI submitted comments arguing that this Court's mandate required HUD to consider *Inclusive Communities* and that *Inclusive Communities* prohibits application of the Rule to risk-based homeowners insurance practices that comply with state law. SOF ¶ 60.

In October 2016, HUD published a Supplemental Explanation for the 2013 Rule that again rejected insurers' request for an exemption for homeowners insurance—concluding that an exemption would be "unworkable and inconsistent with" the objectives of the FHA and reiterating that insurers' concerns "can and should be addressed on a case-by-case basis." 81 Fed. Reg. 69,012, 69,012-69,013 (Oct. 5, 2016). HUD disagreed that an exemption was necessary in light of the McCarran-Ferguson Act or filed-rate doctrine, *id.* at 69,015-16, 69,018-69,019, but did not address comments demonstrating that accurate risk assessment is critical to

the business of insurance or that constraining insurers' consideration of risk would cause adverse selection, motivating lower-risk customers to forego insurance altogether while threatening insurer solvency, *id.* at 69,017-69,018; SOF ¶ 68.

PCI again moved for summary judgment. Before that motion was decided, HUD undertook another rulemaking. 83 Fed. Reg. 28,560 (June 20, 2018). In 2020, HUD issued a new final rule. 85 Fed. Reg. 60,288 (Sept. 24, 2020). Although the 2020 rule still contained no exemption for homeowners insurance, it adopted a revised standard for establishing disparate-impact liability that incorporated several of the limitations imposed by *Inclusive Communities*. But that 2020 rule was enjoined by another court before its effective date, *see Massachusetts Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 496 F. Supp. 3d 600, 612 (D. Mass. 2020), so the 2013 Rule remained continuously in effect. SOF ¶ 87.

### E.    HUD's Arbitrary Reinstatement Of The 2013 Rule

In 2021, HUD proposed rescinding the 2020 Rule and reinstating the 2013 Rule. 86 Fed. Reg. 33,590 (June 25, 2021). Again, PCI and other industry participants warned that, without an exemption for homeowners insurance, the new rule would threaten the insurance market by undermining risk-based pricing and underwriting and interfere with state regulatory regimes in violation of the McCarran-Ferguson Act and the filed-rate doctrine. SOF ¶ 92. Nonetheless, on March 31, 2023, HUD published a "new" final rule that reinstated the 2013 Rule (and thus omitted any homeowners-insurance exemption). 88 Fed. Reg. 19,450. HUD stated that the McCarran-Ferguson Act did not warrant an exemption because, it posited, "[s]ome discriminatory effects claims against insurers will be preempted under [the Act], but others will not, depending on a host of case-specific variables." *Id.* at 19,474. (No such "host" of "case-specific variables" was identified, apart from HUD's general reference to state laws and "fair housing allegations in question." *Id.*) HUD also dismissed the Rule's potential effects on the

6

business of insurance, on the ground that "discriminatory effects liability has proven workable in other contexts involving complex risk-based decisions, such as mortgage lending." *Id.* at 19,468. And HUD found the filed-rate doctrine inapplicable on the basis that disparate-impact claims would not challenge the reasonableness of insurance rates—without acknowledging that such claims would necessarily require courts to invalidate filed rates. *Id.* at 19,467.

## ARGUMENT

Despite clear direction from this Court, HUD has again failed to justify its refusal to exempt risk-based pricing and underwriting of homeowners insurance from disparate-impact liability. Both this Court and industry members have explained the multiple serious issues inherent in applying the Rule to risk-based pricing and underwriting. Rather than address those concerns, HUD dismissed them. HUD did not meaningfully evaluate the inherent conflict between the Rule and the McCarran-Ferguson Act and the filed-rate doctrine; it disregarded the Rule's distortion of the fundamental risk-based nature of homeowners insurance; and it failed to give adequate consideration to the Supreme Court's decision in *Inclusive Communities*.

Those flaws render HUD's decision arbitrary and capricious, multiple times over. "[A]n agency must give adequate reasons for its decisions" and "must examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) (quotation marks omitted). An agency decision is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As explained below, HUD fell short of

these obligations. Thus, the Rule remains unlawful, and it must be set aside to the extent that it applies to risk-based pricing and underwriting of homeowners insurance.[5]

## I. HUD Failed To Justify The Rule's Fundamental Conflict With The McCarran-Ferguson Act

### A. The McCarran-Ferguson Act Precludes Disparate-Impact Claims Against Insurers, And HUD Failed To Meaningfully Address This Conflict

The McCarran-Ferguson Act safeguards the traditional role of the States in regulating insurance. *See Humana Inc. v. Forsyth*, 525 U.S. 299, 306 (1999). Under McCarran-Ferguson, a federal law cannot be applied if it "directly conflict[s] with state regulation" of insurance or if "application of the federal law would … frustrate any declared state policy or interfere with a State's administrative regime," *id.* at 310 (discussing 15 U.S.C. § 1011), unless the federal law in question "specifically relates to the business of insurance," 15 U.S.C. § 1012(b).

