# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:13-cv-08564 |
| v. | ) ) | Judge Amy J. St. Eve |
| SHAUN DONOVAN, in his official capacity as Secretary of Housing and Urban Development, and UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, | ) ) ) ) ) ) | Magistrate Judge Susan E. Cox |
| Defendants. | ) ) | |

## DECLARATION OF TERESA C. CRACAS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

I, Teresa C. Cracas, declare as follows:

1.  I am over eighteen years of age and am not suffering under any legal or physical disability.

2.  I submit this declaration in support of Plaintiff's Motion for Summary Judgment and in opposition to Defendants' Motion To Dismiss and/or for Summary Judgment. I am testifying to the statements below based on my personal knowledge.

3.  I am Chief Risk Officer and Senior Vice President of The Cincinnati Insurance Company ("CIC"). CIC is a member of Property Casualty Insurers Association of America ("PCI"). CIC sells homeowner's insurance in 30 states, including Illinois, Indiana, Wisconsin, Minnesota, Iowa, Missouri, Arkansas, Nebraska, and North Dakota.

4.      I am responsible for strategic planning and risk management, including oversight of modeling for financial analysis and property casualty reserving and pricing. My duties include oversight of our predictive analytics and pricing analytics teams, as well as our corporate actuarial and staff underwriting groups. Specific to the matters set forth in this affidavit, I provide high level supervision and direction over associates who provide analysis and support for personal and commercial product pricing and manual rate filings, including with respect to our homeowners' insurance line. I have high-level knowledge of our data modeling for property casualty underwriting and pricing, and I have a general understanding of the primary computer applications and data repositories used by CIC to support its homeowners' insurance underwriting business.

5.      I understand that the United States Department of Housing and Urban Development ("HUD") has issued a final rule purporting to interpret the Fair Housing Act to prohibit practices, including the pricing and underwriting of homeowner's insurance, that result in a disparate impact on groups identified by certain protected characteristics ("HUD rule").

6.      CIC does not collect or retain records of policyholders' race, color, ethnicity, national origin, religion, disability status or veteran status ("factors"). CIC further does not consider these factors nor does it consider sex or familial status, in underwriting and rating homeowners' insurance. We do not give these factors any relevance in our actuarial rating methodologies and differentiation in the process of insuring homeowners.

7.      As a result of the HUD rule, CIC will need to collect data on these factors, assuming it is permissible under state law to collect such information.

2

8. I estimate my staff and I will need to spend approximately 200 hours determining what data will be required to attempt to ensure compliance with the HUD rule.

9. My staff and I will also spend an estimated 500 hours determining how to collect the data needed to ensure compliance with the HUD rule. This will require extensive inter-departmental collaboration and potentially engagement with data vendors.

10. I expect that my staff and I, along with extensive interdepartmental and potentially consultative participation, will need to spend approximately 2000 additional hours executing our plan to collect the data needed to ensure compliance with the HUD rule. I anticipate that execution will include converting business requirements into systems requirements and developing systems capability to collect, store and process the data before implementing additional data points into our various predictive and pricing models. Corrective underwriting, rating and pricing adjustments may be required to avoid disparate impact. These changes will inevitably create compliance risk due to existing state laws which forbid risk differentiation in insurance based on certain personal characteristics like race, color, religion or national origin.

11. In total, if these activities are found to be possible under state law, I estimate it will cost CIC approximately $250,000, and approximately 2700 hours in employee time to plan, organize, procure, process and model the data necessary to comply with the HUD rule. This does not include other costs, including hardware and software costs, costs to implement appropriate security measures and controls and additional staffing that may be required.

12. The cost is ongoing because CIC will need to continuously monitor the data it collects. CIC will spend an estimated $25,000 per month collecting new data on race, color,

3

ethnicity, national origin, religion, disability status and veteran status; and analyzing that data as it is available to ensure that CIC is complying with the HUD rule.

13. Defending an action under the HUD rule would impose significant costs upon CIC. To analyze and attempt to rebut a disparate impact claim, CIC would likely need to retain an expert witness at significant cost. Moreover, asserting even a business justification defense would impose significant costs because the HUD rule places the burden of proof on the defendant with respect to such a defense. As a result, a business justification defense would likely need to be raised at the summary judgment stage, requiring CIC to bear the substantial burdens of discovery before being able to assert the defense.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 14, 2014.

Teresa C. Cracas

# CERTIFICATE OF SERVICE

      I hereby certify that, on May 16, 2014, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

                                                                                   /s/ Brian M. Boynton
                                                    Brian M. Boynton
                                                    WILMER CUTLER PICKERING HALE AND DORR LLP
                                                    1875 Pennsylvania Avenue, NW
                                                    Washington, DC 20006
                                                    Tel.: (202) 663-6000
                                                    Fax: (202) 663-6363
                                                    Email: seth.waxman@wilmerhale.com