# EXHIBIT 8

# 2023 -- H 5734

========
LC000039
========

# STATE OF RHODE ISLAND

## IN GENERAL ASSEMBLY

### JANUARY SESSION, A.D. 2023

_____

## A N   A C T

### RELATING TO STATE AFFAIRS AND GOVERNMENT -- DEPARTMENT OF BUSINESS REGULATION

Introduced By: Representative Joseph M. McNamara

Date Introduced: February 21, 2023

Referred To: House Corporations

It is enacted by the General Assembly as follows:

1     SECTION 1. Chapter 42-14 of the General Laws entitled "Department of Business
2 Regulation" is hereby amended by adding thereto the following sections:
3     **42-14-20. Insurers' use of external consumer data and information sources,**
4 **algorithms, and predictive models -- Unfair discrimination prohibited -- Rules -- Stakeholder**
5 **process required.**
6     (a) In addition to the methods and practices prohibited pursuant to title 27 and title 42, an
7 insurer shall not, with regard to any insurance practice:
8     (1) Unfairly discriminate based on race, color, national or ethnic origin, religion, sex,
9 sexual orientation, disability, gender identity, or gender expression; or
10     (2) Pursuant to rules adopted by the director of the department of business regulation (the
11 "director") after consultation with the health insurance commissioner (the "commissioner"), use
12 any external consumer data and information sources, as well as any algorithms or predictive models
13 that use external consumer data and information sources, in a way that unfairly discriminates based
14 on race, color, national or ethnic origin, religion, sex, sexual orientation, disability, gender identity,
15 or gender expression.
16     (b)(1) The director, in consultation with the commissioner, shall adopt rules for the
17 implementation of this section.
18     (2) The director, in consultation with the commissioner, shall engage in a stakeholder

1 process prior to the adoption of rules for any type of insurance that includes carriers, producers,
2 consumer representatives, and other interested parties. The director, in consultation with the
3 commissioner, shall hold stakeholder meetings for stakeholders of different types of insurance to
4 ensure sufficient opportunity to consider factors and processes relevant to each type of insurance.
5 The director, in consultation with the commissioner, shall provide notice of stakeholder meetings
6 on the department of business regulation's website, and stakeholder meetings shall be open to the
7 public.

8 (c)(1) After the stakeholder process described in subsection (b)(2) of this section, the
9 director, in consultation with the commissioner, shall adopt rules and regulations for specific types
10 of insurance, by insurance practice, which rules and regulations establish means by which an
11 insurer may demonstrate, to the extent practicable, that it has tested whether its use of external
12 consumer data and information sources, as well as algorithms or predictive models using external
13 consumer data and information sources, unfairly discriminates based on race, color, national or
14 ethnic origin, religion, sex, sexual orientation, disability, gender identity, or gender expression. The
15 rules and regulations shall not become effective prior to January 1, 2024, at the earliest, for any
16 type of insurance, and the director and the commissioner shall consider solvency impacts, if any,
17 to insurers in adopting the rules. This process shall comply with the provisions of chapter 35 of title
18 42 ("administrative procedures").

19 (2) Rules adopted pursuant to this section shall require each insurer to:
20 (i) Provide information to the director or commissioner concerning the external consumer
21 data and information sources used by the insurer in the development and implementation of
22 algorithms and predictive models for a particular type of insurance and insurance practice;
23 (ii) Provide an explanation of the manner in which the insurer uses external consumer data
24 and information sources, as well as algorithms and predictive models using external consumer data
25 and information sources, for the particular type of insurance and insurance practice;
26 (iii) Establish and maintain a risk management framework or similar processes or
27 procedures that are reasonably designed to determine, to the extent practicable, whether the
28 insurer's use of external consumer data and information sources, as well as algorithms and
29 predictive models using external consumer data and information sources, unfairly discriminates
30 based on race, color, national or ethnic origin, religion, sex, sexual orientation, disability, gender
31 identity, or gender expression;
32 (iv) Provide an assessment of the results of the risk management framework or similar
33 processes or procedures and actions taken to minimize the risk of unfair discrimination, including
34 ongoing monitoring; and

1  (v) Provide an attestation by one or more officers that the insurer has implemented the risk
2  management framework or similar processes or procedures appropriately on a continuous basis.
3  (3) The rules adopted by the director in consultation with the commissioner pursuant to
4  this section shall include provisions establishing:
5  (i) A reasonable period of time for insurers to remedy any unfairly discriminatory impact
6  in an algorithm or predictive model; and
7  (ii) The ability of insurers to use external consumer data and information sources, as well
8  as algorithms or predictive models using external consumer data and information sources, that have
9  been previously assessed by the division and found not to be unfairly discriminatory.
10  (4) Documents, materials, and other information in the possession or control of the
11  department of business regulation that are obtained by, created by, or disclosed to the director, the
12  commissioner, or any other person pursuant to this section or any rules adopted pursuant to this
13  section are recognized as proprietary and containing trade secrets. All such documents, materials,
14  and other information shall be deemed confidential and privileged and not subject to disclosure
15  under the provisions of title 38 ("public records") or similar laws of this state; are not subject to
16  subpoena; and are not subject to discovery or admissible in evidence in any private civil action.
17  However, the director and the commissioner may use the documents, materials, or other
18  information in the furtherance of any regulatory or legal action brought as part of the director or
19  commissioner's official duties. The director and the commissioner shall not otherwise make the
20  documents, materials, or other information public without the prior written consent of the insurer
21  from which the documents, materials, or other information was obtained. The director and the
22  commissioner may make data publicly available in an aggregated or de-identified format in a
23  manner deemed appropriate by the director and the commissioner.
24  **42-14-21. Investigations and reporting -- Definitions.**
25  (a) The director or the commissioner may examine and investigate an insurer's use of an
26  external consumer data and information source, algorithm, or predictive model in any insurance
27  practice. Insurers shall cooperate with the director and commissioner and the department of
28  business regulation (the "department") in any examination or investigation under this section.
29  (b)(1) The director shall provide a report to the governor and the general assembly by
30  December 31, 2024, and annually by December 31 thereafter. This report shall include:
31  (i) Information concerning any rules adopted pursuant to § 42-14-20;
32  (ii) Information concerning any changes in insurance rates that have resulted from the
33  prohibitions described in § 42-14-20;
34  (iii) A summary of the stakeholder engagement process described in § 42-14-20; and

