# EXHIBIT 12



# RICARDO LARA
CALIFORNIA INSURANCE COMMISSIONER

## BULLETIN 2022-5

**TO:** All Admitted and Non-Admitted Insurance Companies, Licensees, and Other Interested Parties

**FROM:** Insurance Commissioner Ricardo Lara

**DATE:** June 30, 2022

**RE:** Allegations of Racial Bias and Unfair Discrimination in Marketing, Rating, Underwriting, and Claims Practices by the Insurance Industry

---

Recent allegations of racial bias and discrimination in marketing, rating, underwriting, and claims practices by insurance companies and other licensees have come to light nationwide. As someone committed to fighting to protect Californians through our state laws, regulations, and policies that promote equality, opportunity, and fairness for all during my time in the California State Legislature and now as Insurance Commissioner, I will continue to direct the California Department of Insurance (Department) to investigate unfair and discriminatory practices by insurance companies. Bias and discrimination in any form will be investigated and will not be tolerated.

This Bulletin serves to remind all insurance companies and licensees of their obligation to market and issue insurance, charge premiums, investigate suspected fraud, and pay insurance claims in a manner that treats all similarly-situated persons alike.

In California, certain groups of individuals are expressly identified as protected classes of persons in order to highlight and protect against particular forms of pernicious discrimination found in our history. As California's Unruh Civil Rights Act makes clear:

> "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.[1]"

---

[1] Cal. Civil Code section 51.

To this end, insurance companies and other licensees must avoid both conscious and unconscious bias or discrimination that can and often does result from the use of artificial intelligence, as well as other forms of "Big Data" (i.e., extremely large data sets analyzed to reveal patterns and trends) when marketing, rating, underwriting, processing claims, or investigating suspected fraud relating to any insurance transaction that impacts California residents, businesses, and policyholders.

Although the responsible use of data by the insurance industry can improve customer service and increase efficiency, technology and algorithmic data are susceptible to misuse that results in bias, unfair discrimination, or other unconscionable impacts among similarly-situated consumers.  A growing concern is the use of purportedly neutral individual characteristics as a proxy for prohibited characteristics that results in racial bias, unfair discrimination, or disparate impact. The greater use by the insurance industry of artificial intelligence, algorithms, and other data collection models have resulted in an increase in consumer complaints relating to unfair discrimination in California and elsewhere.

The Department is aware of and is investigating several recent examples of potential bias and alleged unfair discrimination in many lines of insurance resulting from the use of technology and data.  Examples include, but are not limited to:

- Allegations that insurers are unfairly flagging claims from certain inner-city ZIP Codes and referring these claims to their Special Investigative Unit (or SIU).  Many of these claims are then denied or the claimant is offered unreasonably low settlements, which may intentionally or unintentionally result in a disproportionate number of unfair claims delays and denials to claimants from socioeconomically-disadvantaged communities.

- Allegations that insurers are using biometric data obtained through facial recognition technology to influence whether to pay or deny claims.

- Allegations that insurers, licensees, and insurance marketing institutions are collecting biometric and other personal information unrelated to risk in the marketing and underwriting of insurance policies.  The use of these technologies and reliance on algorithms to decide whether to market and underwrite insurance products for a particular population creates a risk that eligibility could be denied based on race, gender, disability, or other protected classes.

Irresponsible use of "Big Data" also has the potential to reduce transparency for consumers.  Many external data sources used by insurers and other licensees utilize geographical data, homeownership data, credit information, education level, civil judgments, and court records, which have the strong potential to disguise bias and discrimination.  Other models and algorithms purport to make predictions about a consumer's risk of loss based on arbitrary factors such as a consumer's retail purchase history, social media, internet use, geographic location tracking, the condition or type of an applicant's electronic devices, or based on how the consumer appears in a photograph.

The use of these models and data often lack a sufficient actuarial nexus to the risk of loss and have the potential to have an unfairly discriminatory impact on consumers.  Even under circumstances where these models and data may suggest an actuarial nexus to risk of loss, unless a specific law expressly states otherwise, discrimination against protected classes of individuals is categorically and unconditionally prohibited.  Additionally, when insurers use complex algorithms in a declination, limitation, premium increase, or other adverse action, the

specific reason or reasons must be provided. When the reason is based upon a complex algorithm or is otherwise obscured by the technology used, a consumer cannot be confident that the actual basis for the adverse decision is lawful and justified.

The Department continues to prioritize the goal of preventing systemic bias and unfair discrimination in claims handling and underwriting, suspected fraud referrals to individual insurers' SIUs or to the Department, among other insurance transactions.

This goal is further exemplified by my strong commitment to the Department's Insurance Diversity Initiative to advance equity and inclusion within the boardrooms of California's insurance companies and increase business opportunities for members of historically underrepresented groups. I have vigorously expanded this nationally-recognized initiative to focus on diversity issues within California's $371 billion insurance industry.

In order to ensure that all Californians are treated equally, before utilizing any data collection method, fraud algorithm, rating/underwriting or marketing tool, insurers and licensees must conduct their own due diligence to ensure full compliance with all applicable laws. These laws include, but are not limited to, laws prohibiting discrimination with regard to insurance ratemaking[2], laws prohibiting discrimination in claims handling practices[3], laws prohibiting discrimination when accepting insurance applications[4], and laws prohibiting discrimination when canceling or nonrenewing insurance policies[5]. Additionally, insurers and licensees must provide transparency to Californians by informing consumers of the specific reasons for any adverse underwriting decisions.[6]

All persons engaged in the business of insurance in California are directed to review all applicable laws and train their staffs on the proper application of all laws applicable to insurance. The Department reserves the right to audit and examine all insurer business practices including an insurer's marketing, rating, claim, and underwriting criteria, programs, algorithms, and models. The examinations may include examinations within the scope of market conduct examinations or SIU examinations. The Department also reserves the right to take disciplinary action, as necessary, to ensure compliance with all laws.

* * * * *

Any insurer or licensee with questions regarding this Bulletin, please contact:

Gayle Freidson
Attorney IV
Corporate Affairs Bureau
California Department of Insurance
Gayle.Freidson@insurance.ca.gov

---

[2] See, e.g., Cal. Ins. Code sections 679.71, 679.72, 790.03(f), 1861.02, 1861.03, 1861.05, 11735, and Title 10, California Code of Regulations section 2632.4.
[3] See, e.g. Cal. Ins. Code sections 790.03 and Title 10, California Code of Regulations section 2695.7.
[4] See, e.g., Cal. Ins. Code sections 679.71, 679.72, and 10140.
[5] See, e.g., Cal. Ins. Code sections 679.71 and 10140.
[6] See, e.g., Cal. Ins. Code section 791.10.

3