IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA<br><br>                         Plaintiff,<br>vs.<br><br>MARCIA L. FUDGE, in her official capacity as Secretary of Housing and Urban Development, and<br><br>UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>                        Defendants | Case No. 1:13-CV-08564<br><br>Chief Judge Rebecca R. Pallmeyer |

**BRIEF OF THE STATE OF IDAHO *ex rel.* DIRECTOR DEAN CAMERON, IDAHO
DEPARTMENT OF INSURANCE; STATE OF MONTANA *ex. rel.* COMMISSIONER
TROY DOWNING, OFFICE OF THE MONTANA STATE AUDITOR; STATE OF
LOUISIANA *ex rel.* COMMISSIONER JAMES J. DONELON, LOUISIANA
DEPARTMENT OF INSURANCE; AND, STATE OF OKLAHOMA *ex. rel.*
COMMISSIONER GLEN MULREADY, OKLAHOMA INSURANCE DEPARTMENT;
IN SUPPORT OF PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT**

John C. Keenan
Lead Deputy Attorney General
Attorney General Raúl Labrador
Idaho Department of Insurance
700 W. State Street
Boise, ID 83720
Telephone: (208) 334-4283
Email: john.keenan@doi.idaho.gov
ISB No. 3873

Ole Olson
Chief Legal Counsel
Montana Commissioner of
 Securities and Insurance
840 Helena Ave.
Helena, MT 59601
Telephone: 406-444-1295
Email: oolson@mt.gov

J.E. Cullens, Jr., La. Bar No. 23011
Walters, Thomas, Cullens, LLC
Louisiana Department of Insurance
12345 Perkins Road, Building 1
Baton Rouge, Louisiana 70810
cullens@lawbr.net
Tel: 225.236.3636
Fax: 225.236.3650
Link: Walters, Thomas, Cullens, LLC

Kimberly C. Hunter
General Counsel
Oklahoma Insurance Department
400 NE 50th St.
Oklahoma City, OK 73105
Telephone: (405)522-6335
Email: kim.hunter@oid.ok.gov

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ............................................................................................. 1

II.  SUMMARY OF ARGUMENT ....................................................................... 1

III.  ARGUMENT .................................................................................................. 2

    A.  McCarran-Ferguson Act – 15 U.S.C. § 1011 ......................................... 3

    B.  Preemption and related issues. ............................................................... 4

    C.  The States .............................................................................................. 5

        i.  Primary Authority. ......................................................................... 10

        ii. HUD's Disparate Impact Rule is Arbitrary and Capricious; and it interferes with the historical Constitutional balance between the States and the Federal Government in the regulation of insurance. ................................................................. 11

    D.  Conclusion ............................................................................................ 14

# TABLE OF AUTHORITIES

## Cases

*Beker Industries Inc. v. Georgetown Irr. Dist.*
    101 Idaho 187, 191, 610 P.2d 546 (1980) ........................................................ 14
*Doe v. Mutual of Omaha Ins. Co.*
    179 F.3d 557 (1999) ............................................................................................ 6
*Gonzales v. Oregon*
    546 U.S. 243 (2006) ..................................................................................... 11, 14
*Group Life & Health Ins. Co. v. Royal Drug Co.*
    440 U.S. 205, 99 S.Ct. (1979) ........................................................................... 3
*Humana Inc. v. Forsyth*
    525 U.S. 299, 307, 119 S.Ct. 710 (1999) ................................... 4, 5, 6, 7, 10
*Metropolitan Life Ins. Co. v. Massachusetts*
    471 U.S. 724, 744, n. 21 ..................................................................................... 4
*N.A.A.C.P. v. American Family Mut. Ins. Co.*
    978 F. 2d 287 (1992) ....................................................................................... 5, 6
*Ojo v. Farmers Group, Inc.*
    356 S.W.3d 421 (Texas 2011) ........................................................................ 6, 7
*Pena v. Viking Ins. Co. of Wisconsin*
    169 Idaho 730, 737, 503 P.3d 201 (2022) ...................................................... 5
*Peters v. Hobby*
    349 U.S. 331 (1955) ......................................................................................... 14
*Texas Dept. of Housing and Community Affairs v. Inclusive Communities Projects, Inc.*
    576 U.S. 519, 454, 135 S.Ct. 2507 (2015) ...................................................... 2
*U.S. v. South-Eastern Underwriters Assn.*
    322 U.S. 533, 552-553, 64 S.Ct. 1162 (1944) ................................................ 3
*Vincent v. Safeco Ins. Co. of America*
    136 Idaho 107, 109, 29 P.3d (2001) ................................................................ 5

## Statutes

15 U.S.C. § 1011 ........................................................................................................ 1,3
15 U.S.C. § 1012(a) ...................................................................................................... 4
15 U.S.C. § 1012(b) .............................................................................................. 6, 8, 10
29 U.S.C. § 1001 .......................................................................................................... 4
42 U.S.C. § 3604(b) ...................................................................................................... 2
42 U.S.C. § 3605(a) ...................................................................................................... 2
88 F.R. 19450 (March 31, 2023) ...................................................................... 1, 3, 13
88 F.R. 19500 ................................................................................................... 2, 9, 12
Idaho Code § 41-1405(1) .............................................................................................. 8
Idaho Code § 41-1415 ................................................................................................... 8

Idaho Code § 41-1437 ................................................................................................ 8

Idaho Code § 41-1813 ................................................................................................ 8

U.S. Const. art. 1, § 8, cl. 3 ...................................................................................... 3

Montana Code Ann. § 33-16-2001(1)(a) ................................................................. 8

Montana Code Ann. § 33-16-2001(2)(a) ................................................................. 8

Montana Code Ann. § 33-16-203 ............................................................................. 8

Oklahoma Statutes Ann. Title 36 §§ 902, 985, 987 ............................................... 8

## **Other Authorities**

E.O. 13132, § 1. (a) ................................................................................................. 11

E.O. 13132, § 2. (a) ................................................................................................. 11

E.O. 13132, § 6. (c) ................................................................................................. 13

## I.    INTRODUCTION

The *amici,* Director Dean L. Cameron of the Idaho Department of Insurance; Commissioner Troy Downing, Commissioner of Securities and Insurance, Office of Montana State Auditor; Commissioner James J. Donelon of the Louisiana Department of Insurance; and Commissioner Glen Mulready of the Oklahoma Insurance Department; are authorized under their respective State constitutions and laws to regulate and tax the business of insurance within States. As such, they can offer a state-level view of insurance regulation and a clear perspective as to the U.S. Department of Housing and Urban Development's ("HUD") Disparate Impact Rule and its bearing upon State regulation and governance of the insurance industry. *See,* Reinstatement of HUD's Discriminatory Effects Standard, 88 F.R. 19450 (Friday, March 31, 2023 (effective May 1, 2023)).

## II.    SUMMARY OF ARGUMENT

The Disparate Impact Rule promulgated by HUD establishes, in part, anti-discrimination standards for residential real estate-related transactions. The Rule allows a petitioner to bring an action in federal district court against a property insurer for any practice or act by the insurer that has a disparate impact against certain classes of people, even if not motivated by a discriminatory intent.

A property insurer is tasked with ratemaking and risk assessment to determine property insurance rates based on State-regulated rating factors and sound actuarial principles, inclusive of risks unique to each respective jurisdiction. HUD's Disparate Impact Rule will directly impact the property insurance market, which is already subject to State law. The question arises whether the Disparate Impact Rule conflicts with State regulation and is preempted under the McCarran-Ferguson Act, 15 U.S.C. § 1011.

Congress passed McCarran-Ferguson as a form of reverse preemption of federal intrusion in State-level regulation of the business of insurance. HUD's Disparate Impact Rule would have a direct

and intrusive effect on State regulation of insurers when determining risk assessment and setting rates. HUD's Rule is preempted under McCarran-Ferguson.

HUD should have consulted with the various States to assess the federalism implications of the Disparate Impact Rule on State regulation of insurance. Under Executive Order No. 13132, a federal agency is required to consult with the States where there are federal implications. HUD baldly denies that the Disparate Impact Rule has any federalism implications. It is arbitrary and capricious for HUD to utterly disregard the impact of its rulemaking on State regulation of insurance.

## III. ARGUMENT

The Federal Housing Act ("FHA") prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). It is also unlawful under the FHA for any person

> …engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin. . . . [A]s used in this section, the term "residential real estate-related transaction" means any of the following:  (1) The making or purchasing of loans or providing other financial assistance— (A) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or (B) secured by residential real estate. (2)  The selling, brokering, or appraising of residential real property.

42 U.S.C. § 3605(a) and (b).  Even where a practice is not motivated by a discriminatory intent, the Disparate Impact Rule provides:

> A practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin.

88 F.R. 19500 (Friday, March 31, 2023).  A disparate-impact discrimination claim is a recognized, actionable claim under the FHA.  *Texas Dept. of Housing and Community Affairs v. Inclusive Communities Projects, Inc.*, 576 U.S. 519, 454, 135 S.Ct. 2507, 2525 (2015). Nevertheless, a disparate impact claim is

subject to important limitations. *Id.*, at 522, 543-544, 135 S.Ct. at 2512, 2524. It is necessary to consider the lawful bearing of such a claim under the McCarran-Ferguson Act.

The present controversy is whether the Disparate Impact Rule, as promulgated at 88 F.R. 19450 (March 31, 2023) and applied to homeowners insurance, is preempted under the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq*, and whether HUD was arbitrary and capricious in failing to consider the preemption issue under the McCarran-Ferguson Act and federalism implications.

### A. McCarran-Ferguson Act – 15 U.S.C. § 1011.

In the mid-1940s, the United States Supreme Court held that the business of insurance is subject to the Commerce Clause of the United States Constitution, under the regulatory power of the Congress. U.S. Const. art. 1, § 8, cl. 3. *See, U.S. v. South-Eastern Underwriters Assn.,* 322 U.S. 533, 552-553, 64 S.Ct. 1162, 1173 (1944). The Commerce power under the U.S. Constitution "is vested in the Congress, available to be exercised for the national welfare as Congress shall deem necessary." *Id.*

"The primary concern of Congress in the wake of [the *U.S. v. South-Eastern Underwriters Assn.*] decision was in enacting legislation that would ensure that the States would continue to have the ability to tax and regulate the business of insurance." *Group Life & Health Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067 (1979). Predictably, in 1945, Congress exercised its Commerce Clause authority by deferring insurance regulation to the States by passing the McCarran-Ferguson Act ("McCarran-Ferguson") and

> …declar[ing] that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States.

15 U.S.C. § 1011. The legislative history of the McCarran-Ferguson Act "strongly suggest[s] that Congress understood the business of insurance to be the underwriting and spreading of risk." *Group Life,* 440 U.S. at 205, 99 S.Ct. at 1076. Congress intentionally deferred insurance and rate regulation

to the States and, as noted by the Court, was "willing to permit actual regulation of rates by affirmative action of the States." *Id.*, 440 U.S. at 224, 99 S.Ct. at 1079-1080.

The policy of Congress is clear: under McCarran-Ferguson, "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). This principle is reflected in the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* which was also "designed to preserve the McCarran-Ferguson Act's reservation of the business of insurance to the States." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 744, n. 21. Congress noted with clarity its reverse-preemption rule:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance: Provided, that . . . the Sherman Act [Anti-Trust], . . . the Clayton Act [Anti-Trust], . . . the Federal Trade Commission Act, . . . shall be applicable to the business of insurance to the extent *that such business is not regulated by State law.*

15 U.S.C. § 1012(b) (*italics here*).

**B. Preemption and related issues.**

"The McCarran-Ferguson Act [ ] precludes application of a federal statute in face of state law 'enacted … for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat(e) to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." *Humana Inc. v. Forsyth*, 525 U.S. 299, 307, 119 S.Ct. 710, 716 (1999). The issue in the present case is one of reverse preemption: Is the Disparate Impact Rule preempted by the McCarran-Ferguson Act? Stated another way, does the Disparate Impact Rule directly conflict with State regulation, frustrate any declared State policy, or interfere with a State's administrative regime? *Id.*, 525 U.S. 299, 310, 119 S.Ct. 710, 713 (1999).

4

### C. The States

At the heart of the McCarran-Ferguson preemption question is whether the Disparate Impact Rule, which does not specifically relate to the business of insurance, will "invalidate, impair, or supersede" Idaho's laws or rules regulating the business of insurance when applied to risk-based pricing and underwriting. *Humana*, 525 U.S. at 307. Idaho law makes clear that the answer is yes.

"Underwriting is [ ] the process by which insurance companies determine whether the risk assumed is worth the premium received." *Vincent v. Safeco Ins. Co. of America*, 136 Idaho 107, 109, 29 P.3d 943 (2001), *abrogated on other grounds*, *Pena v. Viking Ins. Co. of Wisconsin*, 169 Idaho 730, 737, 503 P.3d 201, 207 (2022)). In fact, the setting of rates is the very business of insurance. *Group Life*, 440 U.S. at 224, n 32.

Risk-based pricing, another component of underwriting, "involves 'identify[ing] relationships between factors and risk of loss and allocat[ing] costs accordingly.'" *Property Casualty Insurers Assn of America v Donovan*, 66 F.Supp.3d 1018, 1050 (2014). As noted by HUD in its rulemaking process, some commentators remarked that "the foundation of the business of insurance is the ability to classify insurance policyholders by risk and that insurers make decisions based on actuarial and business principles that group policyholders for the purpose of treating those with similar risk profiles similarly." 88 F.R. 19466. "Insurance works best when the risks in the pool have similar characteristics." *N.A.A.C.P. v. American Family Mut. Ins. Co.*, 978 F. 2d 287, 290 (7th Cir. 1992) ("For example, term life insurance costs substantially more per dollar of death benefit for someone 65 years old than for one 25 years old, although the expected return per dollar of premium is the same to both groups because the older person, who pays more, also has a higher probability of dying during the term."). Further, risk-based pricing allows insurers to set premiums based on the risk assumed and to tailor policies and prices to the potential customers. The effect is to lower premiums as well as to expand coverage to more policyholders.

The crux of the issue is the McCarran-Ferguson reverse preemption standard. The standard mandates that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). "Direct conflict with state law is not required to trigger this prohibition; it is enough if the interpretation would 'interfere with a State's administrative regime.'" *Doe v. Mutual of Omaha Ins. Co.*, 179 F.3d 557 (7th Cir. 1999) (quoting *Humana*, 525 U.S. at 301).

HUD's Disparate Impact Rule provides the "illustrations of unlawful housing discrimination in this [Part 100, Subpart A] may be established by a practice's discriminatory effect, even if not motivated by discriminatory intent. . .." 88 F.R. at 19500. The HUD standard also provides that liability may be established under the Disparate Impact Rule

> … based on a practice's discriminatory effect, as defined in paragraph (a) of this section, even if the practice was not motivated by a discriminatory intent.. . . A practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin.

88 F.R. at 19500. The application of the Disparate-Impact Rule will inject the "federal courts into the heart of the regulation of the insurance business by the [various States,]" that will interfere with the State's administrative regime. *Mutual of Omaha*, 179 F.3d at 564.

Under the McCarran-Ferguson Act, "state law reverse-preempts a federal statute if: '(1) the federal law does not specifically relate to insurance; (2) the state law is enacted for the purpose of regulating insurance; and (3) the application of federal law to the case might invalidate, impair, or supersede the state law." *Ojo*, 356 S.W.3d at 424.

The first two requirements of McCarran-Ferguson reverse preemption are easily met. First, with respect to the above reverse-preemption standard, the Federal Housing Act does not specifically relate to insurance. *N.A.A.C.P.*, 978 F.2d at 295; *Ojo*, 356, S.W.3d at 424. Second, Idaho has indeed

6

established title 41, Idaho Code, for the purpose of regulating insurance, ratemaking and actuarial standards. Likewise, this is true of the States of Louisiana, Montana, and Oklahoma. *See, below.*

The question under the third prong of the analysis is whether the application of the Disparate-Impact Rule might invalidate, impair, or supersede Idaho law. *Ojo,* S.W.3d at 424. Because the Disparate Impact Rule unquestionably impairs Idaho law, its application to risk-based pricing and underwriting would violate the McCarran-Ferguson Act.

To "invalidate" a state law, "ordinarily means 'to render ineffective, generally without providing a replacement rule or law." *Humana*, 525 U.S. at 716. The term "'supersede' ordinarily means to displace (and thus render ineffective) while providing a substitute rule." *Id.* The dictionary definition of "'impair' is to "weaken, to make worse, to lessen in power, diminish, or relax, or otherwise affect in an injurious manner." *Id.* at 717 (citing Black's Law Dictionary 752 (6th ed. 1990)).

Explaining further, the U.S. Supreme Court in *Humana* stated that the "[f]ollowing formulation seems to [the Court] to capture that meaning and to construe, most sensibly the text of [15 U.S.C. § 1012(b)]: When federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." *Id.*

Idaho's statutory scheme as to property insurance includes ratemaking, prohibition against unfair discrimination, and establishment of an objective procedure to determine rates. *See,* chapter 14, title 41, Idaho Code. The HUD Disparate Impact Rule adds an additional administrative burden on the States of Idaho, Louisiana, Montana, and Oklahoma, and other states. It ultimately impairs and diminishes the States regulatory authority, contrary to the McCarran-Ferguson Act.

The State of Idaho has developed sound actuarial standards in the ratemaking process. Under Idaho law, property insurance rates cannot be based on unfair discrimination, and the law establishes a process standard by which ratemaking is set. *See,* generally, chapter 14, title 41, Idaho Code.

Idaho law prohibits property insurance rates that are "excessive, inadequate or unfairly discriminatory." Idaho Code § 41-1405(1). Further, the Idaho Department of Insurance director "shall disapprove any [policy] form filed [under the law], or withdraw any previous approval thereof," if, among other grounds, the form is in violation of title 41, Idaho Code, or the policy contains any provision that is "unfairly prejudicial to the policy holder." Idaho Code § 41-1813.

The Idaho Insurance Code also provides for the licensing and regulation of rating organizations. *See* Idaho Code § 41-1415. In addition to prohibiting unfairly discriminatory property insurance rates, Idaho law regulates underwriting by establishing ratemaking standards and use of rates, providing in part:

> … due consideration shall be given to past and prospective loss experience within and outside this state, to the conflagration and catastrophe hazards, to a reasonable margin for underwriting profit and contingencies, to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policy holders, members or subscribers, to past and prospective expenses both countrywide and those specifically applicable to this state, and to all other relevant factors, including judgment factors, within and outside this state; and in the case of fire insurance rates, consideration shall be given to the experience of the fire insurance business during a period of not less than the most recent five (5) year period for which such experience is available.

Idaho Code § 41-1437(1). Ratemaking is a key component of underwriting.

The State of Louisiana insurance code provides for expansive standards for unfair discrimination, ratemaking, and provides for risk-based pricing, and laws relating to rate filing and review of rates. *See,* La. Rev. Stat. Ann. §§ 22:34; 22:1451; 22:1454(A), (B)(1)(2); and 22:1964. Also, the laws of the State of Montana provide for ratemaking, including risk-based pricing, a prohibition on unfair discrimination, and a requirement of rating filing and review. *See,* Mont. Code. Ann. §§ 33-16-201(1)(a), (2)(a); 33-16-203. Finally, the State of Oklahoma provides extensive standards for unfair discrimination, as well as ratemaking, risk-based pricing, filing and review of rates. *See,* Okla. Stat. Ann. Tit. 36, §§ 902, 985, and 987.

8

The several States have the laws, the history, the regulations, and the expertise to balance the concerns relating to ratemaking, underwriting, and unfair discrimination, and to reconcile all the concerns. Under the McCarran-Ferguson Act, the federal reverse preemption looks to the States as the proper forum for insurance and risk regulation and unfair discrimination.

The Disparate Impact Rule would make the proper venue for a claim challenging risk-based insurance practices a federal district court, where "[l]iability may be established under the [FHA] based on a practice's discriminatory effect, . . . even if the practice was not motivated by a discriminatory intent." 88 F.R. at 19500. The party claiming discrimination "has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect." *Id.* At that point, directly where the federal court would step into the shoes of the decision-making authority of the State insurance regulator, the burden shifts to the insurer to show "that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests of the respondent or defendant." *Id.* In other words, the insurer must demonstrate to a federal court—as it does to the State insurance regulator—that the practice in question is actuarially sound. If the insurer meets the burden, it will still be held liable if the plaintiff can show "that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice should be served by another practice that has less discriminatory effect." *Id.*

This burden-shifting framework, as described by the Disparate-Impact Rule at 88 F.R. 19500, considers only the Rule and ultimately replaces, ignores, and conflicts with the State insurance regulator's ratemaking and coverage legal standards. After all, "State regulation of insurance is comprehensive and includes rate and coverage issues[.]" *Mutual of Omaha*, 179 F.3d at 564.

"The case for preemption is strongest where the federal law requires courts to make judgments that are usually made by state insurance regulators." *Not-So-Sudden Impact: Insurers Face New Breed of Fair Housing Act Claim*, p. 8, 11 No. 22 Westlaw Journal Insurance Bad Faith, (2016 Robert D. Helfand, Esq.). The Disparate Impact Rule would have precisely that effect. In the end, if permitted, a local

federal court that hears a disparate-impact claim under HUD's new rule will step into the shoes of Idaho's insurance regulator and "interfere[ ] with a State's administrative regime[,]" effectively depriving the Idaho regulator of its mission to regulate property insurance ratemaking and the application of unfair discrimination standards. *Mutual of Omaha*, 179 F.3d at 563 (quoting *Humana*, 525 U.S. at 310).

This foregoing matter is at the very core of the McCarran-Ferguson Act reverse preemption. Whereas in this case, federal law directly conflicts with state regulation; frustrates the declared policy of rate and coverage regulation, as well as unfair discrimination enforcement; and interferes with the State regulatory scheme, the McCarran-Ferguson Act preempts enforcement of HUD's Disparate-Impact Rule. *Humana*, 525 U.S. at 717

### i. Primary Authority.

The primary authority of state-level insurance regulation is recognized under the McCarran-Ferguson Act. Insurance regulation in each State in the Union presents its unique challenges. As surely as Louisiana and the South generally deal with hurricanes and coastal floods; Montana faces forest and range fires, flash flooding, and natural disasters; Oklahoma faces tornadoes and storms; and, the State of Idaho must face the risk of forest fires, earthquakes, and flash-flooding; the several States must deal with the uniqueness of the respective risks. The variety of risk exposures among the States drives the premium that provides coverage against such risks. Exposure to particular risk types may lead to lower or higher rates, regardless of the race, color, creed or ethnicity of those impacted by the rates. These are the underwriting, risk determination, and ratemaking standards that the several States are distinctly equipped to regulate under their actuarial and regulatory standards. The HUD Disparate Impact Rule is in direct conflict with the State's primary authority to regulate the business of insurance; therefore, the Disparate Impact Rule should be preempted under the McCarran-Ferguson Act.

### ii. HUD's Disparate Impact Rule is Arbitrary and Capricious; and it interferes with the historical Constitutional balance between the States and the Federal Government in the regulation of insurance.

As described above, HUD's Disparate Impact Rule interferes with the State regulation of insurance inclusive of ratemaking, risk-based pricing, and actuarial soundness of insurers, contrary to McCarran-Ferguson, which mandates that no congressional act unrelated to the business of insurance shall be construed to "invalidate, impair, or supersede any law enacted by any State." 15 U.S.C. § 1012(b). McCarran-Ferguson recognizes the principle of federalism and the historical role the States retain in insurance regulation, necessary to uphold the "constitutional balance between the States and the Federal Government." *See, Gonzales v. Oregon,* 546 U.S. 243, 255 (2006).

In the McCarran-Ferguson Act, the Congress set the boundaries of federal law and rules, by limiting the powers of the executive agencies and the courts in applying or interpreting federal law, rules or policies relating to State regulation of insurance. *See,* 15 U.S.C. § 1012(b).

In addition, Executive Order ("E.O.") 13132, § 2. (a) ("Federalism") (August 4, 1999 (William J. Clinton)) raises the issue of "federalism implications" in rulemaking. E.O. 13132 explains that the term "[p]olicies that have federalism implications" refers to:

> … regulations, legislative comments or proposed legislation, and other policy statements or actions that have substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government.

E.O. 13132, § 1. (a). As noted above, the Disparate Impact Rule implicates state regulation of insurance and the reverse preemption under the McCarran-Ferguson Act.

The use of a regulation, in this case the Disparate Impact Rule, to impair and step into the shoes of the insurance regulators of the several States—clearly preempted under McCarran-Ferguson—violates the principle of federalism, which is "rooted in the belief that issues that are not national in scope or significance are most appropriately addressed by the level of government closest to the people." E.O. 13132, § 2. (a) ("Federalism") (August 4, 1999 (William J. Clinton)) ("The national

11

government should be deferential to the States when taking action that affects the policymaking discretion of the States….." *Id.,* 2. (l)).

When HUD promulgated the Disparate Impact Rule, the agency denies any "federalism implications" stating that the E.O.

> … prohibits an agency from publishing any rule that has federalism implications if the rule either: (i) imposes substantial direct compliance costs on state and local governments and is not required by statute, or (ii) preempts state law, unless the agency meets the consultation and funding requirements of section 6 of the Executive Order. <u>This rule does not have federalism implications and does not impose substantial direct compliance costs on state and local governments or preempt state law within the meaning of the Executive Order.</u>

88 F.R. 19500 (*underscore here*). In another section of its rulemaking, HUD states, "HUD stands by its certification that this rule—like the 2013 Rule it recodifies and the 2020 Rule it rescinds—does not have federalism implications." 88 F.R. 19497.

By the foregoing creative pronouncements, HUD simply ignores federalism issues at the very heart of this controversy. HUD's arbitrary statements bely the standards set forth in Executive Order 13132, quoted by HUD in its rulemaking.

The States believe HUD's actions herein are arbitrary and capricious. In the normal course

> …an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856 (1983). HUD's repeated bald explanation that the Disparate Impact Rule does not have federalism implications, does not satisfy its duty to have reviewed the federalism implications. *See, City and County of San Francisco v. United States Citizenship and Immigration Services,* 981 F.3d 742, 759 (9th Cir. 2020).

First, when faced with the challenge of HUD's Disparate Impact Rule and its impact on State regulation of insurance, this is not a frivolous controversy, but one bound up in the nature and

meaning of federalism principles, contemplated by Congress when enacting the McCarran-Ferguson Act.

Second, HUD did not follow the procedure set out in the E.O. 13132. The E.O. states in part:

> (c) To the extent practicable and permitted by law, no agency shall promulgate any regulation that has federalism implications and that preempts State law, unless the agency, prior to the formal promulgation of the regulation, (1) consulted with State and local officials early in the process of developing the proposed regulation[.].

E.O. 13132, § 6. (c). In sum, the Executive Order requires that, where a proposed regulation involves federalism implications and preempts State law, HUD shall consult with State and local officials early in the process of developing the regulation. The record is void that HUD consulted with the States of Idaho, Louisiana, Montana, or Oklahoma, or other State regulators or provided in its rulemaking a summary of the nature of the States' concerns, including whether such concerns have been met.

The E.O. also provides that the agency shall,

> (2) in a separately identified portion of the preamble to the regulation as it is to be issued in the Federal Register, provides to the Director of the Office of Management and Budget a federalism summary impact statement, which consists of a description of the extent of the agency's prior consultation with State and local officials, a summary of the nature of their concerns and the agency's position supporting the need to issue the regulation, and a statement of the extent to which the concerns of State and local officials have been met[.]

*Id.* HUD promulgated its Disparate Impact Rule at 88 F.R. 19450, wherein HUD merely denies any federalism implications. 88, F.R. 19497, 19500. If HUD's statements were true in view of the current and past litigation on the issue, this current controversy may not have occurred.

E.O. 13132 also provides that HUD should make

> …available to the Director of the Office of Management and Budget any written communications submitted to the agency by State and local officials.

*Id.* There is no record in the Federal Register that HUD made available to the Office of Management and Budget any written communications submitted to HUD from State regulators.

13

The States believe that HUD's Disparate Impact Rule will directly impact State regulators, insurers, and the regulation of insurance, as to ratemaking, risk-based pricing, and coverage of property insurance. The federalism implication of this regulation is obvious, and these procedures under the E.O. should have been followed in accordance with E.O. 13132 § 6 (c). "Agencies, whether created by statute or Executive Order, must of course be free to give reasonable scope to the terms conferring their authority. But they are not free to ignore plain limitations on that authority." *Peters v. Hobby*, 349 U.S. 331, 345 (1955). *See, also, Beker Industries Inc. v. Georgetown Irr. Dist.,* 101 Idaho 187, 191, 610 P.2d 546, 551 (1980).

It was incumbent upon HUD to consult with the State regulators about the federalism implications of its Rule.

### D. Conclusion

In the end, HUD's Rule will impact State regulation of insurance, a power traditionally and historically reserved to the several States. Permitting HUD to step into the States' role as to insurance regulation of underwriting, ratemaking and risk management is granting to HUD an "obscure grant of authority" rejected under *Gonzales v. Oregon,* 546 U.S. 243, 274 (2006), and otherwise preempted under McCarran-Ferguson.

RESPECTFULLY submitted this 24th day of August 2023.

           */s/ John C. Keenan*
           John C. Keenan
           Lead Deputy Attorney General
           Attorney General Raúl Labrador
           Idaho Department of Insurance
           700 W. State Street
           Boise, ID 83720
           Telephone: (208) 334-4283
           Email: john.keenan@doi.idaho.gov
           ISB No. 3873

Ole Olson
Chief Legal Counsel
Montana Commissioner of
  Securities and Insurance
840 Helena Ave.
Helena, MT  59601
Telephone: 406-444-1295
Email:  oolson@mt.gov

J.E. Cullens, Jr., La. Bar No. 23011
Walters, Thomas, Cullens, LLC
Louisiana Department of Insurance
12345 Perkins Road, Building 1
Baton Rouge, Louisiana 70810
cullens@lawbr.net
Tel: 225.236.3636
Fax: 225.236.3650
Link: Walters, Thomas, Cullens, LLC

Kimberly C. Hunter
General Counsel
Oklahoma Insurance Department
400 NE 50th St.
Oklahoma City, OK 73105
Telephone: (405)522-6335
Email: kim.hunter@oid.ok.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of August, 2023, I filed the foregoing with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois via the CM/ECF system, which sent notification to counsel of record in this case.

_/s/ John C. Keenan_

John C. Keenan
Idaho Deputy Attorney General
