# ATTACHMENT

IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PROPERTY CASUALTY INSURERS )
ASSOCIATION OF AMERICA, )
                                                    )
            Plaintiff, )
                                                    )
                                                    )   Case No. 1:13-CV-08564
        v. )
                                                    )   Chief Judge Rebecca R. Pallmeyer
                                                    )
MARCIA L. FUDGE, in her official capacity )
as Secretary of Housing and Urban )
Development, and the UNITED STATES )
DEPARTMENT OF HOUSING AND )
URBAN DEVELOPMENT, )
                                                    )
            Defendants. )
                                                    )

**BRIEF OF THE STATES OF ILLINOIS, CALIFORNIA, COLORADO, DELAWARE, HAWAII, MARYLAND, MASSACHUSETTS, MINNESOTA, NEVADA, NEW JERSEY, NEW YORK, NORTH CAROLINA, OREGON, WASHINGTON, AND THE DISTRICT OF COLUMBIA AS *AMICI CURIAE* IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT**

KWAME RAOUL
Attorney General
State of Illinois

JOYCE OZEH ("OTUWA")
ALEXANDRA REED
Assistant Attorneys General
100 W. Randolph St., 11th Floor
Chicago, IL 60601
(773) 771 – 4465

Attorneys for *Amici* States

(*Additional counsel on signature page*)

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

IDENTITY AND INTEREST OF AMICI STATES .........................................................1

BACKGROUND........................................................................................................................2

SUMMARY OF ARGUMENT...............................................................................................6

ARGUMENT ..............................................................................................................................7

I.      Disparate impact claims brought against insurers under the Rule do not categorically conflict with state insurance regulation. ...................................................................8

II.     Case-by-case adjudication of McCarran-Ferguson preemption of disparate impact liability under the Rule is most respectful of states' primacy in insurance regulation. ........11

     A. For states that impose disparate impact liability on the homeowners insurance industry, the Rule will complement, rather than impair, state insurance regulation and policy. ..... 11

     B. In states whose insurance regulations and policy are inconsistent with the Rule, the McCarran-Ferguson Act will preempt the Rule. .........................................................14

CONCLUSION ........................................................................................................................17

i

## TABLE OF AUTHORITIES

**Cases**

*American Deposit Corp. v. Schacht*, 84 F.3d 834 (7th Cir. 1996) ………..………………….... 8

*Atkins v. City of Chicago Comm'n on Human Relations ex rel. Lawrence*, 667 N.E.2d 664 (Ill. App. Ct. 1996) …………………………………………………………..…………… 12

*Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037 (7th Cir. 1998) …………………..……… 13

*Bd. of Trustees of S. Ill. Univ. v. Knight*, 516 N.E.2d 991 (Ill. App. Ct. 1987) …….....……... 12

*Boozell v. United States*, 979 F. Supp. 670 (N.D. Ill. 1997) …………….……………………. 8

*Dawn Equipment Co. v. Micro-Trak Sys., Inc.*, 186 F.3d 981 (7th Cir. 1999)…………....….... 14

*Doe v. Mutual of Omaha*, 179 F.3d 557 (7th Cir. 1999) ………………………......…… 8, 10

*FCC v. Prometheus Radio Project*, 141 S. Ct. 1150 (2021) …………………..………... 16

*Fed. Trade Comm'n v. Travelers Health Ass'n*, 362 U.S. 293 (1960) …………..………… 15

*Filipek v. Oakton Cmty. Coll.*, 312 F. Supp. 3d 693, 700 (N.D. Ill.), *aff'd sub nom.*, *Dayton v. Oakton Cmty. Coll.*, 907 F.3d 460 (7th Cir. 2018) ……………………………………….... 12

*Flores v. United Airlines*, 426 F. Supp. 3d 520 (N.D. Ill. 2019) ……………………………. 8

*Hartford Cas. Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419 (7th Cir. 1990) ………………. 7

*Humana Inc. v. Forsyth*, 525 U.S. 299 (1999) …………………………………….... *passim*

*Huskey v. State Farm Fire & Cas. Co.*, No. 22 C 7014, 2023 WL 5848164 (N.D. Ill. Sept. 11, 2023) ……………………………………………………………………………… 10, 11

*Interstate Material Corp. v. Ill. Human Rights Comm'n*, 654 N.E.2d 713 (Ill. App. Ct. 1995) …………………………………………………………………………………… 12

*Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 496 F. Supp. 3d 600 (D. Mass. 2020) …………………………………………………………………………… 4

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283 (7th Cir. 1977) ………. 2

*NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287 (7th Cir. 1992) …………………….. *passim*

*Ojo v. Farmers Grp.*, 565 F.3d 1175 (9th Cir.), *reh'g en banc granted*, 586 F.3d 1108 (9th Cir.

2009) ……………………………………………………………………………… 15

*Ojo v. Farmers Grp.*, 600 F.3d 1205 (9th Cir. 2010) (per curiam) …………..……………….. 15

*Ojo v. Farmers Grp.*, 356 S.W.3d 421 (Tex. 2011) ……………………………….……….… 15

*People v. R.L.*, 634 N.E.2d 733 (Ill. 1994) ……………………………………………………12

*Peyton v. Dep't of Human Rights*, 700 N.E.2d 451 (Ill. App. Ct. 1998) ……………………... 12

*Property Cas. Insurers Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018 (N.D. Ill. 2014) ……………………………………………………………………………… 4, 7, 10

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) …………………………….……………… 7

*South-Suburban Housing Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868 (7th Cir. 1991) ……………………………………………………………………..…….. 1

*Szkoda v. Ill. Human Rights Comm'n*, 706 N.E.2d 962 (Ill. App. Ct. 1998) …….………….. 12

*Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ……………………………………………………………… 2

*Trafficante v. Metro. Life Ins.*, 409 U.S. 205 (1972) ………………………..……….……. 13

*Turner v. Human Rights Comm'n*, 532 N.E.2d 392 (Ill. App. Ct. 1988) ..………………….. 12

**Federal Statutes**

15 U.S.C. § 1012 …………………….…………………………………………………… 3, 7

42 U.S.C. § 3604 ……...……………………….………………………………………… 2

Pub. L. 90-284, 82 Stat. 81 (1968) ……………………………...……………………… 12

**State Statutes**

775 Ill. Comp. Stat. 5/3-102 ……………………….……………………….………... 12

215 Ill. Comp. Stat. 5/424 ……………………….………………………………... 12

Okla. Stat. Ann. tit. 36, § 985 …………………...…………………………………… 13

Pub. Act 81-1267, 1980 Ill. Laws 247 ……………………...…………………..…………… 12

**Federal Regulations**

24 C.F.R. § 100.70 …………………………………………………………...…... 2, 12

24 C.F.R. § 100.500 …………………………………………………………...……. 6

Application of the Fair Housing Act's Discriminatory Effects Standard to Insurance, 81 Fed. Reg. 69,012 (Oct. 5, 2016) ("2016 Supplement") …………………………………….…… 4

Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11,460 (Feb. 15, 2013) …………………………………………………………………… 3

Reinstatement of HUD's Discriminatory Effects Standard, 88 Fed. Reg. 19,450 (Mar. 31, 2023) …………………………………………………………………………… *passim*

**State Regulations**

50 Ill. Admin. Code § 754.10 …………………………………………………….…... 9

50 Ill. Admin. Code § 754.30 …………………………………………….…..…...……… 9

50 Ill. Admin. Code § 754.40 …………………………………………………….….. 9

**Other Authorities**

Angelo Borselli, *Insurance Rates Regulation in Comparison with Open Competition*, 18 Conn. Ins. L.J. 109 (2011) ……………………………………………………………… 9

## IDENTITY AND INTEREST OF AMICI STATES

The *amici* states of Illinois, California, Colorado, Delaware, Hawaii, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New York, North Carolina, Oregon, Washington, and the District of Columbia submit this brief in support of Defendants the U.S. Department of Housing and Urban Development ("HUD") and Marcia L. Fudge. The *amici* States have a strong commitment to eradicating racial discrimination and segregation in housing. Accessible homeowners insurance is critical to ending housing discrimination and promoting integration because mortgage "lenders are unwilling to provide credit unless the borrower obtains insurance on the house." *NAACP v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 290 (7th Cir. 1992). The Fair Housing Act, ("FHA"), 42 U.S.C. § 3601 *et seq.*, facilitates litigation aimed at "eliminating discrimination in housing and furthering integration in housing." *South-Suburban Housing Ctr. v. Greater S. Suburban Bd. of Realtors*, 935 F.2d 868, 882 (7th Cir. 1991). The FHA's long-settled prohibition of facially neutral but effectively discriminatory housing practices—including those related to insurance—supports the policy goals of the *amici* States.

The *amici* States therefore have a strong interest in preserving HUD's Disparate Impact Rule ("the Rule") under the FHA. The McCarran-Ferguson Act demands respect for state policy choices in insurance regulation. But, as HUD correctly recognized, exempting the entire homeowners insurance industry—or specific practices—from disparate impact liability under the Rule on a nationwide basis, as Plaintiff would have HUD do, would evince no such respect for the policy and regulatory choices of the *amici* States. To the contrary, categorically interpreting the McCarran-Ferguson Act to insulate facially neutral but effectively discriminatory insurance practices from FHA liability on a national level would contravene the

1

*amici* States' commitment to eliminating racial discrimination in housing, including in the homeowners insurance context, by perpetuating entrenched impediments to home ownership for home buyers of protected classes. The existing Rule reasonably—and properly—accounts for state primacy in the insurance industry by leaving McCarran-Ferguson Act reverse preemption to be addressed on a case-by-case basis. Accordingly, the *amici* States urge this Court to reject Plaintiff's novel interpretation of the McCarran-Ferguson Act, deny Plaintiff's renewed motion for summary judgment, and grant Defendants' motion for summary judgment.

## BACKGROUND

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). It thus prohibits "discriminatory denials of insurance, and discriminatory pricing, that effectively preclude ownership of housing because of the race [or other protected characteristic] of the applicant." *NAACP*, 978 F.2d at 301; *accord* 24 C.F.R. § 100.70(d)(4). And even before the U.S. Supreme Court expressly confirmed the validity of disparate impact claims under the FHA in *Texas Department of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015), for decades the Seventh Circuit—along with all other courts of appeals to address the issue—recognized that a violation of the FHA's anti-discrimination provisions could "be established by a showing of discriminatory effect without a showing of discriminatory intent." *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 558 F.2d 1283, 1290 (7th Cir. 1977); *see also Inclusive Communities*, 576 U.S. at 546 (noting "the existence of disparate-impact liability in the substantial majority of the Courts of Appeals for the last several decades").

2

The FHA's prohibition on "discriminatory denials of insurance," of course, must be applied consistent with the McCarran-Ferguson Act, *see NAACP*, 978 F.2d at 293-97, an earlier enacted statute providing that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance," 15 U.S.C. § 1012(b). The McCarran-Ferguson Act thus may preempt some FHA claims, but only if imposing federal liability would effectively "invalidate, impair, or supersede" state insurance law. *NAACP*, 978 F.2d at 295 (quoting 15 U.S.C. § 1012(b)). That does not occur merely because there is "overlap between state and federal law." *Id*. Instead, if the FHA does not directly conflict with state law, the party asserting McCarran-Ferguson reverse preemption needs to show that application of the FHA would either "frustrate" state policy or "interfere" with a state's administrative regime, *Humana Inc. v. Forsyth*, 525 U.S. 299, 310 (1999), in that specific context, bearing in mind that "[d]uplication is not conflict," *NAACP*, 978 F.2d at 295.

Against that settled legal backdrop, in 2013 HUD promulgated the Rule, which formalized the longstanding view that the FHA "prohibit[s] practices with an unjustified discriminatory effect, regardless of whether there was an intent to discriminate." Implementation of the Fair Housing Act's Discriminatory Effects Standard, 78 Fed. Reg. 11,460, 11,460 (Feb. 15, 2013). Despite the fact that HUD did not seek to change the substantive law with this Rule, representatives of the insurance industry objected, arguing during the rulemaking "that application of the disparate impact standard would interfere with state regulation of insurance in violation of the McCarran-Ferguson Act . . . or the common law filed rate doctrine." *Id.* at 11,474 (citation and internal quotation marks omitted).

Over the ten-year course of this litigation, HUD has on numerous occasions taken the opportunity to consider (and reconsider) this and other objections to the Rule. First, at this

3

Court's direction, in October 2016, HUD issued a supplement to its initial rulemaking. *See Application of the Fair Housing Act's Discriminatory Effects Standard to Insurance*, 81 Fed. Reg. 69,012 (Oct. 5, 2016) ("2016 Supplement"). The 2016 Supplement provided additional support for HUD's judgment that a blanket exemption from the Rule for the homeowners insurance industry or any sort of safe harbor for certain insurance practices would be overbroad, inconsistent with the purpose of the FHA, and insufficiently justified by either the filed rate doctrine or the standard set out for McCarran-Ferguson Act preemption in *Humana*—which, as this Court recognized in its 2014 opinion, requires a "case-by-case analysis" of the "particular, allegedly discriminatory practices at issue and the particular insurance regulations and administrative regime of the state in which those practices occurred." *Property Cas. Insurers Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1038 (N.D. Ill. 2014); *see* 2016 Supplement at 69,013-18. Additionally, after announcing in 2018 its intent to reexamine the 2013 Rule, in 2020, HUD finalized a new rule that was enjoined before it ever went into effect. *See Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urban Dev.*, 496 F. Supp. 3d 600, 611-12 (D. Mass. 2020).

Finally, after President Biden ordered HUD to revisit the issue yet again, in 2023, HUD recodified the original 2013 Rule, concluding—this time with a decade of experience under its belt—that the Rule "adequately balances the interests of plaintiffs and defendants and encourages the latter to seek a less discriminatory alternative when a policy or practice causes a discriminatory effect, without imposing an excessive burden on their substantial, legitimate, non-discriminatory interests." Reinstatement of HUD's Discriminatory Effects Standard, 88 Fed. Reg. 19,450, 19,454-55 (Mar. 31, 2023). In making the determination to recodify the 2013 Rule, HUD thoroughly addressed, again, the reasons for its conclusion that neither the McCarran-Ferguson Act nor the filed rate doctrine warranted creating exemptions or safe

4

harbors for the homeowners insurance industry. *Id.* at 19,463-69, 19,473-80.

In its renewed motion for summary judgment, Plaintiff continues to assert that the Rule impairs, invalidates, or supersedes the law of "every State" when it comes to risk-based pricing and underwriting of homeowners insurance. Pl.'s Mem. Supp. Summ. J. 8, ECF No. 283. According to Plaintiff, HUD's repeated rejection of that premise constitutes a failure to "meaningfully evaluate the inherent conflict between the Rule and the McCarran-Ferguson Act and the filed-rate doctrine" in violation of the Administrative Procedure Act. *Id.* at 7. The Departments of Insurance of Idaho, Montana, Louisiana, and Oklahoma have filed an amicus brief in support of Plaintiff on the McCarran-Ferguson issue, arguing that the Rule necessarily interferes with state regulation of the insurance industry by authorizing federal courts to "step into the shoes" of state regulators, thereby "depriving" them of their "mission to regulate property insurance ratemaking and the application of unfair discrimination standards." Idaho et al. Amicus Br. 10, ECF No. 292.

As HUD has explained, however, insurance laws and regulations vary from state to state in their substance and application, and state regulatory schemes and insurance practices, including ratemaking, are also "not governed solely by hermetically sealed state insurance codes"—they "are also governed by a range of other state laws, including state fair housing laws." 88 Fed. Reg. at 19,475 (internal quotation marks and citation omitted). In many cases, these state fair housing laws mirror the FHA, both in its applicability to insurance and its recognition of disparate impact liability. *Id.* Accordingly, in states like Illinois where, far from conflicting with state law and policy or interfering with the overall insurance regulatory scheme, the Rule actually complements and bolsters that regulatory scheme, McCarran-Ferguson preemption is inapposite.

## SUMMARY OF ARGUMENT

It was not arbitrary or capricious for HUD to conclude—more than once—that potential conflicts between the Rule and the McCarran-Ferguson Act are best addressed on a case-by-case basis.[1] As Defendants explain in their memorandum in support of their motion for summary judgment, a proper McCarran-Ferguson Act analysis is necessarily "fact-intensive," requiring consideration of "numerous variables, including the particular insurance practice challenged, the type of disparate-impact claim asserted, the particular relief sought, and the state in which the claim is brought, including the state's insurance regulations, as well as other state laws and policies." Defs.' Mem. Supp. Summ. J. 27-28, ECF No. 296. In this filing, *amici* seek to underscore that HUD's decision under the challenged Rule to address McCarran-Ferguson preemption on a case-by-case basis best captures the spirit of the McCarran-Ferguson Act by leaving intact the states' status as the primary source of insurance regulation.

By interpreting the FHA to prohibit housing practices—including insurance practices—that, despite lacking any legitimate business justification, have a disproportionately adverse impact "on a group of persons . . . because of race, color, religion, sex, handicap, familial status, or national origin," 24 C.F.R. § 100.500(a), the Rule is not only consistent with longstanding case law, see *supra* at 2, but also complements state anti-discrimination laws and policies that extend to the homeowners insurance industry in states like Illinois. Indeed, as HUD has explained, "[m]any state fair housing laws track the Act's applicability to insurance and provision of effects liability, indicating that those states do not consider disparate impact liability

---

[1] HUD reached the same reasonable conclusion with respect to the filed-rate doctrine. Much like a McCarran-Ferguson preemption analysis, "[a] filed-rate doctrine defense requires an examination of the facts in context of the laws and ratemaking structure at issue," both of which vary from state to state. 88 Fed. Reg. at 19,478; *see also* ACLU et al. Amicus Br. 21-25, ECF. No. 301. In the interest of avoiding duplication, *amici* focus here on HUD's treatment of McCarran-Ferguson preemption, leaving a more detailed discussion of the filed-rate doctrine to the parties and other *amici*.

to conflict with the nature of insurance." 88 Fed. Reg. at 19,475. In such states, the availability of disparate impact liability under federal law actually enhances the effectiveness of existing state laws and supports state policy, making McCarran-Ferguson preemption not only unwarranted, but also unwelcome.

It may well be that, in some other states, disparate impact liability under the FHA cannot be applied to the insurance industry. It is likewise possible that certain claims brought under the Rule will be barred by McCarran-Ferguson because they conflict with a "particular" state insurance law or administrative scheme. *Property Cas. Insurers Ass'n of Am.*, 66 F. Supp. 3d at 1038. But that depends entirely upon individual state policy and regulatory choices, which by their very nature cannot be adjudicated definitively on a nationwide basis. Because there is no automatic, across-the-board conflict or interference between state regulation of the insurance industry and disparate impact liability under the FHA, it was entirely rational—and, indeed, most consistent with the spirit of the McCarran-Ferguson Act—for HUD to leave such preemption determinations to be made on a case-by-case basis.

## ARGUMENT

"States, as a matter of tradition and express federal consent, have an important interest in maintaining precise and detailed regulatory schemes for the insurance industry." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 733 (1996) (Kennedy, J., concurring). For that reason, the McCarran-Ferguson Act vests the states with "primary responsibility for regulating the insurance industry." *Hartford Cas. Ins. Co. v. Borg-Warner Corp.*, 913 F.2d 419, 426 (7th Cir. 1990). The McCarran-Ferguson Act establishes that where a federal law of general application would "invalidate, impair, or supersede" state insurance law, the federal law is preempted in that state. 15 U.S.C. § 1012(b). Accordingly, federal courts correctly have affirmed the primacy of state

laws regulating insurance not only when the relevant federal and state laws are in direct conflict, but also when a specific claim brought under a federal statute would interfere with the state's administrative regime by requiring the court to step into the shoes of state regulators and evaluate the defendant's compliance with certain aspects of that regime. *See, e.g.*, *American Deposit Corp. v. Schacht*, 84 F.3d 834, 844 (7th Cir. 1996) (applying the McCarran-Ferguson Act to affirm Illinois's ability to regulate the sale of a specific insurance-related investment product in the face of a conflicting provision of the National Banking Act); *Flores v. United Airlines*, 426 F. Supp. 3d 520, 538 (N.D. Ill. 2019) (finding McCarran-Ferguson preemption where plaintiff's RICO claim would require the court to evaluate defendant's compliance with specific state insurance regulations); *Boozell v. United States*, 979 F. Supp. 670, 675-79 (N.D. Ill. 1997) (applying the McCarran-Ferguson Act to affirm primacy of Illinois's insurance liquidation priority statute over conflicting federal priority statute).

At the same time, even though "[s]tate regulation of insurance is comprehensive and includes rate and coverage issues," *Doe v. Mutual of Omaha*, 179 F.3d 557, 564 (7th Cir. 1999), the Supreme Court has "reject[ed] any suggestion that Congress intended to cede the field of insurance regulation to the States." *Humana*, 525 U.S. at 308-09. Instead, "[w]hen federal law does not directly conflict with state regulation, and when application of the federal law would not frustrate any declared state policy or interfere with a State's administrative regime, the McCarran-Ferguson Act does not preclude its application." *Id*. at 310.

## I.   Disparate impact claims brought against insurers under the Rule do not categorically conflict with state insurance regulation.

HUD not only reasonably, but correctly, concluded that federal disparate impact liability does not necessarily invalidate, impair, or supersede the insurance regulatory regimes of all 50

states. Notwithstanding Idaho *amici*'s suggestion to the contrary, the Rule does not require federal courts or HUD "to step into the States' role as to insurance regulation of underwriting, ratemaking and risk management." Idaho et al. Amicus Br. 14, ECF No. 292. Nor does it inherently interfere with any and all state-level regulatory schemes that "provide[] for state administrative review of insurance rates." Pl.'s Mem. 8, ECF No. 283. The Rule does not dictate the specifics of risk-assessment, pricing, or underwriting, which remain the purview of the state; it merely provides a framework for determining disparate impact liability.

State regulatory oversight of risk-based pricing and underwriting does not necessarily amount to state regulation or endorsement of every possible component of those ratemaking practices. States vary in the way they review and regulate the methodology for setting insurance rates. *See* Angelo Borselli, *Insurance Rates Regulation in Comparison with Open Competition*, 18 Conn. Ins. L.J. 109, 126 (2011). These regulatory approaches range in scrutiny from the "prior approval" system, which requires insurers "to file the rates and wait for the approval by the insurance commissioner before using them," to the "no file system," which provides that "rates do not need to be filed with or approved by the state insurance commissioner." *Id*. at 126-27. Illinois, for example, is a "use and file" state, meaning that "rates must be filed with the insurance commissioner within a specified period of time after their first use." *Id*. at 126; *see* 50 Ill. Admin. Code § 754.10(a)(2), 754.40(a) (homeowners insurance rates must be filed "no later than 10 days after their stated effective date"). Moreover, insurers are always not required to disclose all of their actuarial judgments and underwriting decisions with state regulators. *See, e.g.*, 50 Ill. Admin. Code § 754.30(a) ("A company is not required to file under Section 754.10 for individual risks in this State which that cannot be rated in the normal course of business rating because of special or unusual characteristics and that must be rated on the basis of

9

underwriting judgment.").

In the homeowners insurance context, therefore, the question of whether a disparate impact suit brought under the Rule will interfere with a state's administrative scheme cannot be answered generally. For the reasons explained above, many effectively discriminatory judgments made by insurers may not receive scrutiny—much less approval—from state regulators; a challenge to such a judgment therefore does not inevitably undercut the administrative scheme. Moreover, as HUD has pointed out, "disparate impact claims challenging insurance practices do not necessarily require courts to ascertain whether a practice complies with state law or is actuarially sound" in a way that would be considered impermissible interference under *Doe v. Mutual of Omaha*, 179 F.3d at 564. 88 Fed. Reg. 19,476; *see also Huskey v. State Farm Fire & Cas. Co.*, No. 22 C 7014, 2023 WL 5848164, at *11 (N.D. Ill. Sept. 11, 2023) (no McCarran-Ferguson preemption of homeowners insurance claims-processing disparate impact suit where interference is merely speculative, but defendant insurer may raise the defense again if it later becomes clear that liability "*depends* on the actuarial soundness of its claims-handling practices *in a way that interferes* with Illinois's insurance policy or administrative regime") (emphasis added); *Property Cas. Insurers Ass'n of Am.*, 66 F. Supp. 3d at 1039 (noting that the court "can only speculate" about the types of disparate impact claims that may be brought against the homeowners insurance industry and whether the McCarran-Ferguson Act will preclude those claims in light of "[v]ariations among state regulatory regimes," among other variables).

Because regulatory review and approval of insurance rates are not identical across state lines, HUD reasonably rejected the argument that the Rule somehow categorically disturbs state-level regulation of the insurance industry.

**II.     Case-by-case adjudication of McCarran-Ferguson preemption of disparate impact liability under the Rule is most respectful of states' primacy in insurance regulation.**

HUD's decision under the Rule to take a case-by-case approach to the McCarran-Ferguson Act is reasonable not only because it recognizes the fact-intensive nature of the reverse-preemption inquiry, but also because it affords the highest level of respect to states' primacy in insurance regulation by accommodating policy and regulatory differences between the states. By declining to create one-size-fits-all exceptions to the Rule, HUD avoids unnecessarily depriving states like Illinois of a federal remedy that is, as applied, actually complementary to their own regulatory schemes. At the same time, the McCarran-Ferguson Act will continue to apply on a case-by-case basis to ensure that state regulatory decisions prevail whenever application of the Rule would in fact conflict with or frustrate a particular state's insurance law or policy.

**A.     For states that impose disparate impact liability on the homeowners insurance industry, the Rule will complement, rather than impair, state insurance regulation and policy.**

The McCarran-Ferguson Act does not forbid a state from imposing liability on insurance companies under a disparate impact theory.  Accordingly, for a state like Illinois, which imposes disparate impact liability on insurance companies, the Rule does not "frustrate any declared state policy or interfere with [that] State's administrative regime."  *See Humana, Inc.*, 525 U.S. at 310. Instead, the Rule complements state law. *Cf. Huskey*, at *11 (recognizing that "disparate impact liability under the FHA, as applied, seems to complement Illinois insurance law" in homeowners insurance claims-processing context).

This is no mere abstract possibility.  The Illinois Human Rights Act, which governs

housing discrimination in Illinois, *see* 775 Ill. Comp. Stat. 5/3-102, authorizes disparate impact claims. *See, e.g.*, *People v. R.L.*, 634 N.E.2d 733, 737 (Ill. 1994); *Peyton v. Dep't of Human Rights*, 700 N.E.2d 451, 456 (Ill. App. Ct. 1998); *Interstate Material Corp. v. Ill. Human Rights Comm'n*, 654 N.E.2d 713, 718 (Ill. App. Ct. 1995); *Bd. Of Trustees of S. Ill. Univ. v. Knight*, 516 N.E.2d 991, 995 (Ill. App. Ct. 1987); *see also Filipek v. Oakton Cmty. Coll.*, 312 F. Supp. 3d 693, 700 (N.D. Ill.), *aff'd sub nom.*, *Dayton v. Oakton Cmty. Coll.*, 907 F.3d 460 (7th Cir. 2018). Moreover, Illinois courts often rely upon interpretations of the FHA when considering the scope of the Human Rights Act. *E.g.*, *Szkoda v. Ill. Human Rights Comm'n*, 706 N.E.2d 962, 968 (Ill. App. Ct. 1998); *Atkins v. City of Chicago Comm'n on Human Relations ex rel. Lawrence*, 667 N.E.2d 664, 668 (Ill. App. Ct. 1996); *Turner v. Human Rights Comm'n*, 532 N.E.2d 392, 398 (Ill. App. Ct. 1988). Indeed, the Human Rights Act was enacted *after* the FHA, meaning that the scope of the FHA was part of the background against which the Illinois General Assembly legislated. *See* Pub. L. 90-284, 82 Stat. 81 (1968) (FHA effective April 11, 1968); Pub. Act 81-1267, 1980 Ill. Laws 247 (Section 3-102 of Human Rights Act effective June 30, 1980). The fact that the FHA applies to homeowners insurance indicates that the Human Rights Act has the same reach. *See* 24 C.F.R. § 100.70(d)(4).

Additionally, the Illinois Insurance Code itself prohibits "any unfair discrimination between individuals or risks of the same class or of essentially the same hazard and expense element because of the race, color, religion, or national origin of such insurance risks or applicants." 215 Ill. Comp. Stat. 5/424(3). Thus, Illinois' policy of combating discrimination through disparate impact liability is accommodated by its insurance law. In this regard, Illinois law is formulated differently from Oklahoma's insurance law, for example, which—as is Oklahoma's prerogative—appears to adopt a narrower definition of "unfair discrimination" as

explicit classification of risk based on race, color, creed, or national origin. Okla. Stat. Ann. tit. 36, § 985(A)(3) ("No rate in a competitive market shall be considered unfairly discriminatory unless it classifies risk on the basis of race, color, creed, or national origin.").

While the Rule is federal in scope, where it is not preempted by conflicting state insurance laws or policy, it is designed to complement state policy by working in tandem with existing state laws aimed at curbing discrimination in housing and insurance. The Rule is supplemental, not supplanting. In states like Illinois, disparate impact liability has reinforced, and will continue to reinforce, a policy of combating housing discrimination and segregation through a federal private right of action. *Cf. Trafficante v. Metro. Life Ins.*, 409 U.S. 205, 211 (1972) ("[S]ince the enormity of the task of assuring fair housing makes the role of the [United States] Attorney General in the matter minimal, the main generating force must be private suits in which . . . the complainants act not only on their own behalf but also 'as private attorneys general in vindicating a policy that Congress considered to be of the highest priority.'"). The practical effect of this dual federal-state remedy is not the frustration of state law, as Plaintiff claims. It is an additional layer of protection that fortifies existing state policies aiming to prevent discrimination and its disparate effects.

Accordingly, Plaintiff's claim that state fair housing laws have "nothing to do with" an analysis under the McCarran-Ferguson Act is misinformed. Pl.'s Mem. 17, ECF No. 283. Of course, a state law of general application, *i.e.* a state law not enacted for the specific purpose of regulating the business of insurance, will not preempt a conflicting federal remedy, even if that general law applies to insurance. *Autry v. Nw. Premium Servs., Inc.*, 144 F.3d 1037, 1042-45 (7th Cir. 1998). But that does not mean that the converse is also correct—that a state law of general application has no bearing on whether there is a conflict between a federal statute and a state

13

insurance statute—as Plaintiff seems to argue. Pl.'s Mem. 17, ECF No. 283. If a state insurance statute is consistent with or has been harmonized with a state law of general application such that the state insurance statute does not conflict with federal law, the McCarran-Ferguson Act does not require a federal court to willfully feign ignorance to that reality. *Humana*, 525 U.S. at 312-13 (considering state law as a whole). To hold otherwise would have the absurd result of requiring federal courts to assume erroneous interpretations of state law when considering whether state and federal laws conflict. *Cf. Dawn Equipment Co. v. Micro-Trak Sys., Inc.*, 186 F.3d 981, 986 (7th Cir. 1999) ("As a court sitting in diversity, we attempt to predict how the [State] Supreme Court would decide the issues presented here.").

Because nationwide, context-free application of McCarran-Ferguson preemption to the Rule would undermine state law and policy in states like Illinois, HUD reasonably determined that preemption of the Rule should be considered on a case-by-case basis, in the context of specific state laws and specific disparate impact claims.

### B. In states whose insurance regulations and policy are inconsistent with the Rule, the McCarran-Ferguson Act will preempt the Rule.

Nothing about the Rule alters the basic framework of the McCarran-Ferguson Act, and so nothing in the Rule should alter the way in which a state regulates insurance. If there is a scenario where the Rule "directly conflict[s]" with the insurance laws, regulations, or policies of Idaho, Oklahoma, or any other state (a question about which the *amici* States take no position), under the McCarran-Ferguson Act, the conflicting state law will preempt disparate impact FHA claims within that state. *See Humana*, 525 U.S. at 301. Accordingly, in a state that, for its own policy reasons, has chosen to expressly eschew disparate impact liability in the insurance context or that has insurance regulations that are inconsistent with disparate impact liability, those policy choices will reign supreme within its borders, regardless of what federal

law provides. *See NAACP*, 978 F.2d at 297 ("If Wisconsin wants to authorize redlining, it need only say so; if it does, any challenge to that practice under the auspices of the Fair Housing Act becomes untenable.").

That is the lesson of the *Ojo v. Farmers Group, Inc.* cases, the last of which the Idaho, Montana, Louisiana, and Oklahoma Insurance Departments set forth in their amicus brief as the metric for a reverse preemption assessment under the McCarran-Ferguson Act. Idaho et al. Amicus Br. 6-7, ECF No. 292. There, the Ninth Circuit initially held that there could be no conflict between Texas law and application of the FHA to insurance practices under a disparate impact theory, *Ojo v. Farmers Grp.*, 565 F.3d 1175, 1183-89 (9th Cir.), *reh'g en banc granted*, 586 F.3d 1108 (9th Cir. 2009), before later holding *en banc* that the dispositive question under the McCarran-Ferguson Act could not be resolved categorically, as it turned on whether Texas law in fact conflicted with FHA liability in that case, *Ojo v. Farmers Grp.*, 600 F.3d 1205, 1209-10 (9th Cir. 2010) (per curiam). The Ninth Circuit therefore certified that question to the Texas Supreme Court, which found that there was indeed a conflict. *See Ojo v. Farmers Grp.*, 356 S.W.3d 421 (Tex. 2011). In other words, based on a specific examination of Texas law, the Texas Supreme Court held that the FHA claim was preempted in Texas, and it applied that holding only in Texas. *See id.* at 424-34; *see also* 88 Fed. Reg. at 19,474 ("Even those cases in which an impermissible impairment under McCarran-Ferguson was found support the case-by-case approach . . . rather than . . . wholesale exemption . . . . ").

But the law of a single state, such as Texas or Idaho, is not the law nationwide. And the McCarran-Ferguson Act does not preempt a federal remedy in every state because one state has made a different policy choice. *See Fed. Trade Comm'n v. Travelers Health Ass'n*, 362 U.S. 293, 300 (1960) (explaining that the McCarran-Ferguson Act was not intended to allow a state

15

to "regulate activities carried on beyond its own borders"). Indeed, the approach to the McCarran-Ferguson Act that is *least* respectful of state authority over insurance is the one that Plaintiff and the Idaho *amici* now urge: creation of a blanket, nationwide exception based on certain state laws or policies. This position ironically contravenes the very federalism concerns the Idaho *amici* posit.

Plainly, the better rule as a matter of federalism is the one that permits each state to determine whether it wants the support of a federal disparate impact remedy for property insurers when combating housing discrimination and segregation. Those that do not need only say so, or to simply enact regulations that will not allow for it, in which case the Rule will have no effect within that state. *See NAACP*, 978 F.2d at 297. That result, which leaves the final decision on this issue to each state, is a reasonable one. It does not weaken the states' predominance in the field of insurance regulation; rather, it works concurrently with each state's primacy. *See also* 88 Fed. Reg. at 19,475 (explaining HUD's reasoning that wholesale exemptions applied on a nationwide scale "would be at odds with the purpose of McCarran-Ferguson to support the autonomy and sovereignty of each individual state in the field of insurance.").

* * *

In sum, HUD has "reasonably considered the relevant issues and reasonably explained [its] decision" not to change the 2013 Rule on multiple occasions over the past decade; that is all the APA requires. *FCC v. Prometheus Radio Project*, 141 S. Ct. 1150, 1158 (2021). HUD's decision not to create nationwide, one-size-fits-all exemptions or safe harbors for certain insurance practices is reasonably based on the recognition that where application of a federal law is consistent with a state's chosen policy and its particular administrative regime, there is no federal interference with state power. *See Humana*, 525 U.S. at 303; *NAACP*, 978 F.2d at 295.

16

It is the position of the undersigned that the Rule complements the law and policy of our respective States in a way that presents no inherent interference with our existing administrative schemes; *amici* Idaho, Montana, Louisiana, and Oklahoma take a contrary position. The current Rule's case-by-case approach to potential state insurance regulation conflicts appropriately accommodates both realities. This carefully-reasoned approach, which, as HUD has explained, both "affirms state autonomy and furthers the [Fair Housing] Act's broad remedial goals by ensuring that HUD is not hindered in fulfilling its statutory charge to support and encourage state efforts to protect fair housing rights," 88 Fed. Reg. at 19,475, fully satisfies HUD's obligations under the APA.

## CONCLUSION

For the reasons stated above, the States of Illinois, California, Colorado, Delaware, Hawaii, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New York, North Carolina, Oregon, Washington, and the District of Columbia as *amici curiae* urge the Court to grant Defendants' motion to for summary judgment and to deny Plaintiff's renewed motion for summary judgment.

Dated: October 17, 2023                    Respectfully submitted,

                                           KWAME RAOUL
                                           Attorney General
                                           State of Illinois

                                           /s/ *Joyce Ozeh*
                                           JOYCE OZEH ("OTUWA")
                                           Assistant Attorney General
                                           100 W. Randolph St., 11th Floor
                                           Chicago, IL 60601
                                           (773) 590 – 7833
                                           Joyce.Ozeh@ilag.gov

/s/ *Alexandra Reed*
ALEXANDRA REED
Assistant Attorney General
100 W. Randolph St., 11th Floor
Chicago, IL 60601
(773) 771 – 4465
Alexandra.Reed@ilag.gov

On behalf of:

ROB BONTA
*Attorney General*
State of California

PHILIP J. WEISER
*Attorney General*
State of Colorado

KATHLEEN JENNINGS
*Attorney General*
State of Delaware

BRIAN SCHWALB
*Attorney General*
District of Columbia

ANNE E. LOPEZ
*Attorney General*
State of Hawaii

ANTHONY G. BROWN
*Attorney General*
State of Maryland

ANDREA JOY CAMPBELL
*Attorney General*
Commonwealth of Massachusetts

KEITH ELLISON
*Attorney General*
State of Minnesota

AARON D. FORD
*Attorney General*
State of Nevada

MATTHEW J. PLATKIN
*Attorney General*
State of New Jersey

LETITIA JAMES
*Attorney General*
State of New York

JOSH STEIN
*Attorney General*
State of North Carolina

ELLEN F. ROSENBLUM
*Attorney General*
State of Oregon

ROBERT W. FERGUSON
*Attorney General*
State of Washington

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2023, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

> /s/ *Alexandra Reed*
> ALEXANDRA REED
> Assistant Attorney General
> Office of the Illinois Attorney General
> 100 W. Randolph St., 11th Floor
> Chicago, IL 60601
> (773) 771 – 4465
> Alexandra.Reed@ilag.gov

Date: October 17, 2023