UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARCIA L. FUDGE, in her official capacity as Secretary, Housing and Urban Development,<br><br>U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT,<br><br>Defendants. | Case No. 1:13-cv-08564<br>Chief Judge Rebecca R. Pallmeyer |

## DEFENDANTS' REPLY IN SUPPORT OF
## THEIR MOTION FOR SUMMARY JUDGMENT

SARAH HARRINGTON
Deputy Assistant Attorney General

JEANINE M. WORDEN
Associate General Counsel for Fair Housing
AYELET WEISS
Assistant General Counsel for Fair Housing
Enforcement
PAUL I. OSADEBE
Trial Attorney
U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT

*Of Counsel*

LESLEY FARBY
Assistant Branch Director

/s/ James D. Todd, Jr.
JAMES D. TODD, JR.
BRIAN C. ROSEN-SHAUD
United States Department of Justice
Benjamin Franklin Station
P.O. Box 883
Washington, DC 20044
(202) 514-3378
(202) 305-7667
james.todd@usdoj.gov
brian.c.rosen-shaud@usdoj.gov

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.      PCI LACKS STANDING TO MAINTAIN ITS CLAIMS ................................... 2

II.     PCI'S FACIAL CHALLENGE IS NOT RIPE FOR JUDICIAL RESOLUTION .............. 6

III.    HUD ADEQUATELY EXPLAINED ITS RULE ............................................. 8

      A.    HUD Adequately Explained Why A Case-By-Case Approach Is Appropriate, Notwithstanding PCI's View of McCarran-Ferguson and the Nature of Insurance ...................................................... 9

      B.    HUD Adequately Addressed PCI's Concerns About the Filed-Rate Doctrine .......................................................... 15

      C.    HUD Adequately Considered the Impact of *Inclusive Communities* on Remand .......................................................... 18

IV.    IF REQUIRED, REMAND, NOT VACATUR, IS THE APPROPRIATE REMEDY .............................................................................. 19

CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

## CASES

*Achacoso-Sanchez v. INS*,
   779 F.2d 1260 (7th Cir. 1985) ................................................................ 8

*Alexander v. Glob. Tel Link Corp.*,
   816 F. App'x 939 (5th Cir. 2020) ............................................................ 16

*Am. Bankers Ass'n v. Nat'l Credit Union Admin.*,
   934 F.3d 649 (D.C. Cir. 2019) ................................................................ 7

*Ass'n of Pub.-Safety Commc'ns Offs.-Int'l, Inc. v. FCC*,
   76 F.3d 395 (D.C. Cir. 1996) ..................................................... 8, 15, 18

*Bennett v. Spear*,
   520 U.S. 154 (1997) .............................................................................. 5

*Bhasker v. Kemper Cas. Ins. Co.*,
   284 F. Supp. 3d 1191 (D.N.M. 2018) .................................................... 16

i

*Biden v. Texas*,
    597 U.S. 785 (2022) ............................................................................................. 19

*Boucher v. U.S. Dep't of Agric.*,
    934 F.3d 530 (7th Cir. 2019) .............................................................................. 8

*Cellular Plus Inc. v. Super. Ct. of San Diego Cnty.*,
    14 Cal. App. 4th 1224, 18 Cal. Rptr. 2d 308 (1993) ..................................... 15

*Clark v. Prudential Ins. Co. of Am.*,
    Civ. No. 08-6197, 2011 WL 940729 (D.N.J. Mar. 15, 2011) ........................ 16

*Cohen v. Am. Sec. Ins. Co.*,
    735 F.3d 601 (7th Cir. 2013) .............................................................................. 15

*Coll v. First Am. Title Ins. Co.*,
    642 F.3d 876 (10th Cir. 2011) ........................................................................... 16

*Delta Constr. Co. v. EPA*,
    783 F.3d 1291 (D.C. Cir. 2015) ......................................................................... 5

*Doe v. Mutual of Omaha Insurance Co.*,
    179 F.3d 557 (7th Cir. 1999) .............................................................................. 12

*Elec. Priv. Info. Ctr. v. FAA*,
    892 F.3d 1249 (D.C. Cir. 2018) ......................................................................... 4

*FCC v. Prometheus Radio Project*,
    592 U.S. 414 (2021) ............................................................................................. 8

*Firstmerit Bank, N.A. v. BMO Harris Bank*,
    No. 15-cv-9238, 2016 WL 2622326 (N.D. Ill. May 9, 2016) ........................ 7

*Flynn v. FCA US LLC*,
    39 F.4th 946 (7th Cir. 2022) .............................................................................. 3

*Ghaly v. INS*,
    48 F.3d 1426 (7th Cir. 1995) .............................................................................. 8

*Gunn v. Cont'l Cas. Co.*,
    968 F.3d 802 (7th Cir. 2020) .............................................................................. 16

*Hinrichs v. Whitburn*,
    975 F.2d 1329 (7th Cir. 1992) ........................................................................... 7

*Humana Inc. v. Forsyth*,
    525 U.S. 299 (1999) ............................................................................................. 13

*Huskey v. State Farm Fire & Casualty Co.*,
   No. 22 C 7014, 2023 WL 5848164 (N.D. Ill. Sept. 11, 2023).............................................. 13, 14

*Ind. Coal. for Pub. Educ.- Monroe Cnty. v. McCormick*,
   338 F. Supp. 3d 926 (S.D. Ind. 2018)..............................................................................5

*Kathrein v. City of Evanston*,
   752 F.3d 680 (7th Cir. 2014) ........................................................................................3

*Keep Chi. Livable v. City of Ch.*,
   913 F.3d 618 (7th Cir. 2019) ........................................................................................3

*Lujan v. Nat'l Wildlife Fed'n*,
   497 U.S. 871 (1990) .................................................................................................6, 7

*Lumpkin v. Farmers Grp., Inc*., No. 05-2868,
   2007 WL 6996584 (W.D. Tenn. Apr. 26, 2007)...........................................................17

*Marsh v. Or. Nat'l Res. Council*,
   490 U.S. 360 (1989) ....................................................................................................8

*McCray v. Fid. Nat'l Title Ins. Co.*,
   682 F.3d 229 (3d Cir. 2012)........................................................................................16

*Milwaukee Police Ass'n v. Bd. of Police & Fire Comm'rs of City of Milwaukee*,
   708 F.3d 921 (7th Cir. 2013) ........................................................................................3

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ......................................................................................................8

*NAACP v. Am. Fam. Mut. Ins. Co.*,
   978 F.2d 287 (7th Cir. 1992) ........................................................................................5

*Nat. Res. Def. Council, Inc. v. EPA*,
   194 F.3d 130 (D.C. Cir. 1999) ...................................................................................6, 7

*Nationwide Mut. Ins. Co. v. Cisneros*, No. 95-714,
   1996 WL 33467765 (U.S. Jan. 3, 1996) ....................................................................5, 14

*Nationwide Mut. Ins. Co. v. Cisneros*,
   52 F.3d 1351 (6th Cir. 1995) ....................................................................................4, 14

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
   663 F.3d 470 (D.C. Cir. 2011) ...................................................................................3, 4

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*,
   417 F.3d 1272 (D.C. Cir. 2005) ....................................................................................6

*Nat'l Ass'n of Mut. Ins. Cos. v. HUD*, --- F. Supp. 3d ---,
    2023 WL 6142257 (D.D.C. Sept. 19, 2023), *appeal noticed*
    No. 23-5272 (D.C. Cir.) ................................................................... 2, 4, 5, 7

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
    538 U.S. 803 (2003) .................................................................................. 6, 7

*Off. of Commc'n of the United Church of Christ v. FCC*,
    826 F.2d 101 (D.C. Cir. 1987) ................................................................. 6, 7

*Ogbolumani v. Napolitano*,
    557 F.3d 729 (7th Cir. 2009) ................................................................. 8, 17

*Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*,
    656 F.3d 580 (7th Cir. 2011) ......................................................................... 6

*Prop. Cas. Insurers Ass'n of Am. v. Carson*, No. 13-cv-8564,
    2017 WL 2653069 (N.D. Ill. June 20, 2017) ................................... *passim*

*Prop. Cas. Insurers Ass'n of Am. v. Donovan*,
    66 F. Supp. 3d 1018 (N.D. Ill. 2014) ............................................... *passim*

*Qwest Corp. v. Kelly*,
    204 Ariz. 25, 59 P.3d 789 (Ariz. Ct. App. 2002) .................................. 15

*Ramirez v. Webb*,
    599 F. Supp. 1278 (W.D. Mich. 1984), *aff'd*, 787 F.2d 592 (6th Cir. 1986) ............................. 4

*Rothstein v. Balboa Ins. Co.*,
    794 F.3d 256 (2d Cir. 2015) ...................................................................... 16

*Saunders v. Farmers Ins. Exch.*,
    440 F.3d 940 (8th Cir. 2006), *aff'd*, 537 F.3d 961 (8th Cir. 2008) ................................ 17, 18

*Schirmer v. Nagode*,
    621 F.3d 581 (7th Cir. 2010) ....................................................................... 3

*Schmidling v. City of Chi.*,
    1 F.3d 494 (7th Cir. 1993) ........................................................................... 3

*Sierakowski v. Ryan*,
    223 F.3d 440 (7th Cir. 2000) .................................................................... 3, 4

*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ..................................................................... 3

*Sierra Club v. EPA*,
    754 F.3d 995 (D.C. Cir. 2014) ..................................................................... 4

*Simon v. KeySpan Corp.*,
    694 F.3d 196 (2d Cir. 2012) .................................................................................. 16

*Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*,
    476 U.S. 409 (1986) ............................................................................................... 17

*Tex. Com. Energy v. TXU Energy, Inc.*,
    413 F.3d 503 (5th Cir. 2005) ................................................................................ 16

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*,
    576 U.S. 519 (2015) .................................................................................. 1, 6, 17, 18

*Texas v. EPA*,
    726 F.3d 180 (D.C. Cir. 2013) ................................................................................ 5

*United Farm Bureau Mut. Ins. Co. v. Metro. Hum. Rels. Comm'n*,
    24 F.3d 1008 (7th Cir. 1994) .................................................................................. 4

*Viens* v. *Am. Empire Surplus Lines Ins. Co.*,
    113 F. Supp. 3d 555 (D. Conn. 2015) .................................................................. 13

*Wards Cove Packaging Co. v. Antonio*,
    490 U.S. 642 (1989) ............................................................................................... 11

*White v. United States*,
    601 F.3d 545 (6th Cir. 2010) .................................................................................. 5

## STATUTES

42 U.S.C. §§ 3601 ...................................................................................................... 5, 14

42 U.S.C. § 3608 ........................................................................................................... 14

42 U.S.C. §§ 3610–12 .................................................................................................. 14

42 U.S.C. § 3612 ........................................................................................................... 14

42 U.S.C. § 3614a ......................................................................................................... 14

## REGULATIONS

24 C.F.R. § 100.500 ............................................................................................ 4, 6, 7, 19

Implementation of the Fair Housing Amendments Act of 1988,
    54 Fed. Reg. 3232, 3240 (1989) ............................................................................. 5

**OTHER AUTHORITIES**

Mission, HUD,
   https://perma.cc/UY56-VTGM ................................................................................................ 14

NAIC, 2 Compendium of State Laws on Insurance Topics,
   Health/Life/Property/Casualty II–PA–10–21 (2011) ............................................................. 15

## INTRODUCTION

As the U.S. Department of Housing and Urban Development ("HUD") has explained, the history of discrimination in the homeowners insurance industry is long and well documented. *See* Admin. Record ("AR") 1815; AR 32782. Thus, when Congress enacted the Fair Housing Act ("FHA") in 1968 and subsequently amended it, Congress included statutory exemptions for certain practices, but not for insurers. *See* AR 1814; AR 32776. In promulgating its Discriminatory Effects Rule in 2013 and reinstating it in 2023 ("the 2023 Rule" or "the Rule"), HUD likewise rejected insurers' requests for exemptions from discriminatory effects liability under the FHA.

In promulgating its 2023 Rule, HUD also demonstrated that, despite the doomsaying of insurers, the discriminatory effects standard had not had significant real-world negative effects on insurers in the decade since the 2013 Rule took effect. *See* AR 32785. PCI nevertheless offers only ten-year-old affidavits of its members that speculate about possible future impacts of the Rule and fail to offer specific evidence of any actual or imminent harms to itself or its members. Thus, PCI has not met its evidentiary burden to establish injury. PCI also fails to reasonably trace its claimed injuries to HUD's Rule. As the Supreme Court affirmed in *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 532–35 (2015) ("*Inclusive Communities*") the FHA itself provides for disparate impact liability, and decades of other judicial precedent and other HUD regulations already established that insurers are subject to discriminatory effects liability. A decision that the 2023 Rule does not apply to insurers, therefore, would not relieve PCI's members of potential liability for disparate impact discrimination under the FHA.

Even if the Court reaches the merits of PCI's challenge, it should find that HUD's explanations for why it declined to give insurers a categorical exemption from discriminatory effects liability was adequate. HUD's explanations for its decision comfortably clears the Administrative Procedure Act ("APA")'s low bar for evaluating the adequacy of an agency's

explanation. HUD adequately explained that neither the McCarran-Ferguson Act, the nature of insurance, nor the filed-rate doctrine requires a categorical exemption from discriminatory effects claims for the insurance industry. HUD adequately supported its conclusion that, in light of varying state laws, a case-by-case approach was preferable because it would allow insurers to raise these defenses in specific cases, informed by state law, without foreclosing otherwise plausible disparate impact claims. Likewise, HUD sufficiently considered the Supreme Court's opinion in *Inclusive Communities*, in which the Court concluded that disparate impact liability was actionable under the FHA, and HUD reasonably concluded that the decision did not call into question the Rule's disparate impact framework. This Court should thus follow the lead of the District Court for the District of Columbia, which recently rejected a similar facial challenge by a different insurance trade group to HUD's 2023 Rule. *See Nat'l Ass'n of Mut. Ins. Cos. v. U.S. HUD*, --- F. Supp. 3d ---, 2023 WL 6142257 (D.D.C. Sept. 19, 2023) ("*NAMIC*"), *appeal noticed*, No. 23-5275 (D.C. Cir.).

## ARGUMENT

### I. PCI LACKS STANDING TO MAINTAIN ITS CLAIMS

Defendants' opening brief established that PCI fails to maintain standing to pursue its remaining claims. *See* Defs.' Combined Mem. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of their Mot. for Summ. J. at 12–19, ECF No. 295 ("Defs.' Mem."). Relying heavily on this Court's 2014 decision, Plaintiff responds that all it needs to do to establish standing is assert that its members are the direct object of HUD's 2013 and 2023 Rules. *See* Pl.'s Combined Opp'n to Defs.' Mot. for Summ. J. & Reply in Supp. of Pl.'s Mot. for Summ. J. at 2, ECF No. 313 ("Pl.'s Mem.) (citing *Prop. Cas. Insurers Ass'n of Am. v. Donovan*, 66 F. Supp. 3d 1018, 1043–44 (N.D. Ill. 2014) ("*PCI I*")). But unlike other rules that may target specific industries, PCI's members are not the direct object of HUD's Rule; they are instead merely one example of the millions of people and entities subject to the FHA's proscriptions. To find that this alone is sufficient to confer standing would eviscerate the Article III case-or controversy requirement for

bringing a facial challenge to any civil or criminal statute or rule that broadly proscribes conduct. *See Schmidling v. City of Chi.*, 1 F.3d 494, 499 (7th Cir. 1993) ("A credible threat of direct injury to the litigant must exist"). Moreover, this Court's "ongoing obligation to assure itself of its jurisdiction means that revisiting such matters is almost always on the table," *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022), and intervening changes in the law warrant reconsideration of this Court's previous ruling on standing, *see, e.g.*, *Kathrein v. City of Evanston*, 752 F.3d 680, 685 (7th Cir. 2014).

First, PCI fails to establish an actual or imminent injury to itself because its sole claim of injury is time spent analyzing the Rule, *see* Pl.'s Ex. 1, ECF No. 283-3 ¶ 7, which does not constitute an injury in fact, *see Keep Chi. Livable v. City of Ch.*, 913 F.3d 618, 624 (7th Cir. 2019); *Milwaukee Police Ass'n v. Bd. of Police & Fire Comm'rs of City of Milwaukee*, 708 F.3d 921, 928 (7th Cir. 2013). Second, PCI's members may be one of many entities subject to HUD's Rule, but after living with the Rule for ten years, their standing to maintain their challenge is far from "self-evident." Pl.'s Mem. at 3 (quoting *Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002)).[1] PCI's members fail to produce evidence of an injury sufficient to obtain prospective injunctive relief under the APA. *Cf. Schirmer v. Nagode*, 621 F.3d 581, 585 (7th Cir. 2010). Moreover, PCI fails to identify any underwriting practice or other business practice in the last decade that HUD's Rule has prevented its members from employing. *See, e.g.*, AR 29112–66. Presumably, then, none exists. Instead, PCI only presents its members' ten-year-old declarations that baldly speculate that, "*if*" the Rule was "applied to the business of insurance" at some unspecified time in the future, its members "*would*" suffer injuries; PCI's members never document any actual compliance costs actually incurred any time in the last ten years. *Compare, e.g.*, Pl.'s Ex. 4, ECF No. 283-6 ¶ 10 (emphasis added) *with Sierakowski v. Ryan*, 223 F.3d 440,

---

[1] For the reasons discussed below, where a challenged agency regulation duplicates existing legal duties, a plaintiff must still satisfy the traceability and redressability requirements. *Cf. Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 663 F.3d 470, 474 (D.C. Cir. 2011), discussed *infra*.

444 (7th Cir. 2000); *Ramirez v. Webb*, 599 F. Supp. 1278, 1289 (W.D. Mich. 1984), *aff'd*, 787 F.2d 592 (6th Cir. 1986). And finally, PCI cannot manufacture an injury based on its misapprehension that the Rule requires its members to collect race data; PCI does not (and could not) identify any provision of the Rule that actually requires data collection, and HUD explained that the Rule does not in fact require data collection. *See NAMIC*, 2023 WL 6142257, at *9 ("Nowhere does the Disparate-Impact Rule require those engaging in housing practices to collect or use data on individuals' protected characteristics.") (citing 24 C.F.R. § 100.500); AR 56512; *cf. Elec. Priv. Info. Ctr. v. FAA*, 892 F.3d 1249, 1254 (D.C. Cir. 2018); *Sierra Club v. EPA*, 754 F.3d 995, 1001 (D.C. Cir. 2014).

Additionally, because HUD's Rule essentially affirms pre-existing legal duties, PCI fails to establish the traceability and redressability requirements to maintain standing. *See Nat'l Ass'n of Home Builders*, 663 F.3d at 474. First, at least since the Supreme Court's 2015 decision in *Inclusive Communities*, PCI cannot reasonably trace its claimed procedural injuries to HUD's Rule. *Inclusive Communities* recognizes disparate-impact liability under the FHA as a matter of statutory interpretation, *see* 576 U.S. at 543, and recognized the importance of the burden-shifting framework in determining disparate impact liability, *see id.* at 541–42; *see also Prop. Cas. Insurers Ass'n of Am. v. Carson*, No. 13-CV-8564, 2017 WL 2653069, at *9 (N.D. Ill. June 20, 2017) (*"PCI II"*) ("[T]he Supreme Court in *Inclusive Communities* expressly approved of disparate-impact liability under the FHA."). Second, other longstanding judicial precedent establishes that the FHA's discriminatory effects standard can be applied to insurers despite the potential conflict with state laws regulating insurers. *See, e.g., Nationwide Mut. Ins. Co. v. Cisneros*, 52 F.3d 1351, 1362–63 (6th Cir. 1995); *United Farm Bureau Mut. Ins. Co. v. Metro. Hum. Rels. Comm'n*, 24 F.3d 1008, 1016 (7th Cir. 1994).[2] Third, HUD regulations have made

---

[2] Another trade association representing insurers acknowledged in 1996 that the Fair Housing Act's disparate impact standard applies to insurers. *See* Amicus Br. of Nat'l Ass'n of

insurers subject to the FHA since 1989. *See* Implementation of the Fair Housing Amendments Act of 1988, 54 Fed. Reg. 3232, 3240 (1989); AR 56736. Fourth, while the FHA itself provides certain other statutory exceptions to its prohibitions, it provides none to insurers. *See* 42 U.S.C. §§ 3601 *et seq*. PCI cannot trace its claimed injuries to HUD's Rule. *Cf. White v. United States*, 601 F.3d 545, 552 (6th Cir. 2010); *Ind. Coal. for Pub. Educ.- Monroe Cnty. v. McCormick*, 338 F. Supp. 3d 926, 938 (S.D. Ind. 2018) (citing *Bennett v. Spear*, 520 U.S. 154, 159 (1997)).[3]

Likewise, it is well settled that a plaintiff's injuries cannot be redressed by a court order when two or more independent government actions produce the same harm and only one is challenged, as is the case here. *See Delta Constr. Co. v. EPA*, 783 F.3d 1291, 1296 (D.C. Cir. 2015) (per curiam); *Texas v. EPA*, 726 F.3d 180, 198 (D.C. Cir. 2013). PCI admits that its injuries are procedural ones, *see* Pl.'s Mem. at 2, as its remaining challenges are only about the adequacy of HUD's explanations. *See PCI I*, 66 F. Supp. 3d at 1037–42, 1051–53; *PCI II*, 2017 WL 2653069, at *8–9; Second Am. Compl. ¶¶ 123–51, ECF No. 274 (Counts I–IV). Thus, PCI's attempts to distinguish *Delta Construction* and *Texas* fall flat. Similar to *Delta Construction* and *Texas*, even if this Court were to declare that HUD's Rule could not apply to insurers, *Inclusive Communities*, other judicial precedents, and HUD's 1989 regulation would remain in place.[4] Thus, a decision that HUD's Rule does not apply to insurers would not actually protect PCI's members from discriminatory effects liability.

---

Mut. Ins. Cos., *Nationwide Mut. Ins. Co. v. Cisneros*, No. 95-714, 1996 WL 33467765, at *14 (U.S. Jan. 3, 1996) (warning, as *amici* supporting a petition for *certiorari*, that "[t]he practical effect of the Sixth Circuit's decision is that property insurers will be forced to fend off FHA disparate impact challenges to underwriting and rating standards and rules").

[3] PCI points to the contrary conclusion of the *NAMIC* court in its standing analysis. *See* Pl.'s Mem. at 3 (citing *NAMIC*, 2023 WL 6142257, at *6). But in its merits analysis, the *NAMIC* court found that "NAMIC's argument here is a complaint about any sort of disparate-impact liability that *might* apply to insurance practices. ... Although I found that complaint convincing back in 2014, ... we are now living in a post–*Inclusive Communities* world." 2023 WL 6142257, at *9 (emphasis added) (citations omitted). As a result, the *NAMIC* court's merits ruling ultimately supports Defendants' showing that PCI lacks standing.

[4] Oddly, PCI asserts that, in the absence of HUD's Rule, the legal landscape in the Seventh Circuit would revert back to 1992. *See* Pl.'s Mem. at 3 (citing *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 290 (7th Cir. 1992)). *Inclusive Communities* trumps that assertion, too.

## II. PCI's Facial Challenge is Not Ripe for Judicial Resolution

Defendants' opening brief demonstrated that PCI fails to meet its burden of establishing that any of its claims are ripe for review. *See* Defs.' Mem. at 19–26. PCI responds by asserting that its APA claims are fit for review because "HUD's action 'necessarily stands or falls on [the] administrative record,'" Pl.'s Mem. at 5 (quoting *Nat'l Ass'n of Home Builders*, 417 F.3d 1272, at 1282 (D.C. Cir. 2005)), and its members would face hardship from withholding consideration because the Rule requires its members "to adjust [their] conduct immediately." *Id*. at 6 (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). Neither assertion withstands scrutiny.

First, PCI entirely ignores the fact that this Court has already held that PCI's claims about HUD Rule's potential conflict with state laws are not ripe for resolution, *see PCI I*, 66 F. Supp. 3d at 1037–42, and PCI offers no reason for the Court to revisit that determination. *See* Pl.'s Mem. at 5–6. Second, PCI contends that APA challenges are "presumptively reviewable." *Id.* at 5 (quoting *Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin*., 656 F.3d 580, 586 (7th Cir. 2011)). While this may be the case for other types of APA actions, it is not the case for facial challenges to agency regulations. *See, e.g., Nat'l Park Hosp. Ass'n*, 538 U.S. at 808; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891, 894 (1990); *Nat. Res. Def. Council, Inc. v. EPA*, 194 F.3d 130, 138 (D.C. Cir. 1999); *Off. of Commc'n of the United Church of Christ v. FCC*, 826 F.2d 101, 106 (D.C. Cir. 1987).

Second, PCI asserts that its claims are ripe because the Rule purportedly proscribes more conduct than does the statute, and as a practical matter requires PCI's members to "adjust [their] conduct immediately." Pl.'s Mem. at 6 (quoting *Nat'l Park Hosp. Ass'n*, 538 U.S. at 808). In advancing this contention, PCI ignores the Supreme Court's holding in *Inclusive Communities* that the FHA allows discriminatory effects claims, *see* 576 U.S. at 543, a reading that also highlighted the importance of the burden-shifting framework in determining FHA disparate-impact liability, *see id*. at 541–42. PCI does not (and could not) point to any part of the Rule that

causes any of the harms claimed by PCI's members. *Compare* Pl.'s Mem. at 6 *with* 24 C.F.R.

§ 100.500; *see also NAMIC*, 2023 WL 6142257, at *9. Rather, it is the FHA, other judicial

precedent, and HUD's 1989 Rule that requires PCI's members to "adjust [their] conduct," Pl.'s

Mem. at 6. HUD's 2023 Rule, by contrast, simply adopts the burden-shifting framework used by

the majority of courts of appeals. PCI thus fails to identify any actual hardship that would result

from continuing to withhold consideration of its challenges to HUD's Rule.[5]

Third, PCI asserts that the fact that it brings a facial challenge to HUD's Rule is

irrelevant to the ripeness inquiry. *See id.* Courts have overwhelmingly rejected this contention.

*See, e.g., Nat'l Park Hosp. Ass'n*, 538 U.S. at 808; *Nat'l Wildlife Fed'n*, 497 U.S. at 891, 894;

*Nat. Res. Def. Council*, 194 F.3d at 138; *Off. of Commc'n of the United Church of Christ*, 826

F.2d at 106.

Finally, PCI insists that its failure to show any hardship that would result from continuing

to withhold consideration of this matter is irrelevant in light of the nature of its challenge and, in

any event, that its ten-year-old declarations are enough. *See* Pl.'s Mem. at 7–8. But PCI fails to

identify any underwriting practice or other business practice in the last decade that the 2013 or

2023 Rules have prevented its members from employing. *See, e.g.*, AR 29112–66. Nor has PCI

otherwise made any showing of any other actual, present hardship to its members arising from

the Rule. *See Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992); *Firstmerit Bank, N.A.*

*v. BMO Harris Bank*, No. 15-cv-9238, 2016 WL 2622326, at *3 (N.D. Ill. May 9, 2016). Finally,

PCI agreed to a stay of this case for over four years even though the 2013 Rule was in effect the

entire time, *see, e.g.*, ECF Nos. 150–59, 166, 168–69, 172–73, 176–79, 184, 186, 188–92, 194–

___

[5] PCI also points to the *NAMIC* court's ripeness analysis as supporting its claims. *See* Pl.'s Mem. at 6 (citing *NAMIC*, 2023 WL 6142257, at *8). But in its merits analysis, the court found that NAMIC's challenges must be decided in the context of specific cases, rather than in a facial challenge to the rule. *Id.* at *11; *see also id.* at *12 ("NAMIC's challenge is not the vehicle to decide it[s claims]" as it is not enough to "point to a hypothetical case in which the rule might lead to an arbitrary result." (quoting *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 934 F.3d 649, 667 (D.C. Cir. 2019)).

96. PCI cannot show hardship from withholding review.

## III. HUD ADEQUATELY EXPLAINED ITS RULE

Plaintiff lobs a number of complaints at HUD's 2023 Rule, but none change the fact that HUD has provided "an adequate explanation for the decision." *Ogbolumani v. Napolitano*, 557 F.3d 729, 734 (7th Cir. 2009). Contrary to PCI's suggestion, *see* Pl.' Mem. at 8–9, this Court "need not" find that HUD's explanation is "compelling, or even convincing, [for it] to be sufficient." *Ghaly v. INS*, 48 F.3d 1426, 1431 (7th Cir. 1995) (quoting *Achacoso-Sanchez v. INS*, 779 F.2d 1260, 1266 (7th Cir. 1985)). Even if the agency's explanation is "light on reasoning," adequacy is a low bar and "nothing more is required." *Ogbolumani*, 557 F.3d at 734. Under this standard, a court "simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). This Court only permitted PCI to amend its Complaint to challenge whether "HUD failed to adequately consider" four issues. *PCI II*, 2017 WL 2653069, at *9. The Court denied PCI leave to amend its Complaint to allege that the disparate impact framework was contrary to law. *See id.* at *7–8. Because PCI cannot shoehorn contrary-to-law claims into its motion for summary judgment, *contra, e.g.*, Pl.'s Mem. at 1 (arguing that the Rule "conflicts" with various legal principals), Defendants need only establish that HUD's explanation was "adequate." *Ogbolumani*, 557 F.3d at 734.

Even if PCI identifies an alternate approach that HUD could have chosen, that is not enough to prevail. Neither this Court nor PCI may "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The APA requires a deferential standard of review "because 'an agency must have discretion to rely on the reasonable opinions of its own qualified experts even if, as an original matter, a court might find contrary views more persuasive.'" *Boucher v. U.S. Dep't of Agric.*, 934 F.3d 530, 547 (7th Cir. 2019) (quoting *Marsh v. Or. Nat'l Res. Council*, 490 U.S. 360, 378

(1989)); *see also Ass'n of Pub.-Safety Commc'ns Offs.-Int'l, Inc. v. FCC*, 76 F.3d 395, 398 (D.C. Cir. 1996) ("if the agency has offered a reasoned explanation for its choice between competing approaches supported by the record, the court is not free to substitute its judgment").

### A. HUD Adequately Explained Why a Case-By-Case Approach Is Appropriate, Notwithstanding PCI's View of McCarran-Ferguson and the Nature of Insurance

HUD reasonably explained its choice of the case-by-case approach it adopted in the Rule despite insurers' concerns related to McCarran-Ferguson and the nature of insurance. *See* Defs.' Mem. at 27–45. PCI second guesses that choice but falls well short of establishing that HUD did not adequately explain its decision. In *PCI I*, this Court instructed HUD to assess on remand "whether the benefits of proceeding by case-by-case adjudications outweighed the benefits of including an exemption … for insurers in the … Rule" in light of insurers' comments based on McCarran-Ferguson. *PCI I*, 66 F. Supp. 3d at 1048.  HUD did just that, and it concluded that insurers' concerns based on McCarran-Ferguson "do not outweigh th[e] loss of efficacy in the … enforcement of the [FHA]" that would result if HUD were to grant the requested exemptions. AR 1814; *see also* AR 32786–90. HUD explained the costs of the exemptions on the one hand: they "would allow to go uncorrected at least some discriminatory insurance practices that can be subject to disparate impact challenges consistent with" McCarran-Ferguson, in contravention of the FHA's broad remedial purposes. AR 1814; *see also* AR 32786–90. And HUD explained the limited utility of the requested exemptions on the other hand: given "the variety of practices and relevant state laws, as well as the substantial range of possible discriminatory effects claims," it was "practically impossible … to define the scope of insurance practices covered by an exemption …  with enough precision to avoid case-by-case disputes over its application" in any event. AR 1814; *see also* AR 32778. Given that imbalance, HUD reasonably explained that "the case-by-case approach [in the Rule] appropriately balances the[] [industry's] concerns against [the agency's] obligation to give maximum force to the [FHA]." AR 1814.  That explanation is adequate.

HUD likewise provided a fulsome and well-reasoned explanation for rejecting insurers' requests for exemptions from the Rule for all insurance practices and underwriting decisions, as well as for particular risk-based practices, due to the "nature of insurance." AR 1815–16; *see also* AR 1818–19; AR 32787. HUD's disparate impact framework has been in effect for nearly a decade, yet PCI's claimed parade of horribles has not come to pass. Documenting this reality in the 2023 Rule is not "blank insistence," as PCI suggests, Pl.'s Mem. at 30, but rather the best possible evidence that the nature of insurance does not require a categorical exemption from the discriminatory effects burden-shifting framework. *See* AR 32787. PCI has not pointed to any specific risk-based practice that has changed in response to the Rule. It is no answer that the 2013 Rule faced legal challenges, *contra* Pl.'s Mem. at 30, for the Rule has remained in place continuously since 2013, and the Supreme Court decided *Inclusive Communities* in 2015.

HUD also reasonably considered PCI's request for an exemption for "purely risk-based" practices. *Contra id.* at 31–32. In rejecting that option, HUD adequately explained that such a safe harbor "would be overbroad, foreclosing claims where the plaintiff could prove the existence of a less discriminatory alternative, such as an alternative risk-based practice." AR 32781; *see also* AR 1819. After this Court remanded the 2013 Rule to the agency, HUD considered the industry's requests to provide exemptions for "any risk-based factor or for the specific 'long-recognized' factors" commenters pointed to. HUD adequately explained its rejection of those requests based on its determination that such an exemption would be overbroad in contravention of the FHA's purposes for multiple reasons: (i) it "would foreclose claims where the plaintiff could prove the existence of a less discriminatory alternative, such as an alternative risk-based practice"; (ii) it would "offer little added value for insurers not already provided by the Rule itself" because it would "inevitably necessitate a determination of whether the use of the factor is, in fact, risk-based," similar to the second step in the burden-shifting framework; and (iii) it would insulate from challenge factors, the actuarial relevance of which

10

can "vary by context" and "change over time." AR 1818; *see also* AR 32782.[6] At bottom, PCI

disagrees with HUD's decision not to exempt insurance practices in the Rule, but that policy

disagreement does not undercut the reasonableness of HUD's explanations for its decision.

In response, PCI faults HUD for allegedly "speculat[ing] that an exemption for risk-based

practices will foreclose potentially meritorious claims, because some lawsuits challenging these

practices may be brought" without conflicting with McCarran-Ferguson, Pl.'s Mem. at 12

(citation and alternations omitted), and for not determining "how often" McCarran-Ferguson

would bar disparate impact challenges to insurance practices, *id.* at 11. But HUD did not simply

assume that there would be instances where disparate impact claims against insurers would not

run afoul of McCarran-Ferguson; it pointed to specific cases where courts had found that

disparate impact claims were not barred by McCarran-Ferguson to support its conclusion that "at

least some discriminatory insurance practices [ ] can be subject to disparate impact challenges

consistent with McCarran Ferguson." AR 1814; AR 32789; *see also* AR 1816–17. *Contra* Pl.'s

Mem. at 12 (suggesting that HUD had not provided "a single example of a suit that has avoided

this inevitable conflict"). And like this Court, HUD recognized that the myriad variations in

potential discriminatory effects claims, insurer business practices, and state laws and policies

made it "practically impossible for HUD to define the scope of insurance practices covered by an

exemption … with enough precision to avoid case-by-case disputes over its application."

*Compare* AR 1814; AR 32778 *with PCI I*, 66 F. Supp. 3d at 1040 (noting "many imponderables"

could affect whether McCarran-Ferguson categorically applies to all disparate impact claims that

---

[6] To the extent PCI attempts to support this claim by arguing that HUD did not adequately address insurers' requests to adopt the "equally effective" language from *Wards Cove Packaging Co. v. Antonio*, 490 U.S. 642 (1989), *see* Pl.'s Mem. at 29, that argument is foreclosed by this Court's decision upholding the Rule's burden-shifting framework. *PCI I*, 66 F. Supp. 3d at 1052; *see also PCI II*, 2017 WL 2653069, at *9. In any event, after noting that commenters raised this issue, HUD observed that the "equally effective" language did not appear in the Supreme Court's opinion in *Inclusive Communities* and that the district court that stayed the effective date of the 2020 Rule criticized this language, which are adequate reasons for HUD's decision not to adopt the language in the 2023 Rule. *See* AR 32803–04.

may fall within the scope of PCI's McCarran-Ferguson challenge).[7] Where an exemption would not avoid case-by-case disputes (and the attendant costs), and the FHA would be under-enforced in at least some instances in which McCarran-Ferguson would not preclude disparate impact claims against insurers, HUD need not have determined precisely how often McCarran-Ferguson would apply in order to offer an adequate explanation of its conclusion that the costs of an exemption outweighed those of case-by-case adjudication. *See* AR 1816–17; AR 32776–78; AR 32791–92.

PCI is wrong to assert that HUD did not support its conclusion that an exemption would become outdated. *See* Pl.'s Mem. at 18. HUD provided the exact types of examples that Plaintiff alleges that the 2023 Rule lacks: HUD noted that Texas is an example of state insurance law changing over time in a way that impacts the McCarran-Ferguson analysis, *see* AR 32788 n.215, and HUD noted that McCarran-Ferguson defenses have succeeded in some states but failed in others, *id.* n.214.

PCI otherwise faults HUD for relying on the fact-intensive nature of the McCarran-Ferguson inquiry, including variations among state insurance and anti-discrimination laws, based on PCI's view that "disparate-impact claims challenging risk-based practices will resoundingly fail," Pl.'s Mem. at 10, based in part on the Seventh Circuit's reasoning in *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999). Pl.'s Mem. at 9; *see also id.* at 15–18. But PCI's insistence that *Doe*—a case that controls only in the Seventh Circuit—required HUD to adopt nationwide exemptions fails to contend with: (i) HUD's explanation that other circuit

---

[7] Similarly, HUD explained that even if it were to provide an exemption for a certain risk-based factor, entitlement to the exemption "would inevitably necessitate a determination of whether the use of the factor is, in fact, risk-based," thereby limiting the benefit of any exemption. AR 1818. PCI is incorrect that McCarran-Ferguson would necessarily preclude this inquiry. *See* Pl.'s Mem. at 10. For instance, insurance practices that "rest on business justifications rather than actuarially sound principles or state law requirements" would not necessarily "raise the question of whether the insurer's practices are actuarially sound and consistent with state law." *PCI I*, 66 F. Supp. 3d at 1040. Put simply, deciding whether a practice is based on a business justification or a risk-based one does not require a court to assess whether a risk-based practice is actuarially sound.

courts have distinguished *Doe*, *see* Defs.' Mem. at 29–32; AR 1816–17; AR 32787–88; (ii) some courts have questioned "whether McCarran-Ferguson applies at all to 'subsequently enacted civil rights legislation,'" AR 1816 n.50 (quoting *Viens* v. *Am. Empire Surplus Lines Ins. Co.*, 113 F. Supp. 3d 555, 572 (D. Conn. 2015)); and (iii) that, in any event, the "variation[] among the circuits … as to how McCarran-Ferguson should be applied" supports the case-by-case approach adopted in the Rule as opposed to a one-size-fits all solution, *see* Defs.' Mem. at 31 (quoting AR 1817 n.50; AR 32790 n.235).

PCI's contention that the very act of conducting a disparate-impact analysis under the Rule would result in McCarran-Ferguson preclusion is based on its incorrect view that a general practice of using risk-based pricing means there can never be a less discriminatory alternative that is also risk-based. *See* Pl.'s Mem. at 10. As this Court recognized, however, whether a state "require[s] insurers to use risk-based pricing" or "merely permit[s] risk-based pricing, but do[es] not require it," will alter McCarran-Ferguson analysis. *PCI I*, 66 F. Supp. 3d at 1039–40. HUD thus reasonably rejected PCI's view, explaining that it is belied by: (i) the numerous cases wherein courts have found that such disparate impact challenges were not barred by McCarran-Ferguson, *see* Defs.' Mem. at 27; AR 1816; AR 32790; (ii) the fact that the same types of insurance practices had survived MFA defenses in some jurisdictions but not others due to variations in state laws, *see* AR1817 & n.56; AR 32790; and (iii) *Humana Inc. v. Forsyth*, 525 U.S. 299 (1999), which requires a level of conflict between the federal law and a state's law, policy, or administration that is not always present and will vary depending on the particular claim being made, the actual state law or policy at issue, and other case-specific variables, *see* Defs.' Mem. at 27–28. As this Court recognized, and HUD explained, the McCarran-Ferguson inquiry is a fact intensive one, and whether McCarran-Ferguson precludes a disparate impact claim will indeed depend on the particular state laws at issue, including state anti-discrimination laws. *See PCI I*, 66 F. Supp. 3d at 1048; AR 1819; Defs.' Mem. at 26–29.

The recent decision of another court in this district in *Huskey v. State Farm Fire &*

*Casualty Co.*, No. 22 C 7014, 2023 WL 5848164 (N.D. Ill. Sept. 11, 2023), illustrates the practical impact of the specific state laws in McCarran-Ferguson analysis. There, the court denied an insurer's motion to dismiss a complaint where the insurer had "not shown that Illinois law requires or condones claims-processing policies with racially disparate effects, so there is no direct conflict" between plaintiff's FHA disparate-impact claim and Illinois law requiring preemption under McCarran-Ferguson. *Id.* at *11. Such a motion to dismiss could turn out differently in a state where an insurer could establish a conflict between a disparate impact claim and state law. *See id.* PCI's effort to distinguish *Huskey* is unavailing because PCI merely falls back on the argument that every state permits or requires risk-based pricing. *See* Pl.'s Mem. at 11. As explained above, the law does not support that contention.

Plaintiff's major questions contention, *see id.* at 14, fares no better. As Defendants have explained, *see* Defs.' Mem. at 32–33, the 2023 Rule is not a "novel" power that HUD recently discovered. Congress expressly authorized HUD to enforce and interpret the FHA. *See* 42 U.S.C. §§ 3610-12; 3614a. Based on that authority, HUD has long interpreted the FHA to apply to home insurers, at least since 1989. *See* AR 1027–112. In fact, insurers themselves acknowledged in 1996 that the FHA's disparate-impact standard applies to the industry. *See* Amicus Br. of Nat'l Ass'n of Mut. Ins. Cos., *Nationwide Mut. Ins. Co.*, 1996 WL 33467765, at *14 (warning, as *amici* supporting a petition for *certiorari*, that "[t]he practical effect of [*Nationwide Mutual Insurance Co. v. Cisneros*, 52 F.3d 1351 (6th Cir. 1995)] is that property insurers will be forced to fend off FHA disparate impact challenges to underwriting and rating standards and rules."). Moreover, the 2023 Rule falls comfortably within HUD's area of expertise, because Congress has declared the policy of the United States to provide for fair housing throughout the nation, *see* 42 U.S.C. § 3601, and expressly tasked HUD with administering and enforcing the FHA, *see id.* §§ 3608; 3612, and with making rules to carry out the FHA, *see id.* § 3614a; *see also* Mission, HUD, https://perma.cc/UY56-VTGM (noting that the agency's mission includes supporting efforts to "build inclusive and sustainable communities free from discrimination," including

14

discrimination that has a discriminatory effect).

### B.  HUD Adequately Addressed PCI's Concerns About the Filed-Rate Doctrine

HUD's opening brief demonstrated that HUD adequately explained that the filed-rate
doctrine does not justify the exemptions insurers seek. *See* Defs.' Mem. at 43–46. In response,
PCI ignores the myriad variations among jurisdictions that HUD relied on in adopting the case-
by-case approach in the Rule. *See* Pl.'s Mem. at 21–24. HUD explained that the variations in
state regulatory regimes, laws and policies, and courts' application of the doctrine make the case-
by-case approach adopted by the Rule preferable. *See* AR 1819; *see also* AR 32790–92. In any
event, in the majority of cases, the doctrine would not bar disparate impact claims under the Rule
because such claims do not challenge the "reasonableness" of approved rates, the state-law
doctrine would be preempted under the Supremacy Clause, and the doctrine would not preclude
various forms of relief typically granted under the FHA. *See* AR 32790–92.

PCI ignores that HUD justified its case-by-case approach by relying on the variations in
state laws and how courts apply the filed-rate doctrine, *see* Defs.' Mem. at 44 (citing AR 1819).
Though PCI offers a competing vision, "the agency has offered a reasoned explanation for its
choice between competing approaches supported by the record," which ends the inquiry. *See*
*Pub.-Safety Commc'ns Offs.*, 76 F.3d at 398. Numerous courts, including the Seventh Circuit,
disagree with PCI's view that merely filing a rate is sufficient to invoke the doctrine and instead
require some sort of approval by the governing regulatory agency. *See* AR 1819 n.92 (citing
NAIC, 2 Compendium of State Laws on Insurance Topics, Health/Life/Property/Casualty II–
PA–10–21 (2011) (listing "no file" states); Defs.' Mem. at 44 (collecting cases); *see also Cohen*
*v. Am. Sec. Ins. Co.*, 735 F.3d 601, 607–08 (7th Cir. 2013).[8] HUD's explanation that agency

---

[8] For instance, some states have not adopted the filed-rate doctrine. *See, e.g.*, *Qwest Corp.*
*v. Kelly*, 204 Ariz. 25, 59 P.3d 789, 792 (Ariz. Ct. App. 2002) (noting "Arizona courts have not
yet considered" whether to adopt a "filed rate doctrine" and deferring the question); *Cellular*
*Plus Inc. v. Super. Ct. of San Diego Cnty.*, 14 Cal. App. 4th 1224, 18 Cal. Rptr. 2d 308, 318

approval would be required to invoke the doctrine is sensible given that a central reason for the doctrine is to prevent courts from "undermin[ing] agency rate-making authority by upsetting approved rates (the principle of 'nonjusticiability')." *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 261–62 (2d Cir. 2015) (citation omitted).[9] Consequently, in approval-required states, the filed-rate doctrine would not apply to a disparate impact claim under HUD's Rule. Even to the extent certain jurisdictions agree with PCI and hold that the filing of a rate is sufficient to invoke the doctrine, *see, e.g., McCray v. Fid. Nat'l Title Ins. Co.*, 682 F.3d 229, 237–39 (3d Cir. 2012), HUD's explanation about the split of authority on the issue demonstrates the adequacy of its reasons for adopting a case-by-case approach in its Rule. *See* AR 1819. That is enough to reject PCI's challenge to the adequacy of HUD's filed-rate explanation.[10]

This state-by-state and circuit-by-circuit variance in understanding of the filed-rate

---

(1993) (rejecting the doctrine and allowing lawsuit challenging reasonableness of rates). In other states that have, the doctrine does not apply to insurers. *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 810 (7th Cir. 2020) ("We have found no District of Columbia case or statute applying filed-rate principles in the insurance context."); *Clark v. Prudential Ins. Co. of Am.*, Civ. No. 08-6197, 2011 WL 940729, at *12 (D.N.J. Mar. 15, 2011) (in Ohio, filed-rate doctrine does not apply outside context of public utilities or common carriers to insurers). In still others, courts have narrowed application of the doctrine based on competing state laws and policies. *See Gunn*, 968 F.3d at 811 (in Washington state, plaintiff's claims "may or may not be barred depending on whether they are deemed 'merely incidental'" to the rates approved by the commissioner, consistent with consumer protection laws); *Bhasker v. Kemper Cas. Ins. Co.*, 284 F. Supp. 3d 1191, 1234–35 (D.N.M. 2018) (declining to apply doctrine to bar consumer claim against insurers on ground that "[i]t is difficult to imagine the Supreme Court of New Mexico shielding insurers from virtually any liability claim alleging deceptive practices in the face of an expressly created private right of action for such claims simply to ensure that courts never bump up against an approved insurance rate").

[9] Indeed, courts regularly define a "filed rate" as "one approved by the governing regulatory agency." *Alexander v. Glob. Tel Link Corp.*, 816 F. App'x 939, 943 (5th Cir. 2020) ("Simply stated, the doctrine holds that any 'filed rate'—that is, one approved by the governing regulatory agency—is per se reasonable and unassailable in judicial proceedings brought by ratepayers." (quoting *Tex. Com. Energy v. TXU Energy, Inc.*, 413 F.3d 503, 508 (5th Cir. 2005))); *see also Simon v. KeySpan Corp.*, 694 F.3d 196 (2d Cir. 2012); *Coll v. First Am. Title Ins. Co.*, 642 F.3d 876 (10th Cir. 2011).

[10] Should a specific state's filed-rate principles bar disparate impact claims, insurers could raise that defense as a bar to suit. *Cf. NAMIC*, 2023 WL 6142257, at *10 ("If an insurer is sued under a disparate-impact theory of liability, it can try to show that a state law prohibits (or requires) certain underwriting or rating decisions in a way that severs the causal connection between the insurer's practices and the disparate impact.").

doctrine undermines PCI's reliance on *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409 (1986), on which PCI relies. *See* Pl.'s Mem. at 23. The Eighth Circuit, for example, directly rejected PCI's argument by concluding that, as in "*Square D*, the question is whether the agency's rate-regulating authority trumps the court's authority to enforce *a different statute*." *Saunders v. Farmers Ins. Exch.*, 440 F.3d 940, 944 (8th Cir. 2006), *aff'd*, 537 F.3d 961 (8th Cir. 2008). "[T]he Supreme Court in … *Square D* harmonized two federal statutes with competing purposes, the Sherman Act and the Interstate Commerce Act, whereas here the Supremacy Clause tips any legislative competition in favor of the federal anti-discrimination statutes." *Id.* PCI makes much of the fact that HUD only directly cited *Square D* once in the 2023 Rule, *see* Pl.'s Mem. at 23, but the agency adopted the Eighth Circuit's reading of *Square D* by directly relying on *Saunders*, as well as cases from other courts similarly rejecting PCI's broad reading of *Square D*. Even if, as PCI claims, HUD's explanation was "light on" direct citations to *Square D*, the agency did explain its reasoning, which clears the APA's low bar for determining adequacy. *See Ogbolumani*, 557 F.3d at 734.

HUD likewise reasonably relied on caselaw to reject PCI's incorrect assertion that it would be impossible for a court to resolve a disparate impact challenge to rates without examining the reasonableness of those rates. *See* Pl.'s Mem. at 23–24. HUD explained that "discriminatory effects claims 'do not challenge the reasonableness of the insurance rates' but rather their discriminatory effects," by relying in part on a district court that so concluded. AR 1819 (quoting *Lumpkin v. Farmers Grp., Inc.*, No. 05-2868, 2007 WL 6996584, at *8 (W.D. Tenn. Apr. 26, 2007)). PCI's only response is to call that decision conclusory. *See* Pl.'s Mem. at 24. But HUD reasonably reconciled *Lumpkin* with other caselaw and authorities, including the Supremacy Clause. Relatedly, PCI argues that the Rule would mean that "a court must invalidate" filed rates. *id.* at 23. Not so. As the Supreme Court explained, when a practice has an unjustified disparate impact, a remedy can "concentrate on the elimination of the offending practice." *Inclusive Cmtys.*, 576 U.S. at 544. As HUD explained, a court could "'[provide]

17

injunctive relief or prohibit the Government from seeking civil or criminal redress'"—neither of which would be precluded by the filed-rate doctrine. AR1819 (quoting and citing cases). And, as HUD also explained, "[t]o the extent there is any conflict between" the FHA and state laws related to the filed-rate doctrine, "'the Supremacy Clause tips any legislative competition in favor of the federal antidiscrimination statutes.'" *Id.* (same) (citation omitted).

Finally, PCI has not established that HUD's explanation for and reliance on the Supremacy Clause was inadequate. *Contra* Pl.'s Mem. at 25–27. As an initial matter, PCI does not engage with the incongruity of their argument that a federal claim (under the FHA) would be prohibited by the application of the filed-rate doctrine. *See* Defs.' Mem. at 45. Instead, PCI faults HUD for relying on one line of caselaw instead of another, *see* Pl.'s Mem. at 27, notwithstanding that the agency's decision to endorse one approach, *see* AR32791 & n.246, n.249, over another does not make that decision arbitrary. *See Pub.-Safety Commc'ns Offs.*, 76 F.3d at 398. At bottom, HUD has adequately explained that "[m]ultiple courts examining the filed-rate doctrine in the context of Fair Housing Act claims have found the doctrine inapplicable, noting that the Supremacy Clause, rather than the filed-rate doctrine, applies." AR 32791 (citing, *e.g.*, *Saunders*, 440 F.3d at 944).

### C. HUD Adequately Considered the Impact of *Inclusive Communities* on Remand

HUD adequately considered *Inclusive Communities*, and the 2023 Rule is consistent with the Supreme Court's decision. *See* Defs.' Mem. at 46–49. Another district court recently concluded as much, specifically rejecting most of the arguments that PCI raises here. *NAMIC*, 2023 WL 6142257, at *9–11.

PCI claims three shortcomings in the 2023 Rule. First, PCI asserts that *Inclusive Communities* requires that a practice be "artificial, arbitrary, and unnecessary" to create disparate-impact liability. Pl.'s Mem. at 33. But HUD reasonably concluded that the Court was referencing a "short-hand formulation for the type of policy that traditionally has been held to create an unjustified discriminatory effect," rather than creating a new limitation. AR 32775; *see*

Defs.' Mem. at 48. And PCI has not identified any instance where a court has concluded otherwise.[11] This Court should follow the *NAMIC* court and reject this argument, particularly in the context of this facial challenge to the 2023 Rule. As the *NAMIC* court concluded, whether the 2023 Rule allowed for the "displacement of valid governmental policies," as *Inclusive Communities* warned against, must be decided in the context of specific cases, rather than in a facial challenge to the rule. *NAMIC*, 2023 WL 6142257, at *11 (quoting *Inclusive Cmtys.*, 576 U.S. at 540).

Neither of PCI's two other complaints establish that HUD's consideration of *Inclusive Communities* was inadequate. *Contra* Pl.'s Mem. at 34. "Nowhere does the Disparate-Impact Rule require those engaging in housing practices to collect or use data on individuals' protected characteristics," as PCI claims. *NAMIC*, 2023 WL 6142257, at *9 (citing 24 C.F.R. § 100.500 (2023)). Nor does the 2023 Rule "subject insurers to liability 'for racial disparities they did not create.'" *Contra* Pl.'s Mem. at 34 (quoting *Inclusive Cmtys.*, 576 U.S. at 542). The *NAMIC* court properly rejected this argument as well: PCI's "argument reads too much into *Inclusive Communities* and not enough into the Disparate-Impact Rule. … [C]ontrary to [PCI's] position, proof of causation is exactly what the Disparate-Impact Rule requires of plaintiffs at the prima facie stage." *NAMIC*, 2023 WL 6142257 at *11 (citing 24 C.F.R. § 100.500(a), (c)(l) (2023)). HUD's 2023 Rule is thus fully consistent with *Inclusive Communities*. *See* Defs.' Mem. at 46– 49.

## IV. IF REQUIRED, REMAND, NOT VACATUR, IS THE APPROPRIATE REMEDY

PCI does not appear to dispute that courts may properly remand without vacatur "upon finding that the grounds for agency action are inadequate," *see Biden v. Texas*, 597 U.S. 785, 807 (2022), and this Court did as much in 2014, *see PCI I*, 66 F. Supp. 3d at 1054. PCI implies that

---

[11] In none of the three cases Plaintiff cites, *see* Pl.'s Mem. at 33–34, did a court conclude that HUD's disparate impact rule conflicted or otherwise was out of step with *Inclusive Communities*.

there is an inexorable conflict between insurance and disparate impact liability under the FHA, *see* Pl.'s Mem. at 35, but this theory goes beyond the operative complaint, which is limited to whether HUD adequately considered certain factors, *see PCI II*, 2017 WL 2653069, at *9. HUD has provided adequate explanations. Vacating HUD's Rule as it applies to insurers would unnecessarily disrupt a decade of clarity that that the discriminatory effects standard applies to the industry.[12] Such disruption is not warranted. If this Court determines that the agency owes PCI's comments still further consideration, the Court should remand the 2023 Rule to the agency for further elaboration. *See* Defs.' Mem. at 49–50.

## CONCLUSION

For the reasons stated in Defendants' opening brief and herein, the Court should deny Plaintiff's motion for summary judgment and grant Defendants' cross motion.

---

[12] To be clear, PCI does not request that HUD's Rule be vacated in its entirety. *See* Pl.'s Mem. at 34–35.

Dated: December 12, 2023

Respectfully Submitted,

SARAH HARRINGTON
Deputy Assistant Attorney General

JEANINE M. WORDEN
Associate General Counsel for Fair Housing
AYELET WEISS
Assistant General Counsel for Fair Housing
Enforcement
PAUL I. OSADEBE
Trial Attorney
U.S. DEPARTMENT OF HOUSING
AND URBAN DEVELOPMENT

*Of Counsel*

LESLEY FARBY
Assistant Branch Director

/s/ James D. Todd, Jr.
JAMES D. TODD, JR.
BRIAN C. ROSEN-SHAUD
United States Department of Justice
Benjamin Franklin Station
P.O. Box 883
Washington, DC 20044
(202) 514-3378
(202) 305-7667
james.todd@usdoj.gov
brian.c.rosen-shaud@usdoj.gov

*Counsel for Defendants*

21

## CERTIFICATE OF SERVICE

I certify that, on December 12, 2023, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court for the Northern District of Illinois using the CM/ECF system, which sent notification of such filing to counsel of record in this case.

/s/ James D. Todd, Jr.
JAMES D. TODD, JR.