Here, the Rule would "impair, invalidate, or supersede" the law of every State governing risk-based pricing and underwriting of homeowners insurance. 15 U.S.C. § 1011; SOF ¶¶ 10, 31, 45, 53-54, 60, 78, 93-94. Numerous state laws require risk-based pricing practices; the Rule "directly conflict[s]" with them. *Humana Inc.*, 525 U.S. at 311. In all other States, the law permits insurers to engage in risk-based pricing or underwriting and provides for state administrative review of insurance rates. SOF ¶¶ 45, 54, 94. By imposing *prima facie* liability on practices expressly permitted or required by all state laws, requiring insurers to defend in court their compliance with state law, and permitting federal courts to review and reject state-approved rates, the Rule "frustrate[s] [a] declared state policy," "interfere[s] with a State's

---

[5] This memorandum does not address Counts V through VIII in the Second Amended Complaint because the parties agree those claims are subject to dismissal under previous orders of the Court. *See* Dkt. 98 (Sept. 3, 2014); Dkt. 129 (June 20, 2017). PCI does, however, preserve those claims for appeal.

administrative regime," and "hinder[s] the operation" of state law. *Humana Inc.*, 525 U.S. at 310. It therefore cannot be squared with the McCarran-Ferguson Act.

Binding precedent confirms that the Rule's application to risk-based pricing and underwriting cannot stand. The Seventh Circuit has held that "requir[ing] federal courts to determine whether [challenged insurance practices] are actuarially sound and consistent with state law" violates McCarran-Ferguson. *Mutual of Omaha*, 179 F.3d at 564. Thrusting federal courts into this role would "step[] on the toes of state insurance commissioners," and "obviously interfere with the administration of state law." *PCI*, 66 F. Supp. 3d at 1028-1030. But HUD's Rule requires just that: Under the Rule, an insurer defendant must persuade a federal court that the use of any risk factor required or permitted by state regulators that correlates with a discriminatory effect is "necessary to achieve one or more substantial, legitimate, nondiscriminatory interests," 24 C.F.R. § 100.500(c)(2)—in other words, must prove to a federal court that the practice is actuarially sound.

And the Rule's burden-shifting framework exacerbates the problem. Even after proving in federal court that an actuarially sound risk factor "serve[s] the defendant's substantial, legitimate [business] interests," 88 Fed. Reg. at 19,461—already implicating a clear violation of *Mutual of Omaha*—insurers will still be held liable whenever a plaintiff can identify a "less discriminatory" alternative, *id.*, even if the alternative is less effective in predicting loss than the challenged practice. That framework makes homeowners insurers liable for risk-based pricing and underwriting practices they are permitted or required to use as a matter of state law. That practice impairs state insurance laws permitting or requiring those practices.

In holding the 2013 Rule arbitrary and capricious, this Court determined that HUD had not adequately grappled with those McCarran-Ferguson issues. *PCI*, 66 F. Supp. 3d at 1049.

9

HUD "simply disregard[ed] the likelihood that McCarran-Ferguson preclusion will apply," "made no attempt to evaluate how often McCarran-Ferguson preclusion would apply and whether it would bar entire categories of disparate impact claims against insurers," and made "no attempt to determine whether the benefits of proceeding by case-by-case adjudications outweighed the benefits of including an exemption or safe harbors for insurers." *Id.* at 1048-1049. The Court found HUD's "lack of analysis" "particularly glaring in light of" *Mutual of Omaha*, which "called into question the viability of many (if not most) disparate impact claims against insurers." *Id.* And the Court faulted HUD's failure to "explain why case-by-case adjudication is more appropriate than rule-making." *Id.* at 1049.

Nonetheless, HUD reinstated the same Rule, repeating the same errors. Instead of "evaluat[ing] how often McCarran-Ferguson preclusion would apply," *PCI*, 66 F. Supp. 3d at 1048-1049, HUD simply speculated that at least "some" claims could survive McCarran-Ferguson, 88 Fed. Reg. at 19,474, and would "not necessarily" be preempted, *id.* at 19,476. Instead of "determin[ing] whether the benefits of proceeding by case-by-case adjudications outweighed the benefits of including an exemption," *PCI*, 66 F. Supp. 3d at 1048-1049, HUD downplayed the significant costs the Rule would impose by requiring insurers to litigate disparate-impact suits that plaintiffs cannot win, 88 Fed. Reg. at 19,479. And instead of meaningfully addressing *Mutual of Omaha*'s holding, *PCI*, 66 F. Supp. 3d at 1049, HUD stated that it simply disagreed with the Seventh Circuit, 88 Fed. Reg. at 19,476. Those continued failings render the Rule's continued application to risk-based pricing and underwriting arbitrary and capricious.

The Supreme Court's recent decision in *West Virginia v. EPA*, 142 S. Ct. 2587 (2022), underscores HUD's continued error in requiring "case-by-case" adjudication notwithstanding the

dictates of the McCarran-Ferguson Act.  Without clear congressional authorization, agencies

cannot intrude into "an area that is the particular domain of state law," *id.* at 2621 (Gorsuch, J.,

concurring), or "substantially restructure" an industry, *id.* at 2610 (opinion for the Court).  "A

decision of such magnitude and consequence rests with Congress itself, or an agency acting

pursuant to a clear delegation."  *Id.* at 2616 (opinion for the Court).  Here, the States have

historically "'enjoyed a virtually exclusive domain over the insurance industry.'"  *Humana Inc.*,

525 U.S. at 306.  And far from giving HUD a clear congressional "mandate" to intrude into that

traditional state realm, *West Virginia*, 142 S. Ct. at 2616, Congress has done precisely the

opposite.  Recognizing the expertise of States in regulating the business of insurance, Congress

has explicitly and unmistakably preserved "the supremacy of the States in the realm of insurance

regulation."  *Department of Treasury v. Fabe*, 508 U.S. 491, 500 (1993).  Applying the Rule to

risk-based pricing and underwriting of homeowners insurance in the face of that congressional

judgment required a far sounder justification than the speculation HUD offered.  Indeed, as

HUD's repeated failures to explain itself make clear, there could be no such justification.

### B. HUD's Decision To Address McCarran-Ferguson Preclusion On A Case-By-Case Basis Instead Of Categorically Exempting Risk-Based Pricing And Underwriting Regulated By State Law Was Arbitrary And Capricious

Rather than meaningfully confront the Rule's clash with McCarran-Ferguson or the limits

on its own authority, HUD repeated its view that the possibility a disparate-impact claim could

survive McCarran-Ferguson preemption based on "case-specific variables" justified reliance on

case-by-case adjudication.  HUD again overlooked the significant and unnecessary costs

imposed under its burden-shifting framework.  And it again failed to meaningfully engage with

*Mutual of Omaha*'s holding.  Thus, its Rule remains arbitrary and capricious.

### 1. HUD Erroneously Concluded That An Exemption Is "Overbroad" Because Of A Need To Consider "Case-Specific Variables"

HUD's conclusion that an exemption would be "overbroad" because the McCarran-Ferguson analysis depends on "case-specific variables" lacked support. 88 Fed. Reg. at 19,474. The fact-specific nature of a McCarran-Ferguson analysis is irrelevant to deciding whether case-by-case adjudication is appropriate: state law uniformly requires or permits risk-based pricing, and evaluating risk-based practices in federal litigation will therefore always trigger McCarran-Ferguson concerns. HUD's failure to confront the fact that laws and related regulations in all 50 States clash with its Rule was particularly irrational given its insistence that the Rule "would not have federalism implications"—a basis HUD used to justify failing to consult with state regulators about how its Rule may conflict with existing state laws. 88 Fed. Reg. at 19,497. If HUD had consulted with State Commissioners, it would have learned that its Rule displaces state law, that States are already addressing protected-class concerns in risk-based pricing, and that HUD's Rule disrupts those efforts. *See* SOF ¶ 123.

Instead of "evaluat[ing] how often McCarran-Ferguson preclusion would apply and whether it would bar entire categories of disparate-impact claims against insurers," *PCI*, 66 F. Supp. 3d at 1048, HUD posited that state laws might vary and "change over time." 88 Fed. Reg. at 19,475. That is incorrect. The state laws PCI identified in its comments uniformly address the use of "long-recognized," verifiable, actuarially sound factors that demonstrably correlate with losses. SOF ¶¶ 9, 27. HUD offered no reason to believe that those laws have varied substantially across jurisdictions or over time (or any explanation of how often they did so).

Even accepting HUD's unsubstantiated speculation that some unspecified State could change its laws at some future date, or that some unspecified courts could adopt different interpretations of McCarran-Ferguson, 88 Fed. Reg. at 19,474 n.208, that conjecture failed to

consider how often McCarran-Ferguson preclusion would arise in challenges to homeowners insurance practices. Without addressing that question, HUD had no rational basis to conclude that McCarran-Ferguson would not be triggered in most or all litigation involving this class of practices. HUD instead simply speculated that there might be some cases in which disparate-impact liability under the Rule would "not necessarily" violate McCarran-Ferguson. 88 Fed. Reg. at 19,474. But that is exactly the type of unexamined assumption this Court previously found inadequate, criticizing HUD for making "no attempt" to determine "how often McCarran-Ferguson preclusion would apply." SOF ¶ 47; *PCI*, 66 F. Supp. 3d at 1048. And that unexamined assumption certainly does not justify asserting expansive regulatory authority over an area Congress affirmatively reserved to the States. *See West Virginia*, 142 S. Ct. at 2616.

Moreover, the cases HUD relied on for its assumption that some state laws would not preempt disparate-impact claims against risk-based pricing and underwriting practices do not support HUD's position. HUD pointed to *Dehoyos v. Allstate Corp.*, 345 F.3d 290 (5th Cir. 2003). 88 Fed. Reg. at 19,474. But key to *Dehoyos* was the conclusion that the insurance company had not cited "any law, regulation, or decision … requiring or condoning" the challenged practice. *See* 345 F.3d at 299 (alterations omitted). That pleading failure does not support HUD's conclusion that variation in state law drives different results or justify ignoring that the majority of States not only permit but *require* risk-based rating and underwriting. SOF ¶¶ 45, 54, 94.[6]

---

[6]     HUD also relied on an unreported, out-of-circuit district court case, *Lumpkin v. Farmers Grp.*, 2007 WL 6996777 (W.D. Tenn. July 6, 2007), to argue that some state laws might not trigger McCarran-Ferguson preclusion. *Lumpkin* wrongly concluded that Tennessee law "does not permit credit scoring with disparate impact" because it forbids calculating insurance scores or credit risks based on nationality, race, color, or ethnic group. *Lumpkin*, 2007 WL 6996777, at *7. But the intentional use of race or other discriminatory factors is a different issue entirely from use of race-neutral, actuarially sound practices that happen to create a disparate impact. And Tennessee law not only permits risk differentiation but requires

HUD also relied on *Saunders v. Farmers Insurance Exchange*, 537 F.3d 961, 963 (8th Cir. 2008), to argue that "[e]ven those cases in which an impermissible impairment under McCarran-Ferguson was found support the case-by-case approach," 88 Fed. Reg. at 19,474. But *Saunders* affirmed dismissal of an FHA price-discrimination claim because the claim impaired state law in violation of McCarran-Ferguson. While, as HUD noted, the *Saunders* court had earlier remanded the McCarran-Ferguson question, that was largely because the parties had not previously raised McCarran-Ferguson preclusion in the district court or on appeal. *See Saunders v. Farmers Ins. Exch.*, 440 F.3d 940, 945 (8th Cir. 2006). Further, it was not clear on the appellate record that plaintiffs relied on a disparate-impact theory. *Id.* Thus, *Saunders* lends no support to HUD's speculation that disparate-impact claims might survive McCarran-Ferguson preclusion. To the contrary, as this Court previously held, *Saunders* "called into question the viability of many (if not most) disparate impact claims against insurers in light of the McCarran-Ferguson Act." *PCI*, 66 F. Supp. 3d at 1048-1049.

### 2. HUD Arbitrarily Ignored The Cost of Case-By-Case Adjudication

HUD ignored that requiring insurers to defend risk-based pricing and underwriting practices under the burden-shifting framework in every case would impose significant and unjustified expenses on the industry, increasing the cost of insurance for consumers and wasting judicial resources. *See, e.g.*, SOF ¶ 99 ("HUD's proposal to expand disparate impact liability will … raise housing costs"); *id.* (Rule will "significantly increase compliance and litigation costs … ultimately making insurance more expensive for consumers and policyholders"); *id.* ("Applying disparate impact liability to homeowners' insurance under the 2013 Rule will increase insurance costs and almost certainly cause rates to go up.").

---

insurers to also consider past and prospective loss experience, catastrophe hazards, and all other relevant factors. *See* Tenn. Code Ann. § 56-5-104(1).

It is no response that insurers would also need to establish that their practice is risk-based to qualify for a safe harbor or an exemption. 88 Fed. Reg. at 19,479. Under HUD's approach, every insurer must defend every challenged actuarial risk factor it uses repeatedly in every case, perhaps even on a region-by-region basis as different plaintiffs allege disparate impacts among particular populations of insureds. What is more, policyholders choose different forms, endorsements, and deductibles, all of which inform the premiums they pay, rendering a defense under HUD's approach all the more complex as compared to a safe harbor or exemption. As this Court emphasized, it makes no sense to require insurers to "engage in the Sisyphean task of working through the burden-shifting framework in each individual case when the plaintiff has no chance of success." *PCI*, 66 F. Supp. 3d at 1051 (quoting *Graoch Assocs. #33, L.P. v. Louisville/Jefferson Cnty. Metro Hum. Rels. Comm'n*, 508 F.3d 366, 375-376 (6th Cir. 2007)).

Further, HUD's burden-shifting framework requires insurers to defend themselves against the assertion that they could have elected a less discriminatory alternative—which will require insurers to collect data they do not currently collect on subscribers' race, ethnicity, or other protected characteristics. *See* SOF ¶¶ 18, 37, 110-111.[7] HUD suggested that companies could defend a lawsuit without collecting this data by "showing that the data put forward by plaintiff is incorrect or wrongly analyzed," or by "showing at step two that the challenged practice is necessary to achieve a substantial, legitimate, nondiscriminatory interest." 88 Fed. Reg. at 19,480. That response only highlighted the limited means companies would have available to defend themselves without collecting data. And it wholly ignored that companies would need to defend themselves at stage three of the burden shifting test against a purported

---

[7]    Insurers might not even be permitted to collect that data, given state prohibitions on "treating similar risks in a dissimilar manner." SOF ¶ 121; *see, e.g.*, Md. Code Ann. Ins. § 27-501 (prohibiting solicitation of information about protected characteristics).

less discriminatory alternative—a difficult, if not impossible, task without collecting race-based data—not to mention the near impossibility of collecting data for certain other protected classes, such as sexual orientation or disability.

### 3. HUD Unreasonably Concluded That *Mutual of Omaha* Did Not Support An Exemption For Risk-Based Pricing And Underwriting

HUD sought to distinguish this Circuit's binding precedent in *Mutual of Omaha* on the ground that *Mutual of Omaha* involved a "specific state law." 88 Fed. Reg. at 19,474. But that failed to grapple with the key issue: as comments submitted to HUD demonstrated, *all* state laws either require or permit risk-based pricing to ensure that rates are not excessive, inadequate, or unfairly discriminatory. SOF ¶¶ 45, 54, 94; *see supra*, pp. 8-9.

HUD also stated that it disagrees with *Mutual of Omaha*'s holding, observing that "case law could evolve differently." 88 Fed. Reg. at 19,476. But that response did not comply with this Court's instruction to explain why a case-by-case approach remains reasonable under *Mutual of Omaha*'s reasoning. *PCI*, 66 F. Supp. 3d at 1049.

HUD nowhere disputed that *Mutual of Omaha* forbids federal courts from scrutinizing whether challenged insurance practices are actuarially sound, or that the burden-shifting framework does just that by requiring federal courts to assess whether challenged practices are truly "risk-based." 88 Fed. Reg. at 19,476. It is no answer that in a rare case a court might be presented with two risk-based practices that the parties stipulate are "equally actuarially sound and compliant with state law," and then be tasked with determining which has less of a disparate impact. *Id.* The vast majority of disparate-impact cases will look nothing like HUD's hypothetical and will instead require federal courts to scrutinize the actuarial soundness of challenged practices.

4.    **HUD's Reliance On Federal Support For State Antidiscrimination Laws Was Arbitrary And Capricious**

As another basis to disregard McCarran-Ferguson, HUD asserted that "state fair housing laws track the [FHA's] applicability to insurance and provision of effects liability," and that a categorical exemption would "deprive all states of this federal support in addressing discriminatory insurance practices." 88 Fed. Reg. at 19,475. That argument has nothing to do with whether HUD may violate a different federal law (McCarran-Ferguson) by displacing all States' plenary authority to regulate the business of insurance. HUD suggested that state antidiscrimination laws are relevant to the McCarran-Ferguson analysis because they inform whether federal and state law conflict. *Id.* at 19,475 n.218. But even if a State's fair-housing law were identical to the FHA, it is for state regulators to determine how best to reconcile protected-class concerns with risk-based practices; indeed, state regulators are already undertaking that complex task. *See* SOF ¶ 123. Federal litigation under the Rule would still require federal courts applying federal law to second-guess the actuarial soundness of insurance practices regulated by state law, contrary to *Mutual of Omaha*. *See* 179 F.3d at 564. HUD's reliance on snippets from out-of-circuit district court decisions and an intermediate Ohio state court decision, none of which addressed these issues, provided no basis for disregarding McCarran-Ferguson's plain text and the Seventh Circuit's controlling decision in *Mutual of Omaha*.[8]

---

[8]    *See* 88 Fed. Reg. at 19,475 n.218 (*citing Viens v. Am. Empire Surplus Lines Ins. Co*., 113 F. Supp. 3d 555, 573 n.20 (D. Conn. 2015) (holding that McCarran-Ferguson "does not reverse preempt" FHA disparate-impact claims on the basis that "enforcement of federal civil rights laws does not interfere with and frustrate the abilities of states to regulate insurance rate making," *id*. at 573, in contravention of the more exacting analysis into whether the application of federal law frustrates or impairs the purpose of a state law required under *Humana Inc.*); *Jones v. Travelers Cas. Ins. Co. of Am*., 2015 WL 5091908, at *5 (N.D. Cal. May 7, 2015) (unreported) (precursory bench court ruling contained in a hearing transcript where the court allowed a disparate-impact claim to proceed solely because it was "not persuaded" that

## II.     HUD Did Not Adequately Explain Why The Rule Would Not Violate The Filed-Rate Doctrine

The Court previously held that HUD failed to give adequate consideration to the filed-rate doctrine, which "forbids courts from invalidating or modifying rates that have been filed with regulatory agencies." *PCI*, 66 F. Supp. 3d at 1049 (citing *Schilke v. Wachovia Mortg., FSB*, 820 F. Supp. 2d 825, 835 (N.D. Ill. 2011)). HUD's latest explanation fares no better.

HUD did not dispute that the filed-rate doctrine applies to insurance rates filed with state insurance commissions. SOF ¶ 69. Instead, HUD asserted that disparate-impact claims "do not challenge the reasonableness of insurance rates, but rather their discriminatory effects." 88 Fed. Reg. at 19,478. But the filed-rate doctrine is not limited to claims that challenge only the "reasonableness" of rates.[9] For example, an FHA plaintiff claiming that his insurer is charging him more using a risk-based factor that correlates with race necessarily seeks to "invalidat[e]" the rate charged and thus falls squarely within the filed-rate doctrine. *Schilke*, 820 F. Supp. 2d at 835; *see Schermer v. State Farm Fire & Cas. Co.*, 721 N.W.2d 307, 311-319 (Minn. 2006) (filed-rate doctrine required dismissal of claim that higher prices for homeowners insurance for certain homes was racially discriminatory). Under the Rule, a court resolving such a claim would have to consider the reasonableness of the challenged rate at step two of the burden-shifting framework. And were the court to find that the insurer's risk-based pricing or

---

state law permitted the specific challenged practice); *Toledo Fair Hous. Ctr. v. Nationwide Mut. Ins. Co.*, 704 N.E.2d 667, 670 n.4 (Ohio C.P. 1997) (addressing a *state* court's application of *state* law without any mention of McCarran-Ferguson and explaining "the present case is not filed under the federal Fair Housing Act").

[9]     *See, e.g., Square D. Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 415 & n.17 (1986) (filed-rate doctrine barred recovery of treble damages under antitrust laws even though antitrust claims do not challenge reasonableness of rates but rather method by which they were adopted); *Schilke*, 820 F. Supp. 2d at 836 (filed-rate doctrine foreclosed claims based on failure to disclose aspects of rates); *McCray v. Fidelity Nat'l Title Ins. Co.*, 682 F.3d 229, 235-242 (3d Cir. 2012) (filed-rate doctrine barred antitrust challenge to rates).

underwriting practices did in fact create discriminatory effects, it could prohibit the insurer from using the filed rate.

HUD also reasoned that the filed-rate doctrine must yield to the FHA under the Supremacy Clause. 88 Fed. Reg. at 19,478. That position contravenes precedent from this and other circuits holding that the filed-rate doctrine *does* bar federal challenges to rates filed with state agencies. *See South Branch LLC v. Commonwealth Edison Co.*, 46 F.4th 646, 650 (7th Cir. 2022) (finding RICO claim barred, noting that claim effectively "request[ed] a federal judgment retroactively adjusting the electricity rates they paid"); *Wegoland*, 27 F.3d at 20 (same, noting "courts have uniformly held, and we agree, that the rationales underlying the filed rate doctrine apply equally strongly to regulation by state agencies"); *Taffet v. Southern Co.*, 967 F.2d 1483, 1494 (11th Cir. 1992) (en banc) (applying filed-rate doctrine to bar federal RICO claims against rates set by state agencies).

### III.   HUD Did Not Adequately Consider The Rule's Effects On The Business Of Insurance

This Court previously held that HUD acted arbitrarily because it did not account for the insurance industry's concerns that, by interfering with insurers' use of actuarially sound risk factors, the Rule would "undermine the fundamental nature of insurance." *PCI*, 66 F. Supp. 3d at 1050-1051. As commenters have made clear, insurers would not be able to comply with actuarial standards—or with state law—if federal courts could force them to adopt less-effective means of calculating risk. In reinstating the Rule in 2023, HUD still failed to justify this basic defect.

#### A.   HUD Misunderstood The Rule's Threat To Insurance

The Rule would subject insurers to liability for risk-based practices whenever a plaintiff presented a less-discriminatory alternative, even if that alternative practice would be less

predictive of risk. *See* 88 Fed. Reg. at 19,491 (declining to adopt "a requirement that alternative policies be 'equally effective'"). Commenters therefore made clear to HUD that the Rule poses a grave threat to the business of insurance, which hinges on accurate risk assessment. *See* SOF ¶ 97 ("[P]recise determinations of risk … allow the insurance system to work well."); *id.* ("Classifying people and property by the risks they present and treating similar risk profiles in a similar manner is … at the very heart of the business of insurance."); *id.* ¶ 96 ("If insurers could not set rates or make underwriting decisions based on objective risk factors that accurately predict loss, the insurance industry could not function properly.").

Insurers cannot seamlessly switch from a risk-based practice causing some degree of disparate impact to an "alternative risk-based practice" that is less predictive of risk. The Rule would therefore require that "many if not most risk-based variables … be eliminated from the underwriting process." SOF ¶ 97. And it could force "defendants to abandon sound, good-faith practices in favor of substitutes that are less effective." *Id.* ¶ 96. This would dramatically transform the homeowners-insurance industry by imperiling effective risk-based pricing and underwriting. HUD's efforts to avoid this obvious problem by no means reflected "the product of reasoned decisionmaking." *State Farm*, 463 U.S. at 52.

*First*, HUD's assertion that disparate-impact liability "has proven workable in other contexts involving complex risk-based decisions," such as mortgage lending and rental pricing, 88 Fed. Reg. at 19,467, was no substitute for reasoned analysis of the Rule's workability in the homeowners-insurance context. HUD did not describe how it reached the conclusion that disparate-impact liability is "workable" in those other contexts, and it certainly did not make the case that these other contexts involve comparable actuarial principles or state regulatory regimes. Nor could HUD have done so. Mortgage lending, unlike risk-based pricing and underwriting of

homeowners insurance, is an area of longstanding federal regulation. *See, e.g.*, 42 U.S.C. § 3605

(expressly prohibiting discrimination in "[t]he making or purchasing of loans" under the FHA);

*see also* Jay B. Sykes, CONG. RSRCH. SERV., R45081, *Banking Law: An Overview of Federal*

*Preemption in the Dual Banking System* 4-9, 17-18 (Jan. 23, 2018) (discussing state and federal

regulation of banking system).

*Second*, HUD's citation to a smattering of cases suggesting that, in three States,

disparate-impact claims against insurers are not barred under state law, 88 Fed. Reg. at 19,467 &

n.153, fell far short of justifying HUD's refusal to exempt risk-based pricing and underwriting

from its own Rule. None of the cases HUD relied on held that the state law at issue "specifically

provide[d] for discriminatory effects liability against insurers." *Id.*[10] That handful of

distinguishable cases cannot salvage the Rule's failure to exempt risk-based pricing and

underwriting, particularly given this Court's recognition that the Seventh Circuit has "call[ed]

into question the viability of disparate impact claims against insurers." *PCI*, 66 F. Supp. 3d at

1028 (citing *Mutual of Omaha*, 179 F.3d at 563); *see supra* pp. 9-10.

*Third*, HUD's concern about opening the floodgates to "a host of potentially

discriminatory insurance practices that do not involve actuarial or risk-based calculations" was

misplaced because the practices HUD cited are outside the scope of the exemption at issue. 88

Fed. Reg. at 19,468. Commenters requested—and the administrative record amply supports—a

narrow exemption for "actuarial or risk-based calculations" in pricing and underwriting, not

---

[10]     In *Viens*, the court observed that Connecticut's fair housing laws were "broader" than the FHA, 113 F. Supp. 3d at 573 & n.20, but made no finding that disparate-impact claims were in fact permitted under Connecticut law. Similarly, the court in *Jones* held only that McCarran-Ferguson preemption did not apply because it was "not persuaded" that California law would permit the challenged practice. *See* 2015 WL 5091908, at *5. And in *Toledo Fair Housing Center*, the Ohio court did not conclude that state law recognized the viability of disparate-impact claims—it instead concluded that state law merely did not "deal with the specific situation of race discrimination in the offering of homeowner's insurance." 704 N.E.2d at 157.

broad immunity for "marketing, claims processing, and payment." *Cf. id.*; *see, e.g.*, SOF ¶ 100 (commenters requesting narrow exemption). To the extent HUD believes that such practices are "not purely risk-based" and create discriminatory effects, 88 Fed. Reg. at 19,468, HUD failed to consider the obvious alternative of subjecting those practices alone to liability under the Rule, while exempting risk-based pricing and underwriting.

### B.   HUD Arbitrarily Waved Away The Significant Costs The Rule Would Impose

HUD's view that the Rule is compatible with the risk-based nature of insurance led it to conclude, despite substantial evidence to the contrary, that the Rule would not impose significant costs on insurers. But commenters explained that failing to exempt risk-based pricing and underwriting would indeed "impose significant and wholly unjustified expenses on insurers and their customers." SOF ¶ 98; *see also id.* ¶ 99 (Rule "will create even further unnecessary and costly litigation"). HUD's insistence that the Rule does no more than keep existing obligations (and costs) in place, 88 Fed. Reg. at 19,497, was untethered from the reality these commenters described, as well as this Court's recognition that homeowners insurers will face "increased exposure to disparate impact liability [that] will cause them to incur additional costs" under the Rule, *PCI*, 66 F. Supp. 3d at 1044; *see* SOF ¶ 99. HUD cannot avoid responsibility to consider these costs by ascribing them to the underlying provisions of the FHA or to "decades-old substantive law articulated by HUD and the courts," 88 Fed. Reg. at 19,497, because caselaw confirms that disparate-impact claims against insurers will fail, *see Mutual of Omaha*, 179 F.3d at 563; *Saunders*, 537 F.3d at 964. Nor can HUD rebut insurers' concerns about increased costs by pointing out that "no increased litigation has occurred" during the Rule's thrice-reconsidered existence. That failed to meaningfully consider the confusion generated by HUD's repeated

22

rulemakings or engage with industry submissions detailing how the Rule will indeed generate increased costs caused by actual or threatened litigation. SOF ¶ 98.

## IV. HUD Did Not Adequately Address *Inclusive Communities*

Finally, HUD failed to adequately reckon with the significant limitations on disparate-impact liability the Supreme Court imposed in *Inclusive Communities*. That decision held that disparate-impact liability must be limited to "artificial, arbitrary, and unnecessary" practices, *Inclusive Cmtys.*, 576 U.S. at 544; that plaintiffs must satisfy "a robust causality requirement," citing to a specific policy that caused the disparity, *id.* at 542-543; and that liability cannot be "so expansive as to inject racial considerations into every housing decision," *id.* at 543. These limits ensure that "regulated entities are able to make the practical business choices and profit-related decisions that sustain a vibrant and dynamic free-enterprise system." *Id.* at 533.

HUD disclaimed any need to rethink its approach, asserting that the Supreme Court had "endorsed" the Rule as written. 88 Fed. Reg. at 19,458, 19,460. But the Court had no occasion to consider, much less endorse, HUD's Rule. To the contrary, the Court admonished that any disparate-impact framework must have "adequate safeguards" to ensure that race would not be "used and considered in a pervasive way," 576 U.S. at 542—safeguards HUD's Rule lacks. As the Fifth Circuit has explained, by imposing a "robust causality requirement," limiting liability to "artificial, arbitrary, and unnecessary" practices, and preserving leeway for regulated entities to "consider market factors," *Inclusive Communities* established a "more demanding test" for disparate-impact claims that supersedes the Rule. *Inclusive Cmtys. Proj., Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 902-903 (5th Cir. 2019) ("[T]he Supreme Court's language in [*Inclusive Communities*] is stricter than the regulation itself."). HUD deemed the Fifth Circuit's reasoning unpersuasive, without acknowledging the likelihood that courts will follow its lead. 88 Fed. Reg. at 19,460; *see* SOF ¶ 108.

23

HUD also disregarded PCI's argument that an exemption is required by the Supreme Court's holding that disparate-impact liability must be confined to practices that are "artificial, arbitrary, and unnecessary," *Inclusive Cmtys.*, 576 U.S. at 544; SOF ¶ 107 —deeming this a "shorthand formulation" it could ignore, 88 Fed. Reg. at 19,462.  And HUD gave short shrift to PCI's showing that allowing a plaintiff to prevail without proof of an *equally effective* alternative practice would violate *Inclusive Communities* by upending the insurance industry.  88 Fed. Reg. at 19,491; SOF ¶ 107.

*Inclusive Communities* also imposed a "robust causality requirement" that disparate-impact suits against insurers under the Rule will not satisfy.  576 U.S. at 542.  HUD ignored commenters' concerns that by omitting any requirement of a statistically significant difference between otherwise comparable groups, the Rule could allow plaintiffs to hold insurers liable "solely on a showing of statistical disparity."  *Id.* at 540*; see* SOF ¶ 109.  HUD also staked out internally inconsistent positions on whether the Rule complies with *Inclusive Communities*' direction that plaintiffs must "point to a defendant's policy or policies causing [the disparity]," 576 U.S. at 542—first asserting that discriminatory effects must be linked to a "specific practice," 88 Fed. Reg. at 19,461, and later retreating to the position that plaintiffs may challenge "the decision-making process as a whole," *id.* at 19,485.  And HUD failed meaningfully to engage with commenters' arguments that plaintiffs will not be able to prove that any disparities are in fact caused by insurer practices given that state law "substantially limits [insurers'] discretion."  *Inclusive Cmtys.*, 576 U.S. at 543.

*Inclusive Communities* also warned that disparate-impact frameworks should not "inject racial considerations" into housing decisions.  576 U.S. at 543.  Commenters therefore raised the concern that the Rule imposed regulatory burdens with which parties can only realistically

24

comply by collecting data on racial demographics, SOF ¶¶ 110-111. HUD dismissed these concerns, *see* 88 Fed. Reg. at 19,469, without giving due consideration to commenters' fears that insurers must begin collecting racial demographic data in order to ensure that they are not "held liable for racial disparities they did not create," *Inclusive Cmtys.*, 576 U.S. at 542.

## V.     The Rule Must Be Vacated As Applied To Risk-Based Pricing And Underwriting Of Homeowners Insurance

Vacatur is "precisely the remedy demanded by the APA's text." *Cook Cnty. v. Wolf*, 498 F. Supp. 3d 999, 1007 (N.D. Ill. 2020); *id.* at 1005 (explaining that "[p]recedent confirms that the APA's text means what it says"; namely, unlawful agency action is set aside in full). That text mandates that courts "hold unlawful and set aside" agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2); *see also Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) (explaining courts "set aside agency regulations which … are not supported by the reasons that the agencies adduce"). Thus, as the Seventh Circuit has explained, "vacatur is the presumptive remedy for a violation" of the APA. *Johnson v. U.S. Off. of Pers. Mgmt.*, 783 F.3d 655, 663 (7th Cir. 2015); *see also Harrington v. Chao*, 280 F.3d 50, 60 (1st Cir. 2002) (explaining that "vacation is a proper remedy when an agency fails to explain its reasoning adequately").

Remand without vacatur is an "unusual remedy," *Hoosier Env't Council v. Nat. Prairie Ind. Farmland Holdings, LLC*, 2023 WL 2571678, at *4 (N.D. Ind. Mar. 20, 2023), appropriate only when "there is at least a serious possibility that the [agency] will be able to substantiate its decision on remand" and "the consequences of vacating might be quite disruptive." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150-151 (D.C. Cir. 1993); *see also Johnson*, 783 F.3d at 663 (quoting cases applying the *Allied-Signal* test). Those circumstances are not met here.

First, nothing in the record indicates that the agency will be able to substantiate its decision on remand.  To the contrary:  HUD has already had four opportunities over a ten-year period and three administrations to justify its failure to exempt risk-based pricing and underwriting.  There is little reason to think a fifth attempt will make any difference.  HUD's ongoing failure to justify its choice constitutes a "major shortcoming[] … [t]hat makes vacatur appropriate." *Humane Soc'y of U.S. v. Zinke*, 865 F.3d 585, 614-615 (D.C. Cir. 2017).

Second, there is no indication that vacating the Rule will prove so disruptive as to support the extraordinary remedy of remand without vacatur.  Courts remand without vacatur when striking a rule is "an invitation to chaos." *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 97-98 (D.C. Cir. 2002).  But here, the harm would flow not from setting the Rule aside but from leaving the Rule's application to risk-based pricing and underwriting in place.  Remand without vacatur would prolong the considerable uncertainty and confusion the homeowners-insurance industry has experienced from being subject to a Rule that clashes with state laws and was declared arbitrary and capricious almost a decade ago.  *See* SOF ¶¶ 45-46, 54, 94; *see also id.* at ¶ 122 (explaining the Rule "makes State Auto subject to different and conflicting obligations under state and federal law in terms of what State Auto must do to legally use its Homeowners Rates without the threat of liability").

Keeping the Rule in place forces PCI's members and the homeowners-insurance industry to face the threat of federal disparate-impact litigation.  That threat is real.  *See Letter from The Travelers Cos., Inc. to U.S. Sec. & Exch. Comm'n*, 2022 WL 192914 (Jan. 18, 2022) (explaining the company reports litigation risk from the Rule in its Annual Report on Form 10-k despite its compliance with applicable legal requirements); *see also* SOF ¶ 122 (explaining that the Rule "will inevitably create compliance risk due to existing state laws which forbid risk differentiation

26

in insurance based on certain personal characteristics like race, color, religion or national origin."). Meanwhile, state regulators seeking to guard against harm to protected classes while ensuring adequate and nondiscriminatory rates through reliance on risk-based factors must attempt to strike that balance in the shadow of uncertainty cast by HUD's overreaching Rule. HUD should not be permitted to maintain a rule on the books that was declared arbitrary and capricious long ago when it has continually failed to adequately address its flaws.

## CONCLUSION

The Court should grant PCI's motion for summary judgment and vacate the Rule to the extent that it applies to risk-based pricing and underwriting of homeowners insurance.

Dated: June 28, 2023

Respectfully submitted,

PROPERTY CASUALTY INSURERS
ASSOCIATION OF AMERICA

*/s/ Seth P. Waxman*
Seth P. Waxman (*pro hac vice*)
Catherine M.A. Carroll (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
Tel.: (202) 663-6000
Fax: (202) 663-6363
E-mail: seth.waxman@wilmerhale.com

Rowe W. Snider (# 03125194)
Alyssa M. Gregory (# 6320588)
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
Tel.: (312) 443-0700
Fax: (312) 896-0336
Email: rsnider@lockelord.com

*Attorneys for Plaintiff*