1       (iv) A description of data sources, if any, discussed during the stakeholder engagement
2 process, which data sources insurers may use to comply with § 42-14-20.
3       (c) The provisions of § 42-14-20 and § 42-14-21 shall not apply to:
4       (1) Title insurance;
5       (2) Bonds executed by qualified surety companies; or
6       (3) Insurers issuing commercial insurance policies, except that this section and § 42-14-20
7 shall apply to insurers that issue business owners' policies or commercial general liability policies,
8 which business owners' policies or commercial general liability policies have annual premiums of
9 ten thousand dollars ($10,000) or less.
10       (d) Nothing in this section or § 42-14-20:
11       (1) Requires an insurer to collect from an applicant or policyholder the race, color, national
12 or ethnic origin, religion, sex, sexual orientation, disability, gender identity, or gender expression
13 of an individual; or
14       (2) Shall be construed to:
15       (i) Prohibit the use of, or require life, annuity, long-term care, or disability insurers to test,
16 medical, family history, occupational, disability, or behavioral information related to a specific
17 individual, which information, based on actuarially sound principles, has a direct relationship to
18 mortality, morbidity, or longevity risk unless such information is otherwise included in the testing
19 of an algorithm or predictive model that also uses external consumer data and information sources;
20       (ii) Prohibit the use of, or require life, annuity, long-term care, or disability insurers to test,
21 traditional underwriting factors being used for the exclusive purpose of determining insurable
22 interest or eligibility for coverage unless such factors are otherwise included in the testing of an
23 algorithm or predictive model that also uses external consumer data and information sources; or
24       (iii) Prohibit the use of or require the testing of longstanding and well-established common
25 industry practices in settling claims or traditional under writing practices unless such practices or
26 factors are otherwise included in the testing of an algorithm or predictive model that also uses
27 external consumer data and information sources.
28       (e) As used in this section and § 42-14-20, unless the context otherwise requires:
29       (1) "Algorithm" means a computational or machine learning process that informs human
30 decision making in insurance practices.
31       (2) "Commissioner" means the state health insurance commissioner.
32       (3) "Department" means the department of business regulation.
33       (4) "Director" means the director of the department of business regulation.
34       (5) "External consumer data and information source" means a data or an information source

| | |
|---|---|
| 1 | that is used by an insurer to supplement traditional underwriting or other insurance practices or to |
| 2 | establish lifestyle indicators that are used in insurance practices. "External consumer data and |
| 3 | information source" includes credit scores, social media habits, locations, purchasing habits, home |
| 4 | ownership, educational attainment, occupation, licensures, civil judgments, and court records. The |
| 5 | director, in consultation with the commissioner, may promulgate rules to further define "external |
| 6 | consumer data and information source" for particular lines of insurance and insurance practices. |
| 7 | (6) "Insurance practice" means marketing, underwriting, pricing, utilization management, |
| 8 | reimbursement methodologies, and claims management in the transaction of insurance. |
| 9 | (7) "Predictive model" means a process of using mathematical and computational methods |
| 10 | that examine current and historical data sets for underlying patterns and calculate the probability |
| 11 | of an outcome. |
| 12 | (8) "Unfairly discriminate" and "unfair discrimination" include the use of one or more |
| 13 | external consumer data and information sources, as well as algorithms or predictive models using |
| 14 | external consumer data and information sources, that have a correlation to race, color, national or |
| 15 | ethnic origin, religion, sex, sexual orientation, disability, gender identity, or gender expression, and |
| 16 | that use results in a disproportionately negative outcome for such classification or classifications, |
| 17 | which negative outcome exceeds the reasonable correlation to the underlying insurance practice, |
| 18 | including losses and costs for underwriting. |
| 19 | SECTION 2. This act shall take effect upon passage. |

========
LC000039
========

EXPLANATION

BY THE LEGISLATIVE COUNCIL

OF

A N   A C T

RELATING TO STATE AFFAIRS AND GOVERNMENT -- DEPARTMENT OF BUSINESS REGULATION

\*\*\*

1    This act would prohibit the use of any external consumer data and information sources, as
2    well as any algorithms or predictive models that use external consumer data and information
3    sources, in a way that unfairly discriminates based on race, color, national or ethnic origin, religion,
4    sex, sexual orientation, disability, gender identity, or gender expression, by an insurer in regard to
5    any insurance practice. The act would further direct the director of business regulation, in
6    consultation with the health insurance commissioner, to promulgate rules and regulations to enforce
7    these provisions.
8    This act would take effect upon passage.

========
LC000039